## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | : | |
| | : | |
| IT GROUP INC., et al., | : | Bankruptcy Case 02-10118 (MFW) |
| | : | |
| Debtors. | : | |

| | | |
|---|---|---|
| STATE OF NEW JERSEY | : | |
| ENVIRONMENTAL PROTECTION, | : | |
| | : | |
| Appellant, | : | |
| | : | |
| v. | : | Civil Action No. 05-005-JJF |
| | : | |
| IT LITIGATION TRUST TRUSTEE, | : | |
| | : | |
| Appellee. | : | |

## BRIEF OF APPELLANT STATE OF NEW JERSEY
## DEPARTMENT OF ENVIRONMENTAL PROTECTION

Peter C. Harvey
Attorney General of New Jersey
R.J. Hughes Justice Complex
P.O. Box 093
Trenton, New Jersey 08625
(609) 984-7147

Kathrine M. Hunt
Deputy Attorney General
   On the Brief

Dated: June 9, 2005

## TABLE OF CONTENTS

**PAGE**

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . 1

JURISDICTIONAL STATEMENT  . . . . . . . . . . . . . . . . . . . 3

STATEMENT OF THE ISSUES PRESENTED . . . . . . . . . . . . . . . 3

STANDARD OF APPELLATE REVIEW  . . . . . . . . . . . . . . . . . 3

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . 4

    I.  Parties  . . . . . . . . . . . . . . . . . . . . . . . 4

    II. Statutory Background to the State's Environmental
        Protection Action  . . . . . . . . . . . . . . . . . . 5

    III.  History of Proceedings . . . . . . . . . . . . . . . 9

ARGUMENT

    POINT I

        THE BANKRUPTCY COURT ERRED IN ENJOINING THE
        STATE FROM TAKING APPROPRIATE ACTION UNDER
        THE FRESHWATER WETLANDS PROTECTION ACT,
        N.J.S.A. 13:9B-1 to -30, A STATUTE ENACTED TO
        PROTECT THE PUBLIC HEALTH AND SAFETY, AND
        PREVENTING THE STATE OF NEW JERSEY FROM
        COMPLETING THE ADMINISTRATIVE PROCESS TO
        DETERMINE LIABILITY IN THE STATE OFFICE OF
        ADMINISTRATIVE LAW  . . . . . . . . . . . . . . . . . 12

POINT II

THE BANKRUPTCY COURT ERRED IN TREATING
DEBTOR'S OBLIGATION TO PERFORM MITIGATION
UNDER THE FRESHWATER WETLANDS PROTECTION ACT,
N.J.S.A. 13:9b-1 TO -30, AS IF IT WERE A
GENERAL UNSECURED CLAIM UNDER 11 U.S.C. §
101(5) . . . . . . . . . . . . . . . . . . . . . . 18


CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . 22

## CASES CITED

In re Chateaugay, 944 F.2d 997 (2d Cir. 1991) . . . . . . . . 20


In re Garay, 89 N.J. 104 (1982) . . . . . . . . . . . . . . 18


M. Alfieri Co. v. State, 269 N.J. Super. 108

   (App. Div. 1994), aff'd o.b., 138 N.J. 642

   (1995) . . . . . . . . . . . . . . . . . . . . . . . . . 5


Matter of Commonwealth Oil Refining Co., 805

   F.2d 1175 (5th Cir.), cert. denied, 483 U.S.

   1005(1987) . . . . . . . . . . . . . . . . . . . . . . 14


Penn Terra Ltd. v. Dep't of Envtl. Resources,

   733 F.2d 267 (3d Cir. 1984) . . . . . . . . . . 15, 16, 17, 20

-ii-

<u>Safety Kleen, Inc. v. Wyche</u>, 274 <u>F</u>.3d 846 (4th

   Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . .  18


<u>Torwico Electronics v. State of New Jersey</u>,

   8 <u>F</u>.3d 146 (3d Cir. 1993), <u>cert</u>. <u>denied</u>, 511

   <u>U.S</u>. 1046 (1994) . . . . . . . . . . . . . . . . . . . . .  19


<u>United States v. Nicolet</u>, 857 <u>F</u>.2d 202 (3d Cir.

   1988) . . . . . . . . . . . . . . . . . . . . . . . . 13, 17

## FEDERAL STATUTES CITED

11 <u>U.S.C</u>. § 101(5) . . . . . . . . . . . . . . . . . 3, 18, 19


11 <u>U.S.C</u>. § 362(a) . . . . . . . . . . . . . . . . . . . .  12

11 <u>U.S.C</u>. § 362(b)(4) . . . . . . . . . . . 1, 2, 3, 12, 13, 18


28 <u>U.S.C</u>. § 158 . . . . . . . . . . . . . . . . . . . . . . 3

## STATUTES CITED

<u>N.J.S.A</u>. 13:1D-1 . . . . . . . . . . . . . . . . . . . . . 4

<u>N.J.S.A</u>. 13:1D-9 . . . . . . . . . . . . . . . . . . . . . 4

<u>N.J.S.A</u>. 13:9B-1 to -30 . . . . . . . . . . . . 1, 3, 5, 12, 18

<u>N.J.S.A</u>. 13:9B-2 . . . . . . . . . . . . . . . . . . . . 5, 6

<u>N.J.S.A</u>. 13:9B-3 . . . . . . . . . . . . . . . . . . . . . 6

N.J.S.A. 13:9B-9a . . . . . . . . . . . . . . . . . . . . . 6

N.J.S.A. 13:9B-14(b) & -15(a) . . . . . . . . . . . . . . . 6

N.J.S.A. 13:9B-21(e) . . . . . . . . . . . . . . . . . . . 6

## REGULATIONS CITED

N.J.A.C. 7:7A-15.1 . . . . . . . . . . . . . . . . . . . . 7

N.J.A.C. 7:7A-2.1(a) . . . . . . . . . . . . . . . . . . . 6

N.J.A.C. 7:7A-2.2(a)(2) . . . . . . . . . . . . . . . . . . 6

## MISCELLANEOUS

Remarks of Governor Thomas H. Kean, Wetlands Bill
 Signing, July 1, 1987 . . . . . . . . . . . . . . . . . . 5

Federal Environmental Protection Agency ("EPA")
 Publication, Functions and Values of Wetlands,
 September 2001 . . . . . . . . . . . . . . . . . . . . . . 7

Ralph W. Tiner, Wetlands in New Jersey, Fish and
 Wildlife Service, July 1985 . . . . . . . . . . . . . . . 8

1978 U.S. Code Cong. & Admin. News . . . . . . . . . . . . 13

## PRELIMINARY STATEMENT

This appeal arises from an order of the Bankruptcy
Court (Hon. Mary F. Walrath, Chief, U.S.B.J.) granting the IT
Litigation Trust an injunction prohibiting the State of New
Jersey, Department of Environmental Protection ("NJDEP"), from
taking environmental protection regulatory action under the
Freshwater Wetlands Protection Act ("FWPA"), N.J.S.A. 13:9B-1 to
-30, against debtor Landbank, Inc.  In a misguided extension of
its broad powers to protect the debtor's estate, the Bankruptcy
Court ordered NJDEP to dismiss State environmental administrative
action the regulatory agency had instituted against Landbank,
Inc., pursuant to the FWPA, addressing the illegal destruction of
approximately 19 acres of freshwater wetlands in Gloucester
County, New Jersey.

The Bankruptcy Court committed a serious error in
ordering such dismissal.  The NJDEP's administrative action
represents a fundamental exercise of the State's police power to
prevent continuing and future damages to the environment as a
result of the debtor's destruction of wetlands.  Under the
exception to the automatic stay otherwise afforded to debtors by
the bankruptcy laws, Congress has expressly preserved the right
of states to exercise such regulatory and police powers.  11
U.S.C. § 362(b)(4).  As such, the NJDEP had every right to

-1-

proceed with its environmental regulatory action.

In addition, the Bankruptcy Court erred in finding that the State's interest in enforcing its environmental laws in this case amounted to a "claim" that would be subject to the Court's confirmation order, in clear derogation of the exception created at 11 U.S.C. § 362(b)(4) and well-established case law in this Circuit.

On the contrary, as explained below, the State retains the right to proceed with its administrative action to establish the debtor's responsibility for compliance with the important environmental laws involved in this case and for restoration of the affected wetlands. For these reasons, the Bankruptcy Court's ruling must be reversed.

JURISDICTIONAL STATEMENT

This appeal arises under 28 U.S.C. § 158 from a final order of the Bankruptcy Court.

STATEMENT OF THE ISSUES PRESENTED

1.   Whether the United States Bankruptcy Court erred in enjoining the State from taking action under the Freshwater Wetlands Protection Act, N.J.S.A. 13:9B-1 to -30, a statute enacted to protect the public health and safety, and preventing the State of New Jersey from completing the administrative process to determine liability in the New Jersey Office of Administrative Law, contrary to case law on this subject and contrary to the exemption afforded to such State regulatory action from the automatic stay, at 11 U.S.C. § 362(b)(4).

2.   Whether the United States Bankruptcy Court erred in treating debtor's obligation to perform mitigation under the Freshwater Wetlands Protection Act, N.J.S.A. 13:9B-1 to -30, as if it were a general unsecured claim under 11 U.S.C. § 101(5).

STANDARD OF APPELLATE REVIEW

This appeal involves issues of law, subject to de novo review by this Court.

-3-

## STATEMENT OF THE CASE

### I.  Parties

Appellant, New Jersey Department of Environmental Protection ("NJDEP"), is a state administrative agency.  N.J.S.A. 13:1D-1.  The NJDEP is required to conserve the natural resources of the State, promote environmental protection, and prevent pollution of the environment of the State.  N.J.S.A. 13:1D-9.

Appellee, Landbank, Inc., is a wholly-owned subsidiary of The IT Group, Inc., and is a debtor in bankruptcy proceedings currently pending in the United States Bankruptcy Court for the District of Delaware (Case No. 02-10118).  In 2000, Landbank, Inc., acquired U.S. Wetlands Services, Inc., which was authorized by the New Jersey Freshwater Wetlands Mitigation Council to construct the Woodbury Creek Wetlands Mitigation Bank on an approximately 200 acre site in West Deptford Township, Gloucester County, New Jersey, in close proximity to the Delaware River. Aa001.  At the same time, Landbank took over ownership of Woodbury Creek, Inc., a subsidiary of U.S. Wetland Services. Woodbury Creek, Inc. is listed as the current owner of the site. U.S. Wetlands Services, Inc., and Woodbury Creek, Inc., are also listed as debtors in the pending bankruptcy proceedings.

On January 16, 2002, The IT Group, Inc., and its subsidiaries, filed for reorganization relief under Chapter 11 of

-4-

the United States Bankruptcy Code.  Aa0017  By order dated April
5, 2004, the Bankruptcy Court for the District of Delaware
confirmed the First Amended Plan of Reorganization for the
debtors.  Aa0097. The estate of Landbank, Inc., is now
represented by the IT Litigation Trust, as successor to the
estate of The IT Group, Inc., and Landbank.

II.  Statutory Background to the State's Environmental
Protection Action

The appellant, NJDEP, is charged with implementing and
enforcing the Freshwater Wetlands Protection Act ("FWPA"),
N.J.S.A. 13:9B-1 to -30.  In 1987, New Jersey's Legislature
passed the FWPA to provide a comprehensive scheme for the
regulation and protection of New Jersey's freshwater wetlands.
N.J.S.A. 13:9B-2; M. Alfieri Co. v. State, 269 N.J. Super. 108,
111 (App. Div. 1994), aff'd o.b., 138 N.J. 642 (1995).  At the
time, then Governor Thomas H. Kean called the legislation "one of
the most important pieces of environmental legislation ever
enacted in this State."   Remarks of Governor Thomas H. Kean,
Wetlands Bill Signing, July 1, 1987. Aa00130.  The Legislature
declared that its goal was to "preserve the purity and integrity
of freshwater wetlands from random, unnecessary and undesirable
alteration or disturbance."  N.J.S.A. 13:9B-2.   The Legislature
recognized the far reaching importance of freshwater wetlands and
the critical need to preserve them:

-5-

> . . . freshwater wetlands protect and
> preserve drinking water supplies by serving
> to purify surface water and groundwater
> resources; that freshwater wetlands provide a
> natural means of flood and storm damage
> protection, and thereby prevent the loss of
> life and property through the absorption and
> storage of water during high runoff periods
> and the reduction of flood crests; . . . that
> freshwater wetlands provide essential
> breeding, spawning, nesting, and wintering
> habitats for a major portion of the State's
> fish and wildlife, including migrating birds,
> endangered species, and commercially and
> recreationally important wildlife; and that
> freshwater wetlands maintain a critical
> baseflow to surface waters through the
> gradual release of stored flood waters and
> groundwater, particularly during drought
> periods.    [N.J.S.A. 13:9B-2].

A key regulatory tool of the FWPA is the requirement that, prior to engaging in regulated activities in freshwater wetlands areas, persons must obtain a permit from the Department. N.J.S.A. 13:9B-9a; N.J.A.C. 7:7A-2.1(a). Regulated activities include the drainage or disturbance of the water level or water table so as to modify the existing vegetation, values or functions of the wetland. N.J.A.C. 7:7A-2.2(a)(2); N.J.S.A. 13:9B-3. Under the FWPA, each day during which a violation continues unabated is a separate and distinct offense. N.J.S.A. 13:9B-21(e).

The FWPA also established the Wetlands Mitigation Council, which is authorized to purchase land to provide areas for enhancement or restoration of degraded freshwater wetlands, to engage in the enhancement or restoration of degraded wetlands,

-6-

and to preserve freshwater wetlands and transition areas that are of critical importance in protecting freshwater wetlands. N.J.S.A. 13:9B-14(b) & -15(a). Under rules implementing the FWPA, the Council may also approve "private mitigation banks," which are operations in which wetlands and uplands are restored, created, enhanced or preserved by a mitigation bank operator, for the purpose of providing compensatory mitigation for disturbances to freshwater wetlands and/or State open waters elsewhere in the State. N.J.A.C. 7:7A-15.1.

        At the heart of this appeal is the fact that the protection and restoration of wetlands are of critical environmental importance.    The FWPA defines a freshwater wetlands as "an area that is inundated or saturated by surface water or groundwater at a frequency and duration sufficient to support, and that under normal circumstances does support, a prevalence of vegetation typically adapted for life in saturated soil conditions, commonly known as hydrophytic vegetation...." N.J.S.A. 13:9B-3. Wetlands in their natural state provide a wealth of values to society. Wetlands functions include water quality improvement, floodwater storage, fish and wildlife habitat, aesthetics, and biological productivity. Federal Environmental Protection Agency ("EPA") Publication, Functions and Values of Wetlands, September 2001. This EPA publication also notes that

-7-

> Wetlands function like natural tubs or
> sponges, storing water and slowly releasing
> it.  This process slows the water's momentum
> and erosive potential, reduces flood heights,
> and allows for ground water recharge, which
> contributes to base flow to surface water
> systems during dry periods....One acre of
> wetland can store between 1 to 1.5 million
> gallons of floodwater.

Wetlands also play an important role in maintaining
high environmental quality by acting as filters for nutrients and
pollutants before they drain from the wetland and by reducing
turbidity of flooding waters.  This is especially important for
aquatic life and for reducing siltation or ports, harbors, rivers
and reservoirs.  Removal of sediment load is also valuable
because sediments often carry pesticides, heavy metals and other
toxins that pollute our nation's waters.  Ralph W. Tiner,
Wetlands in New Jersey, U.S. Fish and Wildlife Service, July
1985, at 86.

Wetlands are among the most productive ecosystems in
the world, comparable to tropical rain forests and coral reefs in
their productivity and the diversity of species they support.
EPA Publication, supra, at 2.   The rich plant life serves as
food for a multitude of animals, birds, reptiles and amphibians.
Wetlands in New Jersey, supra, at 83-85.  Both coastal and inland
wetlands are particularly important as breeding grounds,
overwintering areas and feeding grounds for migratory waterfowl
and numerous other birds.   Some birds spend their entire lives

-8-

in wetlands environments while others use wetlands for breeding, feeding and resting.  Id. at 84.    Turtles and snakes make their homes in wetlands, and nearly all of the approximately 190 species of amphibians (ie. frogs and salamanders) in North America are wetland-dependent, at least for breeding.  Id. at 85.

In addition to its values to wildlife, wetlands benefit people recreationally and aesthetically.    Hunting and fishing are popular sports in New Jersey and take place in and around wetlands.  Other activities like hiking, nature observation and photography, canoeing and kayaking, take place in wetlands.  Id. at 90-91.

The destruction of wetlands obviously eliminates their value.  Drainage of wetlands eliminates all the beneficial effects of the marsh on water quality and directly contributes to flooding  problems.    Id. at 91.  The general public receives the vast majority of wetland benefits through flood and storm damage control, erosion control, water quality improvement and fish and wildlife resources.  Wetlands protection is particularly important in a densely populated state like New Jersey where extensive wetlands have already been lost, making the remaining wetlands even more valuable as public resources.  Ibid.

III.  History of Proceedings

On July 17, 2002, the NJDEP's Bureau of Coastal and Land Use Compliance and Enforcement issued an Administrative

-9-

Order and Notice of Civil Administrative Penalty Assessment ("Administrative Order") to debtor, Landbank, Inc., based on its finding that, during the course of constructing the Woodbury Creek Wetland Mitigation Bank, Landbank, Inc., had drained 18.94 acres of freshwater wetlands, in violation of the FWPA. Aa00132. In the Administrative Order, the NJDEP sought: (a) off-site mitigation for the drained 18.94 acres, (b) re-establishment of financial assurances for the maintenance and monitoring of the mitigation bank, and (c) payment of a $9,000 penalty.[1] Aa00134-135. The Administrative Order also stated: "No obligations imposed by this [order] are intended to constitute a debt, damage claim, penalty or other civil action which should be limited or discharged in a bankruptcy proceeding. All obligations imposed by this [order] shall constitute continuing regulatory obligations imposed pursuant to the police powers of the state of New Jersey, intended to protect the public health, safety, welfare and environment." Aa 00136.

On August 7, 2002, Woodbury Creek, Inc., filed a request for an administrative hearing to challenge the NJDEP's Administrative Order. The matter was subsequently filed as a contested case in the New Jersey Office of Administrative Law ("OAL"). On November 18, 2004, the NJDEP filed a Motion for

_____

[*] At this time, the NJDEP is not seeking to enforce or collect a penalty against Landbank, Inc.

-10-

Summary Decision in the OAL. In its papers, the NJDEP sought to establish Landbank Inc.'s, liability for the violations, its responsibility to conduct off-site mitigation for the drained freshwater wetlands, and to reinstate the financial assurances required for the mitigation bank.

In response to NJDEP's motion, the IT Litigation Trust Trustee ("Trustee") filed a Motion in Bankruptcy Court for an order directing NJDEP to dismiss its administrative action against the debtors. Aa0013. In its papers, the Trustee argued that the NJDEP's administrative action violated the bar date order, the administrative bar date order, the confirmation order, and the plan injunction approved by the Bankruptcy Court. The NJDEP opposed the Motion. Aa0089.

Oral argument was heard on December 6, 2004, before the Hon. Mary F. Walrath, Chief United States Bankruptcy Judge. Following argument, the court ruled that

> there's been no post-petition, and certainly no post-confirmation action that's destroying wetlands. The damages have already been done. So I'm not convinced there is a compelling State interest here. And to the extent you're seeking to enforce your claim for the prior damage to the wetlands, I think that is enjoined by the Confirmation Order. So I will grant the [Trustee's] motion. Aa 00191.

The Judge signed an Order directing the NJDEP to immediately

-11-

dismiss its administrative action.[2]  Aa00137.  On December 16,
2005, NJDEP filed a Notice of Appeal with the Clerk of the United
States Bankruptcy Court.  Aa00139.  The Notice of Appeal was
docketed in the United States District Court for the District of
Delaware on January 6, 2005.

       As demonstrated below, the Bankruptcy Court's
conclusion that NJDEP's action was not an action to enforce its
police and regulatory powers subject to express exclusion from
the automatic stay provisions of 11 U.S.C. § 362(b)(4), but
rather an action to  pursue a claim, is contrary to any
reasonable interpretation of the important State environmental
law at issue, to binding precedent, and to the plain meaning of
11 U.S.C. § 362(b)(4).  Therefore, the decision below should be
reversed.

## ARGUMENT

### POINT I

> THE BANKRUPTCY COURT ERRED IN ENJOINING THE
> STATE FROM TAKING APPROPRIATE ACTION UNDER
> THE FRESHWATER WETLANDS PROTECTION ACT,
> N.J.S.A. 13:9B-1 to -30, A STATUTE ENACTED TO
> PROTECT THE PUBLIC HEALTH AND SAFETY, AND
> PREVENTING THE STATE OF NEW JERSEY FROM
> COMPLETING THE ADMINISTRATIVE PROCESS TO
> DETERMINE LIABILITY IN THE STATE OFFICE OF
> ADMINISTRATIVE LAW

---

[**]  Pursuant to an agreement between the parties, the
administrative action has been placed on the inactive list in the
OAL.  The Trustee has also agreed to a stay of the Bankruptcy
Court's December 6, 2004 Order pending the outcome of this appeal.

Under 11 <u>U.S.C.</u> §362(a), the filing of a petition in

bankruptcy operates as an automatic stay of all actions to

recover on any "claim" against the debtor, including actions to

enforce judgments, actions to obtain possession of property of

the debtor's estate, and actions to create or perfect liens.

However, Section 362(b)(4) specifically provides that the filing

of a bankruptcy petition does <u>not</u> operate as a stay against "the

commencement or continuation of an action or proceeding by a

governmental unit ... to enforce such governmental unit's" police

or regulatory power.  11 <u>U.S.C.</u> §362(b)(4).  The provision also

exempts from the automatic stay provision actions by a

"governmental unit" to enforce a judgment, "other than a money

judgment," arising out of the governmental unit's police or

regulatory power.  11 <u>U.S.C.</u> §362(b)(4).

The legislative history of Section 362(b)(4) explains

the purpose of the exception:

> Paragraph (4) excepts commencement or
> continuation of actions and proceedings by
> governmental units to enforce police or
> regulatory powers.  Thus, where a
> governmental unit is suing a debtor to
> prevent or stop violation of fraud,
> <u>environmental protection</u>, consumer
> protection, safety, or similar police or
> regulatory laws, or attempting to fix damages
> for violation of such law, the action or
> proceeding is not stayed under the automatic
> stay.  [S. Rep. No. 95-989 at 52, 1978 <u>U.S.
> Code Cong. & Admin. News</u> at 5787, 5838.
> (Emphasis added).]

The Third Circuit Court of Appeals has noted that the exception

-13-

provisions "embody Congress' recognition that enforcement of the environmental protection laws merits a higher priority than the debtor's rights to a 'cease fire' or the creditors' rights to an orderly administration of the estate." United States v. Nicolet, 857 F.2d 202, 207 (3d Cir. 1988). The Third Circuit has further stated that the exception provision should be broadly construed, and

> no unnatural efforts be made to limit its scope. The police power of the several States embodies the main bulwark of protection by which they carry out their responsibilities to the People; its abrogation is therefore a serious matter. Congress should not be assumed, therefore, to have been miserly in its refund of that power to the States. Where important state law or general equitable principles protect some public interest, they should not be overridden by federal legislation unless they are inconsistent with explicit congressional intent such that the supremacy clause mandates their supersession. For the same policy reasons, the 'exception to the exception' created by subsection 362(b)(5), rendering 'enforcement of a money judgment' by a government unit susceptible to the automatic stay, should be construed *narrowly* so as to leave to the States as much of their police power as a fair reading of the statute allows. [Penn Terra Ltd. v. Dep't of Envtl. Resources, 733 F.2d 267, 273 (3d Cir. 1984)].

Furthermore, the legislative history of the exception provisions "explicitly acknowledge environmental protection as a part of the State's police power." Id. at 274. Also, by its plain language, the "police and regulatory exceptions do not depend on a showing of imminent and identifiable harm or urgent public necessity."

-14-

Matter of Commonwealth Oil Refining Co., 805 F.2d 1175 (5th Cir.), cert. denied, 483 U.S. 1005(1987).

In light of the broad exemption for governmental enforcement actions, and in view of the legislative history behind the exception provision, courts have repeatedly held that actions, like this one, involving the enforcement of environmental laws are not subject to the automatic stay. The leading case on this point in this Circuit is Penn Terra Ltd. v. Dept. of Environmental Resources, 733 F.2d 267 (3d Cir. 1984).

In Penn Terra, a debtor filed for protection in bankruptcy after it failed to comply with environmental regulations governing the operation of the debtor's coal mines in Pennsylvania, and after it violated the terms of a consent order under which the debtor had agreed to correct violations of the state's environmental statutes. After the Commonwealth of Pennsylvania obtained a preliminary injunction against Penn Terra in state court to correct the violations of the state statutes and enforce the terms of the consent order, Penn Terra moved to restrain the State in Bankruptcy Court, arguing that Pennsylvania's enforcement action violated the automatic stay provisions of Section 362(a). The debtor argued that the Commonwealth's action was actually an attempt to collect a money judgment from the debtor. The Bankruptcy Court agreed with the debtor's characterization of the Commonwealth's action and, on

-15-

appeal, the District Court affirmed. On appeal, however, the Third Circuit reversed. The court rejected the debtor's argument that Pennsylvania's enforcement of the state's environmental laws was, in fact, an attempt to enforce a money judgment, and therefore subject to the operation of the automatic stay. The court looked to the traditional understanding of a money judgment and found that it consisted of two elements: (1) an identification of the parties for and against whom judgment was being entered and (2) a definite and certain designation of the amount that is owed. Id. at 275. The court noted that the mere entry of a money judgment by a governmental unit is not affected by the automatic stay. Ibid. The court further noted the distinction between the entry of a money judgment and a proceeding to enforce that judgment. "The paradigm for such a proceeding is when, having obtained a judgment for a sum certain, a plaintiff attempts to seize property of the defendant in order to satisfy the judgment." Ibid.

The court found that Pennsylvania's action in Commonwealth Court was an action in equity to compel the performance of remedial acts, and, as such, could not have resulted in the adjudication of liability for a sum certain, an essential element of a money judgment. Ibid. The court pointed out that, under established case law, "an important factor in identifying a proceeding as one to enforce a money judgment is

-16-

whether the remedy would compensate for <u>past</u> wrongful acts
resulting in injuries already suffered, or protect against
potential <u>future</u> harm." 733 <u>F</u>.2d at 276-77 (emphasis in
original).  The court noted:

> the Commonwealth Court's injunction was meant
> to prevent future harm to, and to restore,
> the environment.  Indeed, examining the state
> order, it is clear that erosion control,
> back-filling, and reseeding were additionally
> meant to preserve the soil conditions from
> further deterioration (as well as rectify a
> safety hazard).  [<u>Id</u>. at 278.]

Because the Commonwealth's injunction was intended to prevent
future harm, the court concluded that the injunction was not a
money judgment.  <u>Ibid</u>.

Like the action taken by the Commonwealth in <u>Penn
Terra</u>, the NJDEP's administrative action represents a fundamental
exercise of the State's police powers.  The State's
administrative  action seeks remedial relief to prevent future
damage to the environment, and could not have resulted in the
adjudication of liability for a sum certain.  Indeed, even if the
State had been seeking a money judgment in its administrative
action, the automatic stay would not prevent it from simply
<u>obtaining</u> the judgment.  <u>Penn Terra</u>, 733 <u>F</u>.2d at 275.

Unlike the Commonwealth in <u>Penn Terra</u>, however, New
Jersey was erroneously prevented by the Bankruptcy Court from
continuing its administrative action to establish the debtor's
liability for the violations on the site and to obtain an order

-17-

for remedial relief.   At a minimum, the State should be permitted to continue its administrative action to establish debtor's liability for the violations.

Even in cases where the government has plainly sought monetary relief, it has not been precluded from obtaining a judgment establishing liability and damages.   See United States v. Nicolet, 857 F.2d 202, 207 (3d Cir. 1988)(automatic stay did not apply to government's action seeking money judgment, even though government could not enforce any judgment it might obtain); In re Garay, 89 N.J. 104 (1982)(state's suit to fix damages for violation of law against fraudulent claims was not subject to automatic stay).

Moreover, the regulatory exemption in ¶ 362(b)(4) applies not only to NJDEP's demand for mitigation but also to its demand for reinstatement of financial assurances.   In Safety Kleen, Inc. v. Wyche, 274 F.3d 846, 866 (4th Cir. 2001), the court held that the State of South Carolina's efforts to enforce the financial assurance regulations pursuant to its hazardous waste facility regulations was an exercise of its regulatory powers, and, therefore, it was not stayed by the bankruptcy proceedings.

In light of the above, the Bankruptcy Court's Order clearly violates the plain language of the exception provision to the automatic stay, and should be reversed.

-18-

POINT II

THE BANKRUPTCY COURT ERRED IN TREATING
DEBTOR'S OBLIGATION TO PERFORM MITIGATION
UNDER THE FRESHWATER WETLANDS PROTECTION ACT,
N.J.S.A. 13:9B-1 to -30, AS IF IT WERE A
GENERAL UNSECURED CLAIM UNDER 11 U.S.C. §
101(5).

In its oral ruling, the Bankruptcy Court found NJDEP

had a "claim", which it was enjoined from pursuing, by the

injunction provision of the Confirmation Order. Aa00191.  The

injunction provision provides in part that

> ... all Persons or entities who have held,
> hold, or may hold Claims or Equity Interests
> are permanently enjoined, from and after the
> Effective Date, from (a) commencing or
> continuing in any manner any action or other
> proceeding of any kind on any such Claim or
> Equity Interest against any of the Debtors
> ... (b) the enforcement, attachment,
> collection or recovery by any manner or means
> of any Claims and/or Equity Interests, or any
> judgment, award, decree or order with respect
> to any Claims and/or Equity Interests,
> against any of the debtors.... [Aa00102-103].

The definition of claim in the Confirmation Plan is substantially

the same as the definition in the Bankruptcy Code, and both

define a claim to include a "right to payment". See 11 U.S.C. §

101(5); Aa00102-103.  The State, however, is not attempting to

get money from the debtor, but rather, to obtain an order to

force the debtor to comply with its environmental laws, an

exercise of the State's statutory regulatory and police powers.

The State's interest, therefore, is not a "claim" subject to the

Bankruptcy Court's confirmation order.

-19-

In the case of <u>Torwico Electronics v. State of New
Jersey</u>, 8 <u>F</u>.3d 146 (3d Cir. 1993), <u>cert. denied</u>, 511 <u>U.S.</u> 1046
(1994), the State of New Jersey issued a cleanup order requiring
the debtor to remove hazardous wastes that were located on land
formerly occupied by the debtor.   The debtor argued that the
cleanup order was a claim avoidable through the bankruptcy
process.   The court of appeals disagreed, concluding that the
cleanup order was a "regulatory obligation," not a bankruptcy
claim, to the extent it required the debtor to ameliorate ongoing
pollution.   <u>Id</u>. at 50.   In effect, the cleanup order could not be
reduced to a claim because "there is no option to accept payment
in lieu of continued pollution."   <u>Id</u>. at 149, quoting <u>In re
Chateaugay</u>, 944 <u>F</u>.2d 997 (2d Cir. 1991).   The <u>Torwico</u> rule
squarely applies to this case.

The Bankruptcy Court, however, held that, since "the
damage has been done and there's no continuing creeping pollution
that the State has an interest in stopping," the State had a
"claim" against the debtor, and fell out of the <u>Torwico</u> rule.   Aa
00190-191.   A State's action for injunctive relief for
environmental violations, however, is not limited to actions
where there is migrating pollution caused by hazardous wastes.
Indeed, the debtor's destruction of wetlands will result in
continued environmental damage for years to come unless the
functions and values of those wetlands are replaced.   In <u>Penn</u>

-20-

<u>Terra</u>, there was no threat of the spread of pollution.  Rather, the Commonwealth Court's order sought to correct the environmental violations and prevent future harm by restoring the mines the debtor had operated in western Pennsylvania.  <u>Penn Terra</u>, <u>supra</u>, at 270.  The Bankruptcy Court's in this case ruling constitutes a wholly insupportable rejection of the basic thrust of the FWPA, which aims both to preserve existing wetlands and to restore improperly lost wetlands, for critical environmental protection reasons, as noted above.

Thus, again, contrary to the Bankruptcy Court's ruling, the State is not seeking compensation for past injuries but to prevent continuing harm and future damage to the environment resulting from the debtor's destruction of wetlands.  In its Administrative Order, the State seeks mitigation for the nearly 19 acres of wetlands that were destroyed on the site.  Aa00134. This relief is intended to correct the wetlands balance in the area and to prevent continuing harm created by the loss of the important functions and values of those wetlands.

-21-

## CONCLUSION

For all of the foregoing reasons, the Bankruptcy Court's ruling, based on a profound misunderstanding of the environmental protection regulatory action at issue, here, must be reversed.

Respectfully submitted,

PETER C. HARVEY
ATTORNEY GENERAL OF NEW JERSEY

By: /s/ Kathrine Motley Hunt
    Kathrine Motley Hunt
    Deputy Attorney General
    Admitted pro hac vice

By: /s/ Stuart Drowos
    Stuart Drowos, Bar ID #427
    Local Counsel for NJDEP
    Delaware Division of Revenue
    Carvel Building, 8th Floor
    820 N. French Street
    Wilmington, DE 19801

-22-

## Certificate of Mailing and/or Delivery

I hereby certify that on June 9, 2005, the State of New Jersey's Environmental Protection Agency electronically filed a Brief with the Clerk of the Court using CM/ECF which will send notification of such filing to the following: Jeffrey M. Schlerf, Esq., and Eric M. Sutty, Esq.


PETER C. HARVEY

ATTORNEY GENERAL OF NEW JERSEY


By: /s/ Kathrine Motley Hunt
    Kathrine Motley Hunt
    Deputy Attorney General
    Admitted pro hac vice


By: /s/ Stuart Drowos
    Stuart Drowos, Bar ID #427
    Local Counsel for NJDEP
    Delaware Division of Revenue
    Carvel Building, 8th Floor
    820 N. French Street
    Wilmington, DE 19801