## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| IN RE: | : | |
| | : | |
| IT GROUP INC., et al., | : | Bankruptcy Case 02-10118 (MFW) |
| | : | |
| Debtors. | : | |

|  |  |  |
|---|---|---|
| STATE OF NEW JERSEY | : | |
| ENVIRONMENTAL PROTECTION, | : | |
| | : | |
| Appellant, | : | |
| | : | |
| v. | : | Civil Action No. 05-005-JJF |
| | : | |
| IT LITIGATION TRUST TRUSTEE, | : | |
| | : | |
| Appellee. | : | |

### APPENDIX OF APPELLANT STATE OF NEW JERSEY,
### DEPARTMENT OF ENVIRONMENTAL PROTECTION

Peter C. Harvey
Attorney General of New Jersey
R.J. Hughes Justice Complex
P.O. Box 093
Trenton, New Jersey 08625
(609) 984-7147

Kathrine M. Hunt
Deputy Attorney General
On the Brief

Dated: June 9, 2005

## APPENDIX

Resolution of the New Jersey
 Freshwater Wetlands Mitigation
 Council, dated July 11, 1995 . . . . . . . . . . . . . . . Aa 001

Notice of Motion of IT Litigation
 Trust Trustee, filed in United
 States Bankruptcy Court, District
 of Delaware, dated November 16, 2004 . . . . . . . . . . Aa 0013

Opposition of the New Jersey Department
 of Environmental Protection to the
 Motion of IT Litigation Trust Trustee,
 dated November 29, 2004 . . . . . . . . . . . . . . . . . Aa 0089

Order Confirming the First Amended
 Joint Chapter 11 Plan for the IT
 Group, Inc., dated April 5, 2004 . . . . . . . . . . . . Aa 0097

Remarks of Governor Thomas H. Kean,
 Public Bill Signing, Wetlands Bill
 Signing, dated July 1, 1987 . . . . . . . . . . . . . . Aa 00130

Administrative Order and Notice of
 Civil Administrative Penalty
 Assessment, issued by NJDEP, dated
 July 17, 2002 . . . . . . . . . . . . . . . . . . . . . Aa 00132

Order Granting Motion of the IT
 Litigation Trust Trustee, dated
 December 6, 2004 . . . . . . . . . . . . . . . . . . . . Aa 00137

Notice of Appeal, filed by NJDEP,
 dated December 16, 2004 . . . . . . . . . . . . . . . . Aa 00139

Transcript of Omnibus Hearing
 before the Honorable Mary F.
 Walrath, United States Bankruptcy
 Judge, dated December 6, 2004 . . . . . . . . . . . . . Aa 00142

RESOLUTION OF THE NEW JERSEY FRESHWATER WETLANDS MITIGATION COUNCIL
CONDITIONALLY APPROVING PHASES I AND II OF WOODBURY CREEK
WETLANDS MITIGATION BANK

WHEREAS, the applicant, U.S. Wetland Services, Inc., has applied for approval of a freshwater wetlands mitigation bank designated as the Woodbury Creek Mitigation Bank, to be located on a parcel of land of approximately 203 acres near Woodbury Creek, West Deptford Township, Gloucester County, New Jersey, and consisting of parts of Block 328, Lots 1 and 1C in the Township, which property is more particularly described in the out bound survey conducted by RETTEW Associates, Inc. for Phase I and Phase II of the Woodbury Creek Wetlands Mitigation Bank, attached hereto as Exhibit A, and is also depicted on the site plan entitled "Survey of Phase I and Phase II, Woodbury Creek Wetland Mitigation Bank, Township of West Deptford, County of Gloucester, State of New Jersey," sheet 1 of 1, dated August 1, 1994, unrevised and prepared by RETTEW Associates, Inc. of Mechanicsburg, P.A.; and

WHEREAS the property in question currently contains 128.73 acres of degraded freshwater wetlands of intermediate resource value and 71.43 acres of uplands, including 18.59 acres of uplands within the 50-foot freshwater wetlands transition area; and

WHEREAS the location of the proposed bank is adjacent to the Woodbury Creek and the Mud Ditch, which drain into the Delaware River, is currently farmed in part, and was previously used as a dredged material site by the United States Army Corps of Engineers; and

WHEREAS the applicant was previously advised by the Council to obtain a letter of "no further action" from the Bureau of Field Operations of the Site Remediation Program, Department of Environmental Protection, in order to address the Council's concerns regarding potential hazardous waste at the site and regarding the end use of the site, following the completion of any mitigation efforts; and

WHEREAS, in order to secure a no further action letter, the applicant submitted the results of sampling done at the subject site to the Bureau of Field Operations, Site Remediation Program, within the Department of Environmental Protection; and

WHEREAS the Site Remediation Program, Department of Environmental Protection determined, based on this sampling, that a Declaration of Environmental Restrictions must be provided, and an evaluation of the ecological impacts of the intended mitigation project be completed before a no further action letter may be issued; and

WHEREAS the applicant proposes to create approximately 38 acres of wetlands, to restore and enhance approximately 128 acres of wetlands, and to enhance approximately 18 acres of uplands within the 50-foot wetlands transition area as Phases I and II of its mitigation bank; and

DEP 243

Aa 001

WHEREAS the applicant has completed a final water budget, dated October 10, 1994, and the Council finds on the basis of that budget, written comments dated November 4, 1994 from the United States Department of Agriculture, Soil Conservation Service and comments from Dr. Russ Lee, wetlands consultant for U.S. Wetlands Services, Inc., during the November 15, 1994 Council meeting, that there will be adequate hydrology on site to support the proposed creation, and the proposed restoration and enhancement of freshwater wetlands within Phases I and II; and

WHEREAS the applicant has submitted a planting schedule shown on the plans entitled "Planting plan for Proposed Woodbury Creek Wetland Mitigation Bank (Phase I & II), Township of West Deptford, County of Gloucester, State of New Jersey," sheet 1 of 1, dated November 14, 1994, unrevised and prepared by Edward W. Warfel, L.S. of RETTEW Associates, Inc., Mechanicsburg, P.A., and the Council finds on the basis of the plan that suitable species will be used by the applicant to create, enhance and restore wetlands and to enhance uplands within the 50-foot transition area as Phases I and II; and

WHEREAS the applicant has submitted a grading plan shown on the plans entitled "Grading plan for proposed Woodbury Creek Wetland Mitigation Bank (Phase I & II), Township of West Deptford, County of Gloucester, State of New Jersey," sheet 1 of 1, dated November 14, 1994, unrevised and prepared by Edward W. Warfel, L.S. of RETTEW Associates, Inc., Mechanicsburg, P.A., and the Council finds on the basis of that plan that the proposed grading will be suitable to create, restore and enhance wetlands and to enhance upland areas within the 50-foot transition area, as proposed for Phases I and II; and

WHEREAS the Council has considered NJDEP staff comments dated October 18, 1994 and November 15, 1994 which were based on information submitted by U.S. Wetlands Services, and on field site inspections conducted by the Land Use Regulation Program staff on April 13, 1994, June 16, 1994, August 17, 1994 and November 7, 1994; and

WHEREAS on November 15, 1994, the applicant received a Letter of Interpretation from the Department of Environmental Protection (file no. 0820-94-0013.1-LI) confirming the applicant's delineation of freshwater wetlands on Phase I and Phase II of the proposed Woodbury Creek Mitigation Bank and concluding that the on-site wetlands are of intermediate resource value; and

WHEREAS on January 26, 1995, the applicant submitted an Ecological Risk Assessment of Potentially Toxic Trace Elements and PCBs Present in Soil at the proposed Woodbury Bank, in response to the concerns of the Site Remediation Program; and

WHEREAS based on its review of that Risk Assessment and on discussions with the United States Army Corps of Engineers, on March 30, 1995, the Site Remediation Program, Department of Environmental Protection issued a letter to U.S. Wetlands stating that the Department intends to issue a "no further action approval" after a Declaration of Environmental Restrictions is in place which establishes the creation

DEP 244

Aa 002



of a wetlands in perpetuity and records the presence of environmental contaminants at this site; and

WHEREAS the Department's letter of March 30, 1995 further states that baseline sampling should be conducted at a minimum of five locations representative of the site after site grading has occurred, and that after planting of the site as part of the intended mitigation project, sampling should be conducted every three years at those five sampling locations to confirm a decreasing trend in the availability of contaminants; and

WHEREAS the Council finds that Phases I and II of the proposed mitigation bank have the potential to provide an important freshwater wetlands ecosystem following the completion of proposed mitigation activities in accordance with the plans submitted, provided that all conditions of this conditional approval are met;

NOW THEREFORE BE IT RESOLVED that, pursuant to the authority of N.J.S.A. 13:9B-13 and 13:9B-15, Phases I and II of the Woodbury Creek Mitigation Bank are approved, subject to the following terms and conditions:

1. U.S. Wetland Services, Inc. shall record a Declaration of Environmental and Conservation Restrictions acceptable to the Department of Environmental Protection and the Council and shall receive a "no further action" approval from the Department.

2. U.S. Wetland Services, Inc. shall receive all federal, state and local permits needed to begin all proposed creation, enhancement and restoration activities for Phases I and II.

3. U.S. Wetland Services Inc. shall post bonds in accordance with N.J.A.C. 7:7A-14.1(c) covering the costs of construction of the Woodbury Creek Mitigation Bank, Phases I and II, and the costs of maintenance of the Bank, Phases I and II. The bonds shall be issued by a company authorized under the laws of this state to carry on the business specified at N.J.S.A. 17:17-1(g) and qualified under N.J.S.A. 17:31-3 and shall be made payable to the Wetlands Mitigation Fund. The construction costs covered by the bonds shall include, but not be limited to, the costs of baseline sampling for contaminants recommended by the Department in its letter of March 30, 1995. The maintenance costs shall include, but not be limited to, the costs of the three subsequent sampling rounds referenced in the Department's letter of March 30, 1995.

4. U.S. Wetlands shall secure an agreement with an appropriate public entity or non-profit conservation organization that the entity will accept the property comprising Phase I and Phase II upon completion of the maintenance and monitoring requirements set forth in paragraphs 7 and 9 herein and shall document that the designated donee has been fully appraised of the presence and levels of environmental contaminants on the property.

- 3 -

DEP 245

Aa 003

5. Provided that all of the conditions of paragraphs 1 through 4 above have been met, and subject to the schedule contained in paragraph 6 below, acreage credits for activities requiring mitigation shall be available in accordance with the following ratios:

1:1 for enhancement of uplands within the 50-foot transition area
1:1 for creation of freshwater wetlands
3:1 for restoration/enhancement of freshwater wetlands

Based on the signed and sealed plan entitled, "Proposed Planting Plan," the Woodbury Creek Bank, Phase I and Phase II, will contain a total of 99.64 mitigation credits which have been based on the following:

18.59 credits for 50 foot buffer area around bank
42.91 credits for the enhancement/restoration area
38.14 credits for the creation area
99.64 total credits

The breakdown of the 99.64 credits based on habitat type include the following:

70.53 credits of forested wetlands
8.26 credits of scrub/shrub wetlands
2.26 credits of emergent wetlands
18.59 credits of upland buffers
99.64 total credits

6. No credits shall be available for sale unless and until all conditions in paragraphs 1 through 4 are met and then only in accordance with the following schedule:

1/3 of all credits shall be available after such time as all conditions in paragraphs 1 through 4 are met.

Subject to the provisions of Paragraph 8, below, the remaining credits shall be available after construction of Phases I and II has been successfully completed in accordance with the planting and grading plans submitted, and after baseline sampling for the target compound list plus 30 has been completed following site grading, as required by the Department, as verified by the NJDEP Land Use Regulation Program and the Site Remediation Program.

7. I.S. Wetland Services, Inc. shall conduct sampling every three years following completion of construction and planting, in accordance with the Department's letter of March 30, 1995, using a New Jersey certified laboratory. This sampling shall occur at the five locations sampled in the baseline analysis and shall include soil, root mass, leaf and fruit structures sampling to confirm uptake and stabilization by the plants. The Site Remediation Program shall determine the parameters to be sampled, based on the results of the baseline sampling. The Land Use Regulation Program, in conjunction with the Site Remediation Program, shall oversee the monitoring of the wetlands creation, restoration and enhancement activities in Phase I and Phase

- 4 -

Aa 004



II for a period of at least nine years following completion of construction and planting. U.S. Wetland Services, Inc. shall submit monitoring reports to the NJDEP. Staff of the Council no later than November 30th of each monitoring year and shall submit sampling results to the Site Remediation Program and the Land Use Regulation Program no later than 90 days after each sampling event, in accordance with Department's letter of March 30, 1995. The monitoring report due on November 30th of the third year following completion of construction and planting and shall include the following information: a) documentation demonstrating that the goals of the wetland mitigation bank, as shown on the approved signed and sealed site plans, have been satisfied. Documentation will also include a field wetland delineation of the wetland mitigation bank based on techniques as specified in the Federal Manual for Identifying and Delineating Jurisdictional Wetlands (1989); b) evidence documenting 85 percent survival and 85 percent real coverage of the mitigation plantings; and c) evidence documenting that uptake and/or stabilization of contaminants has occurred.

8.    Should the Site Remediation Program and the Land Use Regulation Program determine that the results of the baseline sampling and/or the results of any subsequent sampling indicate the presence of contaminants having the potential to cause chronic adverse ecological impacts on plant or animal life, U.S. Wetlands shall be so notified and shall have the right to submit additional information to the Programs on this issue. Pending receipt of any such additional information from U.S. Wetlands, and in accordance with paragraph 10 below, the Land Use Program may suspend the sale of credits upon notice to U.S. Wetlands Upon notice to U.S. Wetlands, the Site Remediation Program and/or Land Use Program may also request that the Council amend this approval on the basis of the results of the baseline or subsequent sampling. Consistent with Paragraph 16, below, suspension of credit sales initiated by the Land Use Program shall be confirmed by the Council after notice to U.S. Wetlands and after U.S. Wetlands has been given an opportunity to be heard by the Council.

9.    Once the required nine-year monitoring and sampling period has expired and the applicant has submitted the final sampling report, the Council will make a finding that the mitigation bank is either a success or a failure.   The mitigation project will be considered successful if the applicant demonstrates that the wetlands have been created, restored and enhanced, and the 50-foot transition area has been enhanced, as shown on the approved signed and sealed plans, and that the site has an 85 percent survival and 85 percent real coverage of the mitigation plantings.   In addition, in accordance with the Department's letter of March 30, 1995, the applicant must also confirm through sampling that uptake and/or stabilization of contaminants has occurred.   All remaining financial surety will be released after the Council determines, upon the recommendation of the Land Use Regulation Program and the Site Remediation Program, that the mitigation bank is a success, and so notifies the applicant.

10. The use of credits as mitigation by individual permittees subject to the jurisdiction of the Department shall be subject to review and approval by the Land Use Regulation Program on a case by

- 5 -

DMR 045

case basis. Use of the credits in New Jersey must be consistent with all state and federal law including, but not limited to, the Freshwater Wetlands Protection Act, N.J.S.A. 13:9B-1 et seq., the Flood Hazard Area Control Act, N.J.S.A. 58:16A-50 et seq., the Waterfront Development Law, N.J.S.A. 12:5-1 et seq., the Wetlands Act of 1970, N.J.S.A. 13:9A-1 et seq., and the Coastal Area Facility Review Act, N.J.S.A. 13:19-1 et seq. The use of credits as mitigation by individual permittees subject to the jurisdiction of the federal government and/or subject to the jurisdiction of any State besides New Jersey shall be subject to approval by the applicable governmental body. Once the out-of-State use of the bank has been approved by the appropriate agencies, U.S. Wetlands Services shall notify NJDEP Staff to the Council in writing two weeks before the withdrawal of credits. That notice shall contain copies of all of the necessary approvals from the appropriate regulating agencies authorizing the use of mitigation credits in the State of New Jersey. The credits exchanged in the bank should generally result in in-kind replacement of palustrine forested wetlands, palustrine scrub-shrub wetlands, and palustrine emergent wetlands. However, use of the bank may also be allowed for "out-of-kind" replacement on a case-by-case basis, as determined by the NJDEP Land Use Regulation Program.

11. Subject to the terms of this conditional approval, credits shall be available for regulated activities within the lower Delaware River watershed only. Eligible activities in New Jersey must therefore fall within the Lower Delaware Drainage Basin, which starts to the north as the Assunpink Creek Watershed and ends to the south at the tip of Cape May, and is highlighted on the map entitled "Drainage Basin Map of New Jersey" attached hereto as Exhibit B.

12. U.S. Wetlands shall maintain a registry of all mitigation credits awarded and available. U.S. Wetlands Services, Inc. shall submit to staff to the Council a statement of credits sold and credits remaining, including the dates of sale, the names of the buyers/applicants, and the permit or file number from the appropriate regulatory agency. The mitigation bank statement must be submitted two weeks after every credit transfer, as well as in an annual report of all bank transactions by November 30th of each year. Failure to submit either of these records or the notice of out-of-state use of credits required in paragraph 10. may be cause for the Land Use Regulation Program to reject the use of credits from the Woodbury Creek Wetlands Mitigation Bank and for the Mitigation Council to void this approval.

13. If as a result of the construction of Phases I and II, suitable habitat for threatened and endangered species is created, and it is confirmed by the Department that such species are in fact using the site for breeding, resting or feeding, the applicant may apply to the Council for additional credits.

14. The bonds posted pursuant to paragraph 3 above shall only be released in accordance with the following: The performance bond for construction of the mitigation bank shall be released after construction of Phases I and II has been successfully completed in accordance with the planting and grading plans submitted, as verified

- 6 -

Aa 006

by the NJDEP Land Use Regulation Program, and after baseline sampling has been conducted as verified by the Site Remediation Program, and after the Site Remediation Program has confirmed that no changes in the mitigation project are warranted on the basis of the baseline sampling. The maintenance bond shall be maintained until such time as the Land Use Regulation Program, the Site Remediation Program and the Council determine that the monitoring and sampling period has been successfully completed in accordance with paragraphs 7, 8 and 9 above.

15.  By no later than successful completion of the monitoring and sampling period set forth in paragraphs 7 and 9 above, the mitigation site (Phases I and II) shall be donated in fee to the public entity or non-profit conservation organization identified by U.S. Wetlands pursuant to paragraph 4, above.

16.  It is the intent of this Resolution that all reasonable efforts shall be made to ensure that the provisions of this Resolution are implemented and complied with in a cooperative manner.  Reasonable efforts shall be made to resolve at the program level issues arising during the term and operation of this Resolution.  Issues that cannot be resolved at the program level shall be presented to the Council for review and resolution, upon notice to U.S. Wetlands.

17.  Any revisions or modifications to the approved signed and sealed plans for the Woodbury Creek Wetlands Mitigation Bank, Phase I and Phase II, must be approved in writing by the Council.

18.  Nothing in this Resolution shall preclude the Department from enforcing any of its responsibilities under federal or state law.


SO RESOLVED, as aforesaid

AYES: 4

NAYS: 0

ABSTENTIONS: 0

ATTEST:

_Terry Caruso_                    _Blase Caski_                    7/11/95
Terry Caruso                      Blase Caskie                     Date
Staff to Council                  Acting Chairperson


- 7 -

DEP 249

Aa 007

"Exhibit A"

# RETTEW
### Associates, Inc.

5?10 Runer Road, Suite 102  Mechanicsburg, PA 17055 • (717) 697-3551 • FAX (717) 697-6213

### PHASE I
### WOODBURY CREEK WETLAND MITIGATION BANK
Being a portion of Tax Map Lot 1 and 1-C, Block 328, Plate 26
Township of West Deptford, Gloucester County, New Jersey

ALL that certain tract or parcel of land situate in the Township of West Deptford, County of Gloucester and State of New Jersey, and being more particularly bound and described as follows to wit:

BEGINNING at a point, said point being the southwest corner of land hereinafter described and also being the following two (2) courses from the ending point of Course No. 2 in a deed between Tenneco LNG Real Estate Inc. and Tenneco, Inc., recorded in Deed Book 1249, Page 819 and extending thence; (A) N 27°56'37" W a distance of 48.42 feet (being along Course No. 3 of the aforementioned deed) to a point; (B) thence extending through Lot 1-C, Block 328 S 69°43'50" W 43.88 feet to a point in the center of a sixty (60) foot wide access easement (hereinafter described), the place of beginning; thence along the center of said access easement and continuing through Lot 1-C, Block 328 the following three courses and distances:

1.    N 41°05'45" W a distance of 288.16 feet to a point;

2.    N 28°54'34" W a distance of 308.60 feet to a point;

3.    N 27°11'10" W a distance of 1364.29 feet to a point;

thence continuing through Lot 1-C N 85°30'42" E a distance of 32.52 feet to a point; thence extending through Lot 1 aforementioned the following nine (9) courses and distances:

1.    N 58°59'18" E a distance of 2387.30 feet to a point;

2.    S 27°18'23" E a distance of 381.84 feet to a point;

3.    S 32°49'58" E a distance of 432.57 feet to a point;

4.    S 09°19'35" E a distance of 448.20 feet to a point;

5.    S 59°40'46" W a distance of 445.54 feet to a point;

6.    S 28°36'37" E a distance of 491.72 feet to a point;

7.    S 12°17'00" W a distance of 746.13 feet to a point;

DEP 250

Aa 008

8.     S 75°51'19" W  a distance of 651.32 feet to a point;

9.     S 69°43'50" W  a distance of 703.00 feet to a point, the place of BEGINNING.

Said Above described tract containing within said bounds 103.448 acres.

TOGETHER with a sixty (60) foot wide easement for ingress and egress to and from Jobstown Road over the following described premises;

ALL that certain tract or parcel of land situate in the Township of West Deptford, County of Gloucester and State of New Jersey, and being more particularly bound and described as follows to wit:

BEGINNING at a point on the dividing line between Lot 1 and Lot 1-C, Block 328, said point being on the westerly line of Jobstown Road (formerly Church Street) and also being N 34°19'51" W a distance of 69.04 feet from the ending point of Course No. 1 (Deed Book 1249, Page 819); thence extending through Lot 1-C the following nine (9) courses and distances:

1.     S 11°28'50" W  a distance of 83.68 feet to a point;

2.     N 34°19'51" W  a distance of 1575.90 feet to a point;

3.     N 41°05'45" W  a distance of 350.56 feet to a point;

4.     N 28°54'34" W  a distance of 312.25 feet to a point;

5.     N 27°11'10" W  a distance of 1377.29 feet to a point;

6.     N 85°30'42" E  a distance of 65.04 feet to a point;

7.     S 27°11'10" E  a distance of 1351.30 feet to a point;

       S 28°54'34" E  a distance of 304.95 feet to a point;

9.     S 41°05'45" E  a distance of 347.70 feet to a point on the dividing line between Lot 1 and Lot 1-C, Block 328, said point also being the ending point of Course No. 2 (Deed Book 1249, Page 819);

thence along said dividing line and Course No. 2 S 34°19'51" E a distance of 1521.12 feet to a point, the place of BEGINNING.

O/46245-KWOODBURY.LEG

DEP 251

Aa 009

Exhibit A

# RETTEW
Associates, Inc.

5077 Ritner Road, Suite 102, Mechanicsburg, PA 17055 • (717) 697-3591 • FAX (717) 697-8953

## PHASE II
### WOODBURY CREEK WETLAND MITIGATION BANK
Being a portion of Tax Map Lot 1-C, Block 328, Plate 26
Township of West Deptford, Gloucester County, New Jersey

ALL that certain tract or parcel of land situate in the Township of West Deptford, County of Gloucester and State of New Jersey, and being more particularly bound and described as follows to wit:

BEGINNING at a point, said point being the southeast corner of land hereinafter described and also being the following two (2) courses and from the ending point of Course No. 2 in a deed between Tenneco LNG Real Estate and Tenneco Inc., recorded in Deed Book 1249, Page 819 and extending thence: (A) N 27°56'37" W a distance of 48.42 feet (being along Course No. 3 of the aforementioned deed) to a point; (B) thence extending through Lot 1-C, Block 328 S 69°43'50" W 43.88 feet to a point in the center of a sixty (60) foot wide access easement (hereinafter described), the place of beginning; thence extending through Lot 1-C the following twelve (12) courses and distances:

1. S 69°43'50" W a distance of 68.27 feet to a point;

2. S 75°32'47" W a distance of 349.11 feet to a point;

3. S 77°56'50" W a distance of 159.09 feet to a point;

4. S 75°40'40" W a distance of 821.34 feet to a point;

5. S 79°00'24" W a distance of 610.22 feet to a point;

6. N 38°34'46" W a distance of 748.34 feet to a point;

7. N 46°32'29" W a distance of 293.78 feet to a point;

8. N 23°50'01" W a distance of 407.42 feet to a point;

9. N 15°46'42" W a distance of 120.39 feet to a point;

Lancaster, PA • Sterling, VA
ENGINEERS • PLANNERS • SCIENTISTS • LANDSCAPE ARCHITECTS • SURVEYORS

DEP 252

Aa 0010

10.  N 22°27'22" W  a distance of 375.40 feet to a point;

11.  N 34°54'46" W  a distance of 443.97 feet to a point;

12.  N 85°30'42" E  a distance of 2272.32 feet to a point in the center of aforementioned sixty (60) foot wide access easement;

thence continuing through Lot 1-C and extending along the center of said access easement the following three (3) courses and distances:

1.  S 27°11'10" E  a distance of 1364.29 feet to a point;

2.  S 28°54'34" E  a distance of 308.60 feet to a point;

3.  S 41°05'45" E  a distance of 288.16 feet to a point, the place of BEGINNING.

Said above described tract containing within said bounds 99.404 acres.

TOGETHER with a sixty (60) foot wide easement for ingress and egress to and from Jobstown Road over the following described premises:

ALL that certain tract or parcel of land situate in the Township of West Deptford, County of Gloucester and State of New Jersey, and being more particularly bound and described as follows to wit:

BEGINNING at a point on the dividing line between Lot 1 and Lot 1-C, Block 328, said point being on the westerly line of Jobstown Road (formerly Church Street) and also being N 34°19'51" W a distance of 69.04 feet from the ending point of Course No. 1 (Deed Book 1249, Page 819); thence extending through Lot 1-C the following nine (9) courses and distances:

1.  S 11°28'50" W  a distance of 83.68 feet to a point;

2.  N 34°19'51" W  a distance of 1575.90 feet to a point;

3.  N 41°05'45" W  a distance of 350.56 feet to a point;

4.  N 28°54'34" W  a distance of 312.25 feet to a point;

5.  N 27°11'10" W  a distance of 1377.29 feet to a point;

DEP 253

Aa  0011

6.    N 85°30'42" E  a distance of 65.04 feet to a point;

7.    S 27°11'10" E  a distance of 1351.30 feet to a point;

8.    S 28°54'34" E  a distance of 304.95 feet to a point;

9.    S 41°05'45" E  a distance of 347.70 feet to a point on the dividing line between Lot 1 and Lot 1-C, Block 328, said point also being the ending point of Course No. 2 (Deed Book 1249, Page 819); thence along said dividing line and Course No. 2 S 34°19'51" E  a distance of 1521.12 feet to a point, the place of BEGINNING.

G:\A42363-11N\GODPHIL.GLS

DEP 254

Aa 0012

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re | ) | Chapter 11 |
|  | ) |  |
| THE IT GROUP, INC., et al., | ) | Case No. 02-10118 (MFW) |
|  | ) |  |
| Debtors. | ) | Jointly Administered |
|  | ) |  |
|  | ) | **Objection deadline: November 29, 2004 at 4:00 p.m.** |
|  | ) | **Hearing date: December 6, 2004 at 9:30 a.m.** |

## NOTICE OF MOTION

**TO:**   The Office of the United States Trustee, the NJDEP and all parties who filed a notice of appearance pursuant to Bankruptcy Rule 2002.

The IT Litigation Trust Trustee (the "Trustee"), as trustee for the IT Litigation Trust, has filed the attached **Motion of the IT Litigation Trust Trustee for an Order (I) Enforcing (A) the Bar Date Order, (B) the Administrative Bar Date Order, (C) the Confirmation Order, and (D) the Plan Injunction, (II) Directing the New Jersey Department of Environmental Protection to Dismiss Certain Administrative Actions Against the Debtors Pursuant to the Court's Order, the Plan Injunction and 11 U.S.C. §§ 105(a) and 1142(b); and Granting Related Relief** (the "Motion").

Responses or objections to the Motion, if any, are to be filed on or before **November 29, 2004 at 4:00 p.m.**

At the same time, you must serve a copy of the objection or response on the undersigned attorneys.

If any responses are timely filed in accordance with this Notice, a hearing on the Motion will be held on **December 6, 2004 at 9:30 a.m.**

IF YOU FAIL TO RESPOND IN ACCORDANCE WITH THIS NOTICE, THE COURT MAY GRANT THE RELIEF DEMANDED BY THE MOTION WITHOUT FURTHER NOTICE OR HEARING.

Dated: November 16, 2004

THE BAYARD FIRM

By: _____
Jeffrey M. Schlerf (No. 3047)
Eric M. Sutty (No. 4007)
222 Delaware Avenue, Suite 900
Wilmington, Delaware 19801

364605v1

1

5597
11/16/04

**Aa 0013**

-and-

John K. Cunningham
Ileana Cruz
WHITE & CASE LLP
Wachovia Financial Center
200 South Biscayne Blvd., Suite 4900
Miami, Florida 33131
(305) 371-2700

CO-COUNSEL TO THE TRUSTEE

364605v1

2

Aa 0014

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re | : | Chapter 11 |
|  | : |  |
| THE IT GROUP, INC., et al., | : | Case No. 02-10118 (MFW) |
|  | : |  |
|  | : | Jointly Administered |
| Debtors. | : |  |
|  | : | **Response Deadline: November 29, 2004 at 4:00 p.m.** |
|  | : | **Hearing Date: December 6, 2004 at 9:30 a.m.** |

**MOTION OF THE IT LITIGATION TRUST TRUSTEE
FOR AN ORDER (I) ENFORCING (A) THE BAR DATE ORDER,
(B) THE ADMINISTRATIVE BAR DATE ORDER, (C) THE CONFIRMATION ORDER,
AND (D) THE PLAN INJUNCTION, (II) DIRECTING THE NEW JERSEY
DEPARTMENT OF ENVIRONMENTAL PROTECTION TO DISMISS CERTAIN
ADMINISTRATIVE ACTIONS AGAINST THE DEBTORS PURSUANT TO THE
COURT'S ORDERS, THE PLAN INJUNCTION AND 11 U.S.C. §§ 105(a) AND 1142(b);
AND (III) GRANTING RELATED RELIEF**

The IT Litigation Trust Trustee (the "Trustee") of the IT Litigation Trust (the

"Trust"), as successor to The IT Group, Inc. and its affiliated debtors (collectively, the

"Debtors"), by and through its undersigned counsel, hereby files this Motion (the "Motion") for

an order (i) enforcing (a) the Court's order dated May 24, 2002 establishing a deadline for filing

proofs of claim (the "Initial Bar Date Order") in the Debtors' above-captioned chapter 11 cases

(collectively, the "Chapter 11 Cases"), (b) the Court's order dated November 24, 2003

establishing a deadline for filing administrative expense claims in the Chapter 11 Cases (the

"Administrative Bar Date Order" and collectively with the Initial Bar Date Order, the "Bar Date

Orders"), (c) the Court's order dated April 5, 2004 (the "Confirmation Order") confirming the

First Amended Joint Chapter 11 Plan of The IT Group, Inc. and its affiliated Debtors proposed

by the Debtors and the Official Committee of Unsecured Creditors (as amended, the "Plan"), and

(d) Section 13.19 of the Plan (the "Plan Injunction"); (ii) pursuant to the Court's orders, the Plan

Injunction and sections 105(a) and 1142(b) of Chapter 11 of title 11 of the United States Code,

564604v1

MIAMI 525951 (2K)

11 U.S.C. §§ 101, et seq., as amended (the "Bankruptcy Code"), directing the New Jersey

Department of Environmental Protection ("NJDEP") to dismiss certain pending administrative

claims and proceedings against the Debtors; and (iii) granting related relief; and in support

thereof respectfully represents:

## PRELIMINARY STATEMENT

1.     NJDEP is continuing to assert prepetition claims (collectively, the "Claims")

against one of the Debtors – Landbank, Inc. ("Landbank") – in violation of this Court's Bar Date

Orders, the Confirmation Order and the Plan Injunction. The Trust – as successor to the Debtors

under the Plan – has attempted numerous times to resolve such violations in good faith with

NJDEP without filing the instant Motion. Upon information and belief, however, NJDEP is

intent on prosecuting its Claims against Landbank. By this Motion, the Trust seeks to enforce

the express terms of the Court's orders and the Plan Injunction, and requests entry of an order

directing NJDEP to dismiss its Claims against Landbank.

2.     Simply put, the Claims asserted by NJDEP against Landbank relate to a

prepetition wetland mitigation bank maintained by Landbank named the "Woodbury Creek

Phase I and II Wetland Mitigation Bank" (the "Mitigation Bank") in connection with a parcel of

land owned by Landbank of approximately 203 acres near Woodbury Creek, West Deptford

Township, Gloucester County, New Jersey, and consisting of parts of Block 328, Lots 1 and 1C

in the Township (the "Woodbury Creek Property"). Notably, the Woodbury Creek Property was

not sold by the Debtors to The Shaw Group, Inc. ("Shaw") in the Chapter 11 Cases, remains

valuable property of Landbank's estate, and is being sold by the Trust for the highest and best

bid for the benefit of the Debtors' creditors.[1]

---

[1]     The Plan requires the Trust to liquidate property of the Debtors' estates including, without limitation, the
Woodbury Creek Party. Plan, §7.10. The Trust is currently in the process of soliciting bids from

**Aa 0016**

3.    NJDEP's Claims were first asserted in an administrative order against Landbank filed on July 17, 2002 (the "NJ Administrative Order"), pursuant to which NJDEP alleged Landbank failed to properly maintain the Mitigation Bank. The NJ Administrative Order is currently the subject of an administrative proceeding against Landbank in New Jersey, pending in the Office of Administrative Law of the State of New Jersey (OAL Dkt. No. ESA 06949-2002, Agency Ref. No. 0820-94-0013) (the "NJ Administrative Proceeding").

4.    As set forth fully below, NJDEP was given actual notice of the Court's Bar Date Orders, the Confirmation Order, and the Plan Injunction. NJDEP has never filed a proof of claim with respect to its Claims in these Chapter 11 Cases. Pursuant to the Bar Date Orders, the Confirmation Order and the Plan Injunction, NJDEP is barred from pursuing its Claims against the Debtors. By this Motion, the Trust seeks entry of an order to compel NJDEP's compliance with the Court's orders and the Plan Injunction.

## BACKGROUND

### The Chapter 11 Cases

5.    On January 16, 2002 (the "Petition Date"), each of the Debtors filed voluntary petitions for relief under the Bankruptcy Code with the United States Bankruptcy Court for the District of Delaware (the "Court"), thereby commencing their respective Chapter 11 Cases, which are being jointly administered.

6.    By order dated April 25, 2002, the Court approved the sale (the "Sale") of substantially all of the Debtors' assets to, and assumption of certain liabilities by, an affiliate of The Shaw Group, Inc., ("Shaw") pursuant to that certain Asset Purchase Agreement By and Among The IT Group, Inc., Certain Subsidiaries of The IT Group, Inc., and The Shaw Group,

---

prospective purchasers for the sale of the Woodbury Creek Property. The net proceeds from any such sale will be distributed to the Debtors' creditors in accordance with the Plan.

Aa 0017

Inc., dated as of January 23, 2002. The Sale closed on May 3, 2002 (the "Closing Date"). As stated above, the Woodbury Creek Property was not included in the Sale to Shaw.

    7.    Immediately following the Sale, the Debtors began the process of shutting down their business operations in their effort to wind down the affairs of the Debtors' estates.

    8.    On May 24, 2003, the Court issued the Initial Bar Date Order establishing July 15, 2002 (the "Initial Bar Date") as the last date to file proofs of claim against the Debtors in the Chapter 11 Cases. A copy of the Initial Bar Date Order is attached hereto as Exhibit A. Specifically, the Court's Initial Bar Date Order decreed, in pertinent part:

> [A]ny holder of a Claim[2] that fails to file a proof of its Claim by the [Initial] Bar Date is forever barred and estopped from asserting its Claim against the Debtors, their estates or the property of any of them.

Initial Bar Date Order, ¶ 5.

    9.    As set forth in the Affidavit of Mailing Bar Date Notice dated June 26, 2002 (the "Bar Date Affidavit"), the Debtors served NJDEP by first class mail notice of the Initial Bar Date in accordance with the Initial Bar Date Order. A copy of the relevant portions of the Bar Date Affidavit are attached hereto as Exhibit B. NJDEP did not file any proof of claim in the Chapter 11 Cases as required by the Initial Bar Date Order.

    10.    On November 24, 2003, the Court issued the Administrative Bar Date Order establishing January 15, 2004 (the "Administrative Bar Date") as the last date for the filing of claims for costs or expenses of administration in the Chapter 11 Cases entitled to priority under sections 503(b) and 507(a)(1) of the Bankruptcy Code (each, an "Administrative Claim") arising, accruing or otherwise becoming due and payable on and between the Petition Date and

---

[2]    "Claim" is defined in the Bar Date Order as that set forth in section 101(5) of the Bankruptcy Code.

Aa 0018

November 15, 2003. A copy of the Administrative Bar Date Order is attached hereto as <u>Exhibit</u> <u>C</u>.

11.      Specifically, the Administrative Bar Date Order provides that the holder of an Administrative Claim who fails to file such claim in accordance with the procedures set forth therein, is "forever barred, estopped, restrained and enjoined from asserting any such administrative expense claim against the Debtors or the Debtors' properties." Administrative Bar Date Order, ¶ 3.

12.      As set forth in the Affidavit of Service dated December 2, 2003 (the "Administrative Bar Date Affidavit"), the Committee served NJDEP by first class mail notice of the Administrative Bar Date in accordance with the Administrative Bar Date Order. A copy of the relevant portions of the Administrative Bar Date Affidavit are attached hereto as <u>Exhibit D</u>. NJDEP did <u>not</u> file any proof of Administrative Claim in the Chapter 11 Cases as required by the Administrative Bar Date Order.

13.      The Court entered the Confirmation Order confirming the Plan on or about April 5, 2004. The effective date of the Plan occurred on April 30, 2004 (the "Effective Date").

14.      As of the Effective Date, the Debtors' business operations had ceased and their workforce had been reduced to a single employee.

15.      In accordance with the terms of the Plan and the Confirmation Order, the Trust was established on the Effective Date and the Debtors' remaining assets vested therein. Plan, §7.10; Confirmation Order ¶ 9.

16.      Section 13.19 of the Plan, as amended by paragraph (R) of section II of the Confirmation Order, provides for the permanent injunction against the assertion of Claims

**Aa 0019**

against the Debtors and the Trust after the Effective Date. Specifically, the Plan Injunction

provides:

> Except as otherwise expressly provided in the Plan, all Persons or entities who have held, hold, or may hold Claims or Equity Interests are permanently enjoined, from and after the Effective Date, from (a) commencing or continuing in any manner any action or other proceeding of any kind on any such Claim or Equity Interest against any of the Debtors, their Estates, Reorganized IT Group, the IT Environmental Liquidating Trust, the IT Environmental Liquidating Trustee, the Litigation Trust, the Litigation Trust Trustee, or the Assets, or against the property or interests in property of any of the Debtors, their Estates, Reorganized IT Group, the IT Environmental Liquidating Trust or the Litigation Trust, (b) the enforcement, attachment, collection or recovery by any manner or means of any Claims and/or Equity Interests, or any judgment, award, decree or order with respect to any Claims and/or Equity Interests, against any of the Debtors, their Estates, Reorganized IT Group, the IT Environmental Liquidating Trust, the IT Environmental Liquidating Trustee, the Litigation Trust, the Litigation Trust Trustee, or the Assets, , or against the property or interests in property of any of the Debtors, their Estates, Reorganized IT Group, the IT Environmental Liquidating Trust or the Litigation Trust, (c) creating, perfecting, or enforcing any encumbrance of any kind against any of the Debtors, their Estates, Reorganized IT Group, the IT Environmental Liquidating Trust, the IT Environmental Liquidating Trustee, the Litigation Trust, the Litigation Trust Trustee, or the Assets, or against the property or interests in property of any of the Debtors, their Estates, Reorganized IT Group, the IT Environmental Liquidating Trust or the Litigation Trust and (d) asserting any right of set off or subrogation of any kind against any obligation due from any Debtor or against the property or interests in property of any Debtor, with respect to any such Claims or Equity Interests; provided however, that the foregoing shall not affect the rights of a party that were obtained pursuant to a Final Order of the Bankruptcy Court granting limited relief from the automatic stay under section 362(d) of the Bankruptcy Code. Nothing in this Section 13.19 shall enjoin the exercise of any police or regulatory power by a United States environmental governmental unit, a California state environmental governmental unit or a New Jersey state environmental governmental unit with respect to any environmental Claim that arises after the Effective Date.

Plan, § 13.19; Confirmation Order, ¶ II(R) (emphasis added).

17.    Notably, NJDEP filed an objection to Confirmation of the Plan (the "NJDEP

Objection"). A copy of the NJDEP Objection is attached hereto as Exhibit E. Pursuant to the

Court's Confirmation Order, the Court overruled the NJDEP Objection. Confirmation Order,

¶35.

Aa 0020

**The Woodbury Creek Mitigation Bank**

18.     Prior to the Petition Date, LandBank, created the Mitigation Bank in connection

with the Woodbury Creek Property. Notably, LandBank formed a subsidiary, U.S. Wetland

Services ("U.S. Wetland Services")[3], to manage the Mitigation Bank which was created pursuant

to that certain Resolution of the New Jersey Freshwater Wetlands Mitigation Council on July 11,

1995 (the "NJ Wetlands Resolution"). A copy of the NJ Wetlands Resolution is attached hereto

as Exhibit F.

19.     The Wetlands Resolution approved the proposal of U.S. Wetland Services to

create approximately 38 acres of wetlands, to restore and enhance approximately 128 acres of

wetlands, and to enhance approximately 18 acres of uplands on the Woodbury Creek Property in

exchange for "99.64 mitigation credits" that, in turn, could be sold to individuals or entities

seeking to develop properties on existing wetlands elsewhere in New Jersey. Stated differently,

the Environmental Protection Agency's website on wetlands mitigation banking[4] describes the

process as follows:

> A wetlands mitigation bank is a wetland area that has been restored, created,
> enhanced, or (in exceptional circumstances) preserved, which is then set aside to
> compensate for future conversions of wetlands for development activities. A
> wetland bank may be created when a government agency, a corporation, or a
> nonprofit organization undertakes such activities under a formal agreement with a
> regulatory agency. The value of a bank is determined by quantifying the wetland
> values restored or created in terms of "credits."

**NJDEP Administrative Proceeding**

20.     On or about July 17, 2002, the NJDEP issued the NJ Administrative Order,

known as Administrative Order and Notice of Civil Administrative Penalty, that accuses the

---

[3]     Woodbury Creek, Inc., a wholly-owned subsidiary of U.S. Wetland Services, currently owns the Woodbury
Creek Wetlands Mitigation Bank property. LandBank, an affiliate of the IT Group, took over the ownership of U.S.
Wetland Services and, consequently, Woodbury Creek, Inc. in 2000.

[4]     http://www.epa.gov/owow/wetlands/facts/fact16.html

**Aa 0021**

Debtors of failing to maintain the financial assurance necessary to run the Mitigation Bank, and failing to continue to monitor the project as required by the NJ Wetlands Resolution. A copy of the NJ Administrative Order is attached hereto as Exhibit G.

21.    The NJ Administrative Order seeks to impose a $9,000 penalty against Landbank for alleged prepetition activities conducted on the Mitigation Bank site which allegedly resulted in the drainage of wetlands that were previously identified on the site. Significantly, the NJ Administrative Order also seeks to impose an alleged affirmative injunction that would require the Trust to create approximately 57 acres of new wetlands, which is estimated to cost millions of dollars. Specifically, the NJ Administrative Order requires that a mitigation proposal be prepared for the off-site mitigation of the 18.924 acres of drained wetlands at a ratio of 3 acres created for each disturbed, or, otherwise stated, 56.772 acres of new wetlands.

22.    As noted, the NJ Administrative Order is currently the subject of the NJ Administrative Proceeding, before the Office of Administrative Law of the State of New Jersey (Miller, Administrative Law Judge).

23.    As set forth above, the Trust has attempted to resolve the NJ Administrative Order and the NJ Administrative Proceeding in good faith discussions with NJDEP, without having to file the instant Motion. Upon information and belief, however, NJDEP is intent on prosecuting the NJ Administrative Order in the NJ Administrative Proceeding in violation of this Court's orders and the Plan Injunction. Accordingly, the Trust was left with no choice but to seek relief from this Court to enforce the Court's orders and the Plan Injunction.

## JURISDICTION

24.    The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding

564604v1                                                8

**Aa 0022**

pursuant to 28 U.S.C. § 157(b)(2). Pursuant to Article XII of the Plan, the Court retained

jurisdiction to enforce the Plan and to issue such orders in aid of execution of the Plan.

## RELIEF REQUESTED

25.    As set forth above, the Court's Bar Date Orders, the Confirmation Order and the

Plan Injunction expressly prohibit the commencement or continuation of any claims against the

Debtors which arose on or before the Effective Date. NJDEP's Claims against the Debtors arose

prior to the Effective Date and are expressly barred pursuant to the Court's orders and the Plan

Injunction. As stated above, there is no question NJDEP was given actual notice by mail of the

Bar Date Orders, the Confirmation Order and the Plan Injunction. NJDEP, however, failed to

file any claim whatsoever in these Chapter 11 Cases. Accordingly, NJDEP is bound by the

Court's Bar Date Orders, the Confirmation Order and the Plan Injunction and is prohibited from

prosecuting the NJ Administrative Order and the NJ Administrative Proceeding against the

Debtors.

26.    As this Court previously held: "It is axiomatic that a court possesses the inherent

authority to enforce its own orders." In re Continental Airlines, Inc., 236 B.R. 318, 326 (Bankr.

D. Del. 1999) (citing Kokkonen v. Guardina Life Ins. Co. of America, 511 U.S. 375, 379-80, 114

S.Ct. 1673, 128 L.Ed.2d 391 (1994) and Chambers v. NASCO, Inc., 501 U.S. 32, 43, 111 S.Ct.

2123, 115 L.Ed.2d 27 (1991)). Indeed, this Court further held in Continental:

> In the bankruptcy context, courts have specifically, and
> consistently, held that the bankruptcy court retains jurisdiction,
> inter alia, to enforce its confirmation order. Furthermore, Rule
> 3020(d) of the Federal Rules of bankruptcy Procedure states
> 'Notwithstanding the entry of the order of confirmation, the court
> may issue any other order necessary to administer the estate.'

236 B.R. at 326 (citations omitted).

**Aa 0023**

27.    As set forth fully above, the Court's Bar Date Orders, the Confirmation Order and the Plan Injunction are clear and unambiguous – holders of claims against the Debtors who fail to file such claims within the deadlines set by this Court are forever barred from asserting such claims against the Debtors and their estates.

28.    Section 101(5) of the Bankruptcy Code broadly defines "claim" to include virtually every "right to payment" which may be asserted by a creditor against the Debtors. 11 U.S.C. § 101(5). Notably, section 101(5)(B) even includes a right to an equitable remedy for breach of performance if such breach gives rise to a right to payment. 11 U.S.C. § 101(5)(B). As set forth in the legislative history of section 101(5):

> By this broadest possible definition, and by the use of the term throughout the title 11, . . . the bill contemplates that <u>all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy case.  It permits the broadest possible relief in the bankruptcy court.</u>

H.R. No. 95-595, 95th Cong., 1st Sess. 309 (1977); S. Rep. No. 95-989, 95th Cong., 2d Sess. 21 (1978) (emphasis added).

29.    In the instant case, the Debtors' legal obligations to maintain and operate the Mitigation Bank in connection with the Woodbury Creek Property arose under the Wetlands Resolution – passed almost 10 years ago and well-prior to the Petition Date. The NJ Administrative Order is nothing more than an assertion by NJDEP of a "right to payment" against the Debtors for damages allegedly caused by the failure of the Debtors to administer the Mitigation Bank. As a result, NJDEP holds "claims" which are now barred pursuant to the Court's orders and the Plan Injunction.

30.    The relief requested by this Motion is permitted pursuant to the Court's equitable powers under section 105(a) of the Bankruptcy Code. Section 105(a) provides, in pertinent part, that the "court may issue any order, process, or judgment that is necessary or appropriate to carry

Aa 0024

out the provisions of this title." See 11 U.S.C. § 105(a). One leading commentator on

bankruptcy law characterizes section 105 as:

> an omnibus provision phrased in such general terms as to be the
> basis for a broad exercise of power in the administration of a
> bankruptcy case. The basic purpose of § 105 is to assure the
> bankruptcy courts power to take whatever action is appropriate or
> necessary in aid of the exercise of their jurisdiction . . . .

2 COLLIER ON BANKRUPTCY ¶ 105.01, at 105-5 (L. King, 15th rev. ed. 2002).

    31.    Moreover, the Court may direct the debtor and any other necessary party to

perform any act that is necessary for the consummation of the Plan. 11 U.S.C. § 1142(b).

Section 1142(b) of the Bankruptcy Code provides, in pertinent part:

> The court may direct the debtor and any other necessary party to
> execute or deliver or to join in the execution or delivery of any
> instrument required to effect a transfer of property dealt with by a
> confirmed plan, and to perform any other act . . . that is necessary
> for the consummation of the plan.

11 U.S.C. § 1142(b).

    32.    Therefore, in addition to the Court's inherent powers to enforce and interpret its

own orders, sections 105(a) and 1142(b) empower the Court to issue orders necessary or

appropriate to administer the Debtors' estates pursuant to the confirmed Plan.

**The NJ Administrative Order**
**Seeks To Enforce A Monetary Claim**

    33.    By the NJ Administrative Order and NJ Administrative Proceeding, NJDEP seeks

entry of a final order in the form of an injunction requiring, *inter alia*, the Trust to create 57 acres

of new wetlands on property outside of the Woodbury Creek Property. For the reasons set forth

herein, this relief clearly constitutes a "claim" under the Bankruptcy Code, the assertion of which

is now barred by the Court's Bar Date Orders, the Confirmation Order and the Plan Injunction.

**Aa 0025**

**The Alleged Injunctive Relief Seeks a Right to Payment**

34.     The NJ Administrative Order's affirmative injunction against the Debtors to

create wetlands constitutes a "claim" under the Bankruptcy Code because the Trust can perform

the obligation only by payment of money. As set forth above, section 101(5) of the Bankruptcy

Code provides that a "claim" is a "right to payment, whether or not such right is reduced to

judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed,

legal, equitable, secured, or unsecured, or a "right to an equitable remedy for breach of

performance if such breach gives rise to a right to payment." 11 U.S.C. § 101(5); Ohio v.

Kovacs, 469 U.S. 274 (1985) (obligation to comply with state court injunction requiring it to

clean up hazardous waste was a "claim" under the Bankruptcy Code).

35.     In Kovacs, the state of Ohio obtained an injunction against Kovacs requiring him,

*inter alia*, to clean up hazardous wastes on his property. After Kovacs filed for bankruptcy, the

state sought to obtain some of the debtor's post-petition income to pay for unfinished clean up

costs, arguing that the obligation to clean up the property under the state's environmental laws

was not a "claim" under the Bankruptcy Code, and therefore, not dischargeable. Id. at 281.

36.     The United States Supreme Court disagreed with the state of Ohio, finding

instead, that the state of Ohio had a right to payment from the debtor to fund cleanup costs, and

therefore, possessed a "claim" under the Bankruptcy Code. Id. at 283. In arriving at its decision,

the Court considered that the state never suggested that the debtor could "render performance

under the affirmative obligation other than by payment of money." Id. at 281. Instead, the Court

noted, that the state sought satisfaction by an alternative right to payment since the debtor was

not in a position to perform the affirmative obligation himself. Id. Because the debtor could not

perform the function himself, other than by payment of money, the Court held that the injunction

Aa 0026

to clean up the property was, in essence, nothing more than a right to payment, which constitutes a "claim" under the Bankruptcy Code. Id. at 283.

37.    Similar to the facts in Kovacs, the Trust here cannot render performance under the NJ Administrative Order other than by payment of money. The NJ Administrative Order requires that the Debtors "commence the implementation of the final approved mitigation plan in accordance with approved schedule and . . . complete the project by the established date." NJ Administrative Order, ¶ 13. As noted above, however, the Debtors ceased operations over two years ago. Their business affairs have been wound down. Indeed, on the Effective Date, the remaining assets of all Debtor entities were vested in the Trust. The Debtors, therefore, no longer exist. All that remains is the Trust, which was established by the Plan for the very limited purpose of liquidating and distributing the Debtors' remaining assets to holders of allowed claims. The Trust itself, therefore, is wholly incapable of creating the new wetlands demanded in the NJ Administrative Order other than by payment of money. Accordingly, under the reasoning of the Supreme Court's Kovaks decision, it is clear NJDEP is merely attempting to exercise a right to payment, which constitutes a "claim" under the Bankruptcy Code – which is now barred.

**The Alleged Injunction Does Not Stop Or Ameliorate Ongoing Pollution**

38.    In In re Torwico Electronics, Inc., 8 F.3d 146, 150 (3d Cir. 1993), the Third Circuit held that where an order requires the debtor to stop or ameliorate current, continuing pollution, such an order is not a "claim" because a governmental agency could not accept payment in exchange for allowing a polluter to continue polluting. Id. at 150 (citing In re Chateaugay Corp., 944 F.2d 997, 1008 (2d Cir. 1991) (citations omitted)). By contrast, "where an order imposes obligations distinct from any obligation to stop or ameliorate ongoing pollution, the order presents a claim if the government could have done the work itself and then

**Aa 0027**

sought reimbursement; under such circumstances there is a breach of an obligation that gives rise to a right of payment." Id. Without this distinction, the governmental agency would be allowed to "repackage" any claim it had for money damages as an injunctive order in an effort to avoid characterization as a "claim" under the Bankruptcy Code. Id. at 150-151.

39.    Here, the NJ Administrative Order at issue does not involve a requirement to cleanup hazardous waste or otherwise "stop or ameliorate ongoing pollution." Instead, the order seeks "off-site mitigation" in the form of the creation of wetlands at another location and makes monetary claims in the form of a demand for a penalty and the requirement to post financial assurances by the Debtors. The loss of approximately 19 acres of wetlands at the Mitigation Bank occurred prepetition, and the NJDEP has not alleged that any additional harm will occur at that site in the future if the actions demanded by the NJ Administrative Order are not implemented. Indeed, the NJ Administrative Order imposes no obligation to take any action whatsoever at the site of the failed Mitigation Bank itself. Moreover, NJDEP has the authority by statute and under its regulations to perform the work required by the NJ Administrative Order and seek reimbursement. See N.J.S.A. 13:9B-21; see also N.J. Admin. Code 7:7A-16.4.

40.    Applying the Third Circuit's Torweco framework, therefore, NJDEP is clearly attempting to impermissibly "repackage" its claims for money damages in connection with the failed prepetition Mitigation Bank as an alleged injunctive remedy to comply with state environmental regulations. Accordingly, NJDEP has nothing more than unsecured "claims" against the Debtors - which it knowingly failed to preserve in accordance with the Court's orders and the Plan. See NJDEP Plan Objection, ¶ 3 ("The NJDEP is not a claimant in this proceeding.").

Aa 0028

**The NJDEP's Claim is barred by the Bar Date Order,
the Administrative Bar Date Order, the Plan Injunction and the Confirmation Order**

41.    Having established that the NJ Administrative Order seeks to assert "claims" against the Debtors, the NJDEP is now barred from asserting them. As noted above, NJDEP failed to file a proof of claim in accordance with the Bar Date Orders. Accordingly, NJDEP is forever barred by this Court's Bar Date Orders from asserting any such claims that arose in connection with the failed Mitigation Bank and the NJ Administrative Order.

42.    In addition, the NJDEP's Administrative Proceeding is similarly barred by the Plan Injunction. Prior to the Effective Date, NJDEP never obtained relief from the automatic stay pursuant to section 362 of the Bankruptcy Code to commence the NJ Administrative Proceeding. Without having obtained such relief, the Plan Injunction effectively continues operation of the automatic stay to permanently bar assertion of NJDEP's Claims against the Debtors, the Trust or Trust assets.

43.    In short, because the NJ Administrative Order and NJ Administrative Proceeding seek to enforce "claims" that are barred by this Court's Bar Date Orders, the Confirmation Order and the Plan Injunction, the Trust respectfully requests the Court direct NJDEP to dismiss its Claims and the NJ Administrative Proceeding against the Debtors.

## NOTICE

44.    This Motion will be served on (i) the NJDEP; (ii) the office of the United States Trustee; and (iii) each person or entity required to be served pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure. The Trustee submits that notice of the Motion is sufficient under the circumstances and that no further notice is necessary.

**Aa 0029**

## NO PREVIOUS REQUEST

45.    No previous request for the relief sought herein has been made to this Court or any other court.

WHEREFORE, the Trustee respectfully requests that the Bankruptcy Court enter an order (i) enforcing (a) the Court's Bar Date Order, (b) the Court's Administrative Bar Date Order, (c) the Court's Confirmation Order and (d) the Plan Injunction; (ii) directing NJDEP to immediately dismiss the NJ Administrative Order and the NJ Administrative Proceeding in accordance with the Court's orders, the Plan Injunction, and sections 105(a) and 1142(b) of the Bankruptcy Code, and (iii) granting such other and further relief as is just and proper.

Dated: November 16, 2004
        Wilmington, Delaware

THE BAYARD FIRM

By: _____
    Jeffrey M. Schlerf (No. 3047)
    Eric M. Sutty (No. 4007)
    222 Delaware Avenue, Suite 900
    Wilmington, Delaware 19801

        -and-

    John K. Cunningham
    Ileana A. Cruz
    WHITE & CASE LLP
    Wachovia Financial Center
    200 South Biscayne Blvd., Suite 4900
    Miami, Florida 33131
    Tel. (305) 371-2700
    Fax. (305) 358-5744

    COUNSEL TO THE TRUSTEE

564604v1

16

**Aa 0030**

# EXHIBIT A

Aa 0031

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

- - - - - - - - - - - - - -x
                                  :
In re:                            : Chapter 11
                                  :
THE IT GROUP, INC.,               : Case No. 02-10118 (MFW)
    et al.,                       :
                                  : Jointly Administered
            Debtors.              :
                                  : Related to Docket No. 1431
- - - - - - - - - - - - - -x

### ORDER ESTABLISHING BAR DATE FOR FILING PROOFS OF CLAIM AND APPROVING FORM AND MANNER OF NOTICES THEREOF

Upon the motion, dated May 3, 2002 (the "Motion"),[1] of the above-captioned debtors and debtors-in-possession (the "Debtors") for an order establishing a bar date for certain claims and approving form and manner of notice thereof; and this Court having determined that granting the relief requested in the Motion is in the best interests of the Debtors, their estates and creditors; and it appearing that proper and adequate notice has been given and that no other or further notice is necessary; and upon the record herein; and after due deliberation thereon; and good and sufficient cause appearing therefor, it is hereby

---

[1]    Except as otherwise defined herein, all capitalized terms used herein shall have the meaning ascribed to them in the Motion.

ORDERED, ADJUDGED AND DECREED THAT:

1. The Motion is GRANTED.

2. The form of the Bar Date Notice substantially in the form attached hereto as Exhibit A, and the manner of providing notice of the Bar Date proposed in the Motion are approved.

3. Except as otherwise specifically provided in the Bar Date Notice, all persons or entities holding a Claim against the Debtors are required to file a proof of claim asserting a Claim no later than the Bar Date, July 15, 2002.

4. Notwithstanding the preceding decretal paragraph, creditors holding or wishing to assert the following types of claims against the Debtors need not file a proof of claim:

> (i)    claims with respect to which the holders do not dispute the claim's amount or characterization as listed on the Schedules and that are not listed in the Schedules as "contingent," "unliquidated" or "disputed";
>
> (ii)   claims with respect to ownership or holdings of any of the Debtors' stock or other equity securities for which the proof of claim or proof of interest is filed solely to record such ownership interest or possession of such equity securities; provided, however, that proofs of claim must be filed if the claimant wishes to assert a Claim against the Debtors arising from the

2

Aa 0033

ownership of a security of any of the
Debtors, including but not limited to a
Claim against the Debtors arising from
the purchase or sale of a security of
any of the Debtors;

(iii)   certain Claims arising from the Debtors'
rejection of executory contracts or
unexpired leases that have not, as of
the date of the Bar Date Notice, been
rejected pursuant to an order of the
Court ("Rejection Damages Claims").
Rejection Damages Claims shall be filed
by the later of (a) thirty days after
the date of the Court order authorizing
the rejection of such contract or lease
or (b) the Bar Date.

5.   For any Proof of Claim to be timely and

properly filed, a signed original of the completed Proof

of Claim, together with any and all accompanying

documentation, must be filed with Logan so that such

Proof of Claim is delivered to and received by Logan no

later than 4.00 p.m. Eastern Time on the Bar Date.

6.   Except as otherwise specifically provided

in the Bar Date Notice, any holder of a Claim that fails

to file proof of its Claim by the Bar Date is forever

barred and estopped from asserting its Claim against the

Debtors, their estates or the property of any of them.

7.   Proofs of Claim may be submitted in person

or by courier service, hand delivery or mail.  Proofs of

Claim shall be deemed filed when actually delivered to

and received by Logan.

3

Aa 0034

8.    The Notice Package shall be mailed by first class U.S. mail, postage prepaid to all known or reasonably ascertainable holders of a Claim as soon as practicable after the entry of the Bar Date Order, but in no event later than June 15, 2002.    The Debtors are permitted, but not required, to publish notice of the Bar Date.

Dated:      Wilmington, Delaware
            May 24, 2002

_____
The Honorable Mary F. Walrath
United States Bankruptcy Judge

276461.01-Wilmington S1A                4

Aa 0035

# Exhibit A

Aa 0036

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

- - - - - - - - - - - - - - x
                     :
In re:                :  Chapter 11
                     :
THE IT GROUP, INC.,    :  Case No. 02-10118 (MFW)
   et al.,          :
                     :  Jointly Administered
          Debtors.   :
- - - - - - - - - - - - - - x

## NOTICE OF BAR DATE FOR
## FILING PROOFS OF CLAIM

**ALL POTENTIAL HOLDERS OF CLAIMS PLEASE TAKE NOTICE OF THE
FOLLOWING:**

On May __, 2002, the United States Bankruptcy Court for
the District of Delaware (the "Court") approved an order (the
"Bar Date Order") in the above-captioned chapter 11 cases
establishing July 15, 2002 as the deadline (the "Bar Date") for
holders of Claims (as defined below) in the chapter 11 cases of
the above-captioned debtors and debtors-in-possession (the
"Debtors") to file proofs of claim.  The Bar Date Order requires
all persons or entities holding a Claim to file a proof of such
Claim, substantially in the form of Official Form No. 10 (the
"Proof of Claim Form") no later than the Bar Date.  For your
convenience, a Proof of Claim Form is enclosed with this Notice.

### PERSONS OR ENTITIES WHO MUST FILE A PROOF OF CLAIM

Bankruptcy Rule 3003(c)(3) requires all persons and
entities, including, without limitation, individuals,
partnerships, corporations, estates, trusts, indenture trustees,
unions and governmental units that assert a Claim (as defined in
section 101(5) of the Bankruptcy Code) arising before January 16,
2002 against any of the Debtors listed on Exhibit 1 attached
hereto, to file a Proof of Claim.  Any person or entity holding a
Claim must file a Proof of Claim on or before the Bar Date.
Section 101(5) of the Bankruptcy Code defines "Claim" to mean:

      (A)  right to payment, whether or not such right is
           reduced to judgment, liquidated, unliquidated,
           fixed, contingent, matured, unmatured, disputed,
           undisputed, legal, equitable, secured, or
           unsecured; or

1

Aa 0037

(B)    right to an equitable remedy for breach of
       performance if such breach gives rise to a right
       to payment, whether or not such right to an
       equitable remedy is reduced to judgment, fixed,
       contingent, matured, unmatured, disputed,
       undisputed, secured or unsecured[.]

11 U.S.C. § 101(5).

### CONSEQUENCES OF FAILURE TO FILE PROOF OF CLAIM

ANY PERSON OR ENTITY HOLDING A CLAIM THAT FAILS TO FILE
PROOF OF ITS CLAIM ON OR BEFORE THE BAR DATE SHALL BE FOREVER
BARRED AND ESTOPPED FROM ASSERTING A CLAIM AGAINST THE DEBTORS,
THEIR ESTATES, OR THE PROPERTY OF ANY OF THEM.

### TIME AND PLACE FOR FILING PROOFS OF CLAIM

For any Proof of Claim to be timely and properly filed,
a person or entity holding a Claim must submit a signed original
Proof of Claim asserting such Claim, together with accompanying
documentation, to Logan & Company, Inc. ("Logan"), 546 Valley
Road, Upper Montclair, New Jersey, 07043, so as to be delivered
to and received by Logan no later than 4:00 p.m., Eastern Time on
the Bar Date. Any Proof of Claim may be submitted in person or
by courier service, hand delivery or mail addressed to Logan at
the foregoing address. Any Proof of Claim submitted by facsimile
will not be accepted and will not be deemed filed until such
Proof of Claim is submitted by one of the methods described in
the foregoing sentence. Any Proof of Claim will be deemed filed
only when actually received by Logan. If you wish to receive
acknowledgment of Logan's receipt of your Proof of Claim, you
must also submit a copy of your original Proof of Claim and a
self-addressed, stamped envelope. If you wish to assert Claims
against more than one Debtor, you must file a separate Proof of
Claim in the case of each Debtor against which you believe you
hold a claim. You may download additional claim forms from the
Bankruptcy Court's website at www.deb.uscourts.gov/B10-offi.pdf.

### PERSONS OR ENTITIES WHO NEED NOT FILE A PROOF OF CLAIM

A person or entity need not file a proof of claim if:

1.    You do not have a claim against any of the Debtors
under section 101(5) of the Bankruptcy Code. That you received
this Notice does not mean that you have such a claim.

2.    You do not dispute the amount or characterization
of your claim as listed on the Debtors' schedules of liabilities

2

Aa 0038

(the "Schedules") and the Schedules do not list your claim as contingent, unliquidated or disputed. If your claim is listed on the Schedules, the upper right-hand corner of the attached proof of claim form shows how the Schedules list your claim.

3.    You own or hold any of the Debtors' stock or other equity securities and are filing a proof of claim form or proof of interest solely to record your ownership interest or possession of such equity securities; provided, however, that you must file a proof of claim if you wish to assert a Claim against the Debtors arising from the ownership of a security of any of the Debtors, including but not limited to a Claim arising from the purchase or sale of a security of any of the Debtors.

4.    You are a party to an executory contract or unexpired lease that has not, as of the date of this notice, been rejected pursuant to an order of the Court and wish to submit a rejection damages claim arising from the Debtors' rejection of such executory contract or unexpired lease during these chapter 11 cases. Such a proof of claim must be filed by the later of (a) thirty days after the date of the Court order authorizing the rejection of such contract or lease or (b) the Bar Date.

### ADDITIONAL INFORMATION

If you require additional information regarding the filing of a Proof of Claim, you may contact Logan by telephone at (973) 509-3190 between 10:00 a.m. and 4:00 p.m., Eastern Time, or by writing to Logan at 546 Valley Road, Upper Montclair, New Jersey, 07043. The claim register for the Debtors will be available in Logan's office and at the United States Bankruptcy Court for the District of Delaware.

By order of the Court, dated _____, 2002.


_____
Honorable Mary F. Walrath
United States Bankruptcy Court Judge

3

Aa 0039

## EXHIBIT 1

| DEBTORS (Other names, if any, by the Debtors in the last 6 years appear in the brackets) | CASE NO. | EID # |
|---|---|---|
| The IT Group, Inc.<br><br>IT Environmental Services, Inc.<br>IT Corporation of Delaware<br>IT Corporation of California<br>IT Enviroscience Corporation<br>IT Environmental Corporation<br>International Technology Corporation | 02-10118 | 33-0001212 |
| 37-02 College Point Boulevard, LLC | 02-10119 | 84-1479216 |
| Advanced Analytical Solutions, Inc. | 02-10120 | 84-1461794 |
| E-Com Solutions, Inc. | 02-10121 | 94-3292325 |
| Empire State I, LLC | 02-10122 | 84-1479218 |
| Empire State II, LLC | 02-10123 | 84-1479217 |
| EVAP Technologies, LLC | 02-10124 | 25-1876926 |
| Evergreen Acquisition Sub I, Inc. | 02-10125 | 23-3090041 |
| Groundwater Technology, Inc. | 02-10126 | 02-0324047 |
| IT Administrative Services, LLC | 02-10127 | 25-1867919 |
| IT C&V Operations, Inc. | 02-10128 | 23-2946547 |
| IT E&C Operations, Inc. | 02-10129 | 23-2946696 |
| IT Environmental and Facilities, Inc. | 02-10130 | 25-1833796 |
| IT International Holdings, Inc. | 02-10131 | 51-0386873 |
| IT International Investments, Inc. | 02-10132 | 04-2944746 |
| IT International Operations, Inc. | 02-10133 | 93-1018025 |
| IT Investment Holdings, Inc. | 02-10134 | 33-0721650 |
| IT Iron Mountain Operations, LLC | 02-10135 | 25-1867919 |
| James Mill Road, LLC | 02-10136 | 25-1855952 |
| KIP I, LLC | 02-10137 | 25-1849491 |
| LandBank Acquisition I, LLC | 02-10138 | 91-1979357 |
| LandBank Acquisition II, LLC | 02-10139 | 91-1979352 |

1

**Aa 0040**

| DEBTORS (Other names, if any, by the Debtors in the last 6 years appear in the brackets) | CASE NO. | EID # |
|---|---|---|
| LandBank Acquisition II, LLC | 02-10140 | 91-1979354 |
| LandBank Environmental Properties, LLC | 02-10141 | 84-1417693 |
| LandBank Remediation Corp. | 02-10142 | 94-3213144 |
| LandBank, Inc. | 02-10143 | 77-0391324 |
| LandBank Wetlands, LLC | 02-10144 | 84-1584577 |
| Marconi Warburg, LLC | 02-10145 | 22-3658738 |
| Millstone River Wetland Services, Inc. | 02-10146 | 52-1989945 |
| Northeast Restoration Company, LLC | 02-10147 | 84-1479222 |
| Organic Waste Technologies, Inc. | 02-10148 | 51-0321674 |
| Otay Mesa Ventures, LLC | 02-10149 | 25-1849748 |
| PHR Environmental Consultants, Inc. | 02-10150 | 33-0754921 |
| Raritan Venture I, LLC | 02-10151 | 25-1868873 |
| The Dorchester Group, LLC | 02-10152 | 84-1479214 |
| U.S. Wetlands Services, LLC | 02-10153 | 13-3763223 |
| Whippany Ventures I, LLC | 02-10154 | 84-1501746 |
| Wyckoff's Mills, LLC | 02-10155 | 52-1989945 |
| American Landfill Supply Co., Inc. | 02-10156 | 42-1341713 |
| Benecia North Gateway LLC | 02-10157 | |
| EMCON | 02-10158 | 94-1738964 |
| EMCON Industrial Services, Inc. | 02-10159 | 86-0842518 |
| Enterprise, Environmental & Earthworks, Inc. | 02-10160 | 36-4043563 |
| Fluor Daniel Environmental Services, Inc. (FDESI) | 02-10161 | 33-0437335 |
| Gradient Corporation | 02-10162 | 04-2857447 |
| IT Alaska, Inc. | 02-10163 | 92-0121536 |
| IT Baker, LLC | 02-10164 | |
| IT Corporation

IT Corporation of California
IT Enviroscience Corporation | 02-10165 | 94-1259053 |

2

| DEBTORS (Other names, if any, by the Debtors in the last 6 years appear in the brackets) | CASE NO. | E.I.D # |
|---|---|---|
| IT Corporation of North Carolina, Inc. | 02-10166 | 56-1231308 |
| IT Lake Herman Road LLC | 02-10167 | |
| IT Vine Hill, LLC | 02-10168 | |
| IT-Tulsa Holdings, Inc. | 02-10169 | 73-1004178 |
| ITGtech<br><br>JLG Technologies, Inc. | 02-10170 | 95-4430474 |
| Jellinek, Schwartz & Connolly, Inc. | 02-10171 | 52-1139905 |
| JSC International Inc. | 02-10172 | 56-1862081 |
| Kato Road, LLC | 02-10173 | 84-1417566 |
| Keystone Recovery, Inc. | 02-10174 | 34-1746531 |
| LFG Specialties, Inc. | 02-10175 | 31-1628964 |
| Monterey Landfill Gas Company | 02-10176 | 36-3467676 |
| National Earth Products, Inc. | 02-10177 | 23-2755576 |
| Northern California Development Limited | 02-10178 | |
| OHM Corporation | 02-10179 | 34-1503050 |
| OHM Remediation Services Corp. | 02-10180 | 34-1275607 |
| Pacific Environmental Group, Inc. | 02-10181 | 94-3027373 |
| Sizliken, Inc. | 02-10182 | 76-0143090 |
| Submerged Lands, LLC | 02-10183 | 84-1454321 |
| W & H Pacific Inc. | 02-10184 | 91-1412195 |
| Wehran Engineering PC | 02-10185 | 14-1555706 |
| Wehran New York, Inc. | 02-10186 | 06-1228800 |
| Woodbury Creek, Inc. | 02-10187 | 52-1915703 |

Aa 0042

# EXHIBIT B

Aa 0043

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

IN RE:                          )
                                )       Chapter 11
THE IT GROUP, INC., et al.,     )
                                )       Case No. 02-10118 (MFW)
                                )
            Debtors.            )       Jointly Administered
                                )

## AFFIDAVIT OF SERVICE

I, Kathleen M. Logan certify under penalty that:

1.   I am of legal age and I am not a party to this action.

2.   I am President of Logan & Company, Inc. located at 546 Valley Road, Upper Montclair, New Jersey, Noticing and Claims Agent for the above captioned Debtors.

3.   On or about June 14, 2002 I caused copies of:

• the PROOF OF CLAIM FORM

• the NOTICE OF BAR DATE FOR FILING PROOFS OF CLAIM

• the ORDER ESTABLISHING BAR DATE FOR FILING PROOFS OF CLAIM AND APPROVING FORM AND MANNER OF NOTICES THEREOF

to be inserted in first class, postage pre-paid and pre-addressed envelopes and delivered to the U.S. Postal Service for delivery to those persons on Service List attached hereto as Exhibit A. Copies of the served documents listed above are attached hereto as Exhibit B.

Dated: June 26, 2002

_____
            Kathleen M. Logan

Aa 0044

SERVICE LIST
Notice Of Bar Date For Filing Proofs Of Claim

DEBTOR:  IT GROUP                                                                    CASE:

CREDITOR ID: 129317-04
NEW HORIZONS
4286 S.W. NIMBUS AVE
BEAVERTON OR 97008-6401

CREDITOR ID: 84789-04
NEW HORIZONS COMPUTER LEARNING
FIVE PARKWAY CENTER
SUITE 200
PITTSBURGH, PA 15220

CREDITOR ID: 124870-04
NEW HORIZONS COMPUTER LEARNING C.
8595 BEACH BLVD
804.584.9500
JACKSONVILLE FL 32216

CREDITOR ID: 127786-04
NEW HORIZONS COMPUTER LEARNING CTR
9111 CROSS PARK DRIVE C 100
KNOXVILLE TN 37923

CREDITOR ID: 127704-04
NEW HORIZONS TELECOM INC
PO BOX 2408
PALMER AK 99645

CREDITOR ID: 104565-04
NEW ICE
PO BOX 616
WASCO CA 93280

CREDITOR ID: 234177-47
NEW JERSEY
SALES AND USE TAX DIVISION
CN 999,
TRENTON NJ 08646-0999

CREDITOR ID: 13942-04
NEW JERSEY BELL
850 PARK AVENUE
E. ORANGE, NJ 07017
ATTN: J.M.PRITCHARD
E. ORANGE NJ 07017

CREDITOR ID: 41764-01
NEW JERSEY DEP
DIVISION PARKS & FORESTRY
CN 404
TRENTON NJ 08625

CREDITOR ID: 3457-01
NEW JERSEY DEP
DIV. OF ENV. QUALITY
CN 407
401 EAST STATE STREET
TRENTON NJ 08625-0407

CREDITOR ID: 7083-01
NEW JERSEY DEP
428 EAST STATE STREET
CARROLL BUILDING 2ND FLR
CN 402
TRENTON NJ 08625

CREDITOR ID: 155-01
NEW JERSEY DEP
SUBSTANCES CONTROL
120 ROUTE 156
YARDVILLE NJ 08620

CREDITOR ID: 41765-01
NEW JERSEY DEPARTMENT
OF CORRECTIONS
CN 867
TRENTON NJ 08625

CREDITOR ID: 241576-01
NEW JERSEY DEPARTMENT OF
ENVIRONMENTAL PROTECTION
401 EAST STATE STREET
TRENTON NJ 08625

CREDITOR ID: 123298-04
NEW JERSEY DEPT OF INSURANCE
SURPLUS LINES EXAMINING OFFICE
CN 325
TRENTON NJ 08625-0325

CREDITOR ID: 231294-35
NEW JERSEY DIV OF TAXATION, REVENUE PROCESSING CEN
P.O. BOX 666
TRENTON NJ 08646-0666

CREDITOR ID: 231298-35
NEW JERSEY DIV OF TAXATION, REVENUE PROCESSING CEN
P.O. BOX 666
TRENTON NJ 08646-0666

CREDITOR ID: 231290-35
NEW JERSEY DIV OF TAXATION, REVENUE PROCESSING CEN
P.O. BOX 666
TRENTON NJ 08646-0666

CREDITOR ID: 231299-35
NEW JERSEY DIV OF TAXATION, REVENUE PROCESSING CEN
P.O. BOX 666
TRENTON NJ 08646-0666

CREDITOR ID: 231297-35
NEW JERSEY DIV OF TAXATION, REVENUE PROCESSING CEN
P.O. BOX 666
TRENTON NJ 08646-0666

CREDITOR ID: 231296-35
NEW JERSEY DIV OF TAXATION, REVENUE PROCESSING CEN
P.O. BOX 666
TRENTON NJ 08646-0666

CREDITOR ID: 231295-35
NEW JERSEY DIV OF TAXATION, REVENUE PROCESSING CEN
P.O. BOX 666
TRENTON NJ 08646-0666

CREDITOR ID: 231293-35
NEW JERSEY DIV OF TAXATION, REVENUE PROCESSING CEN
P.O. BOX 666
TRENTON NJ 08646-0666

CREDITOR ID: 231292-35
NEW JERSEY DIV OF TAXATION, REVENUE PROCESSING CEN
P.O. BOX 666
TRENTON NJ 08646-0666

CREDITOR ID: 231291-35
NEW JERSEY DIV OF TAXATION, REVENUE PROCESSING CEN
P.O. BOX 666
TRENTON NJ 08646-0666

CREDITOR ID: 231289-35
NEW JERSEY DIV OF TAXATION, REVENUE PROCESSING CEN
P.O. BOX 666
TRENTON NJ 08646-0666

CREDITOR ID: 231301-35
NEW JERSEY DIVISION OF TAXATION
PO BOX 257
TRENTON NJ 08646-0257

CREDITOR ID: 231300-35
NEW JERSEY DIVISION OF TAXATION
PO BOX 257
TRENTON NJ 08646-0257

CREDITOR ID: 234176-45
NEW JERSEY DIVISION OF TAXATION, REVENUE PROCESSIN
P.O. BOX 666
TRENTON NJ 08646-0666

CREDITOR ID: 229521-30
NEW JERSEY FOREST TREE NURSERY
370 VETERANS HIGHWAY
JACKSON NJ 08527

Aa  0045

SERVICE LIST
Notice Of Bar Date For Filing Proofs Of Claim

Page 3035 of 4870

DEBTOR:  IT GROUP

CASE:

CREDITOR ID: 44006-IN
NEW JERSEY HIGHWAY
GARDEN STATE PKWY
WOODBRIDGE NJ 07095

CREDITOR ID: 35621-04
NEW JERSEY HIGHWAY
AUTHORITY
13 STELTON ROAD
PISCATAWAY NJ 08825

CREDITOR ID: 1767-01
NEW JERSEY INSTITUTE OF TECH
NEW JERSEY INSTITUTE OF TECH.
ATTN: WILLIAM LIBRIZZI
N.E. HAZ SUBSTANCE RES. CENTER
138 WARREN STREET
NEWARK NJ 07102

CREDITOR ID: 218363-26
NEW JERSEY INSTITUTE OF TECH
ATTN: WILLIAM LIBRIZZI
N.E. HAZ SUBSTANCE RES. CENTER
138 WARREN STREET
NEWARK NJ 07102

CREDITOR ID: 124959-51
NEW JERSEY LEGAL COPY, INC
1000 CRAWFORD PLACE SUITE 3100
MOUNT LAUREL NJ 08054

CREDITOR ID: 122279-01
NEW JERSEY MORTGAGE & INVESTMENT
BALA POINTE OFFICE CENTER
111 PRESIDENTIAL BLVD
BALA CYNWYD PA 19004

CREDITOR ID: 42553-01
NEW JERSEY NATURAL GAS
PO BOX 1464
ATTN: LISA DEVINE
WALL NJ 07719

CREDITOR ID: 241479-30
NEW JERSEY SALES AND USE TAX DIVISION
CN 999
TRENTON NJ 08646-0999

CREDITOR ID: 241446-30
NEW JERSEY SALES AND USE TAX DIVISION
CN 999
TRENTON NJ 08646-0999

CREDITOR ID: 233898-92
NEW JERSEY STATE BOARD OF PROFESSIO
ATTN: ARTHUR RUSSO
PO BOX 45015
NEWARK NJ 07101

CREDITOR ID: 233889-92
NEW JERSEY STATE BOARD OF PROFESSIO
ATTN: ARTHUR RUSSO
174 HALSEY STREET, 3RD FL
NEWARK NJ 07102

CREDITOR ID: 136451-04
NEW JERSEY STATE TREASURY
DEPT OF COMMUNITY AFFAIRS
101 S BROAD ST 4TH FLOOR
TRENTON NJ 08625

CREDITOR ID: 18785-01
NEW JERSEY TRANSIT
1450 SPRINGFIELD AVE
DEPT R
PO BOX 577
MAPLEWOOD NJ 07040-0249

CREDITOR ID: 32650-01
NEW JERSEY TRANSIT
NEW JERSEY TRANSIT
ATTN: CHARLES HENTZ
ONE PENN PLAZA EAST
NEWARK NJ 07105-2246

CREDITOR ID: 32681-01
NEW JERSEY TRANSIT
NEW JERSEY TRANSIT CORP.
ATTN: MICHAEL RESH
1 PENN PLAZA
NEWARK, NJ 07105-2248

CREDITOR ID: 32651-01
NEW JERSEY TRANSIT
ATTN: CHARLES HENTZ
ONE PENN PLAZA EAST
NEWARK NJ 07105-2246

CREDITOR ID: 32682-01
NEW JERSEY TRANSIT
ATTN: RUSSEL SAMAROO
1 PENN PLAZA
NEWARK, NJ 07105-2246

CREDITOR ID: 4819-01
NEW JERSEY TRANSIT
ATTN: HENRY ZALESKY
NEW JERSEY TRANSIT BUS
OPERATIONS, INC.
180 BOYDEN AVE.
MAPLEWOOD, NJ 07040

CREDITOR ID: 90343-01
NEW JERSEY TRANSIT
ONE PENN PLAZA EAST
NEWARK NJ 07105

CREDITOR ID: 32686-01
NEW JERSEY TRANSIT - LONG BRANCH
NEW JERSEY TRANSIT
ATTENTION CHARLES HENTZ
ONE PENN PLAZA EAST
NEWARK NJ 07105-2248

CREDITOR ID: 30091-01
NEW JERSEY TRANSIT BUS
ATTN: MR. FRED SCHULTZ
180 BOYDEN AVENUE
MAPLEWOOD, NJ 07040

CREDITOR ID: 84299-04
NEW JERSEY WATER ENVIRONMEN.2107
180 PITMAN AVENUE
PITMAN NJ 08071

CREDITOR ID: 121618-04
NEW JERSEY/FAMILY SUPPORT
PO BOX 4880
TRENTON NJ 08650

CREDITOR ID: 211325-75
NEW JERSEY/FAMILY SUPPORT PMT
P.O. BOX 4880
TRENTON NJ 1234701

CREDITOR ID: 17376-01
NEW LEAF ACADEMY
PO BOX 6454
BEND OR 97708-6454

CREDITOR ID: 214943-26
NEW LEAF ACADEMY
P.O. BOX 6454
BEND OR 97708-8454

CREDITOR ID: 32141-04
NEW LENOX STATE BANK
ATTN: R.W. KOKAL
110 WEST MAPLE AVENUE
NEW LENOX, IL 60451

CREDITOR ID: 84384-04
NEW LEXINGTON CLINIC PSC
160 TRADE STREET
LEXINGTON KY 40510

CREDITOR ID: 77778-04
NEW LEXINGTON CLINIC PSC
DEPARTMENT 84559
LOUISVILLE KY 40294

CREDITOR ID: 112345-21
NEW LOGIC INTERNATIONAL INC
1295 67TH ST
EMERYVILLE CA 94608-1120

# EXHIBIT C

MIAMI 525851 (2K)

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

```
--------------------------------------------x
                                             :  Chapter 11
In re                                        :
                                             :- Case No. 02-10118 (MFW)
THE IT GROUP, INC., et al.,                  :
                                             :  (Jointly Administered)
          Debtors.                           :
                                             :  Re: Docket No. 3159
--------------------------------------------x
```

ORDER (I) FIXING A DEADLINE FOR THE
FILING OF ADMINISTRATIVE EXPENSE
CLAIMS THAT AROSE, ACCRUED, OR
OTHERWISE BECAME DUE AND PAYABLE ON AND
BETWEEN JANUARY 16, 2002 AND NOVEMBER 15, 2003
AND (II) APPROVING THE FORM AND MANNER
OF NOTICE IN CONNECTION THEREWITH

Upon the motion (the "Motion") of the official committee of unsecured creditors

(the "Committee") appointed in the above-captioned chapter 11 cases of The IT Group, Inc., and

its affiliated debtors (the "Debtors"), seeking the (i) fixing of a deadline for the filing of claims

for administrative costs and expenses (the "Administrative Expense Claims") that arose, accrued,

or otherwise became due and payable on January 16, 2002 through November 15, 2003 (the

"Administrative Expense Period"), and (ii) approval of the form and manner of notice in

connection therewith; and it appearing that the relief requested in the Motion is reasonable and

necessary and in the best interests of the Debtors' estates and its creditors; and after due

deliberation, and sufficient cause appearing therefor; it is hereby

ORDERED that, except as otherwise provided herein or in a prior order of this

Court, all persons and entities, including without limitation, individuals, partnerships,

corporations, estates, trusts, and governmental units, who hold or assert any Administrative

**Aa 0048**

Expense Claims against the Debtors shall file with respect to such Administrative Expense Claims, a request for allowance of such claim no later than 4:00 p.m. (Prevailing Eastern Time) on January 15, 2004 (the "Administrative Bar Date"), and all Administrative Expense Claims shall be deemed filed only when **actually received** by the Clerk of the Bankruptcy Court for the District of Delaware, Marine Midland Plaza, 824 Market Street, 6th Floor, Wilmington, DE 19801, and AlixPartners LLC, 2100 McKinney Avenue, Suite 800, Dallas, TX 75201 by 4:00 p.m. (Prevailing Eastern Time) on January 15, 2004 at the locations set forth above; **provided, however,** that pending further order of the Court, the holders of Administrative Expense Claims of the following type or nature **need not** file such Administrative Expense Claim on or prior to the Administrative Bar Date:

1.   Any person or entity that holds an Administrative Expense Claim that has been allowed by an order of the Bankruptcy Court entered on or before the Administrative Bar Date;

2.   Any Administrative Expense Claim which arose, accrued, and otherwise becomes due and payable subsequent to the Administrative Bar Date;

3.   Any holder of an Administrative Expense Claim who prior to the Administrative Bar Date filed a proof of Administrative Expense Claim with the Clerk of the Bankruptcy Court;

4.   Any Administrative Expense Claim held by the Office of the United States Trustee under section 1930(a)(6) of title 28, United States Code; and

5.   Any professionals retained by the Debtors or the Committee under Court order pursuant to sections 327, 328 or 1103 of the Bankruptcy Code.

and it is further

ORDERED that each and every holder of an Administrative Expense Claim against the Debtors who, by this Order, is required to file an Administrative Expense Claim as set forth herein, but who fails to do so on or before the Administrative Bar Date, shall not be treated as the holder of such Administrative Expense Claim(s) in the Administrative Expense

-2-

Aa 0049

Period against the Debtors for the purpose of receiving any distribution under any plan of reorganization or liquidation that may be proposed and confirmed herein, and shall be forever barred, estopped, restrained and enjoined from asserting any such Administrative Expense Claim(s) against the Debtors and the Debtors' properties for the Administrative Expense Period; and it is further

ORDERED that the Committee's proposed notice of the Administrative Bar Date, substantially in the form of the notice annexed hereto as Exhibit "A" (the "Notice"), be served by mail on or before December 1, 2003, upon (i) the Office of the United States Trustee, (ii) all parties listed in the Rule 2002 service list, (iii) all parties who have filed an administrative proof of claim in these Cases, (iv) all parties who have filed a proof of claim relating to surety bonds in these Cases, (v) the District Director of the Internal Revenue Service for the District of Delaware, (vi) all taxing authorities listed in the matrix or who have filed proofs of claim in these Cases, (vii) environmental protection agencies listed in the matrix and all parties who have filed proofs of claim in these Cases relating to environmental liabilities, (viii) the United States Attorney for the District of Delaware, (ix) the Pension Benefit Guaranty Corporation, and (x) all other persons or entities whom the Committee believes may hold Administrative Expense Claims; and it is further

Aa 0050