ORDERED that the Committee shall publish the Notice in the *Wall Street Journal* at least 20 days prior to the Administrative Bar Date, which publication is hereby approved and which shall be deemed good, adequate and sufficient publication notice.

Dated: Wilmington, Delaware
Nov. 24, 2003

_____
UNITED STATES BANKRUPTCY JUDGE

-4-

Error! Unknown document property name. Error! Unknown document property name.

Aa 0051

# EXHIBIT D

Aa 0052

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

IN RE:                                     )
                                           )    Chapter 11
THE IT GROUP, INC., et al.,                )
                                           )    Case No. 02-10118 (MFW)
                                           )
                      Debtors              )    (Jointly Administered)
                                           )

## AFFIDAVIT OF SERVICE

I, Kathleen M. Logan certify under penalty that:

1.    I am of legal age and I am not a party to this action.

2.    I am President of Logan & Company, Inc. located at 546 Valley Road, Upper
      Montclair, New Jersey, Noticing and Claims Agent for the above captioned
      Debtors.

3.    On or about November 26, 2003 I caused copies of:

•     the NOTICE OF DEADLINE FOR FILING OF ADMINISTRATIVE EXPENSE
      CLAIMS THAT AROSE, ACCRUED, OR OTHERWISE BECAME DUE AND
      PAYABLE ON AND BETWEEN JANUARY 16, 2002 AND NOVEMBER 15,
      2003

      to be inserted in first class, postage pre-paid and pre-addressed envelopes and
      delivered to the U.S. Postal Service for delivery to those persons on Service List
      attached hereto as Exhibit A. Copy of the served Notice listed above is attached
      hereto as Exhibit B.

Dated: December 2, 2003                    _____
                                                     Kathleen M. Logan

EXHIBIT A SERVICE LIST
Notice Of Deadline For Filing Of Administrative Expense
Claims That Arose, Accrued, Or Otherwise Became Due
And Payable On And Between January 16, 2002 And
November 15, 2003

DEBTOR:  IT GROUP

CASE: 02-10118

CREDITOR ID: XXX-98
MO ST DEPT OF HEALTH
ENVIRONMNTL HEALTH SECTION
MISSOURI OFFICE BLDG
ATTN: FRANCES J SCHMIDT
1300 MISSOURI AVE
BISMARCK ND 68501

CREDITOR ID: 231173-47
NEBRASKA
DEPARTMENT OF REVENUE
PO BOX 18923
LINCOLN NE 68509-8923

CREDITOR ID: 733863-43
NEBRASKA BOARD OF ENGINEERS
ATTN: CHARLES S NELSON
301 CENTENNIAL MALL SOUTH
LINCOLN NE 68508

CREDITOR ID: 233865-93
NEBRASKA BOARD OF ENGINEERS
ATTN: CHARLES G NELSON
PO BOX 95165
LINCOLN NE 68509

CREDITOR ID: 233688-92
NEBRASKA BOARD OF EXAMINERS
ATTN: KATHY MARTIN
555 N COTNER BLVD
LOWER LEVEL
LINCOLN NE 68505

CREDITOR ID: 234177-41
NEBRASKA DEPARTMENT OF REVENUE
P O BOX 94818
LINCOLN NE 68509-4818

CREDITOR ID: 233677-98
NEBRASKA DEPT OF ENVR QUALITY
ATTN: MIKE J LINDER
1200 N ST STE 400
LINCOLN NE 68508

CREDITOR ID: 233775-41
NEBRASKA WORKFORCE DEVELOPMENT
DEPARTMENT OF LABOR
5404 CEDAR STREET
OMAHA NE 68106-2585

CREDITOR ID: 233773-99
NEILSON ELGGREN LLP
ATTN: TODD NEILSON
10100 SANTA MONICA BLVD, STE 410
LOS ANGELES CA 90067

CREDITOR ID: 2341 71-44
NELDA WELLS SPEARS, TAX COLLECTOR
PO BOX 979
AUSTIN TX 78767-0970

CREDITOR ID: 196558-81
NEOPORT LEASING
P O. BOX 45822
SAN FRANCISCO CA 94145-0822

CREDITOR ID: 130941-85
NESTLE USA INC
ATTN: NOELIA MARTI-COLOM, ESQ
800 NORTH BRAND BLVD
GLENDALE CA 91203

CREDITOR ID: 130402-04
NEUTROGENA CORPORATION
JOHNSON & JOHNSON
ATTN: JOHN BELDER, ESQ
ONE JOHNSON & JOHNSON PLAZA
NEW BRUNSWICK NJ 08933

CREDITOR ID: 234175-17
NEVADA
DEPARTMENT OF TAXATION
PO BOX 98500
LAS VEGAS NV 89193-8560

CREDITOR ID: 234144-38
NEVADA DEPARTMENT OF TAXATION
PO BOX 98500
LAS VEGAS NV 89193-8560

CREDITOR ID: 234145-38
NEVADA DEPARTMENT OF TAXATION
PO BOX 98560
LAS VEGAS NV 89193-8560

CREDITOR ID: 233887-42
NEVADA STATE BOARD OF PROFESSIONAL
ATTN: MONI JOHNSON
1755 E PLUMB LANE
SUITE 125
RENO NV 89502

CREDITOR ID: 233188-92
NEW HAMPSHIRE BOARD OF PROFESSIONAL
ATTN: LOUISE LAVERTU
57 REGIONAL DRIVE
CONCORD NH 03301

CREDITOR ID: 57944-99
NEW HAMPSHIRE DEPT OF ENV SVCS
ATTN: ROBERT W VARNEY
PO BOX 95
SIX HAZEN DRIVE
CONCORD NH 03302-0095

CREDITOR ID: 233771-41
NEW HAMPSHIRE DIV OF PUBLIC HEALTH
BUREAU OF HEALTH RISK ASSESSMENT
ASBESTOS MNGT & CONTROL PROGRAM
HEALTH & WELFARE BUILDING
6 HAZEN DRIVE
CONCORD NH 03301-6527

CREDITOR ID: 44164-84
NEW JERSEY DEP
DIVISION PARKS & FORESTRY
CN 404
TRENTON NJ 08625

CREDITOR ID: 7041-01
NEW JERSEY DEP
420 EAST STATE STREET
CARROLL BUILDING 2ND FLR
CN 402
TRENTON NJ 08625

CREDITOR ID: 856-N
NEW JERSEY DEP
SUBSTANCES CONTROL
120 ROUTE 156
YARDVILLE NJ 08620

CREDITOR ID: 3851-04
NEW JERSEY DEP
DIV OF ENV QUALITY
CN 407
401 EAST STATE STREET
TRENTON NJ 08625-0407

CREDITOR ID: 44145-04
NEW JERSEY DEPARTMENT
OF CORRECTIONS
CN 867
TRENTON NJ 08625

CREDITOR ID: 44174-01
NEW JERSEY DEPARTMENT OF
ENVIRONMENTAL PROTECTION
401 EAST STATE STREET
TRENTON NJ 08625

CREDITOR ID: 121390-01
NEW JERSEY DEPT OF INSURANCE
SURPLUS LINES EXAMINING OFFICE
CN 325
TRENTON NJ 08625-0325

EXHIBIT A SERVICE LIST
Notice Of Deadline For Filing Of Administrative Expense
Claims That Arose, Accrued, Or Otherwise Became Due
And Payable On And Between January 16, 2002 And
November 15, 2003

Page 56 of 107

DEBTOR:  IT GROUP                                    CASE:  02-10118

CREDITOR ID: 224621-30
NEW JERSEY FOREST TREE NURSERY
370 VETERANS HIGHWAY
JACKSON NJ 08527

CREDITOR ID: 44080-91
NEW JERSEY HIGHWAY
GARDEN STATE PKWY
WOODBRIDGE NJ 07095

CREDITOR ID: 33670-91
NEW JERSEY HIGHWAY
AUTHORITY
15 STELTON ROAD
PISCATAWAY NJ 08826

CREDITOR ID: 12353-01
NEW JERSEY NATURAL GAS
PO BOX 1484
ATTN: LISA DEVINE
WALL NJ 07719

CREDITOR ID: 237694-91
NEW JERSEY STATE BOARD OF PROFESSIO
ATTN: ARTHUR RUSSO
124 HALSEY STREET, 3RD FL
NEWARK NJ 07102

CREDITOR ID: 234690-92
NEW JERSEY STATE BOARD OF PROFESSIO
ATTN: ARTHUR RUSSO
PO BOX 45015
NEWARK NJ 07101

CREDITOR ID: 134431-04
NEW JERSEY STATE TREASURY
DEPT OF COMMUNITY AFFAIRS
101 S BROAD ST 4TH FLOOR
TRENTON NJ 08625

CREDITOR ID: 64243-91
NEW JERSEY WATER ENVIRONMEN 2107
160 PITMAN AVENUE
PITMAN NJ 08071

CREDITOR ID: 121858-94
NEW JERSEY FAMILY SUPPORT
PO BOX 4880
TRENTON NJ 08650

CREDITOR ID: 311525-75
NEW JERSEY FAMILY SUPPORT PMT
P.O. BOX 4880
TRENTON NJ 1234701

CREDITOR ID: 234123-42
NEW MEXICO
DEPARTMENT OF REVENUE AND TAXATION
PO BOX 25128
SANTE FE NM 87504-6128

CREDITOR ID: 233993-92
NEW MEXICO BOARD OF LICENSURE
ATTN: ELENA GARCIA
DEPT OF REGISTRATION
1019 MARQUEZ PLACE
SANTA FE NM 87505

CREDITOR ID: 34161-30
NEW MEXICO DEPARTMENT OF REVENUE AND TAXATION
PO BOX 25128
SANTA FE NM 87504-5128

CREDITOR ID: 234188-17
NEW YORK
DEPARTMENT OF TAXATION AND FINANCE
PO BOX 1912
ALBANY NY 12201-1912

CREDITOR ID: 234178-43
NEW YORK CITY, DEPARTMENT OF FINANCE
P O BOX 5060
KINGSTON NY 12402-5060

CREDITOR ID: 34129-30
NEW YORK DEPARTMENT OF TAXATION AND FINANCE
PO BOX 1912
ALBANY NY 12201-1912

CREDITOR ID: 34174-30
NEW YORK DEPARTMENT OF TAXATION AND FINANCE
PO BOX 1912
ALBANY NY 12201-1912

CREDITOR ID: 241423-30
NEW YORK DEPARTMENT OF TAXATION AND FINANCE
PO BOX 1912
ALBANY NY 12201-1912

CREDITOR ID: 14864-01
NEW YORK DEPT ENVIRO CONSERVAT
NEW YORK DEPARTMENT OF ENVIRO-
MENTAL CONSERVATION
50 WOLF ROAD
ALBANY NY 12233-7018

CREDITOR ID: 23797-90
NEW YORK DEPT OF ENVIR CONSERVATION
ATTN: ERIN M CROTTY
625 BROADWAY 14TH FL
ALBANY NY 12233-1010

CREDITOR ID: 137155-30
NEW YORK DEPT. OF ENV. CONSERV
CAROL PERRY
CONTRACT DEVELOPMENT SECTION
ALBANY, NY 12233-7010

CREDITOR ID: 213137-91
NEW YORK DIVISION OF SAFETY & HEALT
LICENSE & CERTIFICATE UNIT
BUILDING 12, RM 161
STATE CAMPUS
ALBANY NY 12201

CREDITOR ID: 32243-01
NEW YORK PORT AUTHORITY
ATTN: THERESA MUNFAKH
ONE WORLD TRADE CENTER, RM 72W
NEW YORK NY 10048

CREDITOR ID: 233093-92
NEW YORK STATE BOARD
ATTN: JANE BLAIR
STATE EDUCATION BLDG
89 WASHINGTON AVENUE
2ND FL MEZZANIE E-WING
ALBANY NY 12234-1000

CREDITOR ID: 108215-84
NEW YORK STATE CORPORATION TAX
COMMISSIONER OF TAXATION
PROCESSING UNIT
ALBANY NY 12201-1909

CREDITOR ID: 123291-84
NEW YORK STATE CORPORATION TAX
PO BOX 1909
ALBANY NY 12201-1909

CREDITOR ID: 13999-01
NEW YORK STATE D E.C.
8274 E. AVON-LIMA ROAD
ATTN: JOE MARCHTELL
AVON NY 14414

# EXHIBIT E

MIAMI 529958 (2K)

PETER C. HARVEY
Attorney General of New Jersey
R.J. Hughes Justice Complex
P.O. Box 093
Trenton, NJ 08625
Attorney for New Jersey
    Department of Environmental Protection

By:  KATHRINE MOTLEY HUNT
    Deputy Attorney General
    (609) 984-7147

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11<br>Case No. 02-10118(MFW)<br>Jointly Administered |
| THE IT GROUP, INC., et al., | |
| Debtors, | OBJECTION TO FIRST<br>AMENDED JOINT CHAPTER 11 PLAN |
| | Hearing: March 29, 2004<br>Objections Due: March 22, 2004<br>Time: 2:00 p.m.<br>Judge: Hon. Mary F. Walrath |

PLEASE TAKE NOTICE that the undersigned, attorney for the State of New Jersey, Department of Environmental Protection ("NJDEP"), hereby objects to the First Amended Joint Chapter 11 Plan for the IT Group, Inc. and its Affiliated Debtors ("Plan") dated February 9, 2004, on the following grounds:

Aa 0057

1.    The NJDEP objects to the approval of the Plan because it does not address the obligations of the Debtor Landbank, Inc. concerning the failure of the Woodbury Creek Wetland Mitigation Bank, on property owned by debtor Woodbury Creek, Inc. in West Deptford Township, Gloucester County, New Jersey.   Debtors obligation is disclosed in Section IV.G (7)(b), page 41, of the First Amended Disclosure Statement, dated February 9, 2004.

2.    Pursuant to the Administrative Order issued on July 7, 2002, the NJDEP ordered Landbank, Inc. to conduct off-site mitigation of 18.94 acres of freshwater wetlands that were drained on the mitigation bank site, in violation of the Freshwater Wetlands Protection Act, N.J.S.A. 13:9B-1 to -30, and its implementing regulations N.J.A.C. 7:7A-1 to -17.9. The mitigation must be done at a ratio of 3 acres of wetlands created for each acre disturbed.   In addition, the NJDEP ordered Landbank, Inc. to restore the required financial assurance for the maintenance and monitoring of the Woodbury Creek Wetland Mitigation Bank that was required as a condition of the Freshwater Wetlands Individual Permit that was issued for the project.   The parties attempts to resolve this matter through settlement have not been successful.

3.    The NJDEP is not a claimant in this proceeding. Rather, the NJDEP seeks performance of the debtor's obligation to comply with the environmental laws of the State of New Jersey. See In re Torwico Electronics, Inc. v. New Jersey Department of

2

**Aa 0058**

<u>Environmental Protection and Energy</u>, 8 F.3d 146 (3d Cir. 1993), <u>cert.</u> <u>denied</u> 511 <u>U.S.</u> 1046(1994).

4. If the Plan is approved and it does not address the debtor's obligation to comply with the New Jersey's environmental laws, the State's ability to ensure the restoration of the resources that were destroyed will be seriously compromised, and the debtor will be in violation of the law.

For these reasons, the NJDEP respectfully objects to the confirmation of the Plan in its present form.

PETER C. HARVEY
ATTORNEY GENERAL OF NEW JERSEY

By: _____
KATHRINE MOTLEY HUNT
Deputy Attorney General

Dated:  March 18, 2004

3

Aa 0059

## CERTIFICATION

I hereby certify that on March _18_, 2004, the attached copy of the NJDEP's Objection to First Amended Joint Chapter 11 Plan was sent by UPS Courier to the following addresses:

David D. Bird
Clerk of Court
U.S. Bankruptcy Court
824 Market St.
Wilmington, DE 19801

Thomas E. Lauria, Esq.
White & Case, LLP
Wachovia Financial Center,
Suite 4900
200 South Biscayne Blvd.
Miami, FL 33131

Jeffrey M. Schlerf, Esq
The Bayard Firm
222 Delaware Ave, Suite 900
Wilmington, DE 19801

Marion Quirk, Esq.
Skadden Arps, Slate, Meagher & Flom
One Rodney Square
PO Box 636
Wilmington, DE 19801

Kenneth Berlin, Esq.
Skadden Arps, Slate, Meagher & Flom
1440 New York Ave., NW
Washington, D.C. 20005-2111

Stephen Karotkin, Esq.
Weil Gotshall & Manges
767 Fifth Ave.
New York, NY 10153

Mark S. Kenney, Esq.
Office of the United States Trustee
J. Caleb Boggs Federal Bldg.
844 King Street, Suite 2313
Lock Box 35
Wilmington, DE 19801

4

Aa 0060

All other parties listed on
The IT Group
Case No. 02-10118(MFW)
2002 Service List

By: _Geraldine Brogley_
     Geraldine Brogley

Dated: 3/18/04

5

UNITED STATES BANKRUPTCY COURT
District of New Jersey

In re:                                        :     Case no.:        02-10118(MFW)
                                              :
The IT Group, Inc.                            :     Chapter:         11
                                              :
                                              :     Judge:           Mary F. Walrath
                        Debtor(s)             :
                                              :

Caption of Pleading being filed: Objection to First Amended Joint Chapter 11 Plan

## CERTIFICATION OF NON COMPLIANCE
## REGARDING CASE MANAGEMENT/ELECTRONIC CASE FILING ("CM/ECF")

I, ( Kathrine M. Hunt ), HEREBY CERTIFY that with respect to the transition in procedure effective October 1, 2003 which requires *mandatory* electronic filing for attorneys who regularly practice before this Court, and which requires attorneys to become trained and certified "Participants" of CM/ECF, if the attorney files ten (10) or more pleadings in a 12 month period, inclusive of the 2003 calendar year prior to October 1st, the following conditions apply (please check applicable provisions):

___X_ (a) I am not currently certified as a CM/ECF Participant. During the twelve (12) month period preceding and including this filing, I have not exceeded the ten (10) document limit; or

_____ (b) I am not currently certified as a CM/ECF Participant. The captioned pleading constitutes my tenth or successive document filed within the preceding twelve (12) month period, and I have contacted the Court to schedule training within thirty (30) days of this filing. My scheduled training date is _____; or

_____ ( c) I have been trained but not yet certified as a CM/ECF Participant; or

_____ (d) I am a certified "Participant" of CM/ECF, but have encountered the following extenuating circumstances which have prevented me from complying with the mandatory filing requirement with respect to the captioned pleading: (briefly describe)

_____

_____

_____; and

___X_ (e) Pursuant to the Court's Notice to the Bar dated June 17, 2003, and posted to the Court's Web site www.njb.uscourts.gov, I have placed the document being filed on a CD ROM in PDF format.

3/18/2004                                         Kathrin M. Hunt
_____                                     _____
Date                                              Signature of Attorney

Aa 0062

# EXHIBIT F

MIAMI 523951 (2K)

RESOLUTION OF THE NEW JERSEY FRESHWATER WETLANDS MITIGATION COUNCIL
CONDITIONALLY APPROVING PHASES I AND II OF WOODBURY CREEK
WETLANDS MITIGATION BANK

WHEREAS, the applicant, U.S. Wetland Services, Inc., has applied for approval of a freshwater wetlands mitigation bank designated as the Woodbury Creek Mitigation Bank, to be located on a parcel of land of approximately 203 acres near Woodbury Creek, West Deptford Township, Gloucester County, New Jersey, and consisting of parts of Block 328, Lots 1 and 1C in the Township, which property is more particularly described in the out bound survey conducted by RETTEW Associates, Inc. for Phase I and Phase II of the Woodbury Creek Wetlands Mitigation Bank, attached hereto as Exhibit A, and is also depicted on the site plan entitled "Survey of Phase I and Phase II, Woodbury Creek Wetland Mitigation Bank, Township of West Deptford, County of Gloucester, State of New Jersey," sheet 1 of 1, dated August 1, 1994, unrevised and prepared by RETTEW Associates, Inc. of Mechanicsburg, P.A.; and

WHEREAS the property in question currently contains 128.73 acres of degraded freshwater wetlands of intermediate resource value and 71.43 acres of uplands, including 18.59 acres of uplands within the 50-foot freshwater wetlands transition area; and

WHEREAS the location of the proposed bank is adjacent to the Woodbury Creek and the Mud Ditch, which drain into the Delaware River, is currently farmed in part, and was previously used as a dredged material site by the United States Army Corps of Engineers; and

WHEREAS the applicant was previously advised by the Council to obtain a letter of "no further action" from the Bureau of Field Operations of the Site Remediation Program, Department of Environmental Protection, in order to address the Council's concerns regarding potential hazardous waste at the site and regarding the end use of the site, following the completion of any mitigation efforts; and

WHEREAS, in order to secure a no further action letter, the applicant submitted the results of sampling done at the subject site to the Bureau of Field Operations, Site Remediation Program, within the Department of Environmental Protection; and

WHEREAS the Site Remediation Program, Department of Environmental Protection determined, based on this sampling, that a Declaration of Environmental Restrictions must be provided, and an evaluation of the ecological impacts of the intended mitigation project be completed before a no further action letter may be issued; and

WHEREAS the applicant proposes to create approximately 38 acres of wetlands, to restore and enhance approximately 128 acres of wetlands, and to enhance approximately 18 acres of uplands within the 50-foot wetlands transition area as Phases I and II of its mitigation bank; and

DEP 243

Aa 0064

WHEREAS the applicant has completed a final water budget, dated October 10, 1994, and the Council finds on the basis of that budget, written comments dated November 4, 1994 from the United States Department of Agriculture, Soil Conservation Service and comments from Dr. Russ Lee, wetlands consultant for U.S. Wetlands Services, Inc., during the November 15, 1994 Council meeting, that there will be adequate hydrology on site to support the proposed creation, and the proposed restoration and enhancement of freshwater wetlands within Phases I and II; and

WHEREAS the applicant has submitted a planting schedule shown on the plans entitled "Planting plan for Proposed Woodbury Creek Wetland Mitigation Bank (Phase I & II), Township of West Deptford, County of Gloucester, State of New Jersey," sheet 1 of 1, dated November 14, 1994, unrevised and prepared by Edward W. Warfel, L.S. of RETTEW Associates, Inc., Mechanicsburg, P.A., and the Council finds on the basis of the plan that suitable species will be used by the applicant to create, enhance and restore wetlands and to enhance uplands within the 50-foot transition area as Phases I and II; and

WHEREAS the applicant has submitted a grading plan shown on the plans entitled "Grading plan for proposed Woodbury Creek Wetland Mitigation Bank (Phase I & II), Township of West Deptford, County of Gloucester, State of New Jersey," sheet 1 of 1, dated November 14, 1994, unrevised and prepared by Edward W. Warfel, L.S. of RETTEW Associates, Inc., Mechanicsburg, P.A., and the Council finds on the basis of that plan that the proposed grading will be suitable to create, restore and enhance wetlands and to enhance upland areas within the 50-foot transition area, as proposed for Phases I and II; and

WHEREAS the Council has considered NJDEP staff comments dated October 18, 1994 and November 15, 1994 which were based on information submitted by U.S. Wetlands Services, and on field site inspections conducted by the Land Use Regulation Program staff on April 13, 1994, June 16, 1994, August 17, 1994 and November 7, 1994; and

WHEREAS on November 15, 1994, the applicant received a Letter of Interpretation from the Department of Environmental Protection (file no. 0820-94-0013.1-LI) confirming the applicant's delineation of freshwater wetlands on Phase I and Phase II of the proposed Woodbury Creek Mitigation Bank and concluding that the on-site wetlands are of intermediate resource value; and

WHEREAS on January 26, 1995, the applicant submitted an Ecological Risk Assessment of Potentially Toxic Trace Elements and PCBs Present in Soil at the proposed Woodbury Bank, in response to the concerns of the Site Remediation Program; and

WHEREAS based on its review of that Risk Assessment and on discussions with the United States Army Corps of Engineers, on March 30, 1995, the Site Remediation Program, Department of Environmental Protection issued a letter to U.S. Wetlands stating that the Department intends to issue a "no further action approval" after a Declaration of Environmental Restrictions is in place which establishes the creation

- 2 -

DEP 244

Aa 0065

of a wetlands in perpetuity and records the presence of environmental contaminants at this site; and

WHEREAS the Department's letter of March 30, 1995 further states that baseline sampling should be conducted at a minimum of five locations representative of the site after site grading has occurred, and that after planting of the site as part of the intended mitigation project, sampling should be conducted every three years at those five sampling locations to confirm a decreasing trend in the availability of contaminants; and

WHEREAS the Council finds that Phases I and II of the proposed mitigation bank have the potential to provide an important freshwater wetlands ecosystem following the completion of proposed mitigation activities in accordance with the plans submitted, provided that all conditions of this conditional approval are met;

NOW THEREFORE BE IT RESOLVED that, pursuant to the authority of N.J.S.A. 13:9B-13 and 13:9B-15, Phases I and II of the Woodbury Creek Mitigation Bank are approved, subject to the following terms and conditions:

1. U.S. Wetland Services, Inc. shall record a Declaration of Environmental and Conservation Restrictions acceptable to the Department of Environmental Protection and the Council and shall receive a "no further action" approval from the Department.

2. U.S. Wetland Services, Inc. shall receive all federal, state and local permits needed to begin all proposed creation, enhancement and restoration activities for Phases I and II.

3. U.S. Wetland Services Inc. shall post bonds in accordance with N.J.A.C. 7:7A-14.1(c) covering the costs of construction of the Woodbury Creek Mitigation Bank, Phases I and II, and the costs of maintenance of the Bank, Phases I and II. The bonds shall be issued by a company authorized under the laws of this state to carry on the business specified at N.J.S.A. 17:17-1(g) and qualified under N.J.S.A. 17:31-3 and shall be made payable to the Wetlands Mitigation Fund. The construction costs covered by the bonds shall include, but not be limited to, the costs of baseline sampling for contaminants recommended by the Department in its letter of March 30, 1995. The maintenance costs shall include, but not be limited to, the costs of the three subsequent sampling rounds referenced in the Department's letter of March 30, 1995.

4. U.S. Wetlands shall secure an agreement with an appropriate public entity or non-profit conservation organization that the entity will accept the property comprising Phase I and Phase II upon completion of the maintenance and monitoring requirements set forth in paragraphs 7 and 9 herein and shall document that the designated donee has been fully appraised of the presence and levels of environmental contaminants on the property.

- 3 -

DEP 245

Aa 0066

5.    Provided that all of the conditions of paragraphs 1 through 4 above have been met, and subject to the schedule contained in paragraph 6 below, acreage credits for activities requiring mitigation shall be available in accordance with the following ratios:

1:1 for enhancement of uplands within the 50-foot transition area
1:1 for creation of freshwater wetlands
3:1 for restoration/enhancement of freshwater wetlands

Based on the signed and sealed plan entitled, "Proposed Planting Plan," the Woodbury Creek Bank, Phase I and Phase II, will contain a total of 99.64 mitigation credits which have been based on the following:

18.59 credits for 50 foot buffer area around bank
42.91 credits for the enhancement/restoration area
38.14 credits for the creation area
99.64 total credits

The breakdown of the 99.64 credits based on habitat type include the following:

70.53 credits of forested wetlands
8.26 credits of scrub/shrub wetlands
2.26 credits of emergent wetlands
18.59 credits of upland buffers
99.64 total credits

6.    No credits shall be available for sale unless and until all conditions in paragraphs 1 through 4 are met and then only in accordance with the following schedule:

1/3 of all credits shall be available after such time as all conditions in paragraphs 1 through 4 are met.

Subject to the provisions of Paragraph 8, below, the remaining credits shall be available after construction of Phases I and II has been successfully completed in accordance with the planting and grading plans submitted, and after baseline sampling for the target compound list plus 30 has been completed following site grading, as required by the Department, as verified by the NJDEP Land Use Regulation Program and the Site Remediation Program.

7.    U.S. Wetland Services, Inc. shall conduct sampling every three years following completion of construction and planting, in accordance with the Department's letter of March 30, 1995, using a New Jersey certified laboratory. This sampling shall occur at the five locations sampled in the baseline analysis and shall include soil, root mass, leaf and fruit structures sampling to confirm uptake and stabilization by the plants. The Site Remediation Program shall determine the parameters to be sampled, based on the results of the baseline sampling. The Land Use Regulation Program, in conjunction with the Site Remediation Program, shall oversee the monitoring of the wetlands creation, restoration and enhancement activities in Phase I and Phase

- 4 -

DEP 246

Aa 0067

II for a period of at least nine years following completion of construction and planting. U.S. Wetland Services, Inc. shall submit monitoring reports to the NJDEP, Staff of the Council no later than November 30th of each monitoring year and shall submit sampling results to the Site Remediation Program and the Land Use Regulation Program no later than 90 days after each sampling event, in accordance with Department's letter of March 30, 1995. The monitoring report due on November 30th of the third year following completion of construction and planting and shall include the following information: a) documentation demonstrating that the goals of the wetland mitigation bank, as shown on the approved signed and sealed site plans, have been satisfied. Documentation will also include a field wetland delineation of the wetland mitigation bank based on techniques as specified in the Federal Manual for Identifying and Delineating Jurisdictional Wetlands (1989); b) evidence documenting 85 percent survival and 85 percent real coverage of the mitigation plantings; and c) evidence documenting that uptake and/or stabilization of contaminants has occurred.

8. Should the Site Remediation Program and the Land Use Regulation Program determine that the results of the baseline sampling and/or the results of any subsequent sampling indicate the presence of contaminants having the potential to cause chronic adverse ecological impacts on plant or animal life, U.S. Wetlands shall be so notified and shall have the right to submit additional information to the Programs on this issue. Pending receipt of any such additional information from U.S. Wetlands, and in accordance with paragraph 10 below, the Land Use Program may suspend the sale of credits upon notice to U.S. Wetlands Upon notice to U.S. Wetlands, the Site Remediation Program and/or Land Use Program may also request that the Council amend this approval on the basis of the results of the baseline or subsequent sampling. Consistent with Paragraph 16, below, suspension of credit sales initiated by the Land Use Program shall be confirmed by the Council after notice to U.S. Wetlands and after U.S. Wetlands has been given an opportunity to be heard by the Council.

9. Once the required nine-year monitoring and sampling period has expired and the applicant has submitted the final sampling report, the Council will make a finding that the mitigation bank is either a success or a failure. The mitigation project will be considered successful if the applicant demonstrates that the wetlands have been created, restored and enhanced, and the 50-foot transition area has been enhanced, as shown on the approved signed and sealed plans, and that the site has an 85 percent survival and 85 percent real coverage of the mitigation plantings. In addition, in accordance with the Department's letter of March 30, 1995, the applicant must also confirm through sampling that uptake and/or stabilization of contaminants has occurred. All remaining financial surety will be released after the Council determines, upon the recommendation of the Land Use Regulation Program and the Site Remediation Program, that the mitigation bank is a success, and so notifies the applicant.

10. The use of credits as mitigation by individual permittees subject to the jurisdiction of the Department shall be subject to review and approval by the Land Use Regulation Program on a case by

- 5 -

DMR 247

Aa 0068

case basis. Use of the credits in New Jersey must be consistent with all state and federal law including, but not limited to, the Freshwater Wetlands Protection Act, N.J.S.A. 13:9B-1 et seq., the Flood Hazard Area Control Act, N.J.S.A. 58:16A-50 et seq., the Waterfront Development Law, N.J.S.A. 12:5-1 et seq., the Wetlands Act of 1970, N.J.S.A. 13:9A-1 et seq., and the Coastal Area Facility Review Act, N.J.S.A. 13:19-1 et seq. The use of credits as mitigation by individual permittees subject to the jurisdiction of the federal government and/or subject to the jurisdiction of any State besides New Jersey shall be subject to approval by the applicable governmental body. Once the out-of-State use of the bank has been approved by the appropriate agencies, U.S. Wetlands Services shall notify NJDEP Staff to the Council in writing two weeks before the withdrawal of credits. That notice shall contain copies of all of the necessary approvals from the appropriate regulating agencies authorizing the use of mitigation credits in the State of New Jersey. The credits exchanged in the bank should generally result in in-kind replacement of palustrine forested wetlands, palustrine scrub-shrub wetlands, and palustrine emergent wetlands. However, use of the bank may also be allowed for "out-of-kind" replacement on a case-by-case basis, as determined by the NJDEP Land Use Regulation Program.

11. Subject to the terms of this conditional approval, credits shall be available for regulated activities within the lower Delaware River watershed only. Eligible activities in New Jersey must therefore fall within the Lower Delaware Drainage Basin, which starts to the north as the Assunpink Creek Watershed and ends to the south at the tip of Cape May, and is highlighted on the map entitled "Drainage Basin Map of New Jersey" attached hereto as Exhibit B.

12. U.S. Wetlands shall maintain a registry of all mitigation credits awarded and available. U.S. Wetlands Services, Inc. shall submit to staff to the Council a statement of credits sold and credits remaining, including the dates of sale, the names of the buyers/applicants, and the permit or file number from the appropriate regulatory agency. The mitigation bank statement must be submitted two weeks after every credit transfer, as well as in an annual report of all bank transactions by November 30th of each year. Failure to submit either of these records or the notice of out-of-state use of credits required in paragraph 10 may be cause for the Land Use Regulation Program to reject the use of credits from the Woodbury Creek Wetlands Mitigation Bank and for the Mitigation Council to void this approval.

13. If as a result of the construction of Phases I and II, suitable habitat for threatened and endangered species is created, and it is confirmed by the Department that such species are in fact using the site for breeding, resting or feeding, the applicant may apply to the Council for additional credits.

14. The bonds posted pursuant to paragraph 3 above shall only be released in accordance with the following: The performance bond for construction of the mitigation bank shall be released after construction of Phases I and II has been successfully completed in accordance with the planting and grading plans submitted, as verified

- 6 -

Aa 0069

by the NJDEP Land Use Regulation Program, and after baseline sampling has been conducted as verified by the Site Remediation Program, and after the Site Remediation Program has confirmed that no changes in the mitigation project are warranted on the basis of the baseline sampling. The maintenance bond shall be maintained until such time as the Land Use Regulation Program, the Site Remediation Program and the Council determine that the monitoring and sampling period has been successfully completed in accordance with paragraphs 7, 8 and 9 above.

15.  By no later than successful completion of the monitoring and sampling period set forth in paragraphs 7 and 9 above, the mitigation site (Phases I and II) shall be donated in fee to the public entity or non-profit conservation organization identified by U.S. Wetlands pursuant to paragraph 4, above.

16.  It is the intent of this Resolution that all reasonable efforts shall be made to ensure that the provisions of this Resolution are implemented and complied with in a cooperative manner.  Reasonable efforts shall be made to resolve at the program level issues arising during the term and operation of this Resolution.  Issues that cannot be resolved at the program level shall be presented to the Council for review and resolution, upon notice to U.S. Wetlands.

17.  Any revisions or modifications to the approved signed and sealed plans for the Woodbury Creek Wetlands Mitigation Bank, Phase I and Phase II, must be approved in writing by the Council.

18.  Nothing in this Resolution shall preclude the Department from enforcing any of its responsibilities under federal or state law.

SO RESOLVED, as aforesaid

AYES: 4

NAYS: 0

ABSTENTIONS: 0

ATTEST:

Terry Caruso
Staff to Council

Blase Cankie
Acting Chairperson

Date 7/11/95

- 7 -

DEP 249

**Aa 0070**

Exhibit A

# RETTEW
Associates, Inc.

5-10 Ritner Road, Suite 102  Mechanicsburg, PA 17055 • (717) 697-3551 • FAX (717) 697-6953

## PHASE I
## WOODBURY CREEK WETLAND MITIGATION BANK
Being a portion of Tax Map Lot 1 and 1-C, Block 328, Plate 26
Township of West Deptford, Gloucester County, New Jersey

ALL that certain tract or parcel of land situate in the Township of West Deptford, County of Gloucester and State of New Jersey, and being more particularly bound and described as follows to wit:

BEGINNING at a point, said point being the southwest corner of land hereinafter described and also being the following two (2) courses from the ending point of Course No. 2 in a deed between Tenneco LNG Real Estate Inc. and Tenneco, Inc., recorded in Deed Book 1249, Page 819 and extending thence; (A) N 27°56'37" W a distance of 48.42 feet (being along Course No. 3 of the aforementioned deed) to a point; (B) thence extending through Lot 1-C, Block 328 S 69°43'50" W 43.88 feet to a point in the center of a sixty (60) foot wide access easement (hereinafter described), the place of beginning; thence along the center of said access easement and continuing through Lot 1-C, Block 328 the following three courses and distances:

1.    N 41°05'45" W  a distance of 288.16 feet to a point;

2.    N 28°54'34" W  a distance of 308.60 feet to a point;

3.    N 27°11'10" W  a distance of 1364.29 feet to a point;

thence continuing through Lot 1-C N 85°30'42" E a distance of 32.52 feet to a point; thence extending through Lot 1 aforementioned the following nine (9) courses and distances:

1.    N 58°59'18" E  a distance of 2387.30 feet to a point;

2.    S 27°18'23" E  a distance of 381.84 feet to a point;

3.    S 32°49'58" E  a distance of 432.57 feet to a point;

4.    S 09°19'35" E  a distance of 448.20 feet to a point;

5.    S 59°40'46" W  a distance of 445.54 feet to a point;

6.    S 28°36'37" E  a distance of 491.72 feet to a point;

7.    S 12°17'00" W  a distance of 746.13 feet to a point;

DEP 250

Aa 0071

8.    S 75°51'19" W  a distance of 651.32 feet to a point;

9.    S 69°43'50" W  a distance of 703.00 feet to a point, the place of BEGINNING.

Said Above described tract containing within said bounds 103.448 acres.

TOGETHER with a sixty (60) foot wide easement for ingress and egress to and from Jobstown Road over the following described premises;

ALL that certain tract or parcel of land situate in the Township of West Deptford, County of Gloucester and State of New Jersey, and being more particularly bound and described as follows to wit:

BEGINNING at a point on the dividing line between Lot 1 and Lot 1-C, Block 328, said point being on the westerly line of Jobstown Road (formerly Church Street) and also being N 34°19'51" W a distance of 69.04 feet from the ending point of Course No. 1 (Deed Book 1249, Page 819); thence extending through Lot 1-C the following nine (9) courses and distances:

1.    S 11°28'50" W  a distance of 83.68 feet to a point;

2.    N 34°19'51" W  a distance of 1575.90 feet to a point;

3.    N 41°05'45" W  a distance of 350.56 feet to a point;

4.    N 28°54'34" W  a distance of 312.25 feet to a point;

5.    N 27°11'10" W  a distance of 1377.29 feet to a point;

6.    N 85°30'42" E  a distance of 65.04 feet to a point;

7.    S 27°11'10" E  a distance of 1351.30 feet to a point;

8.    S 28°54'34" E  a distance of 304.95 feet to a point;

9.    S 41°05'45" E  a distance of 347.70 feet to a point on the dividing line between Lot 1 and Lot 1-C, Block 328, said point also being the ending point of Course No. 2 (Deed Book 1249, Page 819);

thence along said dividing line and Course No. 2 S 34°19'51" E a distance of 1521.12 feet to a point, the place of BEGINNING.

G/49-42545-1\WOODBURY.LEG

DEP 251

Aa 0072



Exhibit B

# RETTEW
## Associates, Inc.

5C:3 Ritner Road, Suite 102, Mechanicsburg, PA 17055 • (717) 697-3951 • FAX (717) 657-6953

### PHASE II
### WOODBURY CREEK WETLAND MITIGATION BANK
Being a portion of Tax Map Lot 1-C, Block 328, Plate 26
Township of West Deptford, Gloucester County, New Jersey

ALL that certain tract or parcel of land situate in the Township of West Deptford, County of Gloucester and State of New Jersey, and being more particularly bound and described as follows to wit:

BEGINNING at a point, said point being the southeast corner of land hereinafter described and also being the following two (2) courses and from the ending point of Course No. 2 in a deed between Tenneco LNG Real Estate and Tenneco Inc., recorded in Deed Book 1249, Page 819 and extending thence: (A) N 27°56'37" W a distance of 48.42 feet (being along Course No. 3 of the aforementioned deed) to a point; (B) thence extending through Lot 1-C, Block 328 S 69°43'50" W 43.88 feet to a point in the center of a sixty (60) foot wide access easement (hereinafter described), the place of beginning; thence extending through Lot 1-C the following twelve (12) courses and distances:

1. S 69°43'50" W a distance of 68.27 feet to a point;

2. S 75°32'47" W a distance of 349.11 feet to a point;

3. S 77°56'50" W a distance of 159.09 feet to a point;

4. S 75°40'40" W a distance of 821.34 feet to a point;

5. S 79°00'24" W a distance of 610.22 feet to a point;

6. N 38°34'46" W a distance of 748.34 feet to a point;

7. N 46°32'29" W a distance of 293.78 feet to a point;

8. N 23°50'01" W a distance of 407.42 feet to a point;

9. N 15°46'42" W a distance of 120.39 feet to a point;

Aa 0073



10.    N 22°27'22" W  a distance of 375.40 feet to a point;

11.    N 34°54'46" W  a distance of 443.97 feet to a point;

12.    N 85°30'42" E  a distance of 2272.32 feet to a point in the center of aforementioned sixty (60) foot wide access easement;

thence continuing through Lot 1-C and extending along the center of said access easement the following three (3) courses and distances:

1.    S 27°11'10" E  a distance of 1364.29 feet to a point;

2.    S 28°54'34" E  a distance of 308.60 feet to a point;

3.    S 41°05'45" E  a distance of 288.16 feet to a point, the place of BEGINNING.

Said above described tract containing within said bounds 99.404 acres.

TOGETHER with a sixty (60) foot wide easement for ingress and egress to and from Jobstown Road over the following described premises:

ALL that certain tract or parcel of land situate in the Township of West Deptford, County of Gloucester and State of New Jersey, and being more particularly bound and described as follows to wit:

BEGINNING at a point on the dividing line between Lot 1 and Lot 1-C, Block 328, said point being on the westerly line of Jobstown Road (formerly Church Street) and also being N 34°19'51" W a distance of 69.04 feet from the ending point of Course No. 1 (Deed Book 1249, Page 819); thence extending through Lot 1-C the following nine (9) courses and distances:

1.    S 11°28'50" W  a distance of 83.68 feet to a point;

2.    N 34°19'51" W  a distance of 1575.90 feet to a point;

3.    N 41°05'45" W  a distance of 350.56 feet to a point;

4.    N 28°54'34" W  a distance of 312.25 feet to a point;

5.    N 27°11'10" W  a distance of 1377.29 feet to a point;

DEP 253

Aa 0074

6.    N 85°30'42" E  a distance of 65.04 feet to a point;

7.    S 27°11'10" E  a distance of 1351.30 feet to a point;

8.    S 28°54'34" E  a distance of 304.95 feet to a point;

9.    S 41°05'45" E  a distance of 347.70 feet to a point on the dividing line between Lot 1 and Lot 1-C, Block 328, said point also being the ending point of Course No. 2 (Deed Book 1249, Page 819); thence along said dividing line and Course No. 2 S 34°19'51" E  a distance of 1521.12 feet to a point, the place of BEGINNING.

G:\#41345-1\WOODPHOLGLE

DEP 254

Aa 0075



Figure II-1

DRAINAGE BAS
OF
NEW J

NEW JERSEY S.
INVENTORY    DEP 255

LEGEND
——— BASIN BOUNDARIES
- - - - WATERSHED BOUNDARIES

Exhibit

# EXHIBIT G

SHAMI 525951 (2K)

08/21/2002 WED 15:14   FAX 4128583887 SHAR E & I LEGAL PGH                     @003/010

IN THE MATTER OF:               ADMINISTRATIVE ORDER
LandBank:                                    AND
                                 NOTICE OF CIVIL ADMINISTRATIVE
                                      PENALTY ASSESSMENT

This Administrative Order and Notice of Civil Administrative Penalty Assessment is issued
pursuant to the authority vested in the Commissioner of the New Jersey Department of
Environmental Protection (hereinafter "NJDEP" or "the Department") by N.J.S.A. 13:1D-1 et
seq., the Freshwater Wetlands Protection Act (hereinafter "the Act"), N.J.S.A. 13:9B-1 et seq.
and the Waterfront Development Act, N.J.S.A. 12:5-3 et seq. and duly delegated to the Assistant
Commissioner of Compliance and Enforcement or their assignee pursuant to N.J.S.A. 13:1B-4.

## FINDINGS

1.      By Resolution, on July 11, 1995, the Freshwater Wetlands Mitigation Council (Council)
conditionally approved a proposal by US Wetland Services to construct a wetland mitigation
bank on a 200 acre tract known as Block 328, Lots 1 and 1C in West Deptford Township,
Gloucester County (the site). It was a condition of that Resolution that the mitigation
banker()provide financial assurance in accordance with the Freshwater Wetlands Protection Act
Rules (N.J.A.C. 7:7A-15) covering the cost of construction of the bank, known as the Woodbury
Creek Wetland Mitigation Bank, and the cost of maintenance of the Bank. It was also a condition
of the Resolution that the mitigation banker monitor the wetland mitigation project for a nine-
year period. US Wetland Services subsequently became manager of the mitigation bank on
behalf of LandBank. LandBank has failed to maintain their financial assurance and has failed to
continue to monitor the project.

2.      Letter of Interpretation (LOI) #0820-94-0013.1 issued by the Department on November
15, 1994, determined that the site contained 128.73 acres of degraded wetlands and 71.43
acresof uplands. At that time, the US Wetland Services proposal was to enhance 128.73 acres of
degraded wetlands, create 38.14 acres of freshwater wetlands and establish 18.59 acres of upland
buffers. Based upon the proposed work on the bank site, the Council determined in 1995 that
99.64 mitigation credits could potentially be sold by LandBank provided all specified conditions
were met.

3.      On May 8, 1996 the Department issued a Freshwater Wetlands Individual Permit,
Waterfront Development Permit and Water Quality Certificate (permit #0820-94-0012.4 and .5)
to construct the wetland mitigation project on the site. It was a condition of these permits that
the permittee shall comply with all terms and conditions as stipulated in the Resolution of the
New Jersey Freshwater Wetlands Mitigation Council dated July 11, 1995. LandBank failed to

adhere to the conditions of that Resolution by failing to maintain the financial assurance, draining existing wetlands and failing to continue to monitor the site.

4.     The Department's Land Use Regulation Program, with the mitigation banker's consultant, performed a detailed field review of the site and the LOI was re-issued with revisions on September 4, 1998. This LOI documented the existence of 34.917 acres of wetlands on the bank site, not 128.73 acres as the original LOI indicated. LandBank applied to the Council to amend the approving Resolution of July 11, 1995 to reduce the wetland enhancement area and increase the wetland creation area. By Resolution of November 12, 1998, the Council conditionally approved proposed amendments to its approval of July 11, 1995, which provided that the banker could proceed with a revised grading plan at its own risk. The grading of the site was completed by the fall of 2000.

5.     On October 19, 2000 the Department sent a letter to US Wetland Services, manager of the Woodbury Creek Wetland Mitigation Bank, stating that the Banker's own consultant, the Louis Berger Group, submitted a report indicating that a portion of the 34.917 acres of existing wetlands on the site no longer appear to exhibit wetland hydrology. The Department further stated that the lost wetland acreage must either be restored or created in another location. The Department concluded the letter with a recommendation that the Banker perform a detailed wetland delineation of the site using the *1989 Federal Manual for Identifying and Delineating Jurisdictional Wetlands.*

6.     In response to the Department's October 19, 2000 letter the Banker did have their consultant perform a detailed wetland delineation in the Spring of 2001. The Department participated in the wetland delineation and confirmed the consultant's field findings. On July 12, 2001 the Louis Berger Group submitted the results of the detailed wetland delineation report which indicated that the construction activities resulted in the creation of some wetlands on the site, but also indicated that 18.924 acres of existing wetlands, verified by the September 4, 1998 LOI, had been drained and no longer met the definition of a wetland. The report indicated that LandBank had created 12.71 acres of wetlands, established 18.59 acres of upland buffers and enhanced 15.99 acres of wetlands. Based on the credit ratio approved by the Council, this completed work would be equivalent to 36.64 mitigation credits. The banker sold a total of 32.75 mitigation credits from the bank. If the mitigation monitoring is successfully completed, the amount of credits sold can be offset by the 36.64 mitigation credits established on the site, however in an effort to build wetlands on the site, LandBank drained 18.924 acres of existing wetlands which is in violation of the Freshwater Wetlands Protection Act, N.J.S.A. 13:9B-1 et seq.

7.     On October 9, 2001 the Department met with representatives from LandBank and the Louis Berger Group to discuss the findings of the July 12, 2001 report. It was concluded that the Banker needed to provide a remedy for the loss of 18.924 acres of wetland on the site and that the remaining areas of the bank needed additional follow-up monitoring and maintenance.

8.     On November 30, 2001, US Wetland Services, on behalf of LandBank, submitted a supplemental monitoring report of the Woodbury Creek Wetland Mitigation Bank which

Aa 0079

discussed the status of the bank activities. It was stated in that supplemental report that the banker continues to investigate the overall issues associated with this bank as expressed at the October meeting and will be providing additional information in the near future.

9.      On February 25, 2002 the Department sent a letter to LandBank requesting that they submit within forty-five (45) days a remedy for the loss of 18.924 acres of wetlands on the bank site as discussed at the October 9, 2001 meeting and noted in their November 30, 2001 letter. LandBank has failed to provide a remedy.

10.      Based on the facts set forth in these FINDINGS, the Department has determined that LandBank, has violated the Freshwater Wetlands Protection Act, N.J.S.A. 13:9B-1 et seq., and the regulations promulgated pursuant thereto, N.J.A.C. 7:7A-1 et seq., specifically N.J.A.C. 7:7A-2.1 and the Waterfront Development Law, N.J.S.A. 12:5-3 et seq..

## ORDER

### NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

11.      LandBank shall submit to this office, within 30 calendar days of receipt of this Administrative Order and Notice of Civil Administrative Penalty Assessment, a mitigation proposal prepared in accordance with N.J.A.C. 7:7A-15.1 et seq. for the off-site mitigation of the 18.924 acres of drained wetlands on the site. The mitigation shall be at a ratio of 3 acres created for each acre disturbed. The proposal shall include a stabilization narrative for the disturbed area in accordance with procedures outlined in "Standards for Soil Erosion and Sediment Control in New Jersey". In addition, the proposal shall include a time schedule for the implementation and completion of the above and a guarantee of 85 percent areal coverage of vegetation over a three year growing period. This action will require prior approval from this office.

12.      Should the Department determine that any part of the restoration proposal to be submitted by LandBank is inadequate or incomplete, then the Department shall provide the submitter with written comments on the proposal. Within 30 calendar days of the Department's comments on the proposal, LandBank shall conform the proposal with the Department's comments and submit the modified plan to the Department. The determination of whether or not the modified proposal, as resubmitted, conforms to the Department's comments shall be made solely by the Department.

13.      Within 30 calendar days after receipt of the Department's final approval of the mitigation proposal, LandBank shall commence the implementation of the final approved mitigation plan in accordance with the approved schedule and must complete the project by the established date.

14.      Within 30 calendar days of receipt of this Administrative Order and Notice of Civil Administrative Penalty Assessment, LandBank shall submit to this office, proof that the required financial assurance for the maintenance and monitoring of the Woodbury Creek Mitigation Bank is in place.

Aa 0080

## NOTICE OF CIVIL ADMINISTRATIVE PENALTY ASSESSMENT

15   Pursuant to N.J.S.A. 13:9B-21a-m and N.J.A.C. 7:7A-16.8 and based upon the above FINDINGS, NJDEP has determined that a civil administrative penalty should be assessed against LandBank in the amount of $ 9000.

16.   Payment of the penalty is due when a final order is issued by the Commissioner subsequent to a hearing, if any, or when this Administrative Order and Notice of Civil Administrative Penalty Assessment becomes a final order (see following paragraph). Payment shall be made by check payable to "Treasurer, State of New Jersey", along with the white copy of the enclosed Enforcement Invoice Form (DEP-062A), to the following address:

Department of Treasury
Division of Revenue
P.O. Box 417
Trenton, NJ 08625-0417

17.   If no request for a hearing is received within 20 calendar days from receipt of this Notice of Civil Administrative Penalty Assessment, it shall become a final order upon the twenty-first calendar day following its receipt, and the penalty shall be due and payable.

## NOTICE OF RIGHT TO A HEARING

18.   Pursuant to N.J.S.A. 52:14B-1 et. seq. and N.J.S.A. 13:9B-21d LandBank is entitled to an administrative hearing. Any hearing request shall be delivered to the addresses referenced in the attached form within twenty (20) calendar days from receipt of this Administrative Order and Notice of Civil Administrative Penalty Assessment. The information required in the attached form must accompany any hearing request made to the Department.

## GENERAL PROVISIONS

19.   This Administrative Order and Notice of Civil Administrative Penalty Assessment is binding on LandBank, its principals, directors, officers, agents, successors, assigns, any trustee in bankruptcy or other trustee, and any receiver appointed pursuant to a proceeding in law or equity.

20.   LandBank shall submit all documents required by this Administrative Order and Notice of Civil Administrative Penalty Assessment by certified mail, return receipt requested, or by hand delivery to the Bureau of Coastal and Land Use Compliance and Enforcement at 1510 Hooper Avenue, Toms River, New Jersey 08753.

21.   Notice is given that violations of any statutes, rules or permits other than those herein cited, may be cause for additional enforcement actions, either administrative or judicial, being instituted without further notice. By issuing this Administrative Order and Notice of Civil

Administrative Penalty Assessment, the Department does not waive its rights to initiate additional enforcement actions.

22.    No obligations imposed by this Administrative Order and Notice of Civil Administrative Penalty Assessment are intended to constitute a debt, damage claim, penalty or other civil action which should be limited or discharged in a bankruptcy proceeding. All obligations imposed by this Administrative Order and Notice of Civil Administrative Penalty Assessment shall constitute continuing regulatory obligations imposed pursuant to the police powers of the State of New Jersey, intended to protect the public health, safety, welfare and environment.

23.    Notice is given that pursuant to N.J.S.A. 13:9B-21d, NJDEP is authorized to assess a civil administrative penalty of not more than $10,000 for each violation and each day during which each violation continues, shall constitute an additional, separate and distinct offense.

24.    Notice is further given that pursuant to N.J.S.A. 13:9B-21e, any person who violates N.J.S.A. 13:9B-1 et seq., or an administrative order issued pursuant to N.J.S.A. 13:9B-21b, or fails to pay a civil administrative assessment in full pursuant to N.J.S.A. 13:9B-21d, shall be subject to a civil penalty not to exceed $10,000 per day of such violation, and each day's continuance of the violation shall constitute an additional, separate and distinct violation.

25.    Notice is further given that pursuant to N.J.S.A. 13:9B-21f, any person who willfully or negligently violates N.J.S.A. 13:9B-1 et seq. shall, upon conviction, be guilty of a crime in the fourth degree and shall be punished by a fine of not less than $2,500 nor more than $25,000 per day of violation. Punishment for a second offense under this subsection shall be a fine of not less than $5,000 nor more than $50,000 per day of violation. Any person who knowingly makes a false statement, representation, or certification in any application, record, or other document filed or required to be maintained under this Act, or who falsifies, tampers with or knowingly renders inaccurate, any monitoring device or method required to be maintained pursuant to this Act shall, upon conviction, be subject to a fine of not more than $10,000.

26.    Except as provided above in the Notice of a Right to a Hearing section, this Administrative Order and Notice of Civil Administrative Penalty Assessment shall be effective upon receipt. The Department shall have the right to amend this Administrative Order and Notice of Civil Administrative Penalty Assessment at any time prior to hearing in this matter.

Date: 7/17/02

BY THE AUTHORITY OF
PETER T. LYNCH, CHIEF,
BUREAU OF COASTAL AND LAND USE
COMPLIANCE AND ENFORCEMENT

Aa 0082

08/21/2002 WED 15:18  FAX 4128563987 SHAW E & I LEGAL PGH                                    ☒008/010

## ADMINISTRATIVE HEARING REQUEST CHECKLIST
## AND TRACKING FORM FOR ENFORCEMENT DOCUMENTS

I.    Enforcement Document Appealed:

_____         _____
Issuance Date of Enforcement Document    Document/File Name

II.   Person Requesting Hearing:

_____         _____
Name/Company                             Name of Attorney if Applicable


_____         _____
Address                                  Address of Attorney

III.  Please include the following information as part of the request:

A.    The date the alleged violator received the enforcement document being contested;
B.    A copy of the Enforcement Document and a list of all issues being appealed;
C.    An admission or denial of each of the findings of fact, or a statement of insufficient knowledge;
D.    The defense to each of the findings of fact in the enforcement document;
E.    Information supporting the request;
F.    An estimate of the time required for the hearing;
G.    A request, if necessary, for a barrier-free hearing location of physically disabled persons;
H.    A clear indication of any willingness to negotiate a settlement with the Department prior to the Department's processing of your hearing request to the Office of Administrative Law; and
I.    Submit this form, completed, signed and dated, with all of the information listed above, with attachments, to:

1.    Department of Environmental Protection
      Office of Legal Affairs
      401 East State Street, P. O. Box 402
      Trenton, NJ 08625-0402
      ATTENTION: Adjudicatory Hearing Requests

2.    Peter Lynch, Acting Administrator, Coastal and Land Use
      Compliance and Enforcement
      401 East State Street, P. O. Box 422
      Trenton, NJ 08625-0422

IV.

_____         _____
SIGNATURE                                DATE

**Aa 0083**

08/21/2002 WED 15:18  FAX 4128663997 SHAW E & I LEGAL PGH  @008/010

**New Jersey Dept. of Environmental Protection**

**ENFORCEMENT INVOICE**

0820-94-0013

| | |
|---|---|
| Document # | |
| Date Rec'd | |
| Amt. | |

DEP-052 A
7/84

☐ Check here if Revised Billing

Coastal & Land Use Compliance &
DIVISION ___Enforcement___
PROGRAM _____

TYPE: ☒ Fine/Penalty  ☐ Cost Recovery

FACILITY ID NO. _____
PROGRAM ID NO. 0820-94-0013

Case/Company Name LandBank,
c/o Frank Rice
Address  TIT Group, Incorporated
2790 Mosside Blvd.
Monroeville, Pa. 15146-2792

**Please identify appropriate category:**

| | Authority: | |
|---|---|---|
| ☐ County | | ☐ Industrial |
| ☐ Local | ☐ Regional | ☒ Commercial |
| ☐ Private | ☐ Local | ☐ Other - |

Specify

| | | |
|---|---|---|
| 7/17/02 | Administrative Order & Notice of Civil Administrative Penalty Assessment Freshwater Wetlands Protection Act N.J.S.A. 13:9B-21 | $9,000 |

| DATE DUE: 8/19/02 | AMOUNT DUE: $9,000 |
|---|---|

Make check payable to: Treasurer, State of New Jersey     Mail to: NJDEP, Bureau of Revenue
CN 417, Trenton, N.J. 08625-0417

*COPY DISTRIBUTION:*    *White - Remittance Copy    Yellow - Company    Pink - Bureau of Revenue    Goldenrod - Division*

**Aa 0084**

08/21/2002 WED 15:17  FAX 4128583997 SHAW P & I LEGAL PGH                    ⊠010/010

0820-94-0013

| DEP-052A 7/54 | New Jersey Dept. of Environmental Protection | Document # _____ |
| | **ENFORCEMENT INVOICE** | Date Rec'd _____ |
| ☐ Check here if Revised Billing | | Amt. _____ |

Coastal & Land Use Compliance &
DIVISION___Enforcement
PROGRAM_____     TYPE: ☒ Fine/Penalty  ☐ Cost Recovery   FACILITY ID NO. _____
PROGRAM ID NO. 0820-94-0013

Cust/Company Name  LandBank
c/o Frank Rice
Address  IT Group, Incorporated
2790 Mosside Blvd.
Monroeville, Pa. 15146-2792

Please identify appropriate category:
☐ County    Authority:      ☐ Industrial
☐ Local     ☐ Regional      ☒ Commercial
☐ Private   ☐ Local         ☐ Other
                                    Specify

| DATE | | AMOUNT |
|---|---|---|
| 7/17/02 | Administrative Order & Notice of Civil Administrative Penalty Assessment Freshwater Wetlands Protection Act N.J.S.A. 13:9B-21 | $9,000 |

DATE DUE:  8/19/02                              AMOUNT DUE: $9,000

Make check payable to: Treasurer, State of New Jersey     Mail to: NJDEP, Bureau of Revenue
                                                           CN 417, Trenton, N.J. 08625-0417

COPY DISTRIBUTION:   White - Remittance Copy   Yellow - Company   Pink - Bureau of Revenue   Goldenrod - Division

**Aa 0085**

# PROPOSED ORDER

564604v1

Aa 0086

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re | : | Chapter 11 |
| THE IT GROUP, INC., et al., | : | Case No. 02-10118 (MFW) |
| Debtors. | : | Jointly Administered |

**ORDER GRANTING MOTION OF THE IT LITIGATION TRUST TRUSTEE
FOR AN ORDER (I) ENFORCING (A) THE BAR DATE ORDER, (B) THE
ADMINISTRATIVE BAR DATE ORDER, (C) THE CONFIRMATION ORDER, AND
(D) THE PLAN INJUNCTION; AND (II) DIRECTING THE NEW JERSEY
DEPARTMENT OF ENVIRONMENTAL PROTECTION TO DISMISS CERTAIN
ADMINISTRATIVE ACTIONS AGAINST THE DEBTORS PURSUANT TO THE
COURT'S ORDERS, THE PLAN INJUNCTION AND 11 U.S.C. §§ 105(a) AND 1142(b);
AND (III) GRANTING RELATED RELIEF [Re: Docket No.    ]**

Upon the Motion (the "Motion")[1] of The IT Litigation Trust Trustee (the "Trustee") of

the IT Litigation Trust, as successor to The IT Group, Inc. and its affiliated debtors (collectively,

the "Debtors"), for an order (i) enforcing (a) the Bar Date Order, (b) the Administrative Bar Date

Order, (c) Confirmation Order and (d) the Plan Injunction; (ii) directing NJDEP to dismiss that

certain NJ Administrative Order and NJ Administrative Proceeding against the Debtors pursuant

the Court's orders, the Plan Injunction and sections 105(a) and 1142(b) of the Bankruptcy Code;

and (iii) granting related relief; and it being found that this Court has jurisdiction; and it

appearing that good and sufficient notice of the Motion having been given and no further notice

of the Motion or of the entry of this Order need be provided; and upon the entire record herein;

and the Court having considered the Motion; and after due deliberation thereon; and good and

sufficient cause appearing therefor, it is hereby:

FOUND THAT

---

[1]     Capitalized terms not otherwise defined herein shall have the meanings assigned to such terms in the
Motion.

MIAMI 525951 (2K)

**Aa 0087**

A.     By the NJ Administrative Order and NJ Administrative Proceeding, NJDEP is asserting Claims (as defined in the Plan) against the Debtors;

B.     The prosecution of the NJ Administrative Order and the NJ Administrative Proceeding against the Debtors constitutes violations of the Court's Bar Date Orders, the Confirmation Orders and the Plan Injunction;

C.     The Claims asserted against the Debtors by the NJDEP in the NJ Administrative Proceeding arose prior to the Effective Date and are barred by the Plan Injunction;

IT IS THEREBY:

1.     ORDERED, that the Motion be, and it hereby is, GRANTED;

2.     ORDERED, that NJDEP is hereby directed to immediately dismiss the NJ Administrative Order and the NJ Administrative Proceeding; and it is further

4.     ORDERED, that this Court shall retain jurisdiction with respect to any matters related to or arising from the implementation of this Order.

Dated: Wilmington, Delaware

_____, 2004


                                        _____
                                        Honorable Mary F. Walrath
                                        Chief United States Bankruptcy Judge

Aa 0088

PETER C. HARVEY
Attorney General of New Jersey
R.J. Hughes Justice Complex
P.O. Box 093
Trenton, NJ  08625
Attorney for New Jersey
    Department of Environmental Protection

By:  KATHRINE MOTLEY HUNT
    Deputy Attorney General
    (609) 984-7147


IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re:<br><br>THE IT GROUP, INC., et al.,<br><br>        Debtors, | Chapter 11<br>Case No. 02-10118(MFW)<br>Jointly Administered<br><br><br>Hearing: December 6, 2004<br>Time: 9:30 a.m.<br>Objection Deadline: Dec. 1, 2004<br>Judge: Hon. Mary F. Walrath |

**OPPOSITION OF THE NEW JERSEY DEPARTMENT OF ENVIRONMENTAL
PROTECTION TO THE MOTION OF IT LITIGATION TRUST TRUSTEE FOR
AN ORDER DIRECTING THE NEW JERSEY DEPARTMENT OF
ENVIRONMENTAL PROTECTION TO DISMISS CERTAIN ADMINISTRATIVE
ACTIONS AGAINST THE DEBTORS PURSUANT TO THE COURT'S ORDERS**

PLEASE TAKE NOTICE that the undersigned, attorney for the

State of New Jersey, Department of Environmental Protection

("NJDEP"), hereby opposes the motion of the IT Litigation Trust

Trustee ("Trustee") for an Order directing the NJDEP to dismiss its

**Aa 0089**

administrative action against the debtors pursuant to the Court's orders, the plan injunction, and 11 U.S.C. § § 105(a) and 1142(b).

On July 7, 2002, the NJDEP issued an Administrative Order to Landbank, Inc., a debtor in the pending bankruptcy proceedings, directing Landbank to conduct off-site mitigation for 18.94 acres of freshwater wetlands that were drained on a mitigation bank site, in violation of the Freshwater Wetlands Protection Act, N.J.S.A. 13:9B-1 to -30, and its implementing regulations N.J.A.C. 7:7A-1 to -17.9. In addition, the NJDEP ordered Landbank to restore the required financial assurances for the maintenance and monitoring of the Woodbury Creek Wetland Mitigation Bank.    Landbank requested a hearing to challenge the Administrative Order and the matter is pending in the State of New Jersey, Office of Administrative Law. The NJDEP filed a Motion for Summary Decision in the administrative matter on November 18, 2004.    The motion is scheduled for oral argument in January 2005.

In its motion papers, the Trustee argues that NJDEP is asserting a claim against the IT Litigation Trust which is barred because NJDEP did not file a proof of claim against the debtor.  The NJDEP, however, is not a claimant in the pending bankruptcy proceeding.  Rather, in its administrative action, the NJDEP seeks performance of the debtor's obligation to comply with the environmental laws of the State of New Jersey.  In In re Torwico Electronics, Inc. v. New Jersey Department of Environmental

2

**Aa 0090**

Protection and Energy, 8 F.3d 146 (3d Cir. 1993), cert. denied 511 U.S. 1046(1994), the Third Circuit held that a state "can exercise its regulatory powers and force compliance with its laws, even if the debtor must expend money to comply." Id. at 150.

In its case against the debtor, the NJDEP does not assert a right to payment. Rather, the State has asserted its right to force the debtor to mitigate for the on-going loss of important natural resources. In enacting the Freshwater Wetlands Protection Act, the Legislature declared that

> freshwater wetlands protect and preserve drinking water supplies by serving to purify surface water and groundwater resources; that freshwater wetlands provide the natural means for flood and storm damage protection, and thereby prevent the loss of life and property through the absorption and storage of water during high runoff periods and the reduction of flood crests; that freshwater wetlands serve as a transition zone between dry land and water courses, thereby retarding soil erosion; that freshwater wetlands provide essential breeding, spawning, nesting and wintering habitats for a major portion of the State's fish and wildlife, including migrating birds, endangered species, and commercially and recreationally important wildlife; and that freshwater wetlands maintain a critical baseflow to surface waters through the gradual release of stored flood waters and groundwater, particularly during drought periods. [N.J.S.A. 13:9B-2].

In the administrative action, the NJDEP alleges that Landbank's actions resulted in the loss of the functions and values of approximately 19 acres of freshwater wetlands in the State of New Jersey. The NJDEP has the right to demand that Landbank provide a

3

**Aa 0091**

remedy for this on-going loss by creating wetlands elsewhere in the
State.    See N.J.S.A. 13:9B-21 and N.J.A.C. 7:7A-15.1.

The Trustee relies on Ohio v. Kovacs, 469 U.S. 274 (1985),
to support its argument that in seeking to compel Landbank to meet
its statutory obligations, NJDEP is exercising a right to payment.
In Kovacs, however, the State of Ohio sought only the payment of
money from the debtor, not the actual cleanup of property.   Id. at
283.   The Supreme Court concluded that the debtor's duty to cleanup
property had been converted into an obligation to pay money, an
obligation that is dischargeable in bankruptcy.    Ibid.    In its
decision, the Supreme Court took pains to make clear that it was not
establishing a broad exception to otherwise valid and enforceable
environmental laws.   Id. at 284-285.    In its administrative action
against the debtor, however, the State of New Jersey is not seeking
the payment of money but is seeking to enforce the affirmative
obligation of the debtor to fully mitigate for the loss of ecological
values caused by the draining of 19 acres of wetlands.   Thus, it is
not asserting a claim against the debtor.

Moreover, under the Bankruptcy Code, the automatic stay
provision does not operate to stay "the commencement or continuation
of an action or proceeding by a governmental unit...to enforce such
governmental unit's or organization's police or regulatory power,
including the enforcement of a judgment other than a money judgment,
obtained in an action or proceeding by the governmental unit...."   11

4

**Aa 0092**

U.S.C. § 362(b)(4).    See United States v. Nicolet, Inc., 857 F.2d
202 (3d Cir. 1988)(action by government to recover cleanup costs fell
within the automatic stay exception);    In the Matter of Garay, M.D.,
89 N.J. 104(1982)(action by State to fix damages for violation of
medicaid statutes was not automatically stayed by physician's
bankruptcy filing).    The regulatory exemption in ¶ 364(b)(4) applies
not only to the NJDEP's demand for mitigation but also to its demand
for reinstatement of financial assurances.    In Safety Kleen, Inc. v.
Wyche, 274 F.3d 846, 866 (4th Cir. 2001), the Court held that the
State of South Carolina's efforts to enforce the financial assurance
regulations pursuant to its hazardous waste facility regulations was
an exercise of its regulatory powers, and, therefore, it was not
stayed by the bankruptcy proceedings.    Likewise, the Department is
exercising its regulatory powers pursuant to the Freshwater Wetlands
Protection Act, N.J.S.A. 13:9B-1 to -30, to ensure that the
mitigation bank that the debtor operated in New Jersey is properly
constructed and maintained.    Accordingly, the NJDEP is not barred by
the pending bankruptcy proceeding from continuing its administrative
action against Landbank to secure a final order.

Finally, the Trustee argues that it is entitled to an
injunction, pursuant to section 105(a) of the Bankruptcy Code,
directing the NJDEP to dismiss its administrative action against the
debtor.  Injunctions of state regulatory actions, however, "are a
rare remedy, appropriate only in exigent circumstances where the

Aa 0093

state regulatory action seriously threatens the bankruptcy process."
<u>Brennan v. Poritz</u>, 198 <u>B.R.</u> 445 (D.N.J. 1996).  In <u>Brennan</u>, the
district court found that a debtor's need for a breathing spell to
effectuate orderly reorganization was not sufficient reason for
bankruptcy court to invoke its general equitable powers to enjoin a
state regulatory proceeding which would otherwise be excepted from
the automatic stay pursuant to 11 <u>U.S.C.</u> § 362(b)(4).  <u>Id.</u> at 451-
452.  The Court noted that the debtor's need for breathing space
"cannot outweigh the police powers exception: 'These provisions [11
U.S.C. § 362(b)] embody Congress' recognition that enforcement of the
environmental protection laws merits a higher priority than the
debtor's rights to a 'cease fire' or the creditors' rights to an
orderly administration of the estate.'" <u>Id.</u> at 452, citing <u>U.S. v.
Nicolet</u>, 857 <u>F.</u>2d 202, 207(3d Cir. 1988).

        In its motion papers, the Trustee does not argue that the
NJDEP's administrative action seriously conflicts with fundamental
bankruptcy polices.  Moreover, the Trustee makes no effort to address
the traditional four-pronged standard for granting injunctive relief.
Indeed, the NJDEP's administrative action to secure a final order
against the debtor poses no conflict with bankruptcy policies and
should be permitted to proceed as a continuation of an action by a
governmental unit to enforce its police and regulatory powers.

6

**Aa 0094**

For these reasons, the NJDEP respectfully opposes the entry of an injunction directing it to dismiss its administrative action against the debtor, Landbank.

PETER C. HARVEY
ATTORNEY GENERAL OF NEW JERSEY

By: _____
KATHRINE MOTLEY HUNT
Deputy Attorney General

Dated: November 29, 2004

7

Aa 0095

CERTIFICATION

I hereby certify that on November 30, 2004, I caused a true and correct copy of the foregoing Opposition of New Jersey Department of Environmental Protection to be served upon the Bankruptcy Court and the parties listed below by overnight mail and upon the parties listed on the 2002 service list by first class mail.

Via UPS Overnight Courier

David D. Bird
Clerk of Court
U.S. Bankruptcy Court
824 Market St.
Wilmington, DE 19801

John K. Cunningham, Esq.
Ileana Cruz, Esq.
White & Case, LLP
Wachovia Financial Center,
Suite 4900
200 South Biscayne Blvd.
Miami, FL 33131

Jeffrey M. Schlerf, Esq.
Eric Sutty, Esq.
The Bayard Firm
222 Delaware Ave, Suite 900
Wilmington, DE 19801

Via First Class Mail:

All other parties listed on
The IT Group
Case No. 02-10118(MFW)
2002 Service List

By: _Geraldine Brogley_
    Geraldine Brogley

Dated: November 30, 2004

8

**Aa 0096**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

- - - - - - - - - - - - - - - - - - - - - - - - - x

In re:                                           :        Chapter 11
                                                 :
THE IT GROUP, INC., et al.,                      :        Case No. 02-10118 (MFW)
                                                 :
        Debtors.                                 :        Jointly Administered
                                                 :
- - - - - - - - - - - - - - - - - - - - - - - - - x        Related to Docket No. 4812

### ORDER CONFIRMING THE FIRST AMENDED JOINT CHAPTER 11 PLAN FOR THE IT GROUP, INC. AND ITS AFFILIATED DEBTORS PROPOSED BY THE DEBTORS AND OFFICIAL COMMITTEE OF UNSECURED CREDITORS

The IT Group, Inc. ("IT Group"), as debtors and debtors in possession

(collectively, with IT Group, the "Debtors") and the Official Committee of Unsecured Creditors

(the "Committee," and together with the Debtors, the "Plan Proponents") appointed in the

Debtors' above-captioned chapter 11 cases (collectively, the "Chapter 11 Cases") having

proposed and filed their First Amended Joint Chapter 11 Plan for The IT Group, Inc. and its

Affiliated Debtors Proposed By the Debtors and the Official Committee of Unsecured Creditors

dated February 9, 2004 (as modified to the extent set forth herein, the "Plan");[1] and the United

States Bankruptcy Court for the District of Delaware (the "Court") having conducted a hearing to

consider confirmation of the Plan on March 29, 2004 (the "Hearing"); and the Court having

considered the testimony at the Hearing of Harry J. Soose, Jr., the Debtors' Chief Operating

Officer (the "Soose Testimony"), and Meade A. Monger (the "Monger Testimony") of

AlixPartners LLC, the Committee's bankruptcy claims specialists and advisors ("AlixPartners");

and the Court having considered the Revised Affidavit of Kathleen M. Logan Certifying Voting

---

[1]     All capitalized terms not otherwise defined herein shall have the respective meanings
ascribed to such terms in the Plan.

MIAMI 461067 v6 (2K)

**Aa 0097**

and Tabulation of Ballots Accepting and Rejecting the First Amended Disclosure Statement

Pursuant to Section 1125 of the Bankruptcy Code with respect to the First Amended Joint

Chapter 11 Plan for The IT Group, Inc. and its Affiliated Debtors Proposed by the Debtors and

the Official Committee of Unsecured Creditors dated March 29, 2004 (Docket No. 4886) (the

"Logan Affidavit") by Logan & Company, Inc., the Debtors' solicitation and tabulation agent

(the "Tabulation Agent"); and the Court being familiar with the Plan and other relevant factors

affecting these jointly administered Chapter 11 Cases pending under chapter 11 of title 11 of the

United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"); and the Court having

taken judicial notice of the record of these Chapter 11 Cases with respect to confirmation of the

Plan, including, without limitation, the Plan, the First Amended Disclosure Statement Pursuant to

Section 1125 of the Bankruptcy Code With Respect to the Plan dated February 9, 2004 (the

"Disclosure Statement"), the exhibits to the Plan and the Disclosure Statement, the Plan

Documents filed with the Court, and the order of the Court dated February 11, 2004 (the

"Approval Order") approving the Disclosure Statement, scheduling a hearing to consider

confirmation of the Plan, setting the voting deadline with respect to the Plan, setting the last day

for filing objections to the Plan, prescribing the form and manner of notice thereof, and

approving the form of Ballots and proposed solicitation and tabulation procedures; and the Court

having found that due and proper notice has been given with respect to the Hearing and the

deadlines and procedures set forth in the Approval Order; and after consideration of the various

objections to the Plan (the "Objections") filed by certain of the Debtors' creditors and other

parties in interest (collectively, the "Objecting Parties"); and the appearances of the Objecting

Parties at the Hearing having been duly noted on the record of the Hearing; and based upon the

entire record of the Hearing, the evidence presented by the Plan Proponents in support of

MIAMI 461067 v8 (2E)

2

**Aa 0098**

confirmation of the Plan, and the statements and arguments of counsel made at the Hearing; and after due deliberation and sufficient cause appearing therefor;

IT IS HEREBY FOUND, CONCLUDED, ORDERED, ADJUDGED, AND DECREED, AS FOLLOWS:[2]

## FINDINGS OF FACT:

### I.    JURISDICTION

A.    The Court has jurisdiction to conduct the Hearing and to confirm the Plan pursuant to 28 U.S.C. § 1334. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B.    Confirmation of the Plan is a core proceeding pursuant to 28 U.S.C. § 157(b), and this Court has jurisdiction to enter a final order with respect thereto.

C.    The Debtors are proper debtors under section 109 of the Bankruptcy Code.

D.    The Debtors and the Committee are proper proponents of the Plan under section 1121 of the Bankruptcy Code.

### II.    MODIFICATIONS TO THE PLAN

E.    At or before the Hearing, the Plan Proponents received written Objections to confirmation of the Plan by the following Objecting Parties: (i) Accardi Plaintiffs and Rochelle Bookspan, (ii) AMTRAK Corporation, (iii) Arctic Slope, Inc., (iv) ATOFINA Petrochemicals, Inc., (v) Guillermo Barrientos, Joyce Barrientos and Christina Alfaro, (vi) California Department of Toxic Substance Control, the Central Valley Regional Water Quality Control Board, the

---

[2]    The Findings of Fact and Conclusions of Law contained herein constitute the findings of fact and conclusions of law required to be entered by this Court pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Rules 7052 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

MIAMI 461067 v8 (2K)

3

Aa 0099

Central Coast Regional Water Quality Board and the San Francisco Regional Water Quality Control Board, (vii) Consolidated City of Indianapolis, (viii) Conestoga-Rovers & Associates, Inc. ("Conestoga-Rovers"), (ix) Crompton Corporation, (x) Roger L. Halley, Co-Trustee, Judith A. Halley Trust No. 1 uad 7/11/96, (xi) Lockheed Martin Corporation, (xii) State of New Jersey, Department of Environmental Protection, (xiii) Occidental Chemical Corporation, (xiv) Potter Anderson & Corroon LLP, (xv) PPG Industries, Inc. ("PPG"), (xvi) Southeastern Pennsylvania Transportation Authority, (xvii) Southwestern Bell Telephone Company, L.P., (xviii) Staro Asset Management, LLC, (xix) The Comptroller of Public Accounts of the State of Texas ("Texas Comptroller"), (xx) The Shaw Group, Inc. ("Shaw"), (xxi) US Bancorp Equipment Finance, Inc., (xxii) The United States of America, on behalf of the United States Environmental Protection Agency, (xxiii) Roberta A. DeAngelis, Acting United States Trustee for Region 3, and (xxiv) Weston Solutions, Inc., f/k/a Roy F. Weston, Inc. In addition, the Plan Proponents advised the Court at the Hearing that they had received an informal Objection to confirmation of the Plan by the United States Securities and Exchange Commission (the "SEC").

F.    At the Hearing, the Plan Proponents proposed certain technical modifications to the Plan (the "Modifications") as set forth below:

G.    Insert a new paragraph after Section 1.1(d) as follows:

(d)(i)    "ADR Administrator" means the Litigation Trust Trustee.

H.    The definition of "Available Proceeds" in Section 1.1(i) of the Plan is modified by including at the end of such definition the following additional language: "at any time Allowed in accordance with the Plan."

I.    The following definitions in Section 1.1 of the Plan are modified and replaced in their entirety with the following:

Aa 00100