(x)   "Committee Designee" means Murray H. Hutchison or such other Person selected by the Committee (or, as otherwise set forth in the Plan or the by-laws adopted by the Oversight Committee) to serve as a member of the Oversight Committee from and after the Effective Date.

(sss)   "Lender Designees" means Cargill Financial Services Corp. and Citadel Investment Group L.L.C., or such other Persons selected by the Agent (on behalf of the Prepetition Lenders) to serve as members of the Oversight Committee from and after the Effective Date.

(kkkk) "Oversight Committee" means the committee comprised of three members (which number may not be increased), consisting of the Committee Designee and the Lender Designees, which shall oversee the administration and implementation of the Plan and the liquidation of the Debtors' Assets in accordance with the Plan.

J.     The definition of "Non-Lender Secured Claim" in Section 1.1(eeee)(ii) of the Plan

is hereby modified by deleting the words "recoupment or."

K.     Section 4.1(b)(iv) of the Plan is modified and replaced in its entirety with the

following: "if such Allowed Non-Lender Secured Claim is secured by a valid right of setoff,

such Claim shall be setoff to the extent of the amount subject to such setoff in accordance with

sections 506(a) and 553 of the Bankruptcy Code."

L.     Section 5.1(c) of the Plan is hereby modified by deleting "without notice or a

hearing" at the end of the first sentence of such section.

M.     Section 7.7 of the Plan is modified by (a) replacing the first sentence of Section

7.7 in its entirety with the following: "On the Effective Date, the Oversight Committee shall be

formed, which Committee shall be comprised of three (3) members (which number may not be

increased), consisting of the Committee Designee and the Lender Designees; provided, however,

that the Lender Designees, collectively, shall be treated as one member of the Oversight

Committee for all purposes under the Plan (including, but not limited to, with respect to voting

Aa 00101

and the Oversight Committee Compensation)"; and (b) replacing the third sentence in Section 7.7 in its entirety with the following: "Oversight Committee decisions shall be made with the approval of the Committee Designee and the Lender Designees."

    N.    Section 7.10(II) of the Plan is modified by (a) removing "with the DTSC" from the first sentence and (b) including at the end of such section the following additional language: "Notwithstanding any provision of this Plan, the United States retains all of its access authorities and rights, including enforcement rights related thereto, with respect to the Landfills. Nothing in this Section 7.10(II) is intended to be nor shall it be construed as a deprivation or waiver by the United States Environmental Protection Agency of any rights or duties as a regulator under the laws of the United States with respect to the Landfills."

    O.    Article XII of the Plan is modified by deleting the word "exclusive" in the first paragraph and by including at the end of such article the following additional language: "Nothing in this Article shall preclude any other tribunal with jurisdiction from exercising its jurisdiction in any action brought by a United States environmental governmental unit, a California state environmental governmental unit, and/or a New Jersey state environmental governmental unit. Notwithstanding the Bankruptcy Court's retention of jurisdiction as set forth in this Article, the IT Environmental Liquidating Trust also shall be subject to the jurisdiction of the Northern District of California."

    P.    Section 13.2, entitled "Discharge of the Debtors," is deleted in its entirety.

    Q.    Section 13.17 of the Plan is modified by deleting the following language: "(and any payments or other Distributions to be made in respect of such Claim hereunder)."

    R.    Section 13.19 is modified in its entirety and replaced with the following:
        Except as otherwise expressly provided in the Plan, all Persons or

**Aa 00102**

entities who have held, hold, or may hold Claims or Equity Interests are permanently enjoined, from and after the Effective Date, from (a) commencing or continuing in any manner any action or other proceeding of any kind on any such Claim or Equity Interest against any of the Debtors, their Estates, Reorganized IT Group, the IT Environmental Liquidating Trust, the IT Environmental Liquidating Trustee, the Litigation Trust, the Litigation Trust Trustee, or the Assets, or against the property or interests in property of any of the Debtors, their Estates, Reorganized IT Group, the IT Environmental Liquidating Trust or the Litigation Trust, (b) the enforcement, attachment, collection or recovery by any manner or means of any Claims and/or Equity Interests, or any judgment, award, decree or order with respect to any Claims and/or Equity Interests, against any of the Debtors, their Estates, Reorganized IT Group, the IT Environmental Liquidating Trust, the IT Environmental Liquidating Trustee, the Litigation Trust, the Litigation Trust Trustee, or the Assets, , or against the property or interests in property of any of the Debtors, their Estates, Reorganized IT Group, the IT Environmental Liquidating Trust or the Litigation Trust, (c) creating, perfecting, or enforcing any encumbrance of any kind against any of the Debtors, their Estates, Reorganized IT Group, the IT Environmental Liquidating Trust, the IT Environmental Liquidating Trustee, the Litigation Trust, the Litigation Trust Trustee, or the Assets, or against the property or interests in property of any of the Debtors, their Estates, Reorganized IT Group, the IT Environmental Liquidating Trust or the Litigation Trust, and (d) asserting any right of ~~set off or~~ subrogation of any kind against any obligation due from any Debtor or against the property or interests in property of any Debtor, with respect to any such Claims or Equity Interests; provided however, that the foregoing shall not affect the rights of a party that were obtained pursuant to a Final Order of the Bankruptcy Court granting limited relief from the automatic stay under section 362(d) of the Bankruptcy Code. Nothing in this Section 13.19 shall enjoin the exercise of any police or regulatory power by a United States environmental governmental unit, a California state environmental governmental unit or a New Jersey state environmental governmental unit with respect to any environmental Claim that arises after the Effective Date.

S.    Section 13.22 of the Plan is modified by deleting the last parenthetical at the end

of the first sentence and replacing it with the following: "(other than Causes of Action of the

Debtors against Harry J. Soose, Jr., except to the extent of available director and officer

7

Aa 00103

insurance coverage, in any action brought by, or on behalf of, the Debtors, the Committee and/or the Litigation Trust)."

    T.     Notice of the Modifications was due and proper under the circumstances.

    U.     The Modifications do not materially or adversely change the treatment of the holder of any Claim or Equity Interest and comply with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019.

    V.     The Plan, as modified by the Modifications, is properly before the Court and all votes cast with respect to the Plan shall be binding and shall be deemed to be cast with respect to the Plan, as modified by the Modifications.

    W.     As set forth on the record of the Hearing, each of the Objections has been either (a) withdrawn at or before the Hearing, (b) resolved by the terms of this Order, or (c) otherwise overruled by the Court.

### III.    SOLICITATION AND VOTING

    X.     Pursuant to the Approval Order, (i) March 22, 2004, at 4:00 p.m. (Prevailing Eastern Time) was the deadline by which all Ballots for Classes 2, 3, 4A and 4B under the Plan (the "Ballots") were required to be completed, executed, marked, and received by the Tabulation Agent in order to be counted as timely votes on the Plan (the "Voting Deadline"); (ii) March 22, 2004 at 4:00 p.m. (Prevailing Eastern Time) was the deadline for filing objections to confirmation of the Plan (the "Objection Deadline"); and (iii) the record date for determining creditors entitled to vote on the Plan was January 14, 2004 (the "Voting Record Date").

    Y.     The Plan Proponents complied with the Approval Order by causing to be transmitted by first class United States mail, postage prepaid, on or before February 17, 2004 (the "Solicitation Deadline"), a Solicitation Package consisting of (i) the Voting Procedures; (ii) the

**Aa 00104**

Disclosure Statement (with the Plan attached as an exhibit); (iii) the Confirmation Hearing Notice; and (iv) the approved form of Ballot with voting instructions and pre-addressed postage-paid envelopes to (a) the Office of the United States Trustee; (b) each holder of a Claim in each of Class 2 (Non-Lender Secured Claims), Class 3 (Lender Claims), Class 4A (General Unsecured Claims) and Class 4(B) (Litigation Unsecured Claims) of the Plan that was (y) listed in the Schedules as of the Voting Record Date or (z) represented by a timely filed proof of claim against any of the Debtors that was not the subject of an objection filed and served by the Solicitation Deadline; and (c) each of the other parties on the 2002 Service List.

Z.     As set forth in the Logan Affidavit, the Tabulation Agent has made a final determination of the validity of, and prepared a tabulation respecting, all acceptances and rejections of the Plan by the impaired Classes of Claims entitled to vote on the Plan, including the amount and number of Claims in each of Classes 2, 3, 4A and 4B voting to accept or reject the Plan. Each of Classes 2 (Non-Lender Secured Claims),[3] 3 (Lender Claims), 4A (General Unsecured Claims) and 4B (Litigation Unsecured Claims) has accepted the Plan by at least two-thirds in amount and a majority in number of the Claims in each such Class actually voting as set forth in the Logan Affidavit. Class 1 (Priority Claims) is unimpaired under the Plan and is deemed to have accepted the Plan in accordance section 1126(f) of the Bankruptcy Code. Classes 4C (Securities Litigation Claims), 4D (Subordinated Claims) and 5 (Equity Interests) will not receive or retain any property under the Plan on account of such Claims or Equity Interests

---

[3] Section 2.5 of the Plan provides that each Non-Lender Secured Claim shall be treated as a separate class for voting and distribution purposes under the Plan. As set forth on the record of the Hearing, Conestoga-Rovers in Class 2C and Richard Myszka in Class 2L rejected the Plan.

Aa 00105

and arc deemed to have rejected the Plan in accordance with section 1126(g) of the Bankruptcy Code.

AA.    The determination of the Tabulation Agent with respect to the voting on the Plan validly and correctly sets forth the tabulation of votes, as required by the Bankruptcy Code, the Bankruptcy Rules and the Approval Order.

BB.    All persons required to receive notice of the Disclosure Statement, the Plan and the Hearing have received proper, timely and adequate notice in accordance with the Approval Order and have had an opportunity to appear and be heard with respect thereto. Such notice is due and proper notice under the Bankruptcy Code and the Bankruptcy Rules.

CC.    The Plan Proponents have solicited and tabulated votes with respect to the Plan in good faith and in a manner consistent with the Bankruptcy Code, the Bankruptcy Rules and the Approval Order.

DD.    The Plan was voted on by all Classes of impaired Claims that were entitled to vote pursuant to the Bankruptcy Code, the Bankruptcy Rules and the Approval Order.

## IV.    THE PLAN SATISFIES SECTION 1129(a)(1) OF THE BANKRUPTCY CODE

EE.    The Plan satisfies all the applicable provisions of the Bankruptcy Code, and, as required by Bankruptcy Rule 3016(a), the Plan is dated and properly identifies the Debtors and the Committee as the Plan Proponents.

### 1.    The Plan Satisfies the Requirements of Section 1122 of the Bankruptcy Code

FF.    In accordance with section 1122(a) of the Bankruptcy Code, Article II of the Plan classifies and places in a Class each Claim against and Equity Interest in the Debtors together with other Claims against or Equity Interests in the Debtors, as applicable, that arc substantially

Aa 00106

similar to such Claims or Equity Interests. The Plan, therefore, satisfies section 1122(a) of the Bankruptcy Code.

### 2. The Plan Satisfies the Requirements of Section 1123(a)(1) of the Bankruptcy Code

GG.    The Plan adequately and properly classifies all Claims and Equity Interests required to be classified and, accordingly, satisfies section 1123(a)(1) of the Bankruptcy Code.

### 3. The Plan Satisfies the Requirements of Section 1123(a)(2) of the Bankruptcy Code

HH.    Pursuant to Section 3.1 of the Plan, Class 1 is identified as unimpaired. Accordingly, the Plan satisfies section 1123(a)(2) of the Bankruptcy Code.

### 4. The Plan Satisfies the Requirements of Section 1123(a)(3) of the Bankruptcy Code

II.    Pursuant to Section 3.2 of the Plan, each of Classes 2, 3, 4A, 4B, 4C, 4D and 5 are identified as impaired. Section 4.1 of the Plan specifies the treatment of each impaired class of Claims and Equity Interests. Accordingly, the Plan satisfies section 1123(a)(3) of the Bankruptcy Code.

### 5. The Plan Satisfies the Requirements of Section 1123(a)(4) of the Bankruptcy Code

JJ.    The Plan provides the same treatment for each Claim or Equity Interest in each class unless the holder of such a Claim or Equity Interest agrees to less favorable treatment. Accordingly, the Plan satisfies section 1123(a)(4) of the Bankruptcy Code.

### 6. The Plan Satisfies the Requirements of Section 1123(a)(5) of the Bankruptcy Code

KK.    Article VII of the Plan sets forth the means by which the Plan will be implemented, including, without limitation, (i) Section 7.1 of the Plan provides for the substantive consolidation for voting and Distribution purposes under the Plan of the Assets of

Aa 00107

and Claims against the Debtors; (ii) Section 7.2 provides for the approval of the release of claims against or guaranteed by non-Debtor Subsidiaries; (iii) Section 7.3 provides for the approval of the merger and dissolution of the IT Group corporate entities upon the transfer of the Debtors' Assets to the Litigation Trust, all as described in such section; (iv) Sections 7.4 and 7.17 provide for the approval of the settlement and compromise of all Causes of Action as of the Effective Date by and between the Agent and the Prepetition Lenders, on the one hand, and the Debtors, non-Debtor Subsidiaries and the Committee (and all of its members), on the other hand, pursuant to the Plan Settlement; (v) Section 7.5 provides for approval of the vesting of title in and distribution of the Shaw Stock upon the occurrence of the Effective Date; (vi) Sections 7.6, 7.7, 7.8, 7.9, 7.10, 7.11, 7.12 and 7.13, provide for the management of the Litigation Trust, the vesting of the Debtors' Assets in the Litigation Trust, the rights and duties of the Oversight Committee including, but not limited to, oversight of administration and implementation of the Plan and the liquidation and distribution of the Debtors' Assets in accordance with the Plan, and the pursuit of the Avoidance Actions and the Estate Causes of Action; (vii) Section 7.10 provides for the implementation of the Litigation Trust in accordance with the Plan and the Litigation Trust Agreement; (viii) Sections 7.20 through 7.30 provide the making of Distributions under the Plan; (ix) Section 7.14 provides for the cancellation of certain instruments and agreements as of the Effective Date; (x) Section 7.31 provides that any matter under the Plan which requires corporate action or involves the corporate structure of the Debtors will have been deemed to have occurred; and (xi) Section 7.32 provides that each of the officers of the Debtors and/or the Litigation Trust Trustee are authorized to take any actions as are necessary and appropriate to effectuate the Plan. Accordingly, the Plan makes adequate means for its implementation and satisfies section 1123(a)(5) of the Bankruptcy Code.

**Aa 00108**

### 7. The Plan Satisfies the Requirements of Section 1123(a)(7) of the Bankruptcy Code

LL. The Plan Proponents disclosed at the Hearing that the Committee and the Agent have elected the Litigation Trust Alternative in accordance with Section 4.2 of the Plan. The Plan Proponents also disclosed at the Hearing that AlixPartners shall serve as the Litigation Trust Trustee, and the manner set forth in the Plan for the selection of the Litigation Trust Trustee is consistent with the interests of the Debtors' creditors and with public policy. The Litigation Trust Trustee shall serve as the Disbursing Agent under the Plan.

MM. An oversight committee of three members (the "Oversight Committee"), consisting of Murray H. Hutchison, as the Committee Designee, and Cargill Financial Services Corp. and Citadel Investment Group L.L.C., as the Lender Designees, shall be appointed as of the Effective Date. The Oversight Committee shall oversee the administration and implementation of the Plan, the liquidation and distribution of the Debtors' Assets in accordance with the Plan, the performance of the Plan Administrator and the pursuit and resolution of the Avoidance Actions and Estate Causes of Action. The Litigation Trust Trustee shall pay the Committee Designee, on the one hand, and the Lender Designees, collectively, on the other hand, the Oversight Committee Compensation in the amount of $5,000 per calendar quarter commencing from and after the Effective Date, plus reimbursement of reasonable expenses. The annual compensation of the IT Environmental Liquidating Trustee, Brian Fournier, is $120,000, subject to a maximum 3.5% increase annually, plus reimbursement of reasonable expenses, which compensation and reimbursement shall be paid from the assets of the IT Environmental Liquidating Trust. Accordingly, the Plan satisfies section 1123(a)(7) of the Bankruptcy Code.

**Aa 00109**

8. **Pursuant to Section 1123(b)(2)
of the Bankruptcy Code,
The Rejections and Assumptions of
Executory Contracts and Unexpired Leases,
as Set Forth in the Plan, are in the
Best Interests of the Debtors' Estate**

NN.    Article XI of the Plan provides that Exhibit 2 to the Plan sets forth a list of

executory contracts and unexpired leases, together with the amount, if any, required to cure any

defaults, to be assumed under the Plan by the Debtors. Any executory contracts or unexpired

leases listed on Exhibit 2 to the Plan shall be deemed to have been assumed by the Debtors on,

and subject to the occurrence of, the Effective Date. The Plan further provides that the entry of

this Order shall constitute approval of such assumptions (subject to the occurrence of the

Effective Date) pursuant to section 365 of the Bankruptcy Code and findings by the Bankruptcy

Court that the amounts listed on Exhibit 2 are sufficient to cure any defaults that may exist, that

each assumption is in the best interest of the Debtors and their estates and that the requirements

for assumption of such executory contracts or unexpired leases under section 365 of the

Bankruptcy Code have been satisfied. Exhibit 3 to the Plan sets forth a list of executory

contracts and unexpired leases, together with the amount, if any, required to cure any defaults, to

be assumed under the Plan by the Debtors and assigned to the IT Environmental Liquidating

Trust. Any executory contracts or unexpired leases listed on Exhibit 3 to the Plan, as such may

have been amended prior to the Confirmation Hearing, shall be deemed to have been assumed by

the Debtors and assigned to the IT Environmental Liquidating Trust on and subject to the

occurrence of the Effective Date. The IT Environmental Liquidating Trust shall satisfy all of the

Debtors' obligations to cure defaults and compensate for damages with respect to the executory

contracts and unexpired leases listed on Exhibit 3 to the Plan pursuant to section 365(b) of the

Aa 00110

Bankruptcy Code, and the Debtors shall be relieved of any liability from and after the Effective Date with respect to such executory contracts and unexpired leases in accordance with section 365(k) of the Bankruptcy Code.

OO.    Any executory contracts or unexpired leases of any of the Debtors that (a) are not listed on Exhibits 2 or 3 to the Plan; (b) have not been approved by Final Order of the Bankruptcy Court prior to the Confirmation Date for assumption and assignment by any of the Debtors or rejection by any of the Debtors; and (c) are not the subject of pending motions to assume on the Confirmation Date shall be deemed to have been rejected by the Debtors as of the Effective Date.

PP.    The Plan shall constitute a motion to reject all such executory contracts and unexpired leases, and the Debtors shall have no liability thereunder except as is specifically provided in the Plan. The entry of this Order shall constitute approval of such rejections pursuant to section 365(a) of the Bankruptcy Code and a finding by the Bankruptcy Court that each such rejected executory contract or unexpired lease is burdensome and that the rejection thereof is in the best interest of the Debtors, their estates, and all parties in interest in the Chapter 11 Cases.

### 9.    The Plan Satisfies Section 1123(b)(3) of the Bankruptcy Code

QQ.    Section 1123(b)(3) of the Bankruptcy Code requires that settlements accomplished under a chapter 11 plan be fair and reasonable. In this case, the Plan provides for a compromise and settlement of certain Causes of Action, including as set forth in the Plan Settlement in Section 7.4 of the Plan. The Court finds that the compromises and settlements provided in the Plan are fair and reasonable and in the best interests of the Debtors, their Estates and creditors. Accordingly, section 1123(b) of the Bankruptcy Code is satisfied.

**Aa  00111**

### 10.  The Transfers of Properties Under the Plan Are Governed by the Exemptions Provided in Section 1146(c) of the Bankruptcy Code

RR.    Pursuant to Section 7.16 of the Plan, all Causes of Action assertable by any of the

Debtors or their Estates shall be retained by, and vested in the Litigation Trust upon the

occurrence of the Effective Date. Further, pursuant to Sections 7.10(I), 7.11 and 13.6 of the Plan,

title to all of the Assets (other than the IT Environmental Liquidating Trust Assets) shall vest in

the Litigation Trust. Pursuant to Section 7.10(II) of the Plan, title to all of the IT Environmental

Liquidating Trust Assets shall vest in the IT Environmental Liquidating Trust. Such transfers are

expressly contemplated by, and in furtherance of, the Plan.

SS.    In accordance with section 1146(c) of the Bankruptcy Code, the transfer or vesting

of any personal or real (tangible or intangible) property of the Debtors in accordance with the

Plan and this Order (including, without limitation, the transfer of the Causes of Action and

Assets to the Litigation Trust and any other transfers or vesting of assets described in (or

contemplated by) the Plan and/or this Order) is not subject to taxation under any state or local

law imposing a stamp, transfer or similar tax.

## V.    THE PLAN PROPONENTS HAVE SATISFIED SECTION 1129(a)(2) OF THE BANKRUPTCY CODE

TT.    The Plan Proponents have complied with all of the provisions of the Bankruptcy

Code and the Bankruptcy Rules governing notice, disclosure and solicitation in connection with

the Plan, the Disclosure Statement, and the exhibits thereto and all other matters considered by

this Court in connection with these Chapter 11 Cases. The Debtors have timely filed with the

Clerk of the Court their Schedules. Good, sufficient and timely notice of the Hearing and all

other hearings in these Chapter 11 Cases have been given to all holders of Claims and Equity

Interests and all other parties in interest to whom notice was required to have been given.

MIAMI 461067 v6 (2X)                              16

Aa 00112

UU.    The Plan Proponents have properly solicited votes with respect to the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code and the Bankruptcy Rules, as well as the Approval Order. All of the Ballots were properly solicited and tabulated in accordance with the Approval Order. Accordingly, the Plan Proponents have satisfied section 1129(a)(2) of the Bankruptcy Code.

## VI.    THE PLAN SATISFIES THE REQUIREMENTS OF SECTION 1129(a)(3) OF THE BANKRUPTCY CODE

VV.    This Court has examined the totality of the circumstances surrounding the formulation of the Plan and the Plan Settlement. The Plan and the Plan Settlement are based on extensive arms' length negotiations between and among the Debtors, the Committee, the Agent (on behalf of the Prepetition Lenders) and certain other parties in interest. The Plan and the Disclosure Statement reflect the culmination of such efforts and the substantial input of each representative group. Additionally, as evidenced by the overwhelming acceptance of the Plan by the holders of Non-Lender Secured Claims in Class 2, Lender Claims in Class 3, and the Debtors' unsecured creditors in Classes 4A and 4B of the Plan as reflected in the Logan Affidavit, the Plan achieves the goals embodied in the Bankruptcy Code. Further, the exculpations and injunctions provided in the Plan, have been negotiated and agreed to by the Debtors, the Committee and the Agent (on behalf of the Prepetition Lenders) in good faith and are consistent with sections 105, 1129 and 1142 of the Bankruptcy Code. Thus, the Plan has been proposed in "good faith and not by any means forbidden by law" as required by section 1129(a)(3) of the Bankruptcy Code.

Aa 00113

VII.  **THE PLAN SATISFIES THE REQUIREMENTS OF SECTION 1129(a)(4) OF THE BANKRUPTCY CODE**

WW.  All payments to be made to professional persons retained by the Plan Proponents pursuant to an order of the Court will be, as set forth in Sections 5.1(b) of the Plan, subject to review and approval by this Court upon final application under sections 330, 331 or 503(b) of the Bankruptcy Code. Accordingly, the Plan satisfies section 1129(a)(4) of the Bankruptcy Code.

VIII.  **THE PLAN SATISFIES THE REQUIREMENTS OF SECTION 1129(a)(5) OF THE BANKRUPTCY CODE**

XX.  The Plan Proponents have disclosed that AlixPartners will serve, on the Effective Date of the Plan, as Litigation Trust Trustee and carry out the respective duties and obligations of the Plan Administrator and Chief Litigation Officer under the Plan. In accordance with the Plan, the Litigation Trust Trustee shall act as the Disbursing Agent with respect to Distributions under the Plan. Accordingly, the Plan satisfies section 1129(a)(5) of the Bankruptcy Code.

IX.  **SECTION 1129(a)(6) OF THE BANKRUPTCY CODE IS NOT APPLICABLE TO THE PLAN**

YY.  The Plan does not provide for any changes in rates that require regulatory approval of any governmental agency. Section 1129(a)(6) of the Bankruptcy Code is accordingly not applicable.

X.  **THE PLAN SATISFIES THE REQUIREMENTS OF SECTION 1129(a)(7) OF THE BANKRUPTCY CODE**

ZZ.  Based on the Liquidation Analysis prepared by AlixPartners, the Soose Testimony and the Monger Testimony at the Hearing, each holder of an impaired Claim in Classes 2, 3, 4A and 4B of the Plan that has not accepted the Plan will receive or retain under the Plan on account of such Claim property of a value, as of the Effective Date, that is not less than the amount that such holder would receive or retain if the Debtors were liquidated under chapter 7 of the

18

Aa 00114

Bankruptcy Code. The holders of claims in Classes 4C (Securities Litigation Claims), 4D (Subordinated Claims), and 5 (Equity Interests), who shall not receive or retain any property under the Plan, and are, therefore, deemed to have rejected the Plan, would receive no distribution if the Debtors were liquidated under chapter 7 of the Bankruptcy Code. Thus, the Plan satisfies the "best interest" test under section 1129(a)(7) of the Bankruptcy Code.

## XI.    SECTION 1129(a)(8) OF THE BANKRUPTCY CODE

AAA.  Although the Plan does not comply with section 1129(a)(8) of the Bankruptcy Code because Classes 4C, 4D and 5 are deemed to have rejected the Plan, the Plan can be confirmed pursuant to the "cramdown" provisions of section 1129(b) of the Bankruptcy Code.

## XII.    THE PLAN SATISFIES THE REQUIREMENTS OF SECTION 1129(a)(9) OF THE BANKRUPTCY CODE

BBB.  Section 5.1(d) of the Plan provides that, on the applicable Distribution Date, each holder of an Allowed Administrative Claim shall receive (i) the amount of such holder's Allowed Claim in one Cash payment, or (ii) such other treatment as may be agreed upon in writing by the Litigation Trust Trustee and such holder; provided, that an Administrative Claim representing a liability incurred in the ordinary course of business of the Debtors may be paid at the Litigation Trust Trustee's election in the ordinary course of business. Section 4.1(a) of the Plan provides that each holder of an Allowed Priority Claim shall either be paid in full in Cash on the Effective Date or all of the legal, equitable and contractual rights of such holder in respect of such Allowed Priority Claim shall be fully reinstated and retained and the holder of such Allowed Priority Claim shall be paid in full in accordance with such reinstated rights. Section 5.2 of the Plan provides for the payment in full of all Allowed Tax Claims as required by section 1129(a)(9)(C) of the Bankruptcy Code.

**Aa 00115**

CCC.   Accordingly, the Plan satisfies the requirements of section 1129(a)(9) of the

Bankruptcy Code.

## XIII.   THE PLAN SATISFIES THE REQUIREMENTS OF SECTION 1129(a)(10) OF THE BANKRUPTCY CODE

DDD.   The Plan satisfies section 1129(a)(10) of the Bankruptcy Code because each of

Classes 3, 4A and 4B which are impaired classes, have voted to accept the Plan by the requisite

majority, determined without including any acceptance of the Plan by insiders.

## XIV.   THE PLAN SATISFIES THE REQUIREMENTS OF SECTION 1129(a)(11) OF THE BANKRUPTCY CODE

EEE.   The Plan Proponents and their respective professional persons have analyzed the

ability of the Debtors to meet their obligations under the Plan.  Based on the Liquidation

Analysis prepared by AlixPartners, the Soose Testimony and the Monger Testimony at the

Hearing, there is a reasonable likelihood that the Debtors will be able to make all payments

required pursuant to the Plan.  Therefore, the Plan satisfies the feasibility requirement of section

1129(a)(11) of the Bankruptcy Code.

## XV.   THE PLAN SATISFIES THE REQUIREMENTS OF SECTION 1129(a)(12) OF THE BANKRUPTCY CODE

FFF.   Section 13.1 of the Plan provides that the Debtors shall pay on the Effective Date

(or as soon as practicable thereafter) all Statutory Fees accrued through and including the

Effective Date, and all such Statutory Fees accrued after the Effective Date shall be paid by the

Litigation Trust in the ordinary course of business.  Accordingly, the Plan satisfies section

1129(a)(12) of the Bankruptcy Code.

Aa 00116

XVI.  **THE PLAN SATISFIES THE REQUIREMENTS OF SECTION 1129(a)(13) OF THE BANKRUPTCY CODE**

GGG.  The Debtors do not provide any "retiree benefits." Accordingly, the Plan satisfies section 1129(a)(13) of the Bankruptcy Code.

XVII.  **SECTION 1129(b) OF THE BANKRUPTCY CODE IS SATISFIED**

HHH.  Class 2C (Conestoga-Rovers) and Class 2L (Richard Myszka) rejected the Plan, and Classes 4C (Securities Litigation Claims), 4D (Subordinated Claims) and 5 (Equity Interests) are deemed to have rejected the Plan.  The Court finds that the Plan does not "discriminate unfairly" and that the treatment accorded such Claims under the Plan is "fair and equitable" as to each impaired Class that did not accept the Plan.  The Equity Interests in Class 5 comprise all Equity Interests in IT Group.  There are no classes of similarly situated Equity Interests that are receiving a Distribution under the Plan.  No class of Claims is receiving more than 100% of the Allowed amount of their Claims.  Moreover, because no class junior to Class 5 exists, no holder of a Claim or Equity Interest that is junior to such non-accepting class will receive or retain any property under the Plan.  Therefore, the Plan satisfies the "absolute priority rule" of section 1129(b) of the Bankruptcy Code.

III.  Based on the foregoing, the Plan satisfies the "cram down" requirements of section 1129(b) of the Bankruptcy Code as to Classes 2C, 2L, 4C, 4D and 5.

**II.  CONCLUSIONS OF LAW:**

1.  The Plan is hereby confirmed.

2.  The record of the Hearing is hereby closed.

3.  The Effective Date of the Plan shall occur on the date selected by the Plan Proponents (with the consent of the Agent) which is no later than thirty (30) days after all of the

Aa 00117

conditions set forth in Section 9.2 of the Plan shall have been satisfied or, if applicable, shall have been waived in accordance with Article IX of the Plan.

4.    The Confirmation Date shall be the record date for purposes of determining the holders of Allowed Claims that are entitled to Distributions that are required to be made under the Plan.

5.    Upon the occurrence of the Effective Date, the Plan shall be binding upon and inure to the benefit of the Debtors and their respective successors and assigns, the holders of Claims and Equity Interests and their respective successors and assigns (whether or not they voted to accept the Plan, whether or not they are impaired under the Plan, and whether or not any such holder has filed, or is deemed to have filed a proof of Claim or proof of Equity Interest), and any other Person giving, acquiring, or receiving property under the Plan. The rights afforded in the Plan and the treatment of all Claims and Equity Interests therein shall be in exchange for and in complete satisfaction of all Claims and Equity Interests of any nature whatsoever, known or unknown, including any interest accrued on or expenses incurred in connection with such Claims from and after the Petition Date, against the Debtors, their Affiliates or their respective estates, Assets, properties or interests in property. Except as otherwise provided in the Plan, (i) on the Effective Date, all such Claims against, and Equity Interests in, the Debtors shall be deemed satisfied in full, by the consideration, if any, provided for in the Plan, and (ii) all Persons and entities shall be precluded from asserting against the Debtors, the Litigation Trust, the Litigation Trust Trustee, the IT Environmental Liquidating Trust, the IT Environmental Liquidating Trustee, or their respective successors, assets or properties any such Claims or Equity Interests or any other or further Claims or Equity Interests arising on or before the Effective Date.

Aa 00118

6.    The Litigation Trust shall not be responsible for any obligations of the Debtors except those obligations expressly set forth in the Plan, the Plan Documents or this Order. Except as otherwise expressly provided in the Plan, all Persons or entities who have held, hold, or may hold Claims or Equity Interests shall be precluded and forever barred from asserting against the Debtors, the Litigation Trust, the Litigation Trust Trustee, the IT Environmental Liquidating Trust, the IT Environmental Liquidating Trustee or their respective successors or assigns, or their assets, properties, or interests in property any such Claims or Equity Interests or any other or further Claims or Equity Interests arising on or before the Effective Date.

7.    This Order shall be binding upon and govern the acts of all Persons and entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Assets.

8.    All liens, Claims, interests, and encumbrances of record shall, upon the Effective Date, be removed and stricken as against the Assets, and all the entities described in the immediately preceding paragraph of this Order are authorized and specifically directed to (a) strike all recorded liens, Claims, interests, or encumbrances against the Assets from their records, official and otherwise, and (b) in accordance with section 1146(c) of the Bankruptcy Code, accept for filing or recording all instruments made or delivered and all deeds or other documents relating to the conveyance of any of the Assets without the payment of any recording tax, stamp tax, transfer tax, or any similar tax (other than income taxes) or any transfer or

MIAMI 461067 v6 (2K)                                23

recording fee or similar costs incurred or assessed by any federal, state, local, or foreign taxing authority (including interest and penalties, if any) and without the presentation of any affidavits, instruments, or returns otherwise required for recording, other than this Order, and the Court retains jurisdiction to enforce the foregoing direction, by contempt or otherwise.

9.    In accordance with section 1141(b) of the Bankruptcy Code and Sections 7.10, 7.11 and 13.6 of the Plan, the Assets (other than the IT Environmental Liquidating Trust Assets) shall vest in the Litigation Trust on the Effective Date free and clear of all Claims, Equity Interests, liens, security interests, encumbrances and other interests.

10.    In accordance with section 1142 of the Bankruptcy Code, upon entry of this Order (and subject to the occurrence of the Effective Date), the Debtors, acting by and through their officers, employees and agents, shall be authorized, without any requirement of further action by the stockholders or directors of the Debtors, to take any and all actions necessary or appropriate to implement the Plan.

11.    The provisions in Section 7.20 through 7.32 and Article VIII of the Plan governing Distributions, reserves, and the procedures for resolving and treating Contested Claims under the Plan are hereby approved and found to be fair and reasonable.

12.    Except as otherwise expressly provided in the Plan, all Causes of Action assertable by any of the Debtors or their Estates, successors or assigns, including but not limited to (i) the Causes of Action listed on Exhibit 1 to the Plan, (ii) Avoidance Actions and Estate Causes of Action and (iii) those Causes of Action hereinafter arising or discovered, regardless of when the facts giving rise to such Causes of Action arose or existed, shall be retained by, and vested in, the Litigation Trust. As of the Effective Date, the Litigation Trust Trustee in his capacity as Chief Litigation Officer and the Plan Administrator, respectively, shall be appointed

Aa 00120

to prosecute the Avoidance Actions and the Estate Causes of Action, all as contemplated by the Plan.

13.    Effective as of and subject to the occurrence of the Effective Date, pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code, entry of this Order shall constitute approval of the assumption or rejection, as provided in Article XI of the Plan and as set forth in Paragraphs NN, OO and PP hereof, of all executory contracts and unexpired leases of the Debtors not previously assumed or rejected, except for executory contracts and unexpired leases that are the subject of a motion to reject, assume or assign pending before the Court on the Confirmation Date.

14.    Claims created by the rejection of executory contracts or unexpired leases or the expiration or termination of any executory contract or unexpired lease prior to the Confirmation Date must be filed with this Court and served on the Debtors and the Litigation Trust Trustee, (a) in the case of an executory contract or unexpired lease rejected by the Debtors prior to the Confirmation Date, in accordance with the later of the Bar Date Order or thirty (30) days after the date of the order of the Bankruptcy Court authorizing and approving such rejection, or (b) in the case of an executory contract or unexpired lease that (i) was terminated or expired by its terms prior to the Confirmation Date, or (ii) is deemed rejected pursuant to Section 11.2 of the Plan, no later than thirty (30) days after the Confirmation Date, or (c) in the case of an executory contract or unexpired lease that is rejected by the Debtors after the Confirmation Date, within thirty (30) days after the date of the order of the Bankruptcy Court authorizing and approving such rejection. Any Claims for which a proof of claim is not filed and served within such time will be forever barred from assertion and shall not be enforceable against the Debtors, Reorganized IT Group, the Litigation Trust, or their respective estates, assets, properties, or interests in property. Unless

**Aa 00121**

otherwise ordered by this Court, all such Claims that are timely filed as provided herein shall be treated as General Unsecured Claims under the Plan subject to objection as provided in the Plan.

15.    In accordance with section 105 of the Bankruptcy Code, the provisions of the Plan governing release, injunction, exculpation and indemnification obligations are hereby approved in all respects.

16.    None of the Plan Proponents, the Agent, the Prepetition Lenders, the Disbursing Agent or any of their respective members, officers, directors, employees, attorneys, advisors, professionals, consultants or agents shall have or incur any liability to any Person for any act or omission in connection with, related to, or arising out of, the Chapter 11 Cases, including, without limitation, the commencement of the Chapter 11 Cases, the negotiation of the Plan, the pursuit of confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for willful misconduct or gross negligence as determined by Final Order of the Bankruptcy Court, and in all respects shall be entitled to rely upon the advice of counsel and all information provided by other exculpated persons herein without any duty to investigate the veracity or accuracy of such information with respect to their duties and responsibilities under, or in connection with, the Plan. Notwithstanding the foregoing and Section 13.5 of the Plan, such exculpation provisions shall not apply to any action before the Bankruptcy Court by Shaw against Committee counsel pursuant to Bankruptcy Rule 9011.

17.    Except as otherwise expressly provided in the Plan, all Persons or entities who have held, hold, or may hold Claims or Equity Interests are permanently enjoined, from and after the Effective Date, from (a) commencing or continuing in any manner any action or other proceeding of any kind on any such Claim or Equity Interest against any of the Debtors, their

Aa 00122

Estates, Reorganized IT Group, the IT Environmental Liquidating Trust, the IT Environmental Liquidating Trustee, the Litigation Trust, the Litigation Trust Trustee, or the Assets, or against the property or interests in property of any of the Debtors, their Estates, Reorganized IT Group, the IT Environmental Liquidating Trust or the Litigation Trust, (b) the enforcement, attachment, collection or recovery by any manner or means of any Claims and/or Equity Interests, or any judgment, award, decree or order with respect to any Claims and/or Equity Interests, against any of the Debtors, their Estates, Reorganized IT Group, the IT Environmental Liquidating Trust, the IT Environmental Liquidating Trustee, the Litigation Trust, the Litigation Trust Trustee, or the Assets, or against the property or interests in property of any of the Debtors, their Estates, Reorganized IT Group, the IT Environmental Liquidating Trust or the Litigation Trust, (c) creating, perfecting, or enforcing any encumbrance of any kind against any of the Debtors, their Estates, Reorganized IT Group, the IT Environmental Liquidating Trust, the IT Environmental Liquidating Trustee, the Litigation Trust, the Litigation Trust Trustee, or the Assets, or against the property or interests in property of any of the Debtors, their Estates, Reorganized IT Group, the IT Environmental Liquidating Trust or the Litigation Trust, and (d) asserting any right of set-off or subrogation of any kind against any obligation due from any Debtor or against the property or interests in property of any Debtor, with respect to any such Claims or Equity Interests; provided however, that the foregoing shall not affect the rights of a party that were obtained pursuant to a Final Order of the Bankruptcy Court granting limited relief from the automatic stay under section 362(d) of the Bankruptcy Code. Nothing in the preceding sentence or Section 13.19 of the Plan shall enjoin the exercise of any police or regulatory power by a United States environmental governmental unit, a California state environmental governmental unit or a New

Aa 00123

Jersey state environmental governmental unit with respect to any environmental Claim that arises after the Effective Date.

18.    Nothing in the Plan or Confirmation Order shall impair the valid setoff rights, if any, of a holder of an Allowed Non-Lender Secured Claim. Nothing in the Plan or the Confirmation Order shall extinguish or enjoin any valid rights of setoff, and the rights of the Debtors and parties asserting setoff rights are preserved.

19.    Notwithstanding any language to the contrary contained in the Disclosure Statement, Plan, and/or this Order, no provision thereof shall release any non-debtor, including any current or former officer and/or director of the Debtors, from any liability to the SEC in connection with any civil action brought by such governmental unit against such Person(s).

20.    Notwithstanding paragraph 17 of this Order and Section 13.19 of the Plan, the Claims of PPG shall be determined in the action styled Envirocraft Corporation v. PPG Industries, Inc. et al., Case No. 03-CV-455-JJF, pending before the United States District Court for the District of Delaware in accordance with the Court's prior order in these Chapter 11 Cases lifting the automatic stay of section 362 of the Bankruptcy Code with respect to such Claims. When such Claims are finally liquidated, they shall be treated under the Plan.

21.    The Debtors shall either (a) have paid, prior to the Confirmation Date, (b) pay on the Effective Date, or (c) segregate a sufficient amount upon entry of this Order to pay when determined and due, all 2002 federal income taxes, if any, as shown on IT Group's consolidated 2002 federal income tax returns.

22.    Allowed Tax Claims, if any, of the Texas Comptroller shall be paid upon the later of the first Distribution Date or entry of an order of the Bankruptcy Court allowing such Tax Claims.

Aa 00124

23.     Notwithstanding anything to the contrary contained herein or in the Plan, the Debtors' claims against Conestoga-Rovers shall not be sold or otherwise transferred free and clear of Conestoga-Rover's Claims against the Debtors.

24.     Notwithstanding anything to the contrary contained in the Plan and in accordance with section 510(b) of the Bankruptcy Code, holders of Allowed Securities Litigation Claims in respect of Equity Interests shall neither receive nor retain any property under the Plan on account of such Claims unless all other Allowed Claims (including Allowed Securities Litigation Claims in respect of debt securities of the Debtors) have been paid in full.

25.     The Litigation Trust Trustee shall treat the Contested Unsecured Claims Reserve and not the holder of a Unsecured Litigation Claim as a grantor or beneficiary of the Litigation Trust until such date as such holder's Litigation Unsecured Claim becomes an Allowed Claim.

26.     Pursuant to section 1146(c) of the Bankruptcy Code and the Plan, the issuance, transfer, or exchange of notes or equity securities under the Plan, the creation of any mortgage, deed of trust, or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, including, without express or implied limitation, asset sales that have occurred during these Chapter 11 Cases, shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax. All filing and recording officers are hereby directed to accept for filing or recording all instruments of transfer to be filed and/or recorded, without the payment of any such taxes.

27.     All entities holding Claims against or Equity Interests in the Debtors that are treated under the Plan are hereby directed to execute, deliver, file or record any document, and to take any action necessary to implement, consummate and otherwise effect the Plan in accordance

**Aa 00125**

with its terms, and all such entities shall be bound by the terms and provisions of all documents, including without limitation the Plan Documents, executed and delivered by them in connection with the Plan.

28.    In accordance with section 1142 of the Bankruptcy Code, the Litigation Trust Trustee, the Disbursing Agent and any other entity designated pursuant to the Plan are hereby authorized and empowered to issue, execute, deliver, file and record any document, and to take any other action necessary or appropriate to implement, consummate and otherwise effectuate the Plan in accordance with its terms, and all such entities shall be bound by the terms and provisions of all documents, including without limitation, the Plan Documents issued, executed and delivered by them as necessary or appropriate to implement or effectuate the Plan.

29.    The Plan Proponents (with the consent of the Agent) are hereby authorized to amend or modify the Plan in accordance with section 1127 of the Bankruptcy Code and Section 13.15 of the Plan.

30.    Any person or entity seeking an allowance of final compensation or reimbursement of expenses for professional services rendered to the Debtors or the Committee or in relation to these Chapter 11 Cases pursuant to sections 327, 328, 330, 331, 503(b) and 1103 of the Bankruptcy Code shall file and serve an application for allowance of final compensation for services rendered and reimbursement of related expenses incurred (each, an "Application") not later than sixty (60) days after the Effective Date (or such later date, if any, as may be established by further order of the Court). All Applications shall cover all services rendered through the Effective Date.

31.    Each Application shall comply with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules and the Local Bankruptcy Rules, and shall set forth, among other

Aa 00126

things, in reasonable detail: (i) the name and address of the applicant; (ii) the nature of the professional or other services rendered and related expenses for which allowance is requested; (iii) the amount of compensation and reimbursement of expenses requested; (iv) whether any payments have been received on account and, if so, the amount or amounts thereof; (v) the amount of any success fee or premium requested and the basis therefor; and (vi) the amounts of compensation and reimbursement of expenses previously allowed by the Court, if any.

32.    From and after the Effective Date, the Litigation Trust and the Disbursing Agent may retain and pay professionals in the ordinary course of business without the need for filing retention applications and fee applications. The Court retains jurisdiction to adjudicate any dispute concerning the payment of any such fees or expenses.

33.    All professional fees and expenses incurred by the Litigation Trust and the Disbursing Agent from and after the Effective Date in connection with the consummation and implementation of the Plan shall be paid by the Litigation Trust and Disbursing Agent in the ordinary course of business without further order of the Bankruptcy Court. The Court shall retain jurisdiction over all such parties in the event of any dispute over the amount of any such fees and expenses.

34.    All fees payable pursuant to section 1930 of title 28, United States Code, as determined by the Court, shall be paid on the Effective Date or as soon as practicable thereafter. After the Effective Date and until these Chapter 11 Cases are closed, the Disbursing Agent shall (i) submit to the Office of the United States Trustee quarterly reports as may be required, including with respect to fees payable pursuant to section 1930 of title 28, United States Code, and (ii) pay any and all such fees as they become due.

Aa 00127

35.    All Objections to confirmation of the Plan either have been withdrawn prior to the entry of this Order, have been adequately addressed by the provisions hereof or have been overruled. All withdrawn objections are hereby deemed withdrawn with prejudice.

36.    Within fifteen (15) days after the entry date of this Order, or within such further time as this Court may allow, the Plan Proponents are hereby directed to mail to all known holders of Claims and Equity Interests, other parties who have requested notice in these cases and all professionals retained pursuant to an order of this Court, a notice of the entry of this Order, which notice shall set forth any deadlines established by this Order or the Plan.

37.    Based upon the record of the Hearing, substantive consolidation of the Debtors to the extent provided in Section 7.1 of the Plan is hereby approved.

38.    The Plan Settlement is hereby approved and the parties are authorized to take all actions that are necessary or appropriate to implement and give effect to the Plan Settlement, subject to the occurrence of the Effective Date.

39.    In the event of any inconsistency between the Plan, or any agreement, instrument or document implementing the Plan, and this Order, the provisions of this Order shall govern.

40.    The provisions of this Order are integrated with each other and are non-severable and mutually dependent.

41.    The failure to specifically include any particular provision of the Plan in this Order shall not in any way diminish or impair the efficacy or enforceability of such provision, it being understood that it is the intent of this Court that the Plan be confirmed and approved in its entirety.

42.    Each finding of fact set forth herein, to the extent it is or may be deemed to be a conclusion of law, shall also constitute a conclusion of law. Each conclusion of law set forth

Aa 00128

herein, to the extent it is or may be deemed to be a finding of fact, shall also constitute a finding

of fact.

Dated: April ___5___ , 2004
          Wilmington, Delaware

                                  _____
                                    Honorable Mary F. Walrath
                                    Chief United States Bankruptcy Judge

MIAMI 461007 v6 (2K)

Aa  00129

*L.1987, c. 156*

REMARKS OF GOVERNOR THOMAS H. KEAN
PUBLIC BILL SIGNING: WETLANDS BILL SIGNING
TRENTON, NEW JERSEY
WEDNESDAY, JULY 1, 1987
*Assembly Bills 2342/2499*

I AM EXTREMELY HAPPY TO BE HERE TODAY. ON MONDAY THE ASSEMBLY AND THE SENATE, IN THE WORDS OF TWO FAMOUS AMERICAN ACTORS, "MADE MY DAY." HECK, THEY MADE MY ENTIRE SUMMER.

THIS IS ONE OF THOSE SPECIAL OCCASIONS WHEN WE CAN ACTUALLY REACH OUT AND TOUCH THE FUTURE. BY SIGNING THIS LEGISLATION WE ARE NOT ONLY PROTECTING OUR FISH, FOWL, SWAMPS AND WOODLANDS TODAY, WE ARE MAKING LIFE A LITTLE BETTER FOR THE UNBORN GENERATIONS WHO WILL CALL NEW JERSEY HOME TOMORROW.

THAT IS WHY THIS BILL IS ONE OF THE MOST IMPORTANT PIECES OF ENVIRONMENTAL LEGISLATION EVER ENACTED IN THIS STATE.

THIS LEGISLATION WILL PROTECT FROM HAPHAZARD DEVELOPMENT 300,000 ACRES OF FRESHWATER WETLANDS, WHICH COVER ABOUT SIX PERCENT OF THE STATE'S LAND MASS. IT WILL HELP KEEP OUR WATER CLEAN, PROTECT AGAINST FLOODING, PRESERVE THE HABITAT FOR ENDANGERED SPECIES AND PROVIDE A SAFE HOME FOR MANY FISH AND BIRDS.

THIS IS A RESPONSIBLE BILL, ONE THAT ACHIEVES THE DELICATE BALANCE BETWEEN ECONOMIC GROWTH AND ENVIRONMENTAL PROTECTION. I HAVE ALWAYS BELIEVED THERE SHOULD BE ROOM IN THIS STATE FOR BOTH THE BULLDOZER AND THE BLUE HERON.

LET ME BRIEFLY MENTION THREE HIGHLIGHTS.

UNDER THE CURRENT 404 PROGRAM, THE ARMY CORPS OF ENGINEERS REGULATES ONLY FILLING IN FRESHWATER WETLANDS. THE NEW PROGRAM, WHICH WILL BE ADMINISTERED BY THE STATE DEPARTMENT OF ENVIRONMENTAL PROTECTION, WILL COVER EVERY ACTIVITY IN THE WETLANDS, FROM MOVING SAND TO DREDGING SOIL.

THE NEW LAW ESTABLISHES THREE CATEGORIES OF WETLANDS: THOSE OF EXCEPTIONAL RESOURCE VALUE, INTERMEDIATE RESOURCE VALUE, AND ORDINARY RESOURCE VALUE. IT PROTECTS THE IMPORTANT BUFFER ZONES SURROUNDING EACH CATEGORY OF WETLANDS ACCORDING TO THEIR DEGREE OF ENVIRONMENTAL SENSITIVITY.

FINALLY, THIS BILL RETAINS LOCAL CONTROL OVER THE WETLANDS UNTIL THE EFFECTIVE DATE OF THE BILL A YEAR FROM NOW.

AS YOU KNOW, THIS BILL WAS THE RESULT OF ARDUOUS NEGOTIATION AND COMPROMISE. IT TOOK ALMOST FOUR YEARS TO WIND ITS WAY THROUGH THE LABYRINTH OF THE LEGISLATIVE PROCESS. I WANT TO THANK A FEW OF THE LEGISLATORS WHOSE WORK MADE IT POSSIBLE.

-2-

THERE IS NO MORE LOYAL FRIEND OF THE ENVIRONMENT IN NEW JERSEY THAN MAUREEN OGDEN. SHE WAS THE LONE VOICE FOR WETLANDS PROTECTION BACK WHEN A GREAT NUMBER OF PEOPLE THOUGHT THAT SWAMPS WERE USELESS MUCK BETTER PAVED THAN PROTECTED. THIS LAW WILL, I BELIEVE, BE HER MOST ENDURING LEGACY TO THE PEOPLE OF NEW JERSEY.

I WANT TO THANK SENATOR DAN DALTON. OVER THE PAST FEW WEEKS, DAN HAS DONE AS MUCH AS ANY LEGISLATOR TO SIT DOWN WITH DEVELOPERS AND ENVIRONMENTALISTS AND FORGE A RESPONSIBLE BILL. HE WORKED QUICKLY AND HE WORKED RESPONSIBLY. QUITE SIMPLY, THIS BILL WOULD NOT HAVE REACHED MY DESK WITHOUT HIS ASSISTANCE.

I ALSO WANT TO NOTE THE CONTRIBUTION OF SENATOR JOHN LYNCH AND ASSEMBLYMAN JACK PENN. THEY KEPT THE WETLANDS ISSUE AT THE TOP OF THEIR LEGISLATIVE AGENDA THROUGH SOME VERY TRYING CIRCUMSTANCES.

AND I WOULD BE REMISS TO NOT APPLAUD THE HARD WORK OF MY ASSISTANT COUNSEL, JANE KELLY. THE LEGAL ISSUES SURROUNDING WETLANDS PROTECTION CAN BE AS MURKY AS THE SWAMPS AND BOGS THEMSELVES. JANE HAS BEEN ABLE TO INTERPRET THESE ISSUES. HER COUNSEL HAS BEEN INVALUABLE, JUST AS IT WAS ON OUR LANDMARK RECYCLING LEGISLATION.

AFTER I PUT MY PEN TO THIS LEGISLATION, I WILL ALSO SIGN AN EXECUTIVE ORDER RESCINDING MY EXECUTIVE ORDER OF JUNE 8, WHICH FROZE ALL DEVELOPMENT IN THE WETLANDS. THAT ORDER LASTED ABOUT AS LONG AS THE SPINKS-COONEY FIGHT. I AM VERY HAPPY ABOUT ITS BRIEF DURATION. I WANT TO PUBLICLY THANK SENATE PRESIDENT JOHN RUSSO AND SPEAKER CHUCK HARDWICK FOR GIVING THIS IMPORTANT LEGISLATION THE SPEEDY APPROVAL IT DESERVED, SO THAT THE MORATORIUM CAN NOW BE LIFTED.

WORKING HERE IN TRENTON, IT IS SOMETIMES EASY TO LOSE SIGHT OF THE PURPOSE OF THIS GREAT ENTERPRISE OF GOVERNMENT.

BOGGED DOWN IN HORSE TRADING OR THE COMPLEX MINUTIA OF LEGISLATION, WE MAY LOSE SIGHT OF THE FACT THAT THE ACTIONS WE TAKE TODAY WILL HAVE IMPORT FOR OUR CHILDREN AND OUR CHILDREN'S CHILDREN.

THIS LEGISLATION WILL HELP ENSURE THAT FUTURE GENERATIONS CAN ENJOY THE SAME CLEAN WATER, THE SAME NATURAL BEAUTY THAT WAS PASSED ON TO US BY OUR PARENTS.

SOLOMON SAID IT BEST IN ECCLESIASTES WHEN HE WROTE, "ONE GENERATION PASSETH AWAY AND ANOTHER GENERATION COMETH: BUT THE EARTH ABIDETH FOREVER."

OUR GENERATION WILL PASS FROM THIS EARTH. BUT BY SIGNING THIS LEGISLATION TODAY, WE ARE MAKING SURE THAT THE PRECIOUS WETLANDS WILL ABIDETH FOREVER.

THAT IS AN AWESOME GIFT TO GIVE.

I WILL NOW SIGN THE BILL.

Aa 00131

IN THE MATTER OF:                    ADMINISTRATIVE ORDER
LandBank:                                          AND
                                      NOTICE OF CIVIL ADMINISTRATIVE
                                          PENALTY ASSESSMENT

This Administrative Order and Notice of Civil Administrative Penalty Assessment is issued
pursuant to the authority vested in the Commissioner of the New Jersey Department of
Environmental Protection (hereinafter "NJDEP" or "the Department") by N.J.S.A. 13:1D-1 et
seq., the Freshwater Wetlands Protection Act (hereinafter "the Act"), N.J.S.A. 13:9B-1 et seq.
and the Waterfront Development Act, N.J.S.A. 12:5-3 et seq. and duly delegated to the Assistant
Commissioner of Compliance and Enforcement or their assignee pursuant to N.J.S.A. 13:1B-4.


## FINDINGS


1.      By Resolution, on July 11, 1995, the Freshwater Wetlands Mitigation Council (Council)
conditionally approved a proposal by US Wetland Services to construct a wetland mitigation
bank on a 200 acre tract known as Block 328, Lots 1 and 1C in West Deptford Township,
Gloucester County (the site). It was a condition of that Resolution that the mitigation
banker()provide financial assurance in accordance with the Freshwater Wetlands Protection Act
Rules (N.J.A.C. 7:7A-15) covering the cost of construction of the bank, known as the Woodbury
Creek Wetland Mitigation Bank, and the cost of maintenance of the Bank. It was also a condition
of the Resolution that the mitigation banker monitor the wetland mitigation project for a nine-
year period. US Wetland Services subsequently became manager of the mitigation bank on
behalf of LandBank. LandBank has failed to maintain their financial assurance and has failed to
continue to monitor the project.


2.      Letter of Interpretation (LOI) #0820-94-0013.1 issued by the Department on November
15, 1994, determined that the site contained 128.73 acres of degraded wetlands and 71.43
acres of uplands. At that time, the US Wetland Services proposal was to enhance 128.73 acres of
degraded wetlands, create 38.14 acres of freshwater wetlands and establish 18.59 acres of upland
buffers. Based upon the proposed work on the bank site, the Council determined in 1995 that
99.64 mitigation credits could potentially be sold by LandBank provided all specified conditions
were met.


3.      On May 8, 1996 the Department issued a Freshwater Wetlands Individual Permit,
Waterfront Development Permit and Water Quality Certificate (permit #0820-94-0012.4 and .5)
to construct the wetland mitigation project on the site. It was a condition of these permits that
the permittee shall comply with all terms and conditions as stipulated in the Resolution of the
New Jersey Freshwater Wetlands Mitigation Council dated July 11, 1995. LandBank failed to

Aa 00132

adhere to the conditions of that Resolution by failing to maintain the financial assurance, draining existing wetlands and failing to continue to monitor the site.

4.    The Department's Land Use Regulation Program, with the mitigation banker's consultant, performed a detailed field review of the site and the LOI was re-issued with revisions on September 4; 1998. This LOI documented the existence of 34.917 acres of wetlands on the bank site, not 128.73 acres as the original LOI indicated. LandBank applied to the Council to amend the approving Resolution of July 11, 1995 to reduce the wetland enhancement area and increase the wetland creation area. By Resolution of November 12, 1998, the Council conditionally approved proposed amendments to its approval of July 11, 1995, which provided that the banker could proceed with a revised grading plan at its own risk. The grading of the site was completed by the fall of 2000.

5.    On October 19, 2000 the Department sent a letter to US Wetland Services, manager of the Woodbury Creek Wetland Mitigation Bank, stating that the Banker's own consultant, the Louis Berger Group, submitted a report indicating that a portion of the 34.917 acres of existing wetlands on the site no longer appear to exhibit wetland hydrology. The Department further stated that the lost wetland acreage must either be restored or created in another location. The Department concluded the letter with a recommendation that the Banker perform a detailed wetland delineation of the site using the *1989 Federal Manual for Identifying and Delineating Jurisdictional Wetlands*.

6.    In response to the Department's October 19, 2000 letter the Banker did have their consultant perform a detailed wetland delineation in the Spring of 2001. The Department participated in the wetland delineation and confirmed the consultant's field findings. On July 12, 2001 the Louis Berger Group submitted the results of the detailed wetland delineation report which indicated that the construction activities resulted in the creation of some wetlands on the site, but also indicated that 18.924 acres of existing wetlands, verified by the September 4, 1998 LOI, had been drained and no longer met the definition of a wetland. The report indicated that LandBank had created 12.71 acres of wetlands, established 18.59 acres of upland buffers and enhanced 15.99 acres of wetlands. Based on the credit ratio approved by the Council, this completed work would be equivalent to 36.64 mitigation credits. The banker sold a total of 32.75 mitigation credits from the bank. If the mitigation monitoring is successfully completed, the amount of credits sold can be offset by the 36.64 mitigation credits established on the site, however in an effort to build wetlands on the site, LandBank drained 18.924 acres of existing wetlands which is in violation of the Freshwater Wetlands Protection Act, N.J.S.A. 13:9B-1 et seq.

7.    On October 9, 2001 the Department met with representatives from LandBank and the Louis Berger Group to discuss the findings of the July 12, 2001 report. It was concluded that the Banker needed to provide a remedy for the loss of 18.924 acres of wetland on the site and that the remaining areas of the bank needed additional follow-up monitoring and maintenance.

8.    On November 30, 2001, US Wetland Services, on behalf of LandBank, submitted a supplemental monitoring report of the Woodbury Creek Wetland Mitigation Bank which

Aa 00133

discussed the status of the bank activities. It was stated in that supplemental report that the banker continues to investigate the overall issues associated with this bank as expressed at the October meeting and will be providing additional information in the near future.

9.      On February 25, 2002 the Department sent a letter to LandBank requesting that they submit within forty-five (45) days a remedy for the loss of 18.924 acres of wetlands on the bank site as discussed at the  October 9, 2001 meeting and noted in their November 30, 2001 letter. LandBank has failed to provide a remedy.

10.     Based on the facts set forth in these FINDINGS, the Department has determined that LandBank, has violated the Freshwater Wetlands Protection Act, N.J.S.A. 13:9B-l et seq., and the regulations promulgated pursuant thereto, N.J.A.C. 7:7A-l et seq., specifically N.J.A.C. 7:7A-2.1 and the Waterfront Development Law, N.J.S.A 12:5-3 et seq..

## ORDER

### NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

11.     LandBank shall submit to this office, within 30 calendar days of receipt of this Administrative Order and Notice of Civil Administrative Penalty Assessment, a mitigation proposal prepared in accordance with N.J.A.C. 7:7A-15.1 et seq. for the off-site mitigation of the 18.924 acres of drained wetlands on the site. The mitigation shall be at a ratio of 3 acres created for each acre disturbed. The proposal shall include a stabilization narrative for the disturbed area in accordance with procedures outlined in "Standards for Soil Erosion and Sediment Control in New Jersey". In addition, the proposal shall include a time schedule for the implementation and completion of the above and a guarantee of 85 percent areal coverage of vegetation over a three year growing period. This action will require prior approval from this office.

12.     Should the Department determine that any part of the restoration proposal to be submitted by LandBank is inadequate or incomplete, then the Department shall provide the submitter with written comments on the proposal. Within 30 calendar days of the Department's comments on the proposal, LandBank shall conform the proposal with the Department's comments and submit the modified plan to the Department. The determination of whether or not the modified proposal, as resubmitted, conforms to the Department's comments shall be made solely by the Department.

13.     Within 30 calendar days after receipt of the Department's final approval of the mitigation proposal, LandBank shall commence the implementation of the final approved mitigation plan in accordance with the approved schedule and must complete the project by the established date.

14.     Within 30 calendar days of receipt of this Administrative Order and Notice of Civil Administrative Penalty Assessment, LandBank shall submit to this office, proof that the required financial assurance for the maintenance and monitoring of the Woodbury Creek Mitigation Bank is in place.

## NOTICE OF CIVIL ADMINISTRATIVE PENALTY ASSESSMENT

15    Pursuant to N.J.S.A. 13:9B-2la-m and N.J.A.C. 7:7A-16.8 and based upon the above FINDINGS, NJDEP has determined that a civil administrative penalty should be assessed against LandBank in the amount of $ 9000.

16.    Payment of the penalty is due when a final order is issued by the Commissioner subsequent to a hearing, if any, or when this Administrative Order and Notice of Civil Administrative Penalty Assessment becomes a final order (see following paragraph). Payment shall be made by check payable to "Treasurer, State of New Jersey", along with the white copy of the enclosed Enforcement Invoice Form (DEP-062A), to the following address:

> Department of Treasury
> Division of Revenue
> P.O. Box 417
> Trenton, NJ 08625-0417

17.    If no request for a hearing is received within 20 calendar days from receipt of this Notice of Civil Administrative Penalty Assessment, it shall become a final order upon the twenty-first calendar day following its receipt, and the penalty shall be due and payable.

## NOTICE OF RIGHT TO A HEARING

18.    Pursuant to N.J.S.A. 52:14B-1 et. seq. and N.J.S.A. 13:9B-21d LandBank is entitled to an administrative hearing. Any hearing request shall be delivered to the addresses referenced in the attached form within twenty (20) calendar days from receipt of this Administrative Order and Notice of Civil Administrative Penalty Assessment. The information required in the attached form must accompany any hearing request made to the Department.

## GENERAL PROVISIONS

19.    This Administrative Order and Notice of Civil Administrative Penalty Assessment is binding on LandBank, its principals, directors, officers, agents, successors, assigns, any trustee in bankruptcy or other trustee, and any receiver appointed pursuant to a proceeding in law or equity.

20.    LandBank shall submit all documents required by this Administrative Order and Notice of Civil Administrative Penalty Assessment by certified mail, return receipt requested, or by hand delivery to the Bureau of Coastal and Land Use Compliance and Enforcement at 1510 Hooper Avenue, Toms River, New Jersey 08753.

21.    Notice is given that violations of any statutes, rules or permits other than those herein cited, may be cause for additional enforcement actions, either administrative or judicial, being instituted without further notice. By issuing this Administrative Order and Notice of Civil

Administrative Penalty Assessment, the Department does not waive its rights to initiate additional enforcement actions.

22.    No obligations imposed by this Administrative Order and Notice of Civil Administrative Penalty Assessment are intended to constitute a debt, damage claim, penalty or other civil action which should be limited or discharged in a bankruptcy proceeding. All obligations imposed by this Administrative Order and Notice of Civil Administrative Penalty Assessment shall constitute continuing regulatory obligations imposed pursuant to the police powers of the State of New Jersey, intended to protect the public health, safety, welfare and environment.

23.    Notice is given that pursuant to N.J.S.A. 13:9B-21d, NJDEP is authorized to assess a civil administrative penalty of not more than $10,000 for each violation and each day during which each violation continues, shall constitute an additional, separate and distinct offense.

24.    Notice is further given that pursuant to N.J.S.A. 13:9B-21e, any person who violates N.J.S.A. 13:9B-1 et seq., or an administrative order issued pursuant to N.J.S.A. 13:9B-21b, or fails to pay a civil administrative assessment in full pursuant to N.J.S.A. 13:9B-21d, shall be subject to a civil penalty not to exceed $10,000 per day of such violation, and each day's continuance of the violation shall constitute an additional, separate and distinct violation.

25.    Notice is further given that pursuant to N.J.S.A. 13:9B-21f, any person who willfully or negligently violates N.J.S.A. 13:9B-1 et seq. shall, upon conviction, be guilty of a crime in the fourth degree and shall be punished by a fine of not less than $2,500 nor more than $25,000 per day of violation. Punishment for a second offense under this subsection shall be a fine of not less than $5,000 nor more than $50,000 per day of violation. Any person who knowingly makes a false statement, representation, or certification in any application, record, or other document filed or required to be maintained under this Act, or who falsifies, tampers with or knowingly renders inaccurate, any monitoring device or method required to be maintained pursuant to this Act shall, upon conviction, be subject to a fine of not more than $10,000.

26.    Except as provided above in the Notice of a Right to a Hearing section, this Administrative Order and Notice of Civil Administrative Penalty Assessment shall be effective upon receipt. The Department shall have the right to amend this Administrative Order and Notice of Civil Administrative Penalty Assessment at any time prior to hearing in this matter.

Date: 7/17/02

BY THE AUTHORITY OF
PETER T. LYNCH, CHIEF,
BUREAU OF COASTAL AND LAND USE
COMPLIANCE AND ENFORCEMENT

Aa 00136

# ORIGINAL

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| THE IT GROUP, INC., et al., | : | Case No. 02-10118 (MFW) |
| Debtors. | : | Jointly Administered |

**ORDER GRANTING MOTION OF THE IT LITIGATION TRUST TRUSTEE
FOR AN ORDER (I) ENFORCING (A) THE BAR DATE ORDER, (B) THE
ADMINISTRATIVE BAR DATE ORDER, (C) THE CONFIRMATION ORDER, AND
(D) THE PLAN INJUNCTION; AND (II) DIRECTING THE NEW JERSEY
DEPARTMENT OF ENVIRONMENTAL PROTECTION TO DISMISS CERTAIN
ADMINISTRATIVE ACTIONS AGAINST THE DEBTORS PURSUANT TO THE
COURT'S ORDERS, THE PLAN INJUNCTION AND 11 U.S.C. §§ 105(a) AND 1142(b);
AND (III) GRANTING RELATED RELIEF [Re: Docket No. 5597]**

Upon the Motion (the "Motion")[1] of The IT Litigation Trust Trustee (the "Trustee") of

the IT Litigation Trust, as successor to The IT Group, Inc. and its affiliated debtors (collectively,

the "Debtors"), for an order (i) enforcing (a) the Bar Date Order, (b) the Administrative Bar Date

Order, (c) Confirmation Order and (d) the Plan Injunction; (ii) directing NJDEP to dismiss that

certain NJ Administrative Order and NJ Administrative Proceeding against the Debtors pursuant

the Court's orders, the Plan Injunction and sections 105(a) and 1142(b) of the Bankruptcy Code;

and (iii) granting related relief; and it being found that this Court has jurisdiction; and it

appearing that good and sufficient notice of the Motion having been given and no further notice

of the Motion or of the entry of this Order need be provided; and upon the entire record herein;

and the Court having considered the Motion; and after due deliberation thereon; and good and

sufficient cause appearing therefor, it is hereby:

FOUND THAT

---

[1]    Capitalized terms not otherwise defined herein shall have the meanings assigned to such terms in the
Motion.

566922v1

A. By the NJ Administrative Order and NJ Administrative Proceeding, NJDEP is asserting Claims (as defined in the Plan) against the Debtors;

B. The prosecution of the NJ Administrative Order and the NJ Administrative Proceeding against the Debtors constitutes violations of the Court's Bar Date Orders, the Confirmation Orders and the Plan Injunction;

C. The Claims asserted against the Debtors by the NJDEP in the NJ Administrative Proceeding arose prior to the Effective Date and are barred by the Plan Injunction;

IT IS THEREBY:

1. ORDERED, that the Motion be, and it hereby is, GRANTED;

2. ORDERED, that NJDEP is hereby directed to immediately dismiss the NJ Administrative Order and the NJ Administrative Proceeding; and it is further

4. ORDERED, that this Court shall retain jurisdiction with respect to any matters related to or arising from the implementation of this Order.

Dated: Wilmington, Delaware

December 6, 2004

Honorable Mary F. Walrath
Chief United States Bankruptcy Judge

566922v1

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

In re:                    )
                          )     Case No. 02-10118(MFW)
     The IT Group, Inc., )      Chapter 11
     et al.               )

### NOTICE OF APPEAL

The State of New Jersey, Department of Environmental Protection, appeals under 28 U.S.C. § 158(a) from the Order of the bankruptcy judge directing the New Jersey Department of Environmental Protection to dismiss an administrative proceeding against Landbank, Inc., a debtor in this matter, which was entered on the docket in the above-captioned bankruptcy case on the 8th day of December 2004.

The names of all parties to the order appealed from and the names, address and telephone numbers of their respective attorneys are as follows:

Counsel for Debtors

Jeffrey Schlerf
Eric Sutty
The Bayard Firm
222 Delaware Avenue, Suite 900
Wilmington, DE 19801
(302) 655-5000

John Cunningham
Ileana Cruz
White & Case, LLP
Wachovia Financial Center
200 South Biscayne Blvd., Suite 4900
Miami, FL 33131
(305) 371-2700

Aa 00139

Counsel for New Jersey Department of Environmental Protection

Kathrine Motley Hunt
Deputy Attorney General
R.J. Hughes Justice Complex
25 Market Street
PO Box 093
Trenton, NJ 08625

Dated: December 16, 2004

                           Peter C. Harvey
                           Attorney General of New Jersey
                           Attorney for Appellant

        Signed:            _____
        Attorney Name:     Kathrine Motley Hunt
                           Deputy Attorney General
                           R.J. Hughes Justice Complex
                           25 Market Street, P.O. Box 093
                           Trenton, NJ 08625
        Telephone No.:     (609) 984-7147

**Aa 00140**

UNITED STATES BANKRUPTCY COURT
District of New Jersey

In re:                                    Case no.:    02-10118-MFW

I.T GROUP, INC.                           Chapter:          11

                                          Judge:      Mary F. Walrath
              Debtor(s)

Caption of Pleading being filed:    Notice of Appeal

## CERTIFICATION OF NON COMPLIANCE
## REGARDING CASE MANAGEMENT/ELECTRONIC CASE FILING ("CM/ECF")

I, ( Kathrine M. Hunt ), HEREBY CERTIFY that with respect to the transition in procedure effective October 1, 2003 which requires *mandatory* electronic filing for attorneys who regularly practice before this Court, and which requires attorneys to become trained and certified "Participants" of CM/ECF, if the attorney files ten (10) or more pleadings in a 12 month period, inclusive of the 2003 calendar year prior to October 1", the following conditions apply (please check applicable provisions):

___x___ (a) I am not currently certified as a CM/ECF Participant. During the twelve (12) month period preceding and including this filing, I have not exceeded the ten (10) document limit; or

_____ (b) I am not currently certified as a CM/ECF Participant. The captioned pleading constitutes my tenth or successive document filed within the preceding twelve (12) month period, and I have contacted the Court to schedule training within thirty (30) days of this filing. My scheduled training date is _____ ; or

_____ ( c) I have been trained but not yet certified as a CM/ECF Participant; or

_____ (d) I am a certified "Participant" of CM/ECF, but have encountered the following extenuating circumstances which have prevented me from complying with the mandatory filing requirement with respect to the captioned pleading: (briefly describe)

_____

_____

_____

_____ ; and

___x___ (e) Pursuant to the Court's Notice to the Bar dated June 17, 2003, and posted to the Court's Web ite www.njb.uscourts.gov, I have placed the document being filed on a CD ROM in PDF format.

____12/10/04____                          _____
      Date                                Signature of Attorney

**Aa 00141**

FILED
2005 JAN -5 AM 9:35
CLERK
US BANKRUPTCY COURT
DISTRICT OF DELAWARE

1
2          UNITED STATES BANKRUPTCY COURT
                DISTRICT OF DELAWARE
3                                    .
4    IN RE:                          .    Chapter  11
5    IT Group, Inc. et al.,          .
                                     .
6         Debtor(s).                 .    Bankruptcy #02-10118 (MFW)
     . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
7
                          Wilmington, DE
8                        December 6, 2004
                            9:35 a.m.
9
                    TRANSCRIPT OF OMNIBUS HEARING
10          BEFORE THE HONORABLE MARY F. WALRATH
                UNITED STATES BANKRUPTCY JUDGE
11
12   APPEARANCES:
13   For the IT Litigation:      Eric Sutty, Esq.
     Trust                       The Bayard Firm
14                               222 Delaware Avenue
                                 P.O. Box 25130
15                               Wilmington, DE 19899
16                               John Cunningham, Esq.
                                 White & Case, LLP
17                               Wachovia Financial Center
                                 Suite 4900
18                               200 South Biscayne Blvd.
                                 Miami FL 33131
19
                                 Ileana Cruz
20                               White & Case, LLP
                                 Wachovia Financial Center
21                               Suite 4900
                                 200 South Biscayne Blvd.
22                               Miami, FL 33131
23
24
25

*Writer's Cramp, Inc.*
*Certified Court Transcribers*
*732-329-0191*



2

| | | |
|---|---|---|
| 1 | For the Trustee of the IT: Environmental Liquidating | Michael Busenkell, Esq. Morris, Nichols, Arsht & |
| 2 | Trust | Tunnell, LLP 1201 North Market Street |
| 3 | | P.O. Box 1347 Wilmington, DE 19899 |
| 4 | | |
| | For Bechtel Jacobs Company: | Martin Bunin, Esq. |
| 5 | IRP, LLC. | Thelen, Reid & Priest, LLP 875 Third Avenue |
| 6 | | New York, NY 10022 |
| 7 | For The Shaw Group: | Joe Handlin, Esq. Ashby & Geddes |
| 8 | | 222 Delaware Ave. P.O. Box 1150 |
| 9 | | Wilmington, DE 19899 |
| 10 | (via telephone) | Jeremy Coffey, Esq. Gibson, Dunn & Crutcher, LLP |
| 11 | | 333 South Grand Ave. Los Angeles, CA 90071 |
| 12 | | |
| | For The Bank Group: | Richard Cobb, Esq. |
| 13 | | Landis Rath & Cobb, LLP 919 Market Street-Ste. 600 |
| 14 | | Wilmington, DE 19801 |
| 15 | For The California Board: of Equalization | Mark Silverschotz, Esq. Anderson, Kill & Olick, P.C. |
| 16 | | 1251 Avenue of the Americas New York, NY 10020 |
| 17 | | |
| | | Francis A. Monaco, Esq. |
| 18 | | Monzack and Monaco, P.A. 1201 No. Orange Street-Ste. 400 |
| 19 | | Wilmington, DE 19899 |
| 20 | For U.S. Department of: Justice | Bradley O'Brien, Esq. Department of Justice |
| 21 | (via telephone) | 844 King Street-Ste. 2313 Lock Box 35 |
| 22 | | Wilmington, DE 19801 |
| 23 | | |
| 24 | | |
| 25 | | |

*Writer's Cramp, Inc.*

Certified Court Transcribers

732-329-0191

Aa 00143

3

```
 1   For the NJDEP:              Katherine Hunt, Esq.
                                 Division of Law, State of NJ
 2                               Department of Environmental
                                 Protection
 3                               401 East State Street
                                 Trenton, NJ 08625
 4
     Audio Operator:             Judy Fisher
 5
     Transcribing Firm:          Writer's Cramp, Inc.
 6                               6 Norton Rd.
                                 Monmouth Jct., NJ 08852
 7                               732-329-0191
 8   Proceedings recorded by electronic sound recording, transcript
     produced by transcription service.
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

*Writer's Cramp, Inc.*
*Certified Court Transcribers*
*732-329-0191*

**Aa 00144**

4

```
1                        Index
                                              Further
2            Direct Cross Redirect Recross Redirect

3   Witnesses For The
    Litigation Trust:
4
    Mr. Soose
5   (by Mr. Cunningham)     20              31
    (by Ms. Hunt)                30
6
    (Recalled)
7   Mr. Soose
    (by Mr. Cunningham)     64
8

9   EXHIBITS:                              Marked  Received

10    As to the Litigation Trust's Motion
11    for an Order Enforcing Adminstrative
      Bar Date:
12
      T-1     U.S. Wetland/DEP Agreement      21
13    T-2     Map of Wetland Bank             22
      T-3     Wetland Delineation Report      23
14    T-4     Administrative Order            26

15    As to the California State Board of
      Equalization's Motion for Relief from
16    Final Judgment:

17    C-1     Draft Order                     54
      C-2     Order Approving Sale            54
18
      T-1     Affidavit of Service            64
19    T-2     Declaration of Service          65

20

21  SUMMATION BY:

22

23

24  THE COURT: Finding

25
```

*Writer's Cramp, Inc.*
Certified Court Transcribers
732-329-0191

**Aa 00145**

5

1       THE CLERK:  All rise.  You may be seated.

2       THE COURT:  Good morning.

3       MR. SUTTY:  Good morning, Your Honor.  Eric Sutty of

4  the Bayard Firm on behalf of the IT Litigation Trust.  We

5  submitted an agenda last Thursday morning.

6       THE COURT:  I have it.

7       MR. SUTTY:  It has not been amended.  Items #1 through

8  18 are continued to the January hearing.  Number 19 is an

9  uncontested matter with a Certification of No Objection.  It is

10  a Motion for Order Approving Amendment to the IT Environmental

11  Liquidating Trust and authorizing withdrawal of Trustee and

12  appointment of succeeding Trustee.

13       THE COURT:  I did have a question about that.  What

14  does the Plan provide regarding who selects the successor

15  Trustee in these circumstances?

16       MR. SUTTY:  I believe counsel for the Movant is here.

17       MR. BUSENKELL:  Good morning, Your Honor.  Michael

18  Busenkell from Morris, Nichols, Arsht & Tunnell here on behalf

19  of the IT Environmental Trust.  I didn't hear Your Honor's

20  question.

21       THE COURT:  Who appoints the successor Trustee under

22  the terms of the Plan?

23       MR. BUSENKELL:  As I read the Trust Agreement, Your

24  Honor, it's done with the consent of the California Department

25  of Toxic Substances.  They've consented to the successor

*Writer's Cramp, Inc.*
*Certified Court Transcribers*
*732-329-0191*

6

```
 1   Trustee, whose information and resume is attached; Mr. Neil
 2   Carbloni I believe is how you pronounce the name.
 3            THE COURT:  I understand that, but I mean, does
 4   anybody else have any input?
 5            MR. BUSENKELL:  I don't believe so, Your Honor.
 6            THE COURT:  All right.
 7            MR. BUSENKELL:  Not as I read the agreement.
 8            THE COURT:  Okay.
 9            MR. BUSENKELL:  But they've consented to the successor
10   Trustee.  As we set forth in our papers, the current Trustee
11   has family medical problems --
12            THE COURT:  Yes.
13            MR. BUSENKELL:  -- and can't effectively serve.  And
14   the California Department of Toxic Substances wanted a
15   Bankruptcy Court order, so that's why we're before Your Honor.
16            THE COURT:  All right, well, I will grant it.
17            MR. BUSENKELL:  Thank you, Your Honor.
18            THE COURT:  Thank you.
19            MR. SUTTY:  Item #20 is the Trustee's Motion to
20   Further Extend Time to object to administrative claims.  A
21   Certification of No Objection has been filed as to this motion
22   also.
23            THE COURT:  How long is this going to take?
24            MR. SUTTY:  I believe it extends it through February.
25            THE COURT:  And you'll be done then?
```

Aa 00147

1    MR. SUTTY: We are very optimistic to be done with the

2  admin claims by then.

3    THE COURT: All right, I hope so. I will grant the

4  request then.

5    MR. SUTTY: Thank you. Items 21 and 22 relate to the

6  claims of United Rentals. Pursuant to Your Honor's ruling on

7  Friday, they are continued to the January 26th hearing.

8    THE COURT: On a must-be-tried basis.

9    MR. SUTTY: Correct. Item #23 is the Sixth Omnibus

10  Objection. We had one claim scheduled to go forward today,

11  that of Peter Court Center. The parties are involved in

12  settlement negotiations and have agreed to continue that claim

13  to the January 26th hearing also.

14    THE COURT: All right.

15    MR. SUTTY: That takes us to agenda item #24, the

16  Eighth Omnibus Objection. I'll turn the podium over to Ileana

17  Cruz of White & Case.

18    THE COURT: All right, thank you.

19    MS. CRUZ: Good morning, Your Honor. Ileana Cruz,

20  White & Case, for the IT Litigation Trust. Item #24 is the

21  Eighth Omnibus Objection, which was filed back in February of

22  2004. And we had a pending objection to one of the claims,

23  which we've resolved with the objector, who is Shaw. And we've

24  agreed on the -- they basically wanted us to change some of the

25  terms of our proposed order. And we did agree to do that, and

**Aa 00148**

8

1  so we'd like to submit the order under Certification of Counsel

2  after the hearing today.

3         THE COURT:  Well, what is it going to say, the revised

4  order?

5         MS. CRUZ:  That the Court is expunging the claim

6  because it was a liability that may have been assumed by Shaw

7  under the terms of the Asset Purchase Agreement.

8         THE COURT:  Well, did I enter orders eliminating

9  claims because they were assumed by Shaw?

10        MS. CRUZ:  I don't remember.  We filed -- we submitted

11 a lot of objections on that basis, and I don't remember right

12 now how many of them you did enter.

13        THE COURT:  I mean, does that mean the Debtor has no

14 liability?

15        MS. CRUZ:  That's correct.  Under the terms of the

16 Asset Purchase Agreement --

17        THE COURT:  Why?

18        MS. CRUZ:  Because Shaw --

19        THE COURT:  Did all of the Creditors give releases to

20 the Debtor?

21        MS. CRUZ:  No, under the terms of the agreement, when

22 Shaw assumed certain contracts, they also agreed to assume all

23 liabilities --

24        THE COURT:  Are these assumed contracts or just

25 assumed liabilities?

Aa 00149

9

1           MS. CRUZ:  Assumed liabilities.

2           THE COURT:  Did you assume and assign the contracts?

3           MS. CRUZ:  Yes.

4           THE COURT:  Well, with respect to Wells Fargo, it's

5    leased equipment?  What is it?

6           MS. CRUZ:  I believe that Wells Fargo's claim had to

7    do with leased equipment.  And this -- again, we filed this

8    objection back in February of 2004 and Wells Fargo never

9    objected to it.

10          THE COURT:  I don't care about that.

11          MS. CRUZ:  Okay.

12          THE COURT:  I need to know whether I have a basis

13   to --

14          MS. CRUZ:  The claim arises from a lease that --

15          THE COURT:  All right, that was assumed?

16          MS. CRUZ:  Right.

17          THE COURT:  All right, assumed and assigned?  All

18   right.  I'll look for the revised order.

19          MS. CRUZ:  Thank you, Your Honor.  Item #25 has been

20   continued.

21          THE COURT:  Okay.

22          MS. CRUZ:  Item #26, this is the 12 -- I'm sorry, the

23   Twentieth Omnibus Objection.  The Commonwealth of Puerto Rico

24   responded to the Trustee's objection, basically asking for more

25   documentation on our part, which we have provided.  And so as a

Aa 00150