1  result, we'd like to submit an order today that the objection

2  has been resolved.

3          THE COURT:  All right, they agreed then?  Okay.

4          MS. CRUZ:  Yes.  May I approach?

5          THE COURT:  You may.

6      (The Court receives document)

7          THE COURT:  Thank you.  All right, then I'll enter

8  that order by agreement.

9          MS. CRUZ:  The next item on the agenda, #27, relates

10  to a pending objection that had been outstanding to the

11  Trustee's Motion to Authorize and Reduce the payable amount of

12  certain paid claims.  Jamboree, LLC sought a continuance, and

13  while they were here at the hearing they said that they just

14  needed some extra time and that if they didn't file any

15  objection by November 10th, that's 'cause they did their

16  analysis and figured that there was no real objection.  And we

17  did not receive any objection from them.  So as a result, we'd

18  like to go forward and submit an order overruling their

19  objection.

20          THE COURT:  All right, that's fine.

21          MS. CRUZ:  Thank you.  May I approach?

22          THE COURT:  You may.

23          MS. CRUZ:  Thank you.

24      (The Court receives document)

25          MS. CRUZ:  And with respect to the next few items on

Aa 00151

1  the agenda, Your Honor, we'd like to ask if we could switch the

2  order in which they'll be presented to you due to time

3  constraints.

4            THE COURT:  Okay.

5            MS. CRUZ:  We'd like to propose that we first hear

6  item #30, which is the Motion of Shaw.

7            THE COURT:  Okay.

8            MS. CRUZ:  And after that we'd like to hear #32, and

9  then lastly #28 and 31.

10           THE COURT:  The parties all agree to this re-ordering?

11           MR. HANDLIN:  That's fine, Your Honor.

12           THE COURT:  All right.

13           MS. CRUZ:  Thank you.

14           MR. HANDLIN:  Good morning, Your Honor, Joe Handlin

15  from Ashby & Geddes on behalf of the Shaw Group.  Your Honor,

16  Item 30 is Shaw's Motion to Compel Enforcement of the APA and

17  Sale Order against Bechtel Jacobs.  Bechtel and Shaw have

18  agreed to put before the Court today just the procedural

19  argument that Bechtel makes that Shaw improperly proceeded by

20  motion and should have filed an adversary proceeding.  We don't

21  want to go months down the line and then have the case

22  dismissed at some later point after significant discovery has

23  taken place.  So we want to have this portion of Bechtel's

24  objection addressed today, and if that's okay with Your Honor,

25  we'd like to proceed on that basis.  Your Honor, in addition --

Aa 00152

12

1       THE COURT:  Well --

2       MR. HANDLIN:  I'm sorry, an additional reason for this

3   is Shaw has served discovery, and Bechtel has objected on the

4   basis that it's improperly a motion, it should be an adversary

5   proceeding, and is not responding to discovery until that issue

6   is decided, so that's one of the reasons.  Also, Your Honor, we

7   would like to get a final hearing date from the Court either --

8   whether it's a trial or a hearing date where we'll have an

9   evidentiary hearing, although I think the only two issues in

10  the matter so far are just two legal issues.  So you may not

11  need evidence, just maybe argument.

12      THE COURT:  Well, are the legal issues whether or not

13  the one contract was, in fact, encompassed by the Sale Order?

14      MR. HANDLIN:  Yes, that's one of the issues.  One of

15  the issues is whether or not Shaw -- the TSCA contract was, in

16  fact, assumed and assigned to Shaw, and if it was, whether

17  Bechtel Jacobs could take -- could offset money allegedly owed

18  to it under an admittedly rejected contract against, I believe,

19  a million dollars under (indiscern.) contract that's admittedly

20  owed to Shaw.  So it's two issues.  I guess part of the first

21  issue is Bechtel's argument that while they may not have

22  received notice of the assumption and assignment, and we

23  strongly have opposed or contest that issue --

24      THE COURT:  Well, all right, let me hear whether or

25  not this has to be by adversary proceeding or by motion then.

**Aa 00153**

13

1      MR. HANDLIN:  Your Honor, I think it could have been

2  filed by either method.  Shaw chose to move to enforce

3  compliance with the APA and the Sale Order because Bechtel

4  Jacobs was just arguing that well, you know, at first that they

5  were entitled to use this offset right.  And we filed the

6  motion.  I think it could have been filed as an adversary

7  proceeding, but we don't see any reason why it has to filed as

8  an adversary proceeding.  Certainly Bechtel Jacobs has pointed

9  no good reason to us or prejudice to us --

10      THE COURT:  Well, what relief are you seeking?

11      MR. HANDLIN:  We would -- today we are seeking an

12  order from the Court overruling Bechtel Jacobs' objection in

13  part --

14      THE COURT:  No, what relief are you seeking in the

15  motion?

16      MR. HANDLIN:  Oh, we are seeking enforcement of the

17  APA and Sale Order to obtain a payment that I think is

18  admittedly owed to Shaw --

19      THE COURT:  Well, are you seeking a money judgment?

20      MR. HANDLIN:  We're seeking an order that would compel

21  them to comply with the terms of the Sale Order and the APA.

22  And essentially, Your Honor, it would result in a money

23  payment, but one of the cases Bechtel Jacobs relies upon, Your

24  Honor --

25      THE COURT:  Well, I'm pressing you because Rule

**Aa 00154**

14

1   7001(1) says a proceeding to recover money or property. Are
2   you seeking money?

3           MR. HANDLIN: We are seeking money. But Your Honor,
4   if you'll recall in the case that this Court decided in In Re:
5   Rolfcorp is right on point. In that case, an order was entered
6   approving a settlement agreement and I guess there was a
7   dispute as to what the order provided, so the Debtor filed a
8   Motion to Compel Enforcement of the order approving the
9   settlement agreement and this Court said even though it's going
10  to result in a payment of $118,000, it could be a motion, not
11  an adversary proceeding.

12          THE COURT: However, my Sale Order didn't specifically
13  say, "Bechtel shall pay X dollars to Shaw," does it?

14          MR. HANDLIN: No, Your Honor, the Sale Order doesn't
15  say -- it's not that clear, but paragraph 37 of the order
16  specifically retains jurisdiction to enforce and implement
17  terms of the Sale Order. And we did a similar motion with
18  respect to Space Gateway if Your Honor will recall.

19          THE COURT: Did they raise --

20          MR. HANDLIN: No one raised it, Your Honor.

21          THE COURT: -- the issue? Then I'm not going to
22  consider it precedent.

23          MR. HANDLIN: I'm not suggesting it's precedent, it
24  just -- I think that the fact that it wasn't raised there is
25  just an indication that this is something that was proper

Aa 00155

15

1 here --

2    THE COURT:  I -- no, I'm not accepting it as precedent

3 that it's proper here just because you did it before and nobody

4 objected.

5    MR. HANDLIN:  Okay, Your Honor.  Your Honor, I

6 don't -- there's been other cases that have emphasized where

7 there's lack of prejudice, where there's no good reason to make

8 a party file an adversary proceeding, that there's really no

9 justification for requiring somebody to -- a party to file an

10 adversary proceeding as opposed to a motion.  We've asked

11 Bechtel Jacobs to explain to us why, you know, we have to file

12 as an adversary proceeding.  I would assume that their just

13 wanting to delay the issue, Your Honor.

14    THE COURT:  Well, Rule 7001 would suggest if you want

15 to recover money, it needs to be by adversary.  That's why I'm

16 curious as to exactly what your Form of Order requests.

17    MR. HANDLIN:  Your Honor, if you'd give me a moment, I

18 -- I don't -- we may not have submitted an order with the

19 motion.  We did.  The Form of Order submitted with the motion,

20 Your Honor, requests that the motion be granted, that Bechtel

21 is enjoined from asserting against Shaw or the assumed Bechtel

22 contracts any claim, encumbrance, or excluded liability

23 relating to the rejected Bechtel contract.

24    THE COURT:  Well, isn't an order seeking an injunction

25 also -- excuse me, an action seeking an injunction also subject

Aa 00156

1  to Rule 7001 and have to proceed by adversary?

2          MR. HANDLIN:  It is, Your Honor.

3          THE COURT:  I don't know how you can get around it.

4          MR. HANDLIN:  Your Honor, I can't think of any

5  specific examples off the top of my head, but I'm sure there's

6  many instances where parties file motions where it results in a

7  payment of money.  You know, Motion for Administrative Claim,

8  there's probably numerous examples where a motion results in a

9  payment of money, and I can -- if Your Honor can give me

10  minute, I can cite to some cases where they rely upon a party

11  really raising form over substance.

12      In a 3rd Circuit case, Your Honor, In Re: O'Brien, the 3rd

13  Circuit rejected an argument that an action to set cure amount

14  for assumed contract must be filed as an adversary proceeding.

15  And in that case, Your Honor, the 3rd Circuit emphasized that

16  the appellant failed to show why the action should be brought

17  as an adversary proceeding.  So it seemed to put some onus on

18  the party making the argument that the, you know, the motion

19  should be withdrawn and the proceeding should go forward as an

20  adversary proceeding.

21      And Your Honor, in Lernout & Houseby there was an

22  equitable subordination claim filed as an adversary proceeding.

23  In that case, the Defendant moved to dismiss because Rule 7001,

24  Subsection 8 says only equitable insubordination claims against

25  allowed claims are adversary proceedings.  And the Court

**Aa 00157**

1  emphasized there that the Defendant was placing form over

2  substance, that there was no prejudice, and the only real issue

3  is you look to procedural due process.

4      So, Your Honor, other than that, I know Rule 7001 says on

5  its face that if you're seeking to obtain money that -- an

6  adversary proceeding is a proceeding where you're seeking to

7  obtain money, but I, again, I -- Bechtel Jacobs gave us no good

8  reason why we had to re-file this, and we would submit that

9  proceeding by motion is appropriate. Unless Your Honor has any

10  other questions, that's all I have.

11      THE COURT: All right.

12      MR. BUNIN: Good morning, Your Honor, Marty Bunin from

13  Thelen, Reid & Priest for Bechtel Jacobs Company. Your Honor,

14  in our view, Rule 7001 is clear. I would point out to the

15  Court that this is an action or a motion at this point by a

16  non-Debtor against another non-Debtor.

17      THE COURT: Well, do I have jurisdiction?

18      MR. BUNIN: Bechtel Jacobs believes the Court does

19  have jurisdiction. It's not -- I want to make it clear, Your

20  Honor, it's not our view that the Court doesn't have

21  jurisdiction, it's not our view that the Court shouldn't decide

22  this. Our view is that the rules require Shaw Group to proceed

23  by adversary proceeding and we were -- we -- our client fully

24  intends to deal with this issue on procedural issues and on the

25  merits as an adversary proceeding, if Your Honor so requires

Aa 00158

18

1  that method to be used.

2      My opponent quoted from the proposed order an injunction

3  paragraph.  I don't think he had an opportunity to read the

4  next paragraph which does say that Bec -- I'm quoting, "Bechtel

5  is hereby ordered to remit within 15 days after entry of this

6  order to Shaw the retainage," -- capital R -- "and any and all

7  other amounts previously withheld."  That clearly seeks a money

8  judgment.  There's over a million dollars at issue here.  These

9  are funds that were paid as retainage by IT --

10      THE COURT:  I don't want to get into the merits of it

11  and --

12      MR. BUNIN:  And again, Your Honor, I conclude quickly,

13  there are, in our view, a lot more than two legal issues here.

14  There's a curious innovation agreement that was signed which I

15  believe Your Honor may be reviewing in some other context on

16  another matter, which raises a host of issues.  And our view is

17  to what the parties did, what the intention was.  We don't

18  believe there really was innovation.  Shaw has a very broad

19  view of its obligations under that agreement as regards the

20  contracts at issue between our client and Shaw and the Debtor.

21      So, Your Honor, it's our view that the matter should

22  proceed as an adversary proceeding.  And Bechtel Jacobs Company

23  is prepared and will deal with the issues presented in

24  pleadings before this Court if Your Honor so rules.

25      THE COURT:  All right.

Writer's Cramp, Inc.
Certified Court Transcribers
732-329-0191

Aa 00159

19

1    MR. BUNIN:  Thank you.

2    THE COURT:  Yes, I do rule that an adversary

3  proceeding is necessary.  So --

4    MR. HANDLIN:  Okay, Your Honor, thank you.  We would

5  like to request a time from the Court for trial, if that would

6  be okay with the Court.  I think sometime in March or April --

7    THE COURT:  Well, file the adversary, we'll have a

8  pre-trial, and I'll set the trial date at that point.

9    MR. HANDLIN:  Okay, thank you, Your Honor.  And one

10  last thing.  We served discovery, written discovery, on October

11  22nd, and the Defendant filed an objection with the Court.  We

12  would submit that Bechtel Jacobs should be required to respond

13  to the discovery.  I don't know if we need to re-serve it.  It

14  seems kind of pointless to me.

15    THE COURT:  Yes, you do have to re-serve it.  I'm not

16  going to order -- since I find that the motion is procedurally

17  defective, I'm not going to -- and I don't have any Motion to

18  Compel, but I wouldn't grant any Motion to Compel under

19  discovery served in connection with a motion.

20    MR. HANDLIN:  Okay, Your Honor, thank you.

21    MR. BUNIN:  Thank you, Your Honor.

22    MS. CRUZ:  Your Honor, the next item that we would

23  like heard in the order we just requested is item #32.

24    THE COURT:  All right.

25    MS. CRUZ:  It's the Motion for an Order Enforcing the

1  Bar Date Order, the Administrative Bar Date Order, the

2  Confirmation Order and the Plan Injunction and directing the

3  New Jersey Department of Environmental Protection to dismiss

4  certain administrative actions against the Debtors pursuant to

5  the Court's orders, the Plan Injunction, and 11 USC Sections

6  105 and 1142(b) and granting related relief.

7          THE COURT:  All right.

8          MS. CRUZ:  Thank you.

9          MR. CUNNINGHAM:  Good morning, Your Honor, John

10 Cunningham of White & Case on behalf of the Trust.  Your Honor

11 I have a witness and some documents.  If you want I can give

12 you a brief opening of what this motion is about or I can right

13 to the witness to get the facts in.

14         THE COURT:  Let's go to the witness.

15         MR. CUNNINGHAM:  Yes, Your Honor.  The Trust would

16 like to call Harry Soose to the stand.

17         THE COURT:  All right.

18         THE CLERK:  Please state your full name and spell your

19 last name for the Court.

20         MR. SOOSE:  Harry J. Soose, Junior, S-O-O-S-E.

21         HARRY SOOSE, LITIGATION TRUST WITNESS, SWORN

22         THE CLERK:  Please be seated.

23                    DIRECT EXAMINATION

24 BY MR. CUNNINGHAM:

25 Q.  Good morning, Mr. Soose.  Can you state what your current

Aa 00161

1  title is?

2  A.  Chief Operating Officer for the IT Litigation Trust.

3  Q.  And what was your position before that?

4  A.  Before that I was the Chief Financial Officer of the IT

5  Group.

6  Q.  And how long were you Chief Financial Officer of the IT

7  Group?

8  A.  Approximately 5 years.

9  Q.  Are you familiar with what is referred to as the Woodbury

10 Creek site?

11 A.  Yes.

12 Q.  Can you explain to the Court what that is?

13 A.  This is a large tract of real estate, it's over 200 acres,

14 that's located in New Jersey.  And it's a part of a business, a

15 subsidiary of the IT Group, Land Bank, and it's subsidiary was

16 involved in -- the business is that of real estate development

17 for the purpose of producing and then selling wetland credits.

18 Q.  Mr. Soose, I'd like to hand up to you what I'd identify as

19 Trust Exhibit-1.

20        MR. CUNNINGHAM:  May I approach, Your Honor?

21        THE COURT:  You may.

22    (Litigation Trust Exhibit-1 marked for identification)

23        THE COURT:  Is anybody here for the New Jersey

24 Department of Environmental Protection?

25        MS. HUNT:  Yes, Your Honor.

Aa 00162

1          THE COURT:  Okay, you can -- why don't you come up to
2   counsel table then.
3   BY MR. CUNNINGHAM:
4   Q.  Mr. Soose, are you familiar with Trust Exhibit-1?
5   A.  Yes.
6   Q.  Can you explain what that is?
7   A.  In layman's terms, I would describe this as the agreement
8   between U.S. Wetlands Services Inc., which was a company under
9   the -- in the umbrella of companies of the IT Group and the New
10  Jersey Department of Environmental Affairs that defines and
11  surrounds the wetland property that I just earlier described.
12  Q.  What is the date of this?
13  A.  This document is signed July 11th, 1995.
14          MR. CUNNINGHAM:  I have here for identification
15  Exhibit # -- Trust Exhibit #2.  May I approach the Bench, Your
16  Honor?
17          THE COURT:  You may.
18     (Litigation Trust's Exhibit-2 marked for identification)
19  BY MR. CUNNINGHAM:
20  Q.  Mr. Soose, can you describe what the Trust Exhibit-2 is?
21  A.  Yes, in simplest terms this is a map that identifies the
22  area known as Woodbury Creek Wetland Bank.  Again, it's located
23  in New Jersey, near Woodbury, New Jersey.
24  Q.  You stated it's approximately 200 acres?
25  A.  A little over 200 acres.

*Writer's Cramp, Inc.*
*Certified Court Transcribers*
*732-329-0191*

Aa 00163

1    Q.   And it's just outside, as indicated by the map, outside the

2    city of Philadelphia?

3    A.   Right.   It's east of Philadelphia.   It's actually in New

4    Jersey.

5    Q.   Can you again explain what is a wetlands mitigation bank?

6    A.   The purpose of this -- or the business that IT was involved

7    in was that of constructing wetlands so that those acreage

8    could then be identified as credits, which often times

9    developers, or even the State of New Jersey's Transportation

10   Department has to destroy wetlands as a part of development.

11   And to get approval to do that, they have to have a wetlands

12   substitute.   So the business here is simply to provide those

13   wetlands as an alternative to the party that needs to destroy

14   wetlands, that they can buy these what's called credits.   And

15   these credits sort of have a value in trade, and that's the

16   business that one of the IT companies was in.

17   Q.   Mr. Soose, I'd like to identify as Trust Exhibit-3 a

18   Woodbury Creek Wetland Mitigation Bank Wetland Delineation

19   Report.

20            MR. CUNNINGHAM:   May I approach, Your Honor?

21            THE COURT:   You may.

22            MR. CUNNINGHAM:   Thank you.

23       (Litigation Trust's Exhibit-3 marked for identification)

24   BY MR. CUNNINGHAM:

25   Q.   Mr. Soose, on Trust Exhibit-3, can you identify what this

**Aa 00164**

1   report is?

2   A.   I'll just read what the face of it is.   This is the

3   Woodbury Creek Wetland Mitigation Bank Delineation Report

4   prepared by Louis Burger Group.   And Louis Burger Group was

5   hired by U.S. Wetland Services, LLC, which was a lower tier

6   subsidiary of Land Bank and the IT Group.

7   Q.   Are you familiar with this report?

8   A.   Yes.

9   Q.   And why was this report done?

10  A.   Well, this report was done by -- at the request of the IT

11  Group companies because the wetland creation that was

12  constructed several years before this failed, I guess in

13  simplest terms.   And so this report was undertaken to try to

14  identify why the wetland construction didn't work, in simplest

15  terms; or I should say, partially didn't work.

16           MR. CUNNINGHAM:   I'd like to mark as Trust Exhibit-4 a

17  letter to U.S. Wetland Services from the New Jersey Department

18  of Environmental Protection.

19           MS. HUNT:   Your Honor, I'd like to object to the

20  relevance of this testimony.   At this point I was not aware

21  that any testimony would be taken during this --

22           THE COURT:   What is the relevance?

23           MR. CUNNINGHAM:   It's laying of foundation for the New

24  Jersey's claim.   This is their materials that they established

25  what their claim is --

Aa 00165

1        THE COURT:  I thought I was here on a Motion to

2  Enforce a bar date.

3        MR. CUNNINGHAM:  That's correct.  But we need to

4  establish when the claim arose, and this is their statement of

5  what the claim is.  And the dates of the correspondence and the

6  like precedes the bar date -- precedes the filing of the Plan.

7        MS. HUNT:  I would concede, Your Honor, that the

8  problem at Woodbury Creek Mitigation Bank occurred probably

9  back in 1999 when the (indiscern.) was constructed.  And I

10  would concede that we did not file a Proof of Claim in this

11  case and that we don't have a claim in this case, Your Honor.

12        THE COURT:  The issue isn't --

13        MR. CUNNINGHAM:  The issue in it's simplest form, Your

14  Honor, is --

15        THE COURT:  Whether they're pursing a claim or an

16  administrative action.

17        MR. CUNNINGHAM:  That's correct.

18        THE COURT:  So --

19        MR. CUNNINGHAM:  And I'm -- but to understand that,

20  Your Honor, it is to understand the nature of the claim that

21  they have asserted.  And the testimony will show that the claim

22  that they asserted --

23        THE COURT:  Well --

24        MR. CUNNINGHAM:  -- is that -- and I haven't gotten

25  there yet --

Aa 00166

1        THE COURT:  Well, let's get there quicker.

2        MR. CUNNINGHAM:  Okay, I'll get there quicker.  If you

3  want, Your Honor, I'll go to -- I'll change the Trust Exhibit-4

4  to the actual Administrative Order and Notice of Civil --

5        THE COURT:  Just --

6        MR. CUNNINGHAM:  I will.  Here --

7        THE COURT:  Go ahead.

8        MR. CUNNINGHAM:  -- let me give this to the witness.

9        THE COURT:  Thank you.

10     (Litigation Trust's Exhibit-4 marked for identification)

11 BY MR. CUNNINGHAM:.

12 Q.  Mr. Soose, are you familiar with Trust Exhibit-4?

13 A.  Yes.

14 Q.  And what is this?

15 A.  This is an Administrative Order that was sent to Land Bank,

16 which is, again, an IT company by the New Jersey DEP.  It's

17 dated July 17th, 2002.  This assessed a penalty and a -- which

18 is on the very last page there's a -- it explains this

19 Administrative Order and Notice of Civil Penalty of $9,000.

20 And I believe the right interpretation of that is $9,000 per

21 day, once you read the Administrative Order.  And you can see

22 that that was mailed to the Mosside Boulevard address in

23 Monroeville, Pennsylvania, where I received it.

24 Q.  This was sent to the Debtors post-petition --

25 A.  Correct.

1  Q.  -- is that correct?  Can I ask you to look at paragraph 6

2  of this Administrative Order?

3  A.  Yes.

4  Q.  Can I ask that you read that for the Court, that paragraph?

5  A.  "In response to the Department's October 19th, 2000 letter,

6  the banker" -- and the banker is the IT Group and it's

7  companies -- "did have their consultant perform a detailed

8  wetland delineation in the spring of 2001.  The Department

9  participated in the wetland delineation and confirmed the

10 consultant's field findings.  On July 12th, 2001, the Louis

11 Burger Group submitted the results of the detailed wetland

12 delineation report, which indicated that the construction

13 activities resulted in the creation of some wetlands on the

14 site, but also indicated that 18.924 acres of existing

15 wetlands, verified by the September 4th, 1998 LOI, had been

16 drained and no longer met the definition of a wetland.  The

17 report indicated that Land Bank had created 12.71 acres of

18 wetlands, established 18.59 acres of upland buffers, and

19 enhanced 15.99 acres of wetlands.  Based upon the credit ratio

20 approved by the Counsel, this completed work would be

21 equivalent to 36.64 mitigation credits.  The Bankers sold a

22 total of 32.75 mitigation credits from the bank.  If the

23 mitigation monitoring is successfully completed, the amounts of

24 credits sold can be offset by the 36.64 mitigation credits

25 established on the site.  However, in an effort to build

1  wetlands on the site, Land Bank drained 18.924 acres of

2  existing wetlands, which is a violation of the Freshwater

3  Wetlands Protection Act, New Jersey reference."

4  Q.  The -- in the middle of that paragraph you just read, it

5  refers to 18.924 acres of existing wetlands that had been

6  drained, is that correct?

7  A.  Yes.

8  Q.  Is that the basis upon which the Administrative Order that

9  you just -- I guess Trust Exhibit-3 -- is that the basis -- is

10 that statement, the draining of the 18 -- approximately 18

11 acres, the basis for the Administrative Order?

12 A.  It's my understanding, yes.

13 Q.  And what's your understanding of that claim, the draining

14 of the wetlands, the 18 acres that's set forth in this

15 Administrative Order?

16 A.  Let me ask you to repeat that.  I'm not --

17 Q.  What is your understanding is the basis of the New Jersey's

18 contention that 18.924 acres of existing wetlands had been

19 drained?

20 A.  Well, the penalty that's being imposed by New Jersey is

21 being imposed because this 18.94 acres of wetlands -- and

22 probably among other things -- was inadvertently drained

23 through the construction activities of the banker or Land Bank.

24 Q.  And when is the State alleging that that took place?

25 A.  Well, that took place during the construction activity,

Aa 00169

1  which I believe was -- well, I shouldn't speculate.  It
2  certainly was pre-petition.
3  Q.  In fact, Mr. Soose, does it say in that paragraph that you
4  just read that the State's conclusion that 18.924 acres had
5  been drained is based on the Louis Burger Group 2001 report,
6  that is the Trust Exhibit-3?
7  A.  Correct.
8          THE COURT:  Your Honor, briefly, going back to
9  counsel's comments, I do have the affidavit of service for the
10 bar date -- original bar date order, and I was just asking if
11 they are conceding that that is -- that they did receive copy
12 of the original bar date.
13         MS. HUNT:  Yes, Your Honor.
14         THE COURT:  All right --
15         MR. CUNNINGHAM:  Okay, then I don't need to put that
16 into evidence.
17 BY MR. CUNNINGHAM:
18 Q.  Mr. Soose, are you aware if the State of New Jersey
19 objected to confirmation of the Plan?
20 A.  Yes, my recollection is that the State did object.
21 Q.  Do you know what happened to that objection?
22 A.  It was overruled, I guess is the correct legal term.
23 Q.  Mr. Soose, do you know when the Plan went effective, the IT
24 Group Plan?
25 A.  Yes, the Plan went effective April 30th of 2004.

1    Q.  Mr. Soose, are you aware if the Disclosure Statement in

2    connection with the Plan had a description about the Woodbury

3    Creek issues with the State of New Jersey?

4    A.  Yes, there is some language in the provision that discusses

5    this property.

6           MR. CUNNINGHAM:  Your Honor, the only thing I have

7    left are some New Jersey State statutes, which I can build into

8    argument --

9           THE COURT:  All right.

10          MR. CUNNINGHAM:  I don't believe I need to have the

11   witness go through that.

12          THE COURT:  All right, any cross of the witness?

13          MS. HUNT:  Just one question, Your Honor.

14                    CROSS EXAMINATION

15   BY MS. HUNT:

16   Q.  Mr. Soose, are you aware that Land Bank, following the

17   issuance of the Administrative Order, that Land Bank contested

18   that order and is proceeding with an administrative action in

19   the State of New Jersey?

20   A.  I'm sorry, I didn't quite hear the question.

21   Q.  Are you aware --

22          THE COURT:  Please speak into the microphone.

23          MS. HUNT:  I'm sorry, Your Honor.

24   BY MS. HUNT:

25   Q.  Are you aware that Land Bank filed an administrative

Aa 00171

1   hearing request following the issuance of the Administrative

2   Order?  Are you aware that there's currently an administrative

3   action pending in the State of New Jersey with respect to the

4   Administrative Order?

5   A.  I am aware of that, yes.

6   Q.  And that Land Bank has been defending that for over 2 years

7   now?

8   A.  I under -- I don't know what you mean by defending, but I

9   know that there is an Administrative Order that has some

10  deadlines that are fast-approaching here.  In fact, this month

11  there's a deadline for an -- a hearing that I recall is

12  scheduled for January.

13  Q.  Yes, thank you.

14          THE COURT:  Excuse me, would counsel identify herself

15  for the record.

16          MR. HUNT:  I'm sorry.  Katherine Motley Hunt.

17  Katherine Motley Hunt, Deputy Attorney General for the State of

18  New Jersey, Department of Environmental Protection.

19                     REDIRECT EXAMINATION

20  BY MR. CUNNINGHAM:

21  Q.  Mr. Soose -- brief follow-up.  Mr. Soose, that proceeding

22  currently that's been set is pursuant to a Motion for Summary

23  Judgment in the administrative action filed by the State of New

24  Jersey, is that correct?

25  A.  Yes, that's my understanding.

Aa 00172

1  Q.  And that motion was filed subsequent to the filing of the

2  Plan Trust Motion to Enforce the various orders and Plan

3  Injunction, is that correct?

4  A.  Right, meaning it was after April 30th of '04, right.

5          THE COURT:  Was it after November 16th, I think was

6  the question.

7  A.  November 16th of what year?

8          THE COURT:  Of 2004.  The question was whether the --

9          MR. CUNNINGHAM:  Yes.

10          THE COURT:  -- Motion for Summary Judgment was filed

11  after your Motion to Enforce the bar date.

12          MR. CUNNINGHAM:  That's correct, Your Honor.

13  A.  I'm not sure sitting here right now.  The documents would

14  show that though.

15          MR. CUNNINGHAM:  Didn't New Jersey just concede --

16          MS. HUNT:  Actually I don't have the papers --

17          MR. CUNNINGHAM:  I have it.

18      (Pause in proceedings)

19          MR. CUNNINGHAM:  Your Honor, we're searching for that.

20  I can attest as counsel that that was filed subsequent to the

21  filing of our Motion to Enforce the Plan Injunction.  I know

22  that for a fact.

23          THE COURT:  Okay.

24          MS. HUNT:  I'm sorry, could you please repeat that?

25          MR. CUNNINGHAM:  Your Motion for Summary Judgement

Aa 00173

33

1  that you filed with the Administrative Law Judge in the New

2  Jersey proceeding was filed after the Plan Trust had filed this

3  motion that is before the Court.

4  　　　　MS. HUNT:  No, I filed my motion and the following day

5  I received your papers.

6  　　　　MR. CUNNINGHAM:  We had filed our motion prior to you

7  filing your motion.

8  　　　　MS. HUNT:  I received it after the fact, though.

9  　　　　THE COURT:  All right.

10 　　　　MR. CUNNINGHAM:  Your Honor, that's it for the Trust.

11 　　　　THE COURT:  All right, any recross?

12 　　　　MS. HUNT:  No, Your Honor.

13 　　　　THE COURT:  Thank you, you may step down.  Leave the

14 documents there.

15 　　　(Witness steps down)

16 　　　　THE COURT:  Do you have any --

17 　　　　MS. HUNT:  Your Honor --

18 　　　　THE COURT:  -- evidence you want to present?

19 　　　　MS. HUNT:  No, I don't, Your Honor.

20 　　　　THE COURT:  All right, I'll hear argument then.

21 　　　　MS. HUNT:  Thank you.

22 　　　　MR. CUNNINGHAM:  Your Honor, the facts as the Trust

23 sees it, is as follows.  This relates to property that was

24 owned prior to the petition date.  And as referenced in the

25 testimony, this alleged drainage of the wetlands that is

*Writer's Cramp, Inc.*

*Certified Court Transcribers*

*732-329-0191*

Aa 00174

34

1   contained in this Administrative Order took place, as conceded

2   by the parties, sometime prior to 2001 because that was the

3   date of the report that New Jersey was stating the basis for

4   this.  New Jersey has conceded that they received notice of the

5   bar date.  There was a description of this issue in the Plan

6   and in the Disclosure Statement.  They objected to confirmation

7   specifically saying that they do not hold a claim in this

8   estate.  They are saying that they do not have a right to

9   payment as the Code defines claim, but instead that they have

10   an equitable remedy against the estate to perform, which is

11   referred to as offsite mitigation; to basically go out and --

12        THE COURT:  Based on the documents you presented, what

13   exactly is it that New Jersey's doing that you think is

14   violative?

15        MR. CUNNINGHAM:  I can say it exactly, Your Honor.  If

16   I go back to the statutes that I had, which I said I would

17   build into my argument.  Under the New Jersey Environmental

18   Protection statutes, the State of New Jersey, when confronted

19   with this type of a problem, has a menu of options to issue

20   these types of Administrative Orders, one of which is this

21   Wetlands Mitigation Order, which requires the owner of the

22   property to mitigate for the loss of the wetlands.  And in this

23   case, the actual Administrative Order directs the Debtors to go

24   out and buy new land and to do offsite remediation using a

25   calculation of three times the amount that had been drained,

Aa 00175

1  three times the 18 acres of property.  That was New Jersey's

2  election, so to speak, under the New Jersey statute.

3       One of the other menu of items they could have done, Your

4  Honor, would have been to assess a financial penalty against

5  the Debtors.  And specifically it states under -- it's Article

6  77(a)-15.6, mitigation for the larger disturbance.  One of the

7  mitigation options is under (f) it says, "If mitigation is not

8  feasible under (c), (d) or (e) above, mitigation shall be

9  performed through a monetary contribution or if the Department

10 determines that no mitigation alternative is not practical or

11 feasible through a land donation approved from the Wetlands

12 Mitigation Counsel in accordance with New Jersey NJAC 77(a)-

13 15.22."  And I have copies of the New Jersey statutes, Your

14 Honor.  They could have assessed a claim in these cases.

15      They could have asserted what the damage amount is, and in

16 fact, the calculations that they have been telling us is they

17 believe it's going to cost about $7 million to do.  But they

18 purposely did not file a claim in this case, notwithstanding

19 having been given notice of the bar date, getting a Plan.  And

20 their argument is to now go under the 3rd Circuit's Torwico

21 decision, Your Honor.

22      And that's really what we're here for.  It's basically

23 does Torwico apply or does it not apply.  And under Torwico,

24 Your Honor, the 3rd Circuit described the issue about when a

25 state environmental agency in a bankruptcy case is seeking to

1　effectively ameliorate or prevent continued pollution on

2　property.  There is no continued pollution on property, Your

3　Honor.  There was an alleged drainage of wetlands that took

4　place back, as I said, prior to the petition date.  They are

5　claiming that they can order us to go off and buy new property

6　and create new wetlands, and in other words expend $7 million.

7　And as I just indicated, the statute provided that they could

8　have just asserted the claim for the amount --

9　　　　　THE COURT:  Okay.

10　　　　MR. CUNNINGHAM:  -- and submitted that.  They didn't

11　do that and here we are.  We've got a confirmed Plan, we've

12　gone effective on that Plan.  The Plan provides for

13　distributions to Creditors in reliance on the claims that were

14　filed in the case.  New Jersey purposely did not file that

15　claim specifically so that it could be here today telling Your

16　Honor that we're under _Torwico_ and we can order the Trust to go

17　out and buy property, expend $7 million, and they don't have to

18　participate in the bankruptcy case.  And I'm saying, Your

19　Honor, that under the definition of claim, as the Bankruptcy

20　Code -- as the Congress had drafted, it was meant to provide

21　that if a state is trying to assert an equitable remedy that

22　could give rise to a right to payment.  And I think under the

23　Supreme Court's _Ohio vs. Kovacs_ decision, if they could have

24　elected monetary damages as a remedy, then it's a claim.

25　Otherwise, they can just manipulate the Bankruptcy Code and

1  whether they have to file a claim in the bankruptcy case.    And

2  I submit, Your Honor, that's exactly what happened here.

3           THE COURT:   Okay.

4           MS. HUNT:   Your Honor, in its motion, the Trustee is

5  seeking to enjoin the DEP from continuing its estate

6  administrative action against Land Bank, a Debtor in this case.

7  Your Honor, as the 3rd Circuit has noted in the case of Penn

8  Terra vs. the Commonwealth of Pennsylvania, 733 F.2d 267,

9  Federal supremacy over states should be invoked only where it

10 is clear that Congress so intended.   Under the Bankruptcy Code,

11 Congress clearly accepted state regulatory actions in the

12 automatic stay provisions.   As the Court in Penn Terra noted,

13 the regulatory exception to the automatic stay should be

14 construed broadly to avoid preemption, Your Honor.

15     At this time, the State has not received a final order and

16 the state administrative action is not seeking to enforce that

17 order against the Trust.   Even if the State were seeking

18 payment of money, which it is not in that case, Your Honor, it

19 would not be precluded from continuing its state action to

20 obtain a final order or judgment.

21     Moreover, Your Honor, injunctions of state regulatory

22 actions are a very rare remedy, which are only appropriate if a

23 regulatory action seriously threatens the bankruptcy process.

24 Here, the Trustee does not argue that it will be irreparably

25 harmed if the State continues its action.   Indeed, the Debtor

38

1  has been defending a State action for over 2 years, thus the

2  State should not be enjoined from continuing to exercise its

3  police and regulatory powers reserved to it by Congress and the

4  Trustee's motion should be denied.

5      Essentially, Your Honor, I'm arguing that it is premature

6  to decide whether or not the State has a claim. We, of course,

7  assert that we do not have a claim, we don't have a right to

8  payment, we're not seeking a judgment for a sum certain, Your

9  Honor, we're seeking remediation of damage that has been done

10 to the environment by the draining of 19 acres of freshwater

11 wetlands.

12     THE COURT:  Well, by seeking remediation of damage

13 done pre-petition --

14     MS. HUNT:  It's continuing damage, Your Honor.  The

15 state has lost 19 acres of freshwater wetlands.

16     THE COURT:  But there's not continuing action by the

17 post-petition Debtor or certainly by the Trust.

18     MS. HUNT:  The damage was done, but it's continuing

19 damage, Your Honor, and it's not going to be rectified unless

20 it's remediated or mitigated.

21     THE COURT:  How is it continually damaged?  The damage

22 is done.

23     MS. HUNT:  The state has lost 19 acres of wetlands and

24 lost the functions and values of those wetlands --

25     THE COURT:  I understand that.  Lost it pre-petition

*Writer's Cramp, Inc.*
*Certified Court Transcribers*
*732-329-0191*

Aa 00179

1   though.   That happened.

2          MS. HUNT:  Yes.

3          THE COURT:  I mean, this is not like a spill where the

4   pollution is continuing to migrate.

5          MS. HUNT:  That's true, Your Honor.  However, the

6   State is entitled, Your Honor, under the Bankruptcy Code to get

7   a final order, even if ultimately we come back here before you

8   and can't --

9          THE COURT:  And can't enforce it.

10         MS. HUNT:  -- enforce it.  We're entitled to get that

11  order, Your Honor.

12         THE COURT:  What are you seeking in your

13  administrative proceeding?

14         MS. HUNT:  We're seeking mitigation for the loss of 19

15  acres of freshwater wetlands, Your Honor, as well as the

16  establishment -- the reestablishment of financial assurances

17  for the monitoring and construction of the wetlands mitigation

18  bank.  And the State has filed a Motion for Summary Decision.

19  The matter is pending.

20         THE COURT:  Well, is this a futile act?  I mean, is it

21  not clear that either of those could not be enforced against

22  the Debtor in light of the confirmed Plan?

23         MS. HUNT:  I don't know the answer to that question,

24  Your Honor.  I don't know if it's futile or not.  But the State

25  needs to get that final order against the Trust?

1      THE COURT:  Why?

2          MS. HUNT:  So that it's enforceable against any entity
3   that may come into possession of that property, Your Honor.

4          THE COURT:  Okay.  All right.  Response?

5          MR. CUNNINGHAM:  Yes, Your Honor, the State is stating
6   that we're asking Your Honor to issue an injunction.  We're
7   not, we're seeking to enforce the Plan Injunction that was
8   before Your Honor at the confirmation hearing that they
9   objected.  We attached as Exhibit-A their objection to the
10  confirmation.  They simply said the Plan doesn't appropriately
11  address this issue.  And that was their objection.  It's a 3-
12  page -- they attached the Administrative Order.  It's a 3-page
13  objection.  The Injunction was there.  The decision was before
14  the Court on enforceablility of the Injunction.  And the
15  Injunction goes to holders of claims, Your Honor.  What we're
16  asking Your Honor to find is that the State is holding a claim
17  as defined in the Bankruptcy Code..  The Plan defines claim
18  exactly as defined in the Bankruptcy Code.  And therefore,
19  they're enjoined.  Otherwise, they can do exactly what they're
20  doing, which is to not -- try to avoid the bankruptcy
21  proceedings and try  to avoid having to submit their claim in
22  these cases.  They have a pre-petition claim --

23         THE COURT:  What about their seeking an order, in
24  essence, against the property or any owner of the property in
25  the future?  While they may not be able to get a money judgment

Aa 00181

41

1 or any recovery on that from the Debtor --

2 　　　MR. CUNNINGHAM:  Obviously, Your Honor, my main

3 concern is to the extent they're going forward in seeking to

4 direct the Debtors to go out, I think as you heard counsel, to

5 perform mitigation -- and it's actually offsite mitigation that

6 they're requiring the Debtors to do -- and to go out and

7 provide monetary assurances that we will do that and get a

8 finding from an Administrative Law Judge that this Trust, as a

9 successor to Land Bank, will have to post such monetary

10 assurances and have to --

11 　　　THE COURT:  Is the Trust named as the Defendant?

12 　　　MS. HUNT:  No, Your Honor, Land Bank, Inc. was named

13 as the Defendant.

14 　　　MR. CUNNINGHAM:  And pursuant to the Plan, all the

15 assets of the Debtors had merged with and into the Trust so --

16 　　　THE COURT:  So what?

17 　　　MR. CUNNINGHAM:  Well, we have to -- again, our --

18 　　　THE COURT:  The assets are, but so what?

19 　　　MR. CUNNINGHAM:  Your Honor, our primary concern is

20 that we don't have a $7 million claim being asserted against us

21 when it was clearly pre-petition.  Their argument in their

22 papers is that under <u>Torwico</u> that they can compel the Debtors

23 to perform this offsite mitigation or perform the Trust to do

24 it.  Is the State acknowledging that you do not -- you cannot

25 compel the Trust or -- are you only looking to go after a third

Aa 00182

1  party property owner that's not here?

2      MS. HUNT:  I cannot make that commitment at this

3  point, Your Honor.  We simply want to pursue our state

4  administrative action and get a final order, Your Honor, and

5  then we'll make a decision as to how to proceed at that point.

6      MR. CUNNINGHAM:  I mean, the Administrative Order goes

7  to the issue of who's responsible for the drainage of these

8  acres.  Again, since the statute allows them to order this

9  offsite mitigation, that's the relief they're going under and

10 they're saying that that's an equitable remedy that does not

11 constitute a claim because, as I just indicated, the statute

12 allows them to assess a monetary damage claim for that

13 drainage.

14     THE COURT:  Okay.

15     MR. CUNNINGHAM:  Therefore, we want to simply have a

16 finding from the Court that they are asserting a claim against

17 us and that therefore they're bound by the Plan Injunction from

18 going forward.  Otherwise we're going to have to defend this

19 State Court action.  We can be back before Your Honor again if

20 they take steps to enforce the judgment if there is a judgment

21 against us.  And we're back before Your Honor.  We believe --

22     THE COURT:  Is it premature?  Should we wait and see

23 what they seek to do with the order?

24     MR. CUNNINGHAM:  I don't think it's premature based on

25 the language of the injunction, Your Honor.  They're clearly

43

1  seeking -- I think counsel has stated, they are seeking to
2  direct Land Bank to provide this offsite mitigation, provide
3  monetary assurances.  And based on the injunction -- and I can
4  read the injunction to Your Honor, in paragraph 13.19 of the
5  Plan -- and it provides that the continuation of such actions
6  is enjoined.  It says here in 13.19 under Injunction, "Except
7  as otherwise expressly provided in the Plan, all persons or
8  entities who have held, hold, or may hold claims" -- and again,
9  it's claims, capital C, which is equivalent to the Bankruptcy
10 Code's definition of claims -- "are permanently enjoined from
11 and after the effective date from commencing or continuing in
12 any matter, any action, or other proceeding of any kind on any
13 such claim.  Interests against any of the Debtors, their
14 estates, reorganized IT Group, the IT Environmental Liquidating
15 Trust, the IT Liquidating Trustee, the Litigation Trust, or the
16 assets."  And they are continuing an action that we're having
17 to expend money to defend when I think the evidence shows
18 clearly that this Administrative Order that they've stated, the
19 18 acres of drained wetlands, is a pre-petition claim under the
20 Bankruptcy Code.  And under the Injunction Your Honor approved
21 at the confirmation hearing, they objected, were fully
22 represented by counsel, Your Honor overruled that objection.
23       MR. COBB:  Your Honor, Richard Cobb on behalf of the
24 bank group.  Your Honor may recall under the Plan my clients
25 have a pecuniary interest in the assets that are sitting in the

Aa 00184

44

1   Trust.  Granted, it's not the primary interest, but it has an
2   interest.  Your Honor, the issue here is if New Jersey's able
3   to obtain this order and they're able to enforce this order
4   against subsequent owners or transferees of the property, that
5   just puts a big discount on the value of this -- of what's left
6   here.  And if we have -- if we put this on the market in order
7   to sell this asset and provide for a greater distribution or
8   frankly the anticipated distribution to Creditors, that value
9   will be depressed.  So it's just as if they had filed a claim
10  against the Debtors and that claim was found to be in the full
11  amount.
12          THE COURT:  Just as if they had a claim against
13  property of the Debtors?  Isn't the damage already done?  Don't
14  we already have an Administrative Order?
15          MR. COBB:  Your Honor, it's not final.  The issue is
16  it's in process.  The filing occurs, okay, the bankruptcy
17  filing occurs --
18          THE COURT:  Yes.
19          MR. COBB:  The State of New Jersey had full knowledge,
20  should have come in, filed a claim.  The claim could have been
21  adjudicated and then --
22          THE COURT:  When did the administrative proceeding
23  start, pre- or post-petition?
24          MR. COBB:  The administrative proceeding began post-
25  petition.  I -- Your Honor, I wanted to set the table for that

Aa  00185

45

1   because that's frankly my client's concerns is that if the

2   Court does not enforce the Injunction against the State of New

3   Jersey, it's going to depress very significantly an asset of

4   the Trust available for distribution to Creditors.   Thank you,

5   Your Honor.

6            THE COURT:   All right.

7            MR. COBB:   And frankly, Your Honor, it's a clever

8   dodge around the Injunction.   They could have come in and

9   argued this back then, Judge, and they didn't.

10           MS. HUNT:   All right, I'd like to just point one more

11  thing again, Your Honor.   Again, the 3rd Circuit in the case of

12  Penn Terra vs. the Commonwealth of Pennsylvania in talking

13  about the exception in the automatic stay provision for

14  enforcement of a judgment says -- they say that that should be

15  very narrowly construed, Your Honor, to reserve as much police

16  power as the statue allows for the states, Your Honor.

17           THE COURT:   Well, first of all, we're not talking

18  about 362, we're talking about the Plan Injunction.   And they

19  are two different things.

20           MS. HUNT:   However, I would assume that the Plan

21  Injunction cannot contravene the Bankruptcy Code, Your Honor.

22  It's got to be consistent with the Bankruptcy Code.   You can't

23  take away police powers, state powers in the Plan Injunction.

24           THE COURT:   What police interest is there with respect

25  to this property as of this date?

*Writer's Cramp, Inc.*

*Certified Court Transcribers*

*732-329-0191*

Aa 00186

1          MS. HUNT:  We're regulating the environmental laws,

2   Your Honor --

3          THE COURT:  But the infraction occurred pre-petition.

4   It's not continuing.  It happened.

5          MS. HUNT:  But it's -- again, it's continuing damage.

6          THE COURT:  No.  You haven't been -- gotten recovery

7   for the damage that was already done.  The wetlands were

8   destroyed already pre-petition, that's conceded.

9          MS. HUNT:  The resource hasn't been compensated.  The

10  resource --

11         THE COURT:  You haven't been paid for it.

12         MS. HUNT:  Not paid, it needs to be mitigated.  It

13  needs to be restored, Your Honor.

14         THE COURT:  Well --

15         MS. HUNT:  Compensation won't do it.

16         THE COURT:  -- you have a claim -- well, sure it will.

17  Your statute says you can get money instead, doesn't it?

18         MS. HUNT:  Actually, I don't believe that provision --

19  as I said, I don't have the provisions with me today, Your

20  Honor.  I think there's a cost recovery type of mechanism in

21  the statute.

22         THE COURT:  That if you mitigate, they pay for it.

23         MS. HUNT:  Correct.  But even in Kovacs and the case

24  of, I believe it was Nicolette, Your Honor, in those cases, the

25  Government had options also to seek cost recovery or to go out

Aa 00187

47

1  and to get performance by the Debtor.  In those cases, the

2  State -- or the United States in those cases, sought money

3  only, they did not seek performance.  So even though there's an

4  option in the statute, I don't think we're limited by seeking

5  performance, Your Honor.

6        THE COURT:  But unfortunately I know the <u>Nicolette</u>

7  facts.  Again, that was a situation where the land had been

8  polluted and the piles of asbestos were till sitting there.

9  And there was evidence that it was still polluting.  This is

10  different.  There isn't any argument of continuing pollution or

11  migration of pollution.  This -- the deed has been done pre-

12  petition.

13        MS. HUNT:  Well, once again, Your Honor, the state

14  should be entitled to get a final order against Land Bank, Your

15  Honor.

16        THE COURT:  Why?

17        MR. HUNT:  So that it has something enforceable.  We

18  issued an Administrative Order that's --

19        THE COURT:  How will it --

20        MS. HUNT:  -- not final at this point --

21        THE COURT:  -- be enforced?  How will it be

22  enforceable?

23        MS. HUNT:  It will be a document that will say to all

24  the world that 18 acres or 19 acres of wetlands has been

25  drained on this site.

Aa 00188

48

1          THE COURT:  Okay, so?

2          MS. HUNT:  Your Honor, it gives the state options.

3          THE COURT:  What options?  That's what I'm pressing

4  you for.

5          MS. HUNT:  Yeah.

6          THE COURT:  How are you going to enforce this?  By

7  seeking a money judgment against the Trust or the Debtor?

8          MS. HUNT:  No, we would not seek a money judgment,

9  Your Honor.

10          THE COURT:  By seeking an order directing them to

11  mitigate?

12          MS. HUNT:  That is one option, Your Honor.

13          THE COURT:  Well, how is that enforceable in light of

14  the confirmation of their Plan?

15          MS. HUNT:  Well, it might be something that the State

16  would not pursue, Your Honor.  But it's entitled to have that

17  final order.

18          THE COURT:  Why?  I mean again, is this a futile act

19  or is this something that --

20          MS. HUNT:  I may very well be a futile act, Your

21  Honor.

22          THE COURT:  Then why should I make the Trust defend?

23          MS. HUNT:  It has been defending for 2 years, Your

24  Honor.

25          THE COURT:  That's not an answer.  I mean, I'm

Aa 00189

49

1 struggling with the interest of the State against the interest

2 of the Debtor and its Creditors, other Creditors. I mean, it's

3 clear your claim could have been pursued as a money judgment,

4 or a claim for a money judgment.

5        MS. HUNT: My understanding is not unless the State

6 had incurred costs to do actual mitigation themselves and then

7 sued Land Bank for recovery for those costs.

8        THE COURT: Well, in that instance it's a contingent

9 unliquidated claim because the contingency, ie: the remediation

10 by the State, had not occurred. But your right to seek that

11 occurred pre-petition when the wetlands were destroyed. So it

12 would fit the definition of a claim under the Bankruptcy Code.

13 I think the 3rd Circuit cases all tell me that I have to allow

14 the State to proceed if there's a compelling State interest in

15 protecting the health and safety of its citizens. And I just

16 don't see it now with respect to your claim. The damage has

17 been done, the damage was done pre-petition.

18        MS. HUNT: But again, Your Honor, I think the 3rd

19 Circuit cases talk about distinguishing between cases where the

20 State or the United States is seeking simply money or where

21 they're seeking performance. And that that cannot be so

22 narrowly construed as to not reserve any kind of police powers

23 for the State, Your Honor.

24        THE COURT: True, but the Bankruptcy Court has to

25 accede to the State where the State has a compelling public

Aa 00190

1  safety and health issue.  And again, if the damage has been
2  done and there's no continuing creeping pollution that the
3  State has an interest in stopping, what compelling interest
4  does the State have that I should --
5        MS. HUNT:  I guess I have -- I have some trouble with
6  distinguishing between cases where there might be a migrating
7  pollution and where there might not be.  I mean, I think the
8  State is entitled to enforce its environmental laws, Your
9  Honor, and not get into -- into --
10       THE COURT:  You're entitled to future performance, and
11  you're entitled to an order telling them don't destroy wetlands
12  in the future.  I agree.  But they're not.  There's no --
13  there's been no post-petition, and certainly no post-
14  confirmation, action that's destroying wetlands.  The damages
15  have already been done.  So I'm not convinced there is a
16  compelling State interest here.  And to the extent you're
17  seeking to enforce your claim for the prior damage to the
18  wetlands, I think that is enjoined by the Confirmation Order.
19  So I will grant the motion.
20       MR. CUNNINGHAM:  Thank you, Your Honor.  We'll settle
21  a form of order and submit it to the Court.  Or do we have --
22  okay -- do we have that?  We have an order.  May I approach,
23  Your Honor?
24       THE COURT:  You may.  Is this one that was attached to
25  the motion?

**Aa 00191**

51

1    MR. CUNNINGHAM: Yes, it is, Your Honor.

2    (Pause in proceedings)

3    THE COURT: I will enter that order then.

4    MR. CUNNINGHAM: Thank you, Your Honor.

5    MS. HUNT: Thank you, Your Honor.

6    MS. CRUZ: The next item on the agenda, Your Honor,

7    are items 28 and 31, they deal with the same material. The

8    first is the non-substantive objection of the Trustee to the

9    administrative expense claim, #7058, of the Board of

10   Equalization for the State of California. And #31 is the

11   Motion for Relief from Final Judgement pursuant to Federal

12   Rules of Bankruptcy Procedure 9006 and 9024, and Federal Rule

13   of Civil Procedures 60(d) filed by California State Board of

14   Equalization.

15   THE COURT: All right. Who wants to go first?

16   MS. CRUZ: Your Honor, the IT Litigation Trust filed

17   an objection to the administrative claim on the basis that the

18   Board filed the objection very much past the administrative bar

19   date and -- I'm sorry --

20   THE COURT: Filed the claim.

21   MS. CRUZ: -- the claim -- I'm sorry, the claim, and

22   as well failed to support its claim. There were -- there was

23   no -- absolutely no indication of where -- what basis they had

24   for the claim when they filed it, so we filed an objection on

25   those two grounds. And this is -- Mr. Cunningham is going to

**Aa 00192**

52

1 speak to the rest of the objection.

2     MR. CUNNINGHAM: Your Honor, I don't think the facts

3 are in dispute, I think the State has filed a motion under Rule

4 60(b) to ask Your Honor for relief from the order so that they

5 could file the claim late. I don't think there's any dispute

6 that the claim was filed after the relevant bar dates.

7     THE COURT: Okay. All right.

8     MR. MONACO: Good morning, Your Honor, Frank Monaco --

9     THE COURT: We should go to your motion then.

10     MR. MONACO: Excuse me, Your Honor. Good morning,

11 Frank Monaco for the State of California. Your Honor, I'd like

12 to move the admission pro hac vice of my co-counsel, Mark

13 Silverschotz from the Anderson, Kill & Olick firm. He is a

14 member in good standing of Bar of the State of New York.

15     THE COURT: All right. It will be granted.

16     MR. SILVERSCHOTZ: Thank you, Your Honor. I'm glad,

17 Your Honor, that we've resolved the -- the who-goes-first issue

18 because, frankly, it was troubling me all weekend. Your Honor,

19 Mark Silverschotz, Anderson, Kill & Olick. Together with

20 Monzack & Monaco, we are counsel to the Board of Equalization

21 of the State of California, which is the taxing agency

22 responsible for the collection of sales taxes. That's not to

23 be confused, as I sometimes do, with the Franchise Tax Board

24 which deals with the income taxes there. And I think, Your

25 Honor, there's been quite a lot of paper filed considering that

Aa 00193

53

1  at bottom we have a single claim subject to a non-substantive

2  objection.  And as the Court noted, and as we all agree, these

3  two matters are closely related, both the non-substantive

4  objection and our Rule 60 Motion.

5      Our Motion under Rule 60 was in two parts, but I'm gonna

6  move things a little more quickly, I believe, because while

7  looking at the file over the weekend, it became apparent that

8  really the -- and although I'm not formally withdrawing the

9  second part of the motion -- it seems that the only relevant

10  and necessary consideration is the 60(b)(1) aspect respecting

11  relief from the -- from the barred order.  And the reason is

12  that one fact I discovered was that the initial order next to

13  the 363 Motion as filed by the Debtor referenced an

14  interpretation of 1146(c) that suggested that the sale would be

15  free and clear, not -- and not subject to, rather, not only

16  stamp or similar taxes; as the statute articulates, but also

17  sales taxes.  In fact, it was interesting, Your Honor, because

18  in the recital -- the fact finding in the order -- there's --

19  there was no reference to sales tax, but in the decretal

20  paragraph at the end of the order, there was a reference to

21  sale tax.  And this is only in the initial order as filed with

22  the motion.  Go some months later, and low and behold the order

23  actually entered by Your Honor -- and I have extra copies for

24  the Court and for counsel if that would be convenient --

25      THE COURT:  Yes, please hand it up.

**Aa 00194**

54

1    MR. SILVERSCHOTZ:  The order as actually entered
2  merely referenced stamp, transfer or other taxes.  Your Honor,
3  if I may approach, I don't know if you want to mark these.
4  We've previously discussed how we take judicial notice of --
5    THE COURT:  Let's --
6    MR. SILVERSCHOTZ:  -- these kinds of orders.
7    THE COURT:  Yes, let's mark it as an exhibit --
8    MR. SILVERSCHOTZ:  Okay.
9    THE COURT:  -- so there's no --
10    MR. SILVERSCHOTZ:  Your Honor, I'll make the first
11  one, then, the draft order appended to the original 363 Motion
12  and the -- we'll call that #1 -- California-1 and California-2.
13  The order approves -- under 105, 363, et cetera, approving the
14  sale.
15    (California Board of Equalization Exhibit-1 marked for
16  identification)
17    (California Board of Equalization Exhibit-2 marked for
18  identification)
19    THE COURT:  All right.  You may hand those up.  C-1
20  and C-2.  Thank you.
21    MR. SILVERSCHOTZ:  Thank you.  I'm gonna give copies
22  to my colleague.  Your Honor, I took the liberty of putting
23  green tabs on the draft and on the final order.  And on the
24  draft on paragraph 2, one can see quite clearly that there's
25  a reference to stamp tax or similar tax, which I think is the

Aa 00195

1  correct way of handling it.  And since we were counsel to the

2  Board of Equalization of the GST case, we're very sensitive to

3  that issue.  And then in paragraph 33 on page 20 of the draft

4  order, clearly it says "sale transfer or other similar tax" and

5  the -- in C-2, fact finding (r) refers to stamp or similar tax

6  tracking the draft.  And paragraph 43 on page 28 makes

7  reference to stamp tax, transfer tax or other similar tax.

8       I had thought, initially, Your Honor, that we were gonna

9  have round two of the GST fight.  But upon review of those

10 orders it's clear that the word "sale" -- "sales tax" had been

11 struck.  I wasn't part of the case back then.  I don't know if

12 it was on objection of a party or the Court's own correct

13 reading of the statute, but clearly the -- the legislative

14 history, for lack of a better term, of this -- or the evolution

15 of the order led us -- resulted in the striking of the term

16 "sales tax."  And we know that a sales tax is not a transfer

17 tax in the way we think of real estate transfer tax, and the

18 GST case, of course, makes that clear.

19      So as a consequence, Your Honor, coming back to where I

20 started from, our motion under Rule 60, which we filed, was in

21 two parts.  It was under 60(b)1 with respect to the Bar Order.

22 We are within one year of the Bar Order, so we can proceed

23 timely in that matter.  It was under -- that was with respect

24 to the Bar Order.

25      The Sale Order, because that was more than a year ago, I

Aa 00196

56

1  initially thought I was gonna have to proceed on a 60(b)(6),
2  which is not subject to the one year limitation, but since I
3  think -- and to counsels credit and the Trust's credit, no one
4  has really said in the responsive papers that there is a belief
5  by the estate that this sale was exempt from sales -- at least
6  as an initial matter -- exempt from sales tax under 1146(c).
7  We really should simply be proceeding under the -- under the
8  (b)(1) --
9         THE COURT:  All right.
10        MR. SILVERSCHOTZ:  -- prong of the argument.  Now the
11 sale, as I just said, clearly was not exempt from sales tax,
12 but the Debtor, during the course of the case, didn't proceed
13 in a manner that one ordinarily would have expected a Debtor
14 proceed, at least vis-a-vis giving notice to tax authorities of
15 certain sales.  And the sale procedure, Your Honor, as we
16 referenced in our pleadings, expressly set forth to whom notice
17 of the sale was to be given.  And it expressly states that
18 Local, State, County tax authorities affected by the sale were
19 to be given actual notice of the sale, not by publication.
20 California Board of Equalization was a known, you know, known
21 Creditor here.  But the -- we went through all of the -- the
22 affidavits of service, and in fact, it appears, unfortunately,
23 that the sale order, all of the attendant proceedings, were not
24 on notice to the Board of Equalization.  And in their response
25 to our motion, again, to the their credit, I don't believe the

**Aa 00197**

57

1    estate argues to the contrary.

2        Secondly, the sales tax returns that were filed with

3    respect to the relevant periods make no reference whatsoever --

4    and again, it's important that we remember that the reason

5    we're here is not with respect to a pre-petition --

6        THE COURT:  Yes, I understand.

7        MR. SILVERSCHOTZ:  -- priority claim.  It is an

8    administrative expense.  And I suppose that when notice of an

9    admin bar date shows up, any tax authorities could look at the

10   tax returns and see if they were paid.  And the Debtor,

11   apparently, paid its sales taxes in accordance with the returns

12   that were filed, but there was no inclusion of the proceeds of

13   this sale in the relevant tax returns.  And --

14       THE COURT:  All right.

15       MR. SILVERSCHOTZ:  -- at the bottom, Your Honor, the

16   sale goes through, the redacted order is entered --

17       THE COURT:  I understand that.

18       MR. SILVERSCHOTZ:  -- the tax returns are filed and

19   California sees the tax returns.  And as far as it knows, this

20   is a tax paying Debtor-In-Possession.

21       THE COURT:  When did you figure it out?

22       MR. SILVERSCHOTZ:  Your Honor, as the -- as Mr.

23   Parson's declaration makes clear, I am standing here today, as

24   much as anything, by virtue of a fortuitous review.  California

25   has people who go combing through the internet looking for

Aa 00198

58

1  money. And there is a -- an employee of the Board of
2  Equalization, Ms. Bermudez, who was -- I don't know if she was
3  Googling away or what she was doing, but she stumbled across
4  this sale, either in -- I won't speculate -- but it was
5  determined that there was a sale potentially subject to
6  tax, she did some investigation. And within less than a month
7  of the discovery, she filed the claim and the claim was filed,
8  I think, 5 or 6 days before the post-confirmation bar date
9  set by the Confirmation Order.

10       Thereafter, Mr. Parsons, who's the person in charge out in
11  California, was in communications with Mr. Soose -- I'm glad we
12  don't have to put Mr. Soose back on the stand for this. And so
13  I don't think there's any question as to what the nature of the
14  underlying tax is and everyone knows what it is, the question
15  is whether or not the Debtor does -- you know, has to pay it or
16  not.

17       THE COURT:  Okay.

18       MR. SILVERSCHOTZ:  I think, Your Honor, in considering
19  the case law, it's important for us to note what the case is
20  not about. It's not about a vendor whose billing records were
21  is a state of disarray. It's not about a clerk who lost or
22  mislaid a bar notice. And happily, it's not about a law firm
23  that failed to file a Proof of Claim. We are a Creditor of the
24  post-petition period that didn't receive Court mandated notice
25  of significant proceedings before Your Honor that directly

Aa 00199

1   affected us and that gave rise to a lawful, statutory, post-
2   petition liability that the Debtor failed to pay.  We had some
3   brief back-and-forth in the pleadings with regard to the
4   applicability of Section 505.  That's what it's -- that's the
5   way it's ordinarily done, Your Honor.  I don't think anyone can
6   really dispute that.  If there is a disputed tax post-petition,
7   a Debtor or Trust -- Trustee will file a 505 Motion, attach the
8   application, notice the appropriate authority, and we come in
9   and we figure it out or we do nothing, and in which case we
10  have to forever hold our peace.

11      That's not the fact pattern that we have today.  We have
12  this sort of, you know, back door notice that, you know, the
13  bar date when it was received by California had the -- it was
14  like one hand clapping.  There was nothing against which it
15  could be considered because there was no notice of the -- of
16  the sale and because the tax attorney said what they said.  The
17  Indian Motorcycle case that we cite out of the 1st Circuit says
18  505 is the way to go, although in that case, in fairness to the
19  Trust, I have to note that was a 502(c) estimation comparison.
20  But I would suggest, Your Honor, that the import of Indian
21  Motorcycle is simply that 505 is the way to go when one is
22  dealing with post-petition taxes.

23      The Pecovsky case out of the Middle District of
24  Pennsylvania, I think is particularly instructive.  That was a
25  tax claim where the Internal Revenue Service didn't have notice

*Writer's Cramp, Inc.*
*Certified Court Transcribers*
732-329-0191

Aa 00200