60

1  that a Debtor was operating a business, didn't have the FEIN

2  number and didn't have effective notice of the nature of the

3  potential claim, although that was not an admin claim, I

4  believe it was a 13 case and was dealing with pre-petition

5  taxes.

6      Of course -- and this is very important, Your Honor --

7  we're here dealing with a non-substantive objection.  The Board

8  of Equalization does not want to be paid more than one penny --

9          THE COURT:  Well --

10         MR. SILVERSCHOTZ:  -- of what it's due, and we're

11 happy to go over the actual merits with the Debtor.

12         THE COURT:  Well, we're not here yet, we're not here

13 on the merits.

14         MR. SILVERSCHOTZ:  Absolutely not, Your Honor.

15         THE COURT:  All right.

16         MR. SILVERSCHOTZ:  So -- and I'm just making --

17         THE COURT:  I'm talking about -- we're only talking

18 about whether or not you get relief from the bar date.

19         MR. SILVERSCHOTZ:  Correct, Your Honor.

20         THE COURT:  All right.

21         MR. SILVERSCHOTZ:  And O'Brien, you know, which I had

22 to get to sooner or later, talks about the Debtors -- the

23 estate's response which is that not withstanding everything

24 I've said, if this $845,000 is properly brought, the estate is

25 going to be prejudice because of everything that's happened in

*Writer's Cramp, Inc.*
*Certified Court Transcribers*
*732-929-0191*

Aa 00201

61

1  the case thus far.  And Your Honor, I read the papers and I
2  understand the argument, and it's the argument that has to be
3  made by the estate.  But O'Brien makes clear that a requirement
4  of paying a claim that's properly due and owing -- which
5  incidently, the Shaw contract contemplates was gonna remain
6  with the estate.  They talk about sales taxes in the Shaw
7  contract expressly, that's in our papers, Your Honor.
8          THE COURT:  Yes.
9          MR. SILVERSCHOTZ:  The reality here is just as was
10 dismissed with the wave of a hand in O'Brien, the failure to
11 receive a windfall doesn't constitute prejudice.  And what
12 would happen here, Your Honor, is simply that the estate, if
13 the motion -- if my motion isn't granted, the estate would
14 be -- would get off from paying taxes that are properly owed
15 and that were timely filed because we didn't get the notice
16 that Your Honor told the Debtor to give us, and the tax returns
17 failed to properly reflect the income.
18     To sum up, Your Honor, and I could --
19          THE COURT:  You don't need to.
20          MR. SILVERSCHOTZ:  -- go around in a circle again.
21          THE COURT:  You don't need to.
22          MR. SILVERSCHOTZ:  But there -- and I won't -- just to
23 make a closing point, not to repeat what I previously said --
24 in paragraph 29 of the Trustee's opposition to our motion, the
25 Trustee says {quote} "In short, the Board argues that the

*Writer's Cramp, Inc.*
*Certified Court Transcribers*
*732-329-0191*

**Aa  00202**

1  Debtors should have filled out a Proof of Claim form for the

2  Board." Your Honor, with deference in every direction to my

3  colleagues, I think what we actually argue is not that they

4  should have filed a Proof of Claim for us, but simply that they

5  should have given us the notice that we were entitled to and

6  filed tax returns that properly reflected the income that they

7  -- the sales income they received from the sale.

8          THE COURT:  All right.

9          MR. SILVERSCHOTZ:  Thank you.

10         MR. CUNNINGHAM:  Your Honor, I have very brief

11  testimony from Mr. Soose and only two exhibits.

12         THE COURT:  All right.

13         MR. CUNNINGHAM:  Thank you, Your Honor.  Trust calls

14  Mr. Soose.

15         MR. SILVERSCHOTZ:  Your Honor, if counsel wants to

16  make a proffer, he may -- I --

17         MR. CUNNINGHAM:  It's -- it will be very quick, Your

18  Honor.

19         THE COURT:  Well, tell me by proffer what it is.

20         MR. CUNNINGHAM:  The proffer is -- is essentially the

21  filling out of tax returns subsequent to the sale, when that

22  was done, what it provided, and that it was filed and sent to

23  the State Department of Equalization that described the sale

24  that had taken place.  That was done prior to the setting of

25  the Administrative Bar Date Order by this Court and then we

Aa 00203

63

1  served them the Administrative Bar Date Order.  We served the
2  California Department of Board -- State Board of Equalization -
3  - they're on our affidavit of service.  They received it, Your
4  Honor --
5          THE COURT:  Is that conceded?  You got the Bar Date
6  Order?
7          MR. SILVERSCHOTZ:  We got -- it is conceded that we --
8          THE COURT:  All right.
9          MR. SILVERSCHOTZ:  -- received the Bar Date Order --
10         THE COURT:  So you don't need that?
11         MR. SILVERSCHOTZ:  -- Your Honor.
12         MR. CUNNINGHAM:  Okay.
13         THE COURT:  What about the tax returns?
14         MR. SILVERSCHOTZ:  Your Honor, we did the next --
15  there are confidentiality provisions in California law to which
16  --
17         THE COURT:  Well, let me hear the testimony.
18         MR. SILVERSCHOTZ:  That's fine, Your Honor.
19         MR. CUNNINGHAM:  Thank you, Your Honor.  The Trust
20  calls Mr. Soose.
21         THE COURT:  You're already under oath.  You need not
22  be sworn again.
23       SOOSE, LITIGATION TRUST WITNESS, PREVIOUSLY SWORN
24         MR. CUNNINGHAM:  Your Honor, I would like to identify
25  Debtor's Exhibit-1.  It's an Affidavit of Service with respect

Aa 00204

Soose - Direct                              64

1  to the Sale Order.

2          THE COURT:  Well --

3          MR. CUNNINGHAM:  I can --

4          THE COURT:  Are you identifying -- or just have him --

5          MR. CUNNINGHAM:  Okay.

6                    DIRECT EXAMINATION

7  BY MR. CUNNINGHAM:

8  Q.  Mr. Soose, Debtor's Exhibit-1 -- I mean --

9          THE COURT:  The Trust's..

10 BY MR. CUNNINGHAM:

11 Q.  -- the Trust's Exhibit-1, can you identify this?

12 A.  This is an Affidavit of Service signed by Kate Logan.  It's

13 dated December 2nd, 2003.

14     (Litigation Trust's Exhibit-1 marked for identification)

15 Q.  And it --

16 A.  And it goes onto say that on or about November 26, 2003

17 copies of the notices were served and --

18         THE COURT:  The bar date.

19 A.  -- then there's a service list.

20         THE COURT:  All right.

21 BY MR. CUNNINGHAM:

22 Q.  Mr. Soose, if you look at page 13 of bar date --

23 Administrative Bar Date Order.

24 A.  Yes.

25 Q.  Do you see in the middle of second column the reference to

Soose - Direct                                                    65

1  California State Board of Equalization?

2  A.  Yes.

3          MR. CUNNINGHAM:  Thank you, Your Honor.  I only have

4  one other Affidavit of Service and it relates to the Sale

5  Order.

6          THE COURT:  All right.

7          MR. CUNNINGHAM:  May I approach the witness, Your

8  Honor.

9          THE COURT:  Yes, you may.

10         MR. CUNNINGHAM:  Thank you.

11     (Pause in proceedings)

12         MR. CUNNINGHAM:  Your Honor, I only have one copy with

13 me.  Let's -- I can explain to the Court what it is simply.

14         THE COURT:  What's the docket number?

15         MR. CUNNINGHAM:  It's -- the docket number -- this one

16 doesn't even have the docket number on it.  This is the

17 Declaration of Service by the Debtors.  It concerns the Sale

18 Order.

19     (Litigation Trust's Exhibit-2 marked for identification)

20         THE COURT:  When was it filed?

21         MR. CUNNINGHAM:  The Affidavit of Service is dated

22 April 29th, 2002, Your Honor.

23         MR. SILVERSCHOTZ:  Your Honor, it might be document

24 #1369, which would be Exhibit-F to Mr. Parson's affidavit --

25 or his declaration, rather.

*Writer's Cramp, Inc.*
*Certified Court Transcribers*
*732-329-0191*

Aa  00206

Soose - Direct                                66

1           MR. CUNNINGHAM:  And in it I simply note to the Court
2   with respect to that document --
3           THE COURT:  I did not get Mr. Parson's declaration.
4   Are you seeking to have me consider that as evidence?
5           MR. SILVERSCHOTZ:  Your Honor, I think the -- I'm very
6   sorry to hear that Your Honor doesn't have (indiscern.).
7           THE COURT:  Any objection to my considering that?
8           MR. CUNNINGHAM:  I think it's hearsay, Your Honor.
9           MR. SILVERSCHOTZ:  Your Honor, based on the response
10  that we received to our motion, it appeared that no facts were
11  in dispute.  If --
12          THE COURT:  Well, maybe they are.  I'll hold off.  Let
13  me hear the Debtor's evidence and then I'll consider whether or
14  not you can present any evidence.
15          MR. CUNNINGHAM:  And Your Honor, simply with that
16  Affidavit of Service I was noting that on page 19 of that,
17  which was attached to their submission, there is service
18  recognized that it went to the California Attorney General's
19  Office in connection with the original Sale Order.
20          THE COURT:  Are you moving that as an exhibit?
21          MR. CUNNINGHAM:  Yes, I am, Your Honor.
22          THE COURT:  All right.  We'll make copies at the
23  break.
24          MR. CUNNINGHAM:  Okay.  Thank you.
25  BY MR. CUNNINGHAM:

Aa 00207

Soose - Direct                                          67

1  Q.  Mr. Soose, when did the sale to Shaw of substantially all
2  the assets in these cases take place?
3  A.  It was effective May 3rd, 2002.
4  Q.  Did you complete a tax return for the State of California
5  during -- subsequent to the sale?
6  A.  Yes.
7  Q.  Did you make reference at all to the sale, the Shaw sale
8  as we call it?
9  A.  Yes.  The -- it was a part of the tax compliance work for
10  all of the Debtor companies, there were hundreds of tax
11  returns filed in jurisdictions throughout the United States,
12  including the State of California that for the calendar year
13  2002, those returns were filed which would be normally -- what
14  I'm referring to in this context is the income in franchise tax
15  returns.
16  Q.  When did you file those returns with California?
17  A.  They were filed in the Fall of 2003.  The deadline would
18  have either been September 15th or October 15th, I don't recall
19  exactly, of the year after the sale.
20  Q.  And do you know when the bar date was fixed for the filing
21  of administrative claims in these cases?
22  A.  The bar date was January 15th, 2004.
23  Q.  Thank you, Your Honor.  That is all the questions I had for
24  this witness.
25           THE COURT:  Cross?

Soose - Direct                              68

1      MR. SILVERSCHOTZ:  On those points, no, Your Honor.  I

2   would --

3      THE COURT:  Thank you.  You may step down.

4      MR. SOOSE:  Thank you.

5      THE COURT:  Leave the exhibits there.

6   (The witness steps down)

7      MR. SILVERSCHOTZ:  Your Honor, one point that I would

8   -- I would note and counsel -- to the extent counsel is

9   suggesting that service on the Attorney General constitutes

10  service on the Board of Equalization, that's contrary to the

11  holding of the District Court in the GST case.  In fact, GST

12  stands for the proposition that merely mailing to the Board of

13  Equalization without specifying the routing code that's -- is

14  filed with the Middle District of -- central -- I believe it's

15  the Middle District of California -- is itself inadequate.  But

16  here I don't think the Debtor is suggesting that it was --

17  anything was mailed in terms of the sale to Equalization merely

18  --

19      THE COURT:  Well, I don't have it.

20      MR. SILVERSCHOTZ:  -- to --

21      THE COURT:  It's the one exhibit I don't have a copy

22  of it.  Do you want to give me it -- give it to me?

23      MR. SILVERSCHOTZ:  Also, Your Honor, for what it's

24  worth --

25      THE COURT:  Please --

**Aa 00209**

69

1        MR. SILVERSCHOTZ:  I'm sorry.

2        THE COURT:  -- let me deal with one issue at a time.

3        MR. CUNNINGHAM:  Your Honor, may I approach?

4        THE COURT:  Yes.  This is T-2?

5        MR. CUNNINGHAM:  Yes.

6        THE COURT:  What page?

7        MR. CUNNINGHAM:  It's on page 19.

8        THE COURT:  All right.  You served California Attorney

9  General's Office?

10        MR. CUNNINGHAM:  Yes, Your Honor.

11        THE COURT:  All right.  Well, what about the argument

12  you had to serve the California Board of Equalization

13  specifically?

14        MR. CUNNINGHAM:  The view, Your Honor, is we did not

15  believe we had any transfer taxes and therefore --

16        THE COURT:  So what?

17        MR. CUNNINGHAM:  -- didn't -- didn't serve it on them

18  individually.  We did serve them with a notice of the

19  administrative bar date.

20        THE COURT:  Okay.  They now say they have a claim.

21  You're saying, "We served them with notice of the Sale Order."

22  So therefore, they have -- they were on notice.  How does that

23  make them on notice to file their claim?

24        MR. CUNNINGHAM:  Well, we filed, as Mr. Soose said,

25  filed a tax return that indicated the sale and then --

Aa 00210

70

1    THE COURT:  Well, where is the tax return and how did

2  it indicate the sale?  And was it filed with the California

3  Board of Equalization?

4    MR. CUNNINGHAM:  No, Your Honor, it was filed with the

5  State.

6    THE COURT:  It was an income tax.

7    MR. CUNNINGHAM:  It was filed with the State.  Beause

8  the view is that the Debtors did not believe that there was

9  a --

10    THE COURT:  Okay.  But --

11    MR. CUNNINGHAM:  -- transfer tax, so therefore --

12    THE COURT:  The issue is whether or not they got

13  notice to file a claim.

14    MR. CUNNINGHAM:  There is -- and there's no dispute

15  that they got notice of the Administrative Bar Date Order.

16    THE COURT:  Okay.

17    MR. CUNNINGHAM:  There's no dispute to that.  That's

18  the main reason we're here.  They got notice with respect to

19  that.

20    THE COURT:  But they didn't get the notice of the

21  sale.

22    MR. CUNNINGHAM:  The State Attorney General's Office

23  got notice of the sale.  The State -- California Board of

24  Equalization -- we have not found an affidavit of service that

25  indicates that they got notice of the sale, and they're

Aa 00211

1  indicating that they didn't -- they didn't get that notice.

2        THE COURT:  So how did the administrative bar date --

3  how did they get notice that they had a claim?

4        MR. CUNNINGHAM:  I guess, Your Honor, we're back to

5  the Supreme Court view of whether you're a known Creditor or

6  not.  I mean, there was -- the -- they were not a known

7  Creditor at the time of the sale.

8        THE COURT:  Why?

9        MR. CUNNINGHAM:  But we did give them --

10        THE COURT:  Why?  Because you took the legal position

11  that they had no claim?

12        MR. CUNNINGHAM:  Again, Your Honor, I'm going back to

13  -- I don't -- we weren't in charge of who the Debtor sent

14  notice.

15        THE COURT:  I understand.

16        MR. CUNNINGHAM:  So we're going back and looking at

17  the record.  We look at the record that the State Attorney

18  General's Office got it, not the -- the State Board of

19  Equalization.  We do note that they did receive copy of the

20  Administrative Bar Date Order.  They did have time to come

21  forward to assert whatever claim that they had and they didn't.

22  They have filed it after the effective date of the Plan.

23        THE COURT:  That's all irrelevant.  That is true in

24  every single case where somebody asks to file a late claim.

25  They didn't file a claim.  Sometimes they actually got notice

72

1  of the claim.  How is the estate prejudiced by allowing a late

2  claim here?

3       MR. CUNNINGHAM:  I think the estate is prejudiced in

4  that it is for $858,000.  They're asserting it as an

5  administrative claim --

6       THE COURT:  Okay.

7       MR. CUNNINGHAM:  -- that was not factored in as part

8  of the Plan.  And a confirmation Plan and the negotiations that

9  went into it.  The whole purpose of the administrative --

10       THE COURT:  Do you think that -- are you suggesting

11  that an $800,000 administrative claim would have meant that I

12  wouldn't confirm the Plan and they -- you would not have

13  proceeded with confirmation of this Plan?

14       MR. CUNNINGHAM:  I'm not stating that, Your Honor.

15  I'm stating the purpose of the administrative --

16       THE COURT:  How many millions of dollars in

17  administrative claims have been filed in this case?

18       MR. CUNNINGHAM:  I would say several millions of

19  dollars.

20       THE COURT:  I think over 25 million in administrative

21  claims if I'm remembering the Motion to Extend the Time to

22  object to administrative claims.

23       MR. CUNNINGHAM:  There were a large amount of

24  administrative claims filed, Your Honor, and that was the

25  purpose of the administrative bar date.

*Writer's Cramp, Inc.*
*Certified Court Transcribers*
*732-329-0191*

**Aa 00213**

1     THE COURT:  Okay.  But didn't <u>O'Brien</u> say you can't
2 say it's prejudice just because I may allow the claim?  There
3 has to be some other prejudice like there's been -- already
4 been the final distribution to Creditors and we can't get that
5 money back to re-distribute.  Isn't that the type of prejudice
6 that <u>O'Brien</u> and <u>Pioneer</u> are talking about to the estate?
7     MR. CUNNINGHAM:  Your Honor, at -- <u>Pioneer</u> certainly
8 says that this Court is to take a look at the equitable
9 determinations and it's really up to Your Honor.  Our view, you
10 know, as counsel to the Trust, is that they did receive notice
11 of the administrative bar date.  They could have come in and
12 they could have asserted the claim.  They asserted it after the
13 effective date of the Plan.  So we were hit with a claim that
14 took place by a party who acknowledges they got the
15 administrative bar date notice but did not file the claim.  So
16 it is our view that we would be prejudiced in that this could
17 be the first of others that might try this.  And I know it's
18 case by case --
19     THE COURT:  It's case by case.
20     MR. CUNNINGHAM:  It's case by case and it's an
21 equitable determination by this Court.
22     (Pause in proceedings)
23     THE COURT:  Well, I won't ask you about the
24 substance of the objection.  But I think that I will grant
25 the Motion to File a Late Administrative Claim.  I think that

74

1  there is not the type of prejudice to the estate that O'Brien
2  said needs be found.  Clearly there would be prejudice to the
3  claimant because they would lose the right to collect on their
4  administrative claim to the extent they have one.  Although
5  they did get notice of the administrative bar date, I agree
6  they didn't have notice that they may have a claim against the
7  estate because they did not get any notice of the sale or the
8  Sale Order, which gave rise or purports to give rise to their
9  claim.  So I will grant the motion.
10         MR. SILVERSCHOTZ:  Your Honor, I'll settle an order
11 on counsel.  I didn't bring an order with me.
12         THE COURT:  Okay.
13         MR. SILVERSCHOTZ:  And I apologize to the Court about
14 the -- Mr. Parson's declaration.  It is on the agenda so --
15         THE COURT:  It is?
16         MR. SILVERSCHOTZ:  Yes.
17         THE COURT:  I'm sorry, it was filed with respect to
18 the objection to claim.
19         MR. SILVERSCHOTZ:  Yes.
20         THE COURT:  I did see that, sorry.  All right.  I
21 guess --
22         MR. CUNNINGHAM:  Your Honor, I think that's all the
23 matters we had this morning.  I appreciate the Court's time.
24         THE COURT:  All right.
25         MR. CUNNINGHAM:  Thank you.

Aa 00215

75

1    MR. SILVERSCHOTZ:   Thank you, Your Honor.

2        THE COURT:  We'll stand adjourned.

3    (Court adjourned)

4

CERTIFICATION

5  I certify that the foregoing is a correct transcript from the

6  electronic sound recording of the proceedings in the above-
   entitled matter.

7

8  _____                    12-22-04
   Signature of Transcriber                          Date

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

*Writer's Cramp, Inc.*

*Certified Court Transcribers*

*732-329-0191*

Aa 00216

Certificate of Mailing and/or Delivery

I hereby certify that on June 9, 2005, the State of New Jersey's Environmental Protection Unit electronically filed an Appendix to Brief with the Clerk of the Court using CM/ECF which will send notification of such filing to the following: Jeffrey M. Schlerf, Esq., and Eric M. Sutty, Esq.

PETER C. HARVEY

ATTORNEY GENERAL OF NEW JERSEY

By: /s/ Kathrine Motley Hunt
    Kathrine Motley Hunt
    Deputy Attorney General
    Admitted pro hac vice

By: /s/ Stuart Drowos
    Stuart Drowos, Bar ID #427
    Local Counsel for NJDEP
    Delaware Division of Revenue
    Carvel Building, 8th Floor
    820 N. French Street
    Wilmington, DE 19801
    stuart.drowos@state.de.us