## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re | : | Chapter 11 |
|  | : |  |
| THE IT GROUP, INC., | : | Case No. 02-10118 |
| et al., | : |  |
|  | : | (MFW) (Jointly Administered) |
| Debtors. | : |  |
|  | : |  |
| STATE OF NEW JERSEY | : |  |
| DEPARTMENT OF | : |  |
| ENVIRONMENTAL PROTECTION, | : |  |
|  | : |  |
| Appellant, | : | C.A. NO. 05-CV-005 (JJF) |
|  | : |  |
| v. | : |  |
|  | : |  |
| THE IT LITIGATION TRUST, | : |  |
| successor to the Debtors, | : |  |
|  | : |  |
| Appellee. | : |  |

## <u>ANSWERING BRIEF OF APPELLEE</u>
## <u>THE IT LITIGATION TRUST</u>

Jeffrey M. Schlerf (No. 3047)
Eric M. Sutty (No. 4007)
THE BAYARD FIRM
222 Delaware Avenue, Suite 900
Wilmington, Delaware 19801
(302) 655-5000

John K. Cunningham
Ileana A. Cruz
WHITE & CASE LLP
Wachovia Financial Center
200 South Biscayne Blvd., Suite 4900
Miami, Florida 33131

Dated: August 15, 2005

# TABLE OF CONTENTS

**Page**

I. TABLE OF AUTHORITIES ................................................................................. iii

II. STATEMENT OF APPELLATE JURISDICTION .................................................1

III. COUNTER-STATEMENT OF ISSUES PRESENTED ........................................2

IV. APPLICABLE STANDARD OF APPELLATE REVIEW ....................................2

V. STATEMENT OF THE CASE............................................................................3

VI. STATEMENT OF THE FACTS ........................................................................4

    A.    The Chapter 11 Cases ...........................................................................4

    B.    Proof of Claim Bar Date .......................................................................5

    C.    Administrative Claim Bar Date .............................................................5

    D.    The Plan Injunction...............................................................................6

    E.    Confirmation of the Plan.......................................................................7

    F.    The NJ Administrative Order and NJ Administrative Proceeding ..........8

        1.    The Woodbury Creek Mitigation Bank .....................................8

        2.    NJDEP Administrative Order ..................................................10

        3.    NJDEP Administrative Proceeding...........................................10

        4.    FWPA -- Payment in Lieu of Mitigation ..................................11

VII. ARGUMENT ................................................................................................13

    A.    NJDEP HAS FAILED TO DEMONSTRATE ANY ERROR BY THE BANKRUPTCY COURT IN FINDING THAT THE EVENTS GIVING RISE TO THE NJ ACTIONS OCCURRED PRE-PETITION ........................................13

        1.    NJDEP Conceded that the Alleged Drainage of Wetlands Occurred Pre-petition .............................................................................................13

        2.    NJDEP Failed to Demonstrate the Existence of Continuing Damage.......13

B.   THE BANKRUPTCY COURT PROPERLY CONCLUDED THAT THE RELIEF SOUGHT BY NJDEP AGAINST LANDBANK IN THE NJ ACTIONS CONSTITUTES A "CLAIM" AS DEFINED BY THE PLAN AND THE BANKRUPTCY CODE...................................................................................14

  1.   The Plan Defines a Claim as a Right to Payment ......................................14

  2.   The Alleged Injunctive Relief Seeks a Right to Payment..........................15

  3.   The Alleged Injunction in the NJ Administrative Order Does Not Stop Or Ameliorate Ongoing Pollution...................................................................17

  4.   NJDEP Attempts to Disguise its Claim as an Exercise of State Police Power .........................................................................................................19

C.   THE BANKRUPTCY COURT PROPERLY ENFORCED THE PLAN INJUNCTION AND CONFIRMATION ORDER BY DIRECTING DISMISSAL OF THE NJ ACTIONS ........................................................................................21

  1.   The NJ Actions are Barred by the Plan Injunction and Not by Bankruptcy Code Section 362(a).....................................................................................21

  2.   The Plan Injunction Enjoins Proceedings to Enforce Claims....................23

  3.   Confirmation Order is *Res Judicata* ..........................................................24

  4.   The Remaining Cases Relied on by NJDEP Are Inapposite .....................25

VIII. CONCLUSION.....................................................................................................26

## I.

## TABLE OF AUTHORITIES

**Page**

American Flint Glass Workers Union v. Anchor Resolution Corp.,
    197 F.3d 76 (3d Cir. 1999).................................................................................2

Chambers v. NASCO, Inc.,
    501 U.S. 32, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991).......................................24

In re Chateaugay Corp.,
    944 F.2d 997 (2d Cir. 1991)........................................................................17, 18

Commonwealth Oil Refining Co., Inc, v. U.S. Env. Prot. Agency, (In re Commonwealth
    Oil Refining Co., Inc),
    805 F.2d 1175 (5th Cir. 1986) ..........................................................................25

In re Continental Airlines, Inc.,
    236 B.R. 318 (Bankr. D. Del. 1999) ..................................................................24

In re Finova Group, Inc.,
    304 B.R. 630 (Bankr. D. Del. 2004) ...................................................................2

Fleet Nat'l Bank v. Whippany Venture I, LLC, (In re The IT Group, Inc., Inc., et al.),
    307 B.R. 762 (Bankr. D. Del. 2003) ...................................................................3

Kokkonen v. Guardina Life Ins. Co. of America,
    511 U.S. 375, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994).....................................24

Mellon Bank, N.A. v. Metro Comms., Inc.,
    945 F.2d 635, 642 (3d Cir. 1991)........................................................................3

Mountain Peaks Financial Svcs, Inc., v. Shepard, (In re Shepard),
    2005 WL 1667383 (1st Cir. BAP Mass., June 2, 2005) .....................................24

Ohio v. Kovacs,
    469 U.S. 274 (1985)............................................................................... passim

Penn Terra Ltd. v. Dep't of Envtl. Res.,
    733 F.2d 267 (3d Cir. 1986)...............................................................19, 20, 21

Safety Kleen, Inc. v. Wyche, (In re Safety Kleen, Inc.),
    274 F.3d 846 (4th Cir. 2001) ............................................................................26

**Page**

In re Szostek,
   886 F.2d 1405 (3d Cir. 1989)..................................................................................24
In re Torweco Electronics, Inc.,
   8 F.3d 146 (3d Cir. 1993)..................................................................17, 18, 19, 21

United States v. Nicolet,
   857 F.2d 202 (3d Cir. 1988)..................................................................................25

## STATUTES

11 U.S.C. §§ 101 *et seq.*...............................................................................................2

11 U.S.C. §§ 105(5) ......................................................................................................14

11 U.S.C. § 105(a) ..........................................................................................................1

11 U.S.C. § 362(a) ........................................................................................................21

11 U.S.C. § 362(b)(4)........................................................................................21, 22, 25

11 U.S.C. § 362(b)(5) ....................................................................................................20

11 U.S.C. § 362(c)(2)(C) ...............................................................................................22

11 U.S.C. § 1142............................................................................................................24

11 U.S.C. § 1142(b) .........................................................................................................1

28 U.S.C. § 158(a)(1).......................................................................................................2

N.J.S.A. 13:9B-1 *et seq.* (NJ Freshwater Protection Act).........................................8, 18

## MISCELLANEOUS

Federal Rule of Bankruptcy Procedure 8009 ...................................................................1

Federal Rule of Bankruptcy Procedure 8010 ...................................................................1

N.J.A.C. 7:7A-14.20(a)(1)(iii) ........................................................................................8

N.J.A.C. 7:7A-14.23(a)....................................................................................................9

N.J.A.C. 7:7A-14.23(d)....................................................................................................9

N.J.A.C. 7:7A-14.23(g)....................................................................................................9

**Page**

N.J.A.C. 7:7A-14.25(b) ................................................................................................8

N.J.A.C. 7:7A-15-6 ..........................................................................................11, 12, 16

N.J.A.C. 7:7A-15.22 ...................................................................................................12

N.J.A.C. 7:7A-16.4 .....................................................................................................18

Appellee The IT Litigation Trust (the "Trust") by and through its trustee, AlixPartners

LLC (the "Trustee"), successor to The IT Group, Inc. and its affiliated debtors (collectively, the

"Debtors"), hereby submits its answering brief (the "Answer Brief") on appeal in response to the

Brief (the "NJDEP Brief") of Appellant, State of New Jersey, Department of Environmental

Protection (the "NJDEP"), pursuant to Rules 8009 and 8010 of the Federal Rules of Bankruptcy

Procedure and the Stipulation and Order setting a briefing schedule entered by this Court on

April 28, 2005, as amended by stipulations dated May 12, 2005 and July 18, 2005.

II.

**STATEMENT OF APPELLATE JURISDICTION**

Appellant appeals from the December 6, 2004 order (the "Order") of the United States

Bankruptcy Court for the District of Delaware (Chief Bankruptcy Judge Mary F. Walrath) (the

"Bankruptcy Court") (i) enforcing the injunction contained in the Debtors' confirmed chapter 11

plan (the "Plan Injunction") and the Bankruptcy Court's order confirming the Plan (the

"Confirmation Order"), and (ii) directing the dismissal of that certain administrative proceeding

currently pending in the Office of Administrative Law of the State of New Jersey (OAL Dkt. No.

ESA 06949-2002, Agency Ref. No. 0820-94-0013) (the "NJ Administrative Proceeding") against

one of the Debtors, Landbank, Inc. ("Landbank"), for alleged violations cited by NJDEP in that

certain administrative order issued on or about July 17, 2002 (the "NJ Administrative Order,"

together with the NJ Administrative Proceeding, the "NJ Actions").  The Order granted the

Trust's Motion (the "Motion") For An Order (i) Enforcing (a) the Bar Date Order, (b) the

Administrative Bar Date Order, (c) the Confirmation Order, and (d) the Plan Injunction; and (ii)

Directing the New Jersey Department Of Environmental Protection to Dismiss Certain

Administrative Actions Against the Debtors Pursuant to the Court's Orders, the Plan Injunction

and 11 U.S.C. §§ 105(a) and 1142(b); and (iii) Granting Related Relief, which was heard by the

1

Bankruptcy Court at a hearing held on December 6, 2004 (the "Hearing"). The Order is a final

order. This Court has jurisdiction to hear this appeal pursuant to 28 U.S.C. § 158(a)(1).

## III.

### COUNTER-STATEMENT OF ISSUES PRESENTED

The issues on appeal are as follows:

1.      Whether the Bankruptcy Court's finding that the events giving rise to the NJ

Actions arose pre-petition is clearly erroneous.

2.      Whether the Bankruptcy Court properly concluded that the relief sought by

NJDEP against Landbank in the NJ Actions constituted "claims" as defined in section 101(5) of

title 11 of the United States Code, as amended, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy

Code") and the First Amended Joint Chapter 11 Plan for The IT Group, Inc., and its Affiliated

Debtors Proposed by the Debtors and the Official Committee of Unsecured Creditors (the

"Plan").

3.      Whether the Bankruptcy Court properly concluded that prosecution of the NJ

Actions constitutes violations of the Bankruptcy Court's Bar Date Orders (defined below) and

the Confirmation Order, and is barred by the Plan Injunction.

## IV.

### APPLICABLE STANDARD OF APPELLATE REVIEW

In undertaking a review of issues on appeal from the Bankruptcy Court, this Court

applies a clearly erroneous standard to the Bankruptcy Court's findings of fact and a plenary

standard to its legal conclusions. American Flint Glass Workers Union v. Anchor Resolution

Corp., 197 F.3d 76, 80 (3d Cir. 1999); In re Finova Group, Inc., 304 B.R. 630, 635 (Bankr. D.

Del. 2004). With mixed questions of law and fact, the Court must accept the Bankruptcy Court's

finding of "historical or narrative facts unless clearly erroneous, but exercise[s] 'plenary review

of the trial court's choice and interpretation of legal precepts and its application of those precepts

to the historical facts.'" Fleet Nat'l Bank v. Whippany Venture I, LLC, (In re The IT Group,

Inc., Inc., et al.), 307 B.R. 762, 765 (Bankr. D. Del. 2003) (citing Mellon Bank, N.A. v. Metro

Comms., Inc., 945 F.2d 635, 642 (3d Cir. 1991)).

V.

STATEMENT OF THE CASE

This appeal is simple and the facts are not in dispute. Indeed, NJDEP offered no

evidence to the Bankruptcy Court below and conceded that the acts of the Debtors, which

allegedly resulted in improperly drained wetlands on their property in New Jersey, occurred prior

to the commencement of the Debtors' chapter 11 cases. In short, NJDEP asserted pre-petition

claims against the Debtors and/or the Trust in the NJ Actions, which the Bankruptcy Court

properly found were enjoined by the Plan Injunction and the Confirmation Order.

The entire thrust of this appeal centers on the Bankruptcy Court's conclusion that by its

NJ Administrative Order, NJDEP seeks to enforce against the Debtors a "claim" as defined by

section 101(5) of the Bankruptcy Code (a "Claim") and the Debtors' confirmed chapter 11 Plan.

Again, that ruling was based on the Bankruptcy Court's factual finding, conceded by NJDEP and

supported by the Trust's record evidence, that NJDEP's Claim arose from alleged pre-petition

activity of the Debtors. In accordance with Third Circuit case law, the Bankruptcy Court

correctly held that the NJ Administrative Order asserts a right to payment based upon pre-

petition activity of the Debtors which allegedly resulted in the drainage of approximately 19

acres of wetlands in connection with the Debtors' maintenance and operation a of wetlands

Mitigation Bank (defined below) on the Debtors' property. NJDEP presented no evidence

whatsoever to show that damage of any kind continued to occur post-petition; consequently, the

Bankruptcy Court found that no such continuing harm exists. (App. B-191). Therefore, the

Bankruptcy Court properly concluded that the NJ Administrative Order violated the Plan Injunction and the Confirmation Order.

The Bankruptcy Court further properly concluded the Plan Injunction and the Confirmation Order, and not the automatic stay of section 362 of the Bankruptcy Code, applied in this case to bar NJDEP from asserting its Claim against the Debtors and/or the Trust. The Bankruptcy Court specifically stated: "first of all, we're not talking about [section] 362, we're talking about the Plan Injunction. And they are two different things." (App. B-186).

Lastly, the Bankruptcy Court properly concluded that the NJ Administrative Proceeding was likewise barred by the Plan Injunction based upon the failure of NJDEP to demonstrate the existence of a compelling state interest in protecting the health and safety of the public which would outweigh the interest in protecting the rights of the Debtors' creditors. Accordingly, the Bankruptcy Court properly granted the Trust's Motion and directed the dismissal of the NJ Administrative Proceeding.

**VI.**

**STATEMENT OF THE FACTS**

**A.     The Chapter 11 Cases**

On January 16, 2002 (the "Petition Date"), each of the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code with the Bankruptcy Court, thereby commencing their jointly administered chapter 11 cases (the "Chapter 11 Cases").

By order dated April 25, 2002, the Court approved the sale (the "Sale") of substantially all of the Debtors' assets to The Shaw Group, Inc. The Sale closed on May 3, 2002 (the "Closing Date").

Immediately following the Closing Date, the Debtors began the process of shutting down their business operations in their effort to wind down the affairs of the Debtors' estates.

**B.**     **Proof of Claim Bar Date**

By order dated May 24, 2002 (the "Initial Bar Date Order"), the Bankruptcy Court

established July 15, 2002 as the last date to file proofs of claim against the Debtors in the

Chapter 11 Cases (the "Initial Bar Date").  (App. B-032).  Specifically, the Court's Initial Bar

Date Order decreed, in pertinent part:

> [A]ny holder of a Claim[1] that fails to file a proof of its Claim by
> the [Initial] Bar Date is forever barred and estopped from asserting
> its Claim against the Debtors, their estates or the property of any of
> them.

(App. B-034).

As set forth in the Affidavit of Mailing Bar Date Notice dated June 26, 2002 (the "Bar

Date Affidavit"), the Debtors served NJDEP by first class mail notice of the Initial Bar Date in

accordance with the Initial Bar Date Order.  (App. B-044).  NJDEP conceded it did not file a

proof of claim in the Chapter 11 Cases.  (App. B-166).

**C.**     **Administrative Claim Bar Date**

By order dated November 24, 2003 (the "Administrative Bar Date Order" and

collectively with the Initial Bar Date Order, the "Bar Date Orders"), the Bankruptcy Court

established January 14, 2004 (the "Administrative Bar Date") as the last date for the filing of

claims for costs or expenses of administration in the Chapter 11 Cases entitled to priority under

sections 503(b) and 507(a)(1) of the Bankruptcy Code (each, an "Administrative Claim") arising,

accruing or otherwise becoming due and payable on and between the Petition Date and

November 15, 2003.  (App. B-048).

Specifically, the Administrative Bar Date Order provides that the holder of an

Administrative Claim who fails to file such claim in accordance with the procedures set forth

---

[1]     "Claim" is defined in the Bar Date Order as that set forth in section 101(5) of the Bankruptcy Code.

therein, is "forever barred, estopped, restrained and enjoined from asserting any such administrative expense claim against the Debtors or the Debtors' properties." (App. B-050).

As set forth in the Affidavit of Service dated December 2, 2003 (the "Administrative Bar Date Affidavit"), the Trust's predecessor served NJDEP by first class mail notice of the Administrative Bar Date in accordance with the Administrative Bar Date Order. (App. B-053). NJDEP did not file any proof of Administrative Claim in the Chapter 11 Cases as required by the Administrative Bar Date Order.

## D.    The Plan Injunction

Section 13.19 of the Plan, as amended by paragraph (R) of section II of the Confirmation Order, provides for the permanent injunction against the assertion of Claims against the Debtors and the Trust after the effective date of the Plan (the "Effective Date"). (App. B-102-03). Specifically, the Plan Injunction provides:

> Except as otherwise expressly provided in the Plan, all Persons or entities who have held, hold, or may hold Claims or Equity Interests are permanently enjoined, from and after the Effective Date, from (a) commencing or continuing in any manner any action or other proceeding of any kind on any such Claim or Equity Interest against any of the Debtors, their Estates, Reorganized IT Group, the IT Environmental Liquidating Trust, the IT Environmental Liquidating Trustee, the Litigation Trust, the Litigation Trust Trustee, or the Assets, or against the property or interests in property of any of the Debtors, their Estates, Reorganized IT Group, the IT Environmental Liquidating Trust or the Litigation Trust, (b) the enforcement, attachment, collection or recovery by any manner or means of any Claims and/or Equity Interests, or any judgment, award, decree or order with respect to any Claims and/or Equity Interests, against any of the Debtors, their Estates, Reorganized IT Group, the IT Environmental Liquidating Trust, the IT Environmental Liquidating Trustee, the Litigation Trust, the Litigation Trust Trustee, or the Assets, , or against the property or interests in property of any of the Debtors, their Estates, Reorganized IT Group, the IT Environmental Liquidating Trust or the Litigation Trust, (c) creating, perfecting, or enforcing any encumbrance of any kind against any of the Debtors, their Estates, Reorganized IT Group, the IT

Environmental Liquidating Trust, the IT Environmental Liquidating Trustee, the Litigation Trust, the Litigation Trust Trustee, or the Assets, or against the property or interests in property of any of the Debtors, their Estates, Reorganized IT Group, the IT Environmental Liquidating Trust or the Litigation Trust and (d) asserting any right of set off or subrogation of any kind against any obligation due from any Debtor or against the property or interests in property of any Debtor, with respect to any such Claims or Equity Interests; provided however, that the foregoing shall not affect the rights of a party that were obtained pursuant to a Final Order of the Bankruptcy Court granting limited relief from the automatic stay under section 362(d) of the Bankruptcy Code. Nothing in this Section 13.19 shall enjoin the exercise of any police or regulatory power by a United States environmental governmental unit, a California state environmental governmental unit or a New Jersey state environmental governmental unit with respect to any environmental Claim that arises after the Effective Date.

(App. B-102-03) (emphasis added).

## E.    Confirmation of the Plan

The hearing on confirmation of the Plan in the Chapter 11 Cases occurred on March 29, 2004. Prior to the hearing, NJDEP filed an objection to the Plan (the "Plan Objection"). (App. B-057). In its three-page Plan Objection, NJDEP argued that the Plan did "not address the obligations of the Debtor Landbank," (App. B-058), in connection with the NJ Administrative Order, and that the "State's ability to ensure the restoration of the resources that were destroyed will be seriously compromised." (App. B-059).

Pursuant to the Court's Confirmation Order, the Court overruled NJDEP Plan Objection. (App. B-128). The Court entered the Confirmation Order confirming the Plan on or about April 5, 2004. (App. B-129). NJDEP did not appeal the Confirmation Order.

The Effective Date of the Plan occurred on April 30, 2004. (App. B-268). As of the Effective Date, the Debtors' business operations had ceased and their workforce had been reduced to a single employee. In accordance with the terms of the Plan and the Confirmation

Order, the Trust was established on the Effective Date and the Debtors' remaining assets vested therein.  (App. B-120).

**F.    The NJ Administrative Order and NJ Administrative Proceeding**

 **1.    The Woodbury Creek Mitigation Bank**

  Prior to the Petition Date, Landbank entered into a contract with NJDEP to create the "Woodbury Creek Phase I and II Wetland Mitigation Bank" (the "Mitigation Bank") pursuant to the terms of that certain Resolution of the New Jersey Freshwater Wetlands Mitigation Council on July 11, 1995 (the "NJ Wetlands Resolution").  (App. B-001).  The Mitigation Bank is located on a 203-acre parcel of land owned by Landbank near Woodbury Creek, West Deptford Township, Gloucester County, New Jersey; it consists of parts of Block 328, Lots 1 and 1C in the Township (the "Woodbury Creek Property").  (App. B-001).  Landbank formed a subsidiary, U.S. Wetland Services ("U.S. Wetland Services"),[2] to manage the Mitigation Bank.  (App. B-001).

  Pursuant to NJ Freshwater Protection Act, N.J.S.A. 13:9B-1 et seq. (the "FWPA"), an applicant who wishes to construct a wetland mitigation bank must submit a proposal to the Wetlands Mitigation Council (the "Council") established under the FWPA.  N.J.A.C. 7:7A-14.20(a)(1)(iii).  To gain approval of the contract to create a mitigation bank, an applicant must agree to post a bond to ensure success of the project and to record a conservation restriction which permanently sets the land aside as a natural preserve after the mitigation bank no longer operates.  N.J.A.C. 7:7A-14.25(b).  In turn, NJDEP oversees operation of the wetlands and sale of mitigation credits.  Id.  The mitigation bank is beneficial for both parties in that the applicant

---

[2]  Woodbury Creek, Inc., a wholly-owned subsidiary of U.S. Wetland Services, currently owns the Woodbury Creek Wetlands Mitigation Bank property.  Landbank took over the ownership of U.S. Wetland Services and, consequently, Woodbury Creek, Inc. in 2000.

can sell credits for cash to developers who cannot restore wetlands on their own sites, and

NJDEP receives the benefit of protected wetlands, as well as the benefit of offering developers

an alternative to performing their own mitigation for unavoidable wetland losses. (App. B-162).

The value of a mitigation bank is determined by quantifying the wetland values restored

or created in terms of "credits." The Council approves the number of mitigation credits to be

sold by a mitigation bank and approves the terms and conditions of each individual sale of

credits. N.J.A.C. 7:7A-14.23(a), (d). The mitigation bank operator monitors the bank and

reports to the Council at least annually during and after construction. N.J.A.C. 77:7A-14.23(g).

Developers and landowners needing to "mitigate" or compensate for authorized impacts to

wetlands associated with development activities may have the option of purchasing credits from

an approved mitigation bank rather than restoring or creating wetlands on or near the

development site.

On July 11, 1995, the Council passed the NJ Wetlands Resolution approving U.S.

Wetland's proposal to construct the Woodbury Creek Mitigation Bank. (App. B-001).

Landbank initially received 99.64 mitigation credits, which it could sell in return for agreeing to

enhance 128.73 acres of degraded wetlands and for agreeing to create 38.14 acres of freshwater

wetlands and 18.59 acres of upland buffers. (App. B-132). On September 24, 1998, NJDEP

determined that the property only had 34.917 acres of existing wetlands that required

enhancement, rather than the originally determined 128.73 acres. (App. B-133). On July 12,

2001, U.S. Wetland's consultant allegedly discovered that 18.924 acres of the 34.917 acres of

existing wetlands had been drained, and only 15.99 acres had been enhanced. (App. B-133).

Consequently, the completed work by U.S. Wetland equaled 36.64 mitigation credits, rather than

the initially received 99.64 credits. (App. B-133). In the meantime, Landbank had sold 32.75

mitigation credits (worth approximately $2.8 million). (App. B-133).

### 2.    NJDEP Administrative Order

On or about July 17, 2002, NJDEP issued the NJ Administrative Order, known as

Administrative Order and Notice of Civil Administrative Penalty, that accuses the Debtors of

failing to maintain the financial assurance necessary to run the Mitigation Bank, and failing to

continue to monitor the project as required by the NJ Wetlands Resolution. (App. B-132).

The NJ Administrative Order seeks to impose a $9,000 penalty against Landbank for the

pre-petition activities conducted on the Mitigation Bank site which allegedly resulted in the

drainage of wetlands that were previously identified on the site. (App. B-135). In addition to the

$9,000 penalty for pre-petition misconduct, the NJ Administrative Order contains a purportedly

"injunctive" component that would require the Trust to mitigate the alleged drainage of 18.924

acres of wetlands. (App. B-134). Specifically, the NJ Administrative Order requires the Trust to

create 57 acres of new wetlands outside of the Woodbury Creek Property to compensate for the

loss of wetlands on the Woodbury Creek Property at a ratio of 3 acres created for each disturbed.

(App. B-134).

### 3.    NJDEP Administrative Proceeding

The NJ Administrative Order is currently the subject of the NJ Administrative

Proceeding, before the Office of Administrative Law of the State of New Jersey (Miller,

Administrative Law Judge). (App. B-269). In the NJ Administrative Proceeding, the Debtors

dispute NJDEP's allegations that it destroyed approximately 19 acres of wetlands before the

Petition Date; therefore, the Debtors' liability has not been conclusively established. NJDEP

Brief at 17. Pursuant to an agreement with NJDEP, the Trust agreed to have the NJ

Administrative Proceeding placed on the "Inactive List" for a six-month period ending in

January 2006. (App. B-269).

### 4.    FWPA -- Payment in Lieu of Mitigation

Rule 7:7A-15-6 of the New Jersey Administrative Code (Mitigation for a Larger

Disturbance) governs the options for mitigation available to parties who are required to mitigate

under the FWPA. The Rule specifically provides, in pertinent part:

> (c)    Mitigation for a larger disturbance shall be performed through restoration, creation, or enhancement, carried out on the site of the disturbance to the maximum extent feasible. Onsite mitigation shall not be performed through upland preservation.

> (d)    If onsite restoration, creation, or enhancement is not feasible, mitigation shall be performed through any of the following, at the applicant's option:

> 1.    The purchase of credits from a mitigation bank located in the same HUC 11 as the disturbance or in an adjacent HUC 11 within the same watershed management area;

> 2.    The purchase of credits for a mitigation bank approved by the Wetlands Mitigation Council prior to January 1, 1999, which includes the disturbance site in its bank service area; or

> 3.    Offsite restoration, creation, enhancement, or upland preservation, in the same HUC 11 as the disturbance or in an adjacent HUC 11 within the same watershed management area as the disturbance.

> (e)    If mitigation under (d) is not feasible, mitigation shall be performed through either of the following, at the applicant's option:

> 1.    The purchase of credits from a mitigation bank which includes the disturbance site in its bank service area; or

> 2.    Restoration, creation, enhancement, or upland preservation in the same watershed management area as the disturbance.

> (f)    If mitigation is not feasible under (c), (d) or (e) above, mitigation shall be performed through a monetary contribution or,

if the Department determines that no other mitigation alternative is not practicable or feasible, through a land donation approved by the Wetlands Mitigation Council in accordance with N.J.A.C 7:7A-15.22.

N.J.A.C. 7:7A-15-6.

## VII.

## ARGUMENT

**A.    NJDEP HAS FAILED TO DEMONSTRATE ANY ERROR
BY THE BANKRUPTCY COURT IN FINDING THAT THE
EVENTS GIVING RISE TO THE NJ ACTIONS OCCURRED
PRE-PETITION**

### 1.    NJDEP Conceded that the Alleged
### Drainage of Wetlands Occurred Pre-petition

The Bankruptcy Court properly found that the events giving rise to the NJ Actions

occurred pre-petition.  During the Hearing, the Trust offered the testimony of the Debtors' pre-

petition Chief Financial Officer, Mr. Harry J. Soose, Jr., to show that the purpose of the NJ

Administrative Order was to penalize Landbank for the alleged pre-petition drainage of 19 acres

of degraded wetlands in connection with its construction and operation of the Mitigation Bank.

(App. B-169).  The Trust demonstrated that this event occurred pre-petition.  Specifically, the

Trust demonstrated that the NJ Administrative Order was based on the Louis Berger Report,

which was issued in 2001 – prior to the Petition Date.  (App. B-165).  NJDEP did not dispute this

evidence, and in fact, conceded the point during the Hearing:

> MS. HUNT:  I would concede, your Honor, that the problem at the
> Woodbury Creek Mitigation Bank occurred probably back in 1999
> when the [Mitigation Bank] was constructed.  And I would
> concede that we did not file a Proof of Claim in this case.

(App. B-166).

### 2.    NJDEP Failed to Demonstrate
### the Existence of Continuing Damage

The Bankruptcy Court also properly found that the Debtors' alleged pre-petition activity

did not result in ongoing pollution or continuing damage.  (App. B-191).  During the Hearing,

NJDEP stated several times on the record that the Debtors' pre-petition actions are the cause of

"continuing damage." (App. B-179-80).  NJDEP, however, never proffered any evidence

whatsoever to support this allegation, nor did NJDEP specify the nature or extent of the alleged

"continuing damage."  Importantly, NJDEP did not dispute the Trust's presentation of evidence

demonstrating the pre-petition nature of the alleged drainage and, again, offered no evidence of

its own:

> THE COURT:  Do you have any evidence you want to present?
>
> MS HUNT:  No, I don't, Your Honor.

(App. B-174).

Absent any contrary factual evidence, the Bankruptcy Court properly found that no

continuing damage resulted from the Debtors' alleged pre-petition activities, and therefore, the

alleged drainage of wetlands on the Woodbury Creek Property as asserted in the NJ Actions

occurred, if at all, before the Petition Date.  (App. B-187).  Such finding is not clearly erroneous.

**B.**  **THE BANKRUPTCY COURT PROPERLY CONCLUDED THAT THE RELIEF SOUGHT BY NJDEP AGAINST LANDBANK IN THE NJ ACTIONS CONSTITUTES A "CLAIM" AS DEFINED BY THE PLAN AND THE BANKRUPTCY CODE**

**1.**  **The Plan Defines a Claim as a Right to Payment**

The Plan adopts the definition of "claim" set forth by Bankruptcy Code section 101(5).

(App. B-223).  Specifically, Bankruptcy Code section 101(5) provides that a "claim" is a "right

to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed,

contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured,"

or a "right to an equitable remedy for breach of performance if such breach gives rise to a right

to payment."  11 U.S.C. § 101(5); Ohio v. Kovacs, 469 U.S. 274 (1985) (obligation to comply

with state court injunction requiring it to clean up hazardous waste asserted a right to payment

and was a "claim" under the Bankruptcy Code).  The Plan adopts the Bankruptcy Code's

definition without alteration.  (App. B-223).  Therefore, under the terms of the Plan, the

existence of a right to payment in any form creates a "Claim" against the Debtors as defined in the Plan.

### 2.    The Alleged Injunctive Relief Seeks a Right to Payment

The NJ Administrative Order's affirmative injunction against the Debtors to create 57 acres of new wetlands constitutes a "claim" under the Bankruptcy Code and the Plan because it asserts a right to payment and the Trust can perform the obligation only by payment of money. Ohio v. Kovacs, 469 U.S. 274 (1985).

In Kovacs, the state of Ohio obtained an injunction against Kovacs requiring him, *inter alia*, to clean up hazardous waste on his property. After Kovacs filed for bankruptcy, the state sought to obtain some of the debtor's post-petition income to pay for unfinished clean up costs, arguing that the obligation to clean up the property under the state's environmental laws was not a "claim" under the Bankruptcy Code, and therefore, not dischargeable. Id. at 281.

The United States Supreme Court disagreed with the state of Ohio, finding instead, that the state of Ohio had a right to payment from the debtor to fund cleanup costs, and therefore, possessed a "claim" under the Bankruptcy Code. Id. at 283. In arriving at its decision, the Court considered that the state never suggested that the debtor could "render performance under the affirmative obligation other than by payment of money." Id. at 281. Instead, the Court noted, that the state sought satisfaction by an alternative right to payment since the debtor was not in a position to perform the affirmative obligation himself. Id. Because the debtor could not perform the function himself, other than by payment of money, the Court held that the injunction to clean up the property was, in essence, nothing more than a right to payment, which constitutes a "claim" under the Bankruptcy Code. Id. at 283.

Similar to the facts in Kovacs, the Trust here cannot render performance under the NJ Administrative Order other than by payment of money. The NJ Administrative Order requires

that the Debtors "commence the implementation of the final approved mitigation plan in accordance with approved schedule and . . . complete the project by the established date." (App. B-134). The Debtors, however, ceased operations over two years ago. Their business affairs have been wound down. Indeed, on the Effective Date, the remaining assets of all Debtor entities were vested in the Trust. (App. B-120). The Debtors, therefore, no longer exist. All that remains is the Trust, which was established by the Plan for the very limited purpose of liquidating and distributing the Debtors' remaining assets to holders of allowed claims. (App. B-241). The Trust itself, therefore, is wholly incapable of creating the new wetlands demanded in the NJ Administrative Order other than by payment of money.

In addition, the relief sought by the NJ Administrative Order could have been reduced to a sum certain. Under New Jersey law, cited to the Bankruptcy Court below, (App. B-176), parties may pay a financial penalty in lieu of performance. N.J.A.C. 7:7A-15-6. This Rule specifically provides, in pertinent part:

> (f)    If mitigation is not feasible under (c), (d) or (e) above, mitigation shall be performed through a monetary contribution or, if the Department determines that no other mitigation alternative is not practicable or feasible, through a land donation approved by the Wetlands Mitigation Council in accordance with N.J.A.C 7:7A-15.22.

N.J.A.C. 7:7A-15-6 (emphasis added).

Thus, the Bankruptcy Court properly found that the FWPA permits the substitution of a penalty in lieu of performance, (App. B-187), stating: "I mean it's clear your claim could have been pursued as a money judgment, or a claim for a money judgment." (App. B-190). Under Kovacs, where a purported injunctive order could have been pursued as a money judgment, it presents a claim. 469 U.S. at 281. Accordingly, under the reasoning of the Supreme Court's

Kovaks decision, it is clear NJDEP is merely attempting to exercise a right to payment, which constitutes a "claim" under the Bankruptcy Code and the Plan.

### 3.    The Alleged Injunction in the NJ Administrative Order Does Not Stop Or Ameliorate Ongoing Pollution

The Bankruptcy Court properly concluded that NJDEP is asserting a Claim against the Debtors as defined in the Bankruptcy Code and the Plan. In its NJDEP Brief, NJDEP resorts to inapplicable case law (not evidence) to argue that it is not asserting a "Claim."

Relying on In re Torweco Electronics, Inc., 8 F.3d 146, 150 (3d Cir. 1993), NJDEP argues that where an order requires the debtor to take action, such an order is not a "claim" because a governmental agency could not accept payment in exchange for allowing a polluter to continue polluting. NJDEP Brief at 20; see Torweco, 8 F.3d at 150 (citing In re Chateaugay Corp., 944 F.2d 997, 1008 (2d Cir. 1991) (citations omitted)). In Torweco, however, the Third Circuit held: "where an order imposes obligations distinct from any obligation to stop or ameliorate ongoing pollution, the order presents a claim if the government could have done the work itself and then sought reimbursement; under such circumstances there is a breach of an obligation that gives rise to a right of payment." Id. (emphasis added). Without this distinction of stopping or ameliorating "ongoing pollution," the governmental agency would be allowed to "repackage" any claim it had for money damages as an injunctive order in an effort to avoid characterization as a "claim" under the Bankruptcy Code. Id. at 150-151.

Similarly, in In re Chateaugay Corp., 944 F.2d 997 (2d Cir. 1991), the Second Circuit considered the dischargeability of "injunctive" claims which order a debtor to cleanup ongoing pollution. In determining whether such claims are dischargeable under the Bankruptcy Code, the court considered two scenarios. First, the court considered that if the agency directs the debtor to remove some wastes that are not causing pollution, and if the agency could have itself incurred

the costs and then sued the debtor for reimbursement, such an order would be a dischargeable claim. 944 F.2d at 1008. On the other hand, as in <u>Torweco</u>, if the order requires the debtor to end or ameliorate ongoing pollution, such an order is not a claim. <u>Id.</u>

Here, there is no question that the NJ Administrative Order does <u>not</u> involve a requirement to cleanup hazardous waste or otherwise "stop or ameliorate ongoing pollution." Although <u>Torweco</u> and <u>Chateaugay</u> involved cleanup of hazardous waste rather than wetland restoration, the reasoning employed by these courts still applies to distinguish this case. The NJ Administrative Order seeks "off-site mitigation" in the form of the creation of wetlands <u>at another location</u> and makes monetary claims in the form of a demand for a penalty and the requirement to post financial assurances by the Debtors. (App. B-134-135). The loss of approximately 19 acres of wetlands at the Woodbury Creek Property occurred pre-petition, and NJDEP has not alleged that any ongoing pollution will occur at that site in the future if the actions demanded by the NJ Administrative Order are not implemented. Indeed, the NJ Administrative Order imposes <u>no</u> obligation to take any action whatsoever at the site of the failed Mitigation Bank itself, but, rather, purports to require the Debtors and/or the Trust to perform <u>off-site</u> mitigation. The purported injunctive component, therefore, more closely resembles the first scenario considered by the Second Circuit in <u>Chateaugay</u>. NJDEP is requiring the Debtors, and now the Trust, to remedy a problem (i.e., the pre-petition loss of wetlands) which is not causing ongoing pollution, and which is a remedy NJDEP itself could perform and then sue for reimbursement or could otherwise seek a monetary judgment. <u>See</u> N.J.S.A. 13:9B-21; <u>see also</u> N.J.A.C. 7:7A-16.4. Accordingly, the "injunctive" portion of the NJ Administrative Order is clearly a "Claim" under the Bankruptcy Code.

4.    **NJDEP Attempts to Disguise**
      **its Claim as an Exercise of State Police Power**

Applying the Third Circuit's <u>Torweco</u> framework makes it clear that NJDEP is

attempting to impermissibly "repackage" its claims for money damages as an alleged injunctive

remedy to comply with state environmental regulations.  NJDEP argues that its NJ

Administrative Order is not a Claim because a "State's action for injunctive relief for

environmental violations . . . is not limited to actions where there is migrating pollution caused

by hazardous wastes."  NJDEP Brief at 20.  NJDEP relies on this unsupported statement to argue

that the character of an injunctive order to 'enforce environmental laws' does not depend upon a

showing of future health and safety hazards or ongoing pollution.  Specifically, NJDEP argues

that the seminal case of <u>Penn Terra Ltd. v. Dep't of Envtl. Res.</u>, 733 F.2d 267, 269-70 (3d Cir.

1986), did not involve the "threat of the spread of pollution," NJDEP Brief at 20, but rather, "the

Commonwealth Court's order sought to correct the environmental violations and prevent future

harm by restoring the mines the debtor had operated in western Pennsylvania."  NJDEP Brief at

20.  This argument is disingenuous as <u>Penn Terra</u> clearly involved an injunction to stop a safety

hazard from harming the public.

In <u>Penn Terra</u>, the Pennsylvania Department of Environmental Resources ("DER") cited

Penn Terra, an operator of coal surface mines, for environmental violations, including failure to

maintain adequate backfilling equipment, failure to maintain adequate erosion and sedimentation

controls, failure to pump pitwater accumulations, failure to treat mine drainage properly, and

failure to seal a deep mine.  <u>Penn Terra Ltd. v. Dep't of Envtl. Res.</u>, 733 F.2d 267, 269-70 (3d

Cir. 1986).  Under a consent agreement, Penn Terra was also required to submit and implement

erosion control plans, and restore and revegetate areas.  <u>Id.</u> at 270.  After Penn Terra filed for

bankruptcy and failed to act on the environmental violations, the DER sought a preliminary injunction to compel Penn Terra to correct the violations and to enforce the consent order. Id.

After reviewing the legislative history of sections 362(b)(4) and (5), the court held that the DER's injunction was exempt from the automatic stay under the police powers exception. Id. at 274. The court found it was obvious that DER sought to force Penn Terra to rectify ongoing harmful environmental hazards. Id. The court then considered Penn Terra's argument that the injunction was in fact an attempt to enforce a money judgment, which is prohibited under the automatic stay. On its face, the injunction as pleaded could not have resulted in the entry of a money judgment. Id. at 275. Penn Terra, however, argued that in substance the injunction was an action to obtain and enforce a money judgment, i.e., the "injunction sought to achieve what a money judgment was traditionally intended to accomplish and no more." Id. at 275-276. The court held that important factors in identifying a proceeding as one to enforce a money judgment are whether the remedy would compensate for past wrongful acts which have caused injury or whether the remedy would protect against future potential harm, and whether compensation is reduceable to a sum certain. Id. at 277. The court held that the injunction was not intended to compensate for past injuries, but was instead intended to prevent future harm. Id. at 278.

By contrast, in the instant case, NJDEP seeks to compel Landbank, and now the Trust, to mitigate the loss of 18.924 acres of allegedly drained wetlands by creating 57 acres of new wetlands off-site under a 3:1 ratio calculation. In effect, NJDEP wants Landbank to compensate it for a past wrongful act, i.e., alleged wetland loss which admittedly occurred pre-petition. Based on the holding of Penn Terra, it is clear that the NJ Administrative Order is in substance a

"money judgment" intended to obtain compensation for the past wrongful act, rather than an order to prevent future harm.

Notwithstanding NJDEP's contrary assertions, the <u>Penn Terra</u> line of cases dealt with a state's efforts to stop ongoing pollution and protect the public from further harm. NJDEP Brief at 20. In the instant case, NJDEP has failed to demonstrate evidence of any future damage whatsoever. The Bankruptcy Court, thus, properly concluded that NJDEP's determination to compel the Debtors and/or the Trust to remedy pre-petition drained wetlands by creating new wetlands off-site is hardly a compelling state interest sufficient to outweigh the rights and interests of the Debtors and its creditors. (App. B-191).

In reality, NJDEP is simply seeking compensation for the pre-petition damage allegedly done to the Debtors' Woodbury Creek Property. NJDEP is attempting to do precisely what the <u>Torweco</u> court warned of – they are repackaging their claim for a money judgment as injunctive relief in order to sidestep the Plan Injunction. Accordingly, the Bankruptcy Court properly interpreted the law of this Circuit to conclude that NJDEP holds an unsecured "claim" against the Debtors - which it knowingly failed to preserve by failing to file a proof of claim in accordance with the Court's orders and the Plan. (App. B-057) ("NJDEP is not a claimant in this proceeding.").

**C.     THE BANKRUPTCY COURT PROPERLY ENFORCED THE PLAN INJUNCTION AND CONFIRMATION ORDER BY DIRECTING DISMISSAL OF THE NJ ACTIONS**

**1.     The NJ Actions are Barred by the Plan Injunction and Not by Bankruptcy Code Section 362(a)**

NJDEP devotes a majority of its NJDEP Brief to arguing that the NJ Administrative Proceeding cannot be enjoined by the automatic stay under Bankruptcy Code section 362(a) (the "Automatic Stay") because it falls within the exception to the Automatic Stay provided by

Bankruptcy Code section 362(b)(4).  Those arguments are irrelevant, however, because the NJ

Administrative Proceeding is barred <u>not</u> by the Automatic Stay, but by the Plan Injunction and

the Confirmation Order.  As noted by the Bankruptcy Court, the Automatic Stay and the Plan

Injunction are two different things.  (App. B-186).

Any injunction under the Automatic Stay terminated on the Effective Date.  11 U.S.C. §

362(c)(2)(C).  Specifically, section 362(c)(2) provides, in pertinent part:

> (c)    Except as provided in subsections (d), (e), and (f) of
> this section—
>
> * * * *
>
> (2)    the stay of any other act under subsection (a)
> of this section continues until the earliest of—
>
> * * * *
>
> (C)    if the case is a case under chapter 7
> of this title concerning an individual or a case under chapter 9, 11,
> 12, or 13 of this title, the time a discharge is granted or denied.

11 U.S.C. § 362(c)(2)(C).

In accordance with Bankruptcy Code section 362(c)(2)(C), the Plan provides for

termination of the Automatic Stay on the Effective Date:

> Unless otherwise provided, all injunctions or stays arising
> under or entered during the Chapter 11 Cases under sections 105 or
> 362 of the Bankruptcy Code, or otherwise, and in existence on the
> Confirmation Date, shall remain in full force and effect until the
> later of the Effective Date and the date indicated in the order
> providing for such injunction or stay.

(App. B-261).

Pursuant to these provisions, the Automatic Stay terminated on the Effective Date and

was replaced by the Plan Injunction.  Thus, the Bankruptcy Court properly focused its analysis

on the Plan Injunction, rather than on the language and interpretation of the Automatic Stay as urged by NJDEP.[3]

### 2.    The Plan Injunction Enjoins Proceedings to Enforce Claims

The Plan Injunction enjoins all actions seeking to enforce a Claim.  Specifically, the Plan Injunction provides, in relevant part:

> Except as otherwise expressly provided in the Plan, all Persons or entities who have held, hold, or may hold Claims or Equity Interests are permanently enjoined, from and after the Effective Date, from (a) commencing or continuing in any manner any action or other proceeding of any kind on any such Claim or Equity Interest against any of the Debtors, their Estates, Reorganized IT Group, the IT Environmental Liquidating Trust, the IT Environmental Liquidating Trustee, the Litigation Trust, the Litigation Trust Trustee, or the Assets, or against the property or interests in property of any of the Debtors, their Estates, Reorganized IT Group, the IT Environmental Liquidating Trust or the Litigation Trust . . .

(App. B-103) (emphasis added).

Based on the Bankruptcy Court's finding that NJDEP seeks to enforce a Claim against the Debtors, the Bankruptcy Court properly concluded that the NJ Administrative Proceeding was enjoined by the Plan Injunction.  This conclusion is further supported by the Trust's evidence, presented at the Hearing, which demonstrates that underlying the NJ Administrative Order is NJDEP's attempt to enforce its Claim against the Debtors:

> MR. CUNNINGHAM:  [I]s that statement, the draining of . . approximately 18 acres, the basis for the Administrative Order?
>
> MR. SOOSE:  It's my understanding, yes.

(App. B-169).

---

[3]    Because the Plan Injunction, and not the Automatic Stay, governs the injunction of the NJ Actions, this Court need not decide whether the NJ Actions constitute an exercise of state police power.

The Plan Injunction enjoins all proceedings of any kind when such proceedings are undertaken on account of a pre-petition claim. The Plan Injunction language is unambiguous and is qualified only as "otherwise expressly provided in the Plan." (App. B-103).

The Plan does not expressly provide an exception for NJDEP. The Plan Injunction does, however, provide an exception for a party that obtained a final order of the Bankruptcy Court granting limited relief from the Automatic Stay. (App. B-103). NJDEP did <u>not</u> obtain such order, and therefore, does not qualify for this exception. Accordingly, the Bankruptcy Court properly concluded that the NJ Administrative Proceeding is barred by the Plan Injunction.

### 3.    <u>Confirmation Order is *Res Judicata*</u>

A confirmation order is *res judicata* as to all issues which were decided, or could have been decided, at the hearing on confirmation.[4] See In re Szostek, 886 F.2d 1405, 1409 (3d Cir. 1989). NJDEP clearly participated at the hearing on confirmation of the Plan and filed its Plan Objection – which was overruled by the Bankruptcy Court. (App. B-128). NJDEP did not appeal the Confirmation Order or the Plan Injunction. Thus, the Confirmation Order and Plan Injunction are binding on NJDEP.

To the extent NJDEP wished to object to the scope of the Plan Injunction, it should have done so during the confirmation hearing on the Plan. Objections to the Plan not raised during the confirmation process are waived upon entry of the confirmation order. Mountain Peaks Financial Svcs., Inc., v. Shepard, (In re Shepard), 2005 WL 1667383, *4 (1st Cir. BAP Mass., June 2, 2005). Indeed, NJDEP filed the Plan Objection which alleged only that the Plan did not

---

[4]    In its NJDEP Brief, NJDEP does not dispute the Bankruptcy Court's authority to enforce its own orders, especially a confirmation order. In re Continental Airlines, Inc., 236 B.R. 318, 326 (Bankr. D. Del. 1999) ("It is axiomatic that a court possesses the inherent authority to enforce its own orders." citing Kokkonen v. Guardina Life Ins. Co. of America, 511 U.S. 375, 379-80, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994) and Chambers v. NASCO, Inc., 501 U.S. 32, 43, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991)). NJDEP also does not dispute the Bankruptcy Court's authority to take measures to implement a chapter 11 plan pursuant to Bankruptcy Code section 1142. Accordingly, the Trust need not address those issues in this Answer Brief.

address the NJ Administrative Order.  NJDEP, however, did not object to the scope of the Plan

Injunction.  Accordingly, NJDEP waived that objection and all further objections to the Plan.

### 4.    The Remaining Cases Relied on by NJDEP Are Inapposite

Because the remaining cases cited by NJDEP all involve judicial interpretation of the

scope of Bankruptcy Code section 362(b)(4), they are not relevant to the instant case.

Nevertheless, it is worth noting that the reasoning in each case is fundamentally the same – the

government proceedings which the courts found were not enjoined by the Automatic Stay all

sought to prevent ongoing public harm presented by the debtor's actions in the various cases.  In

each case, the government proceeding at issue was allowed to continue despite the Automatic

Stay because the government was found to be exercising its police powers.  The reasoning

behind each case is inescapable – the court found that the state sought to prevent the debtor in

each case from continuing to harm the public.

For example in United States v. Nicolet, 857 F.2d 202, 207 (3d Cir. 1988), the debtor

sought to enforce the Automatic Stay against the government's effort to enforce its order which

sought to recover response costs for cleanup of a hazardous waste site.  The Third Circuit found

that the government's action fell under the exception to the Automatic Stay, and thus, was

permitted to enforce the order.  The Nicolet case clearly involved the government's attempt to

protect the public from ongoing harm caused by hazardous waste.  Therefore, it reconciles with

other cases that interpret the scope of the regulatory exception to the Automatic Stay.

Similarly, in Commonwealth Oil Refining Co., Inc, v. U.S. Env. Prot. Agency, (In re

Commonwealth Oil Refining Co., Inc), 805 F2d 1175 (5th Cir. 1986), the EPA sought to enforce

an order directing the debtor to clean up its hazardous waste facility.  Id. at 1177-78.  Again,

contrary to NJDEP's argument, prevention of public harm caused by hazardous waste was the

crux of this decision.

598014v1

NJDEP also relies on <u>Safety Kleen, Inc. v. Wyche, (In re Safety Kleen, Inc.)</u>, 274 F.3d 846 (4th Cir. 2001) to support its argument that the financial assurances sought by the NJ Administrative Order are excepted from the Automatic Stay.  NJDEP Brief at 18.  The facts of <u>Safety Kleen</u>, however, do not support this conclusion.  In <u>Safety Kleen</u>, the court held that the State of South Carolina's efforts to enforce certain financial assurance regulations pursuant to its hazardous waste facility regulations was an exercise of its regulatory powers.  274 F.3d at 866.

The purpose of the financial assurance at issue in <u>Safety Kleen</u> was to deter environmental misconduct which would encourage the safe design and operation of hazardous waste facilities, and consequently, protect the public from the harmful effects of hazardous waste.  <u>Id.</u> at 866.  This is a significant distinction because the financial assurance required by the NJ Administrative Order does not have a deterrence purpose; its purpose is to require the Debtors and/or the Trust to create new wetlands off-site.  Accordingly, <u>Safety Kleen</u> does not control the decision on this issue.

## VIII.

## <u>CONCLUSION</u>

For the foregoing reasons, Appellee respectfully requests that this Court affirm the Order of the Bankruptcy Court directing dismissal of the NJ Actions.

Respectfully submitted,

THE BAYARD FIRM

By: _____
    Jeffrey M. Schlerf (No. 3047)
    Eric M. Sutty (No. 4007)
    222 Delaware Avenue, Suite 900
    Wilmington, Delaware 19801

-and-

598014v1

26

John K. Cunningham
Ileana A. Cruz
WHITE & CASE LLP
Wachovia Financial Center
200 South Biscayne Blvd., Suite 4900
Miami, Florida 33131
Tel. (305) 371-2700

COUNSEL TO THE TRUST