UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| In re | : Chapter 11 |
| | : |
| THE IT GROUP. INC . | : Case No 02-10118 |
| et al . | : |
| | : (MFW) (Jointly Administered) |
| Debtors | : |
| | : |

| | |
|---|---|
| STATE OF NEW JERSEY DEPARTMENT OF ENVIRONMENTAL PROTECTION. | : |
| | : |
| Appellant. | : C A NO. 05-CV-005 (JJF) |
| | : |
| v | : |
| | : |
| THE IT LITIGATION TRUST. successor to the Debtors. | : |
| | : |
| Appellee | : |
| | : |

### APPENDIX TO
### ANSWERING BRIEF OF APPELLEE
### THE IT LITIGATION TRUST

Jeffrey M Schlerf (No 3047)
Eric M Sutty (No. 4007)
THE BAYARD FIRM
222 Delaware Avenue, Suite 900
Wilmington, Delaware 19801
(302) 655-5000

John K. Cunningham
Ileana A Cruz
WHITE & CASE LLP
Wachovia Financial Center
200 South Biscayne Blvd . Suite 4900
Miami, Florida 33131

Dated: August 15, 2005

## APPENDIX

Resolution of the New Jersey Freshwater Wetlands
Mitigation Council, dated July 11, 1995                                    B-001

Notice of Motion of IT Litigation Trust Trustee For An Order (i)
Enforcing (a) the Bar Date Order, (b) The Administrative Bar Date Order,
(c) The Confirmation Order, and (d) the Plan Injunction, (ii) Directing the
New Jersey Department of Environmental Protection ("NJDEP") to Dismiss
Certain Administrative Actions Against the Debtors pursuant to the Court's
Orders, The Plan Injunction and 11 U.S.C. §§ 105(a) and 1142(b); and
(iii) Granting Related Relief, filed with the United States Bankruptcy
Court for the District of Delaware (the "Bankruptcy Court") on
November 16, 2004                                                          B-013

Motion of IT Litigation Trust Trustee For An Order (i) Enforcing
(a) the Bar Date Order, (b) The Administrative Bar Date Order,
(c) The Confirmation Order, and (d) the Plan Injunction, (ii) Directing the
New Jersey Department of Environmental Protection ("NJDEP") to Dismiss
Certain Administrative Actions Against the Debtors pursuant to the Court's
Orders, The Plan Injunction and 11 U.S.C. §§ 105(a) and 1142(b); and
(iii) Granting Related Relief, filed with the Bankruptcy Court
on November 16, 2004 (the "Trustee's Plan Enforcement Motion")            B-015

Order of the Bankruptcy Court Establishing Bar Date for Filing
Proofs of Claim and Approving Form and Manner of Notices Thereof,
dated May 24, 2002                                                        B-032

Affidavit of Service of Notice of Bar Date Order                         B-044

Order of the Bankruptcy Court (i) Fixing A Deadline for the Filing of
Administrative Expense Claims that Arose, Accrued, or Otherwise Became
Due and Payable on and Between January 16, 2002 and November 15, 2003 and
(ii) Approving the Form and Manner of Notice in Connection Therewith,
dated November 23, 2003                                                   B-048

Affidavit of Service of Notice of Administrative Bar Date Order           B-053

Objection of the NJDEP to the First Amended Joint Chapter 11 Plan for the
IT Group, Inc., and Its Affiliated Debtors Proposed by the Debtors and the Official
Committee of Unsecured Creditors, filed with the United States Bankruptcy Court
for the District of Delaware, dated February 9, 2004                      B-057

Opposition of the New Jersey Department of Environmental Protection to
the Trustee's Plan Enforcement Motion, filed on November 29, 2004         B-089

Order of the Bankruptcy Court Confirming the First Amended Joint Chapter 11
Plan for the IT Group, Inc , and Its Affiliated Debtors Proposed by the Debtors
and the Official Committee of Unsecured Creditors. filed with the United States
Bankruptcy Court for the District of Delaware. dated February 9, 2004.
issued on April 5, 2004                                                        B-097

Remarks of Governor Thomas H Kean, Public Bill Signing. Wetlands Bill
Signing. dated July 1, 1987                                                    B-130

Administrative Order and Notice of Civil Administrative Penalty Assessment.
issued by NJDEP, dated July 17, 2002                                           B-132

Order of the Bankruptcy Court Granting the Trustee's Plan Enforcement Motion,
dated December 6, 2004                                                         B-137

Notice of Appeal. filed by NJDEP. dated December 16, 2004                      B-139

Transcript of Omnibus Hearing before the Honorable Mary F Walrath. Chief
United States Bankruptcy Judge. held on December 6, 2004                       B-142

First Amended Joint Chapter 11 Plan for the IT Group, Inc , and Its Affiliated
Debtors Proposed by the Debtors and the Official Committee of Unsecured
Creditors. filed with the Bankruptcy Court. dated February 9, 2004            B-217

Notice of Occurrence of Effective Date Pursuant to the Joint Chapter 11 Plan of
the IT Group and Its Affiliated Debtors Proposed by the Debtors and Official
Committee of Unsecured Creditors. filed with the Bankruptcy Court
on April 30, 2004                                                              B-268

Order of the Office of Administrative Law of the State of New Jersey placing on
the Inactive List the matter styled NJDEP v. Landbank. OAL Dkt
No ESA 6949-02; Agency Dkt No 0820-94-0013                                     B-269



RESOLUTION OF THE NEW JERSEY FRESHWATER WETLANDS MITIGATION COUNCIL
CONDITIONALLY APPROVING PHASES I AND II OF WOODBURY CREEK
WETLANDS MITIGATION BANK

WHEREAS, the applicant, U.S. Wetland Services, Inc., has applied for approval of a freshwater wetlands mitigation bank designated as the Woodbury Creek Mitigation Bank, to be located on a parcel of land of approximately 203 acres near Woodbury Creek, West Deptford Township, Gloucester County, New Jersey, and consisting of parts of Block 328, Lots 1 and 1C in the Township, which property is more particularly described in the out bound survey conducted by RITTER Associates, Inc. for Phase I and Phase II of the Woodbury Creek Wetlands Mitigation Bank, attached hereto as Exhibit A, and is also depicted on the site plan entitled "Survey of Phase I and Phase II, Woodbury Creek Wetland Mitigation Bank, Township of West Deptford, County of Gloucester, State of New Jersey," sheet 1 of 1, dated August 1, 1994, unrevised and prepared by RITTER Associates, Inc. of Mechanicsburg, P. A.; and

WHEREAS the property in question currently contains 128.73 acres of degraded freshwater wetlands of intermediate resource value and 71.42 acres of uplands, including 18.59 acres of uplands within the 50-foot freshwater wetlands transition area; and

WHEREAS the location of the proposed bank is adjacent to the Woodbury Creek and the Mud Ditch, which drain into the Delaware River, is currently farmed in part, and was previously used as a dredged material site by the United States Army Corps of Engineers; and

WHEREAS the applicant was previously advised by the Council to obtain a letter of "no further action" from the Bureau of Field Operations of the Site Remediation Program, Department of Environmental Protection, in order to address the Council's concerns regarding potential hazardous waste at the site and regarding the end use of the site, following the completion of any mitigation efforts; and

WHEREAS, in order to secure a no further action letter, the applicant submitted the results of sampling done at the subject site to the Bureau of Field Operations, Site Remediation Program within the Department of Environmental Protection; and

WHEREAS the Site Remediation Program, Department of Environmental Protection determined, based on this sampling, that a Declaration of Environmental Restrictions must be provided, and an evaluation of the ecological impacts of the intended mitigation project be completed before a no further action letter may be issued; and

WHEREAS the applicant proposes to create approximately 38 acres of wetlands, to restore and enhance approximately 128 acres of wetlands, and to enhance approximately 18 acres of uplands within the 50-foot wetlands transition area as Phases I and II of its mitigation bank; and

DEP 243



WHEREAS the applicant has completed a final water budget, dated October 10, 1994, and the Council finds on the basis of that budget, written comments dated November 4, 1994 from the United States Department of Agriculture, Soil Conservation Service and comments from Dr. Russ Lea, wetlands consultant for U.S. Wetlands Services, Inc., during the November 15, 1994 Council meeting, that there will be adequate hydrology on site to support the proposed creation, and the proposed restoration and enhancement of freshwater wetlands within Phases I and II; and

WHEREAS the applicant has submitted a planting schedule shown on the plans entitled "Planting plan for Proposed Woodbury Creek Wetland Mitigation Bank (Phase I & II), Township of West Deptford, County of Gloucester, State of New Jersey," sheet 1 of 1, dated November 14, 1994, unrevised and prepared by Edward W. Marfal, L.S. of RETTEW Associates, Inc., Mechanicsburg, P.A., and the Council finds on the basis of the plan that suitable species will be used by the applicant to create, enhance and restore wetlands and to enhance uplands within the 50-foot transition area as Phases I and II; and

WHEREAS the applicant has submitted a grading plan shown on the plans entitled "Grading plan for proposed Woodbury Creek Wetland Mitigation Bank (Phase I & II), Township of West Deptford, County of Gloucester, State of New Jersey," sheet 1 of 1, dated November 14, 1994, unrevised and prepared by Edward W. Marfal, L.S. of RETTEW Associates, Inc., Mechanicsburg, P.A., and the Council finds on the basis of that plan that the proposed grading will be suitable to create, restore and enhance wetlands and to enhance upland areas within the 50-foot transition area, as proposed for Phases I and II; and

WHEREAS the Council has considered NJDEP staff comments dated October 10, 1994 and November 15, 1994 which were based on information submitted by U.S. Wetlands Services, and on field site inspections conducted by the Land Use Regulation Program staff on April 13, 1994, June 16, 1994, August 17, 1994 and November 7, 1994; and

WHEREAS on November 15, 1994, the applicant received a Letter of Interpretation from the Department of Environmental Protection (file no. 0820-94-0013.1-LI) confirming the applicant's delineation of freshwater wetlands on Phase I and Phase II of the proposed Woodbury Creek Mitigation Bank and concluding that the on-site wetlands are of intermediate resource value; and

WHEREAS on January 26, 1995, the applicant submitted an Ecological Risk Assessment of Potentially Toxic Trace Elements and PCBs Present in Soil at the proposed Woodbury Bank, in response to the concerns of the Site Remediation Program; and

WHEREAS based on its review of that Risk Assessment and on discussions with the United States Army Corps of Engineers, on March 30, 1995, the Site Remediation Program, Department of Environmental Protection issued a letter to U.S. Wetlands stating that the Department intends to issue a "no further action approval" after a Declaration of Environmental Restrictions is in place which establishes the creation

- 2 -



of a wetlands in perpetuity and records the presence of environmental contaminants at this site; and

WHEREAS the Department's letter of March 30, 1995 further states that baseline sampling should be conducted at a minimum of five locations representative of the site after site grading has occurred, and that after planting of the site as part of the intended mitigation project, sampling should be conducted every three years at those five sampling locations to confirm a decreasing trend in the availability of contaminants; and

WHEREAS the Council finds that Phases I and II of the proposed mitigation bank have the potential to provide an important freshwater wetlands ecosystem following the completion of proposed mitigation activities in accordance with the plans submitted, provided that all conditions of this conditional approval are met;

NOW THEREFORE BE IT RESOLVED that, pursuant to the authority of N.J.S.A. 13:9B-13 and 13:9B-15, Phases I and II of the Woodbury Creek Mitigation Bank are approved, subject to the following terms and conditions:

1. U.S. Wetland Services, Inc. shall record a Declaration of Environmental and Conservation Restrictions acceptable to the Department of Environmental Protection and the Council and shall receive a "no further action" approval from the Department.

2. U.S. Wetland Services, Inc. shall receive all federal, state and local permits needed to begin all proposed creation, enhancement and restoration activities for Phases I and II.

3. U.S. Wetland Services Inc. shall post bonds in accordance with N.J.A.C. 7:7A-14.1(c) covering the costs of construction of the Woodbury Creek Mitigation Bank, Phases I and II, and the costs of maintenance of the Bank, Phases I and II. The bonds shall be issued by a company authorized under the laws of this state to carry on the business specified at N.J.S.A. 17:17-1(g) and qualified under N.J.S.A. 17:32-3 and shall be made payable to the Wetlands Mitigation Fund. The construction costs covered by the bonds shall include, but not be limited to, the costs of baseline sampling for contaminants recommended by the Department in its letter of March 30, 1995. The maintenance costs shall include, but not be limited to, the costs of the three subsequent sampling rounds referenced in the Department's letter of March 30, 1995.

4. U.S. Wetlands shall secure an agreement with an appropriate public entity or non-profit conservation organization that the entity will accept the property comprising Phase I and Phase II upon completion of the maintenance and monitoring requirements set forth in paragraphs 7 and 9 herein and shall document that the designated donee has been fully appraised of the presence and levels of environmental contaminants on the property.

- 5 -

DEP 245

B - 003

5.    Provided that all of the conditions of paragraphs 1 through 4 above have been met, and subject to the schedule contained in paragraph 6 below, acreage credits for activities requiring mitigation shall be available in accordance with the following ratios:

1:1 for enhancement of uplands within the 50-foot transition area
1:1 for creation of freshwater wetlands
3:1 for restoration/enhancement of freshwater wetlands

Based on the signed and sealed plan entitled, "Proposed Planting Plan," the Woodbury Creek Bank, Phase I and Phase II, will contain a total of 99.64 mitigation credits which have been based on the following:

18.59 credits for 50 foot buffer area around bank
42.91 credits for the enhancement/restoration area
38.14 credits for the creation area
99.64 total credits

The breakdown of the 99.64 credits based on habitat type include the following:

70.53 credits of forested wetlands
8.26 credits of scrub/shrub wetlands
2.26 credits of emergent wetlands
18.59 credits of upland buffers
99.64 total credits

6.    No credits shall be available for sale unless and until all conditions in paragraphs 1 through 4 are met and then only in accordance with the following schedule:

1/3 of all credits shall be available after such time as all conditions in paragraphs 1 through 4 are met.

Subject to the provisions of Paragraph 8, below, the remaining credits shall be available after construction of Phases I and II has been successfully completed in accordance with the planting and grading plans submitted, and after baseline sampling for the target compound list plus 30 has been completed following site grading, as required by the Department, as verified by the NJDEP Land Use Regulation Program and the Site Remediation Program.

7.    JJM. Wetland Services, Inc. shall conduct sampling every three years following completion of construction and planting, in accordance with the Department's letter of March 30, 1995, using a New Jersey certified laboratory. This sampling shall occur at the five locations sampled in the baseline analysis and shall include soil, root mass, leaf and fruit structures sampling to confirm uptake and stabilization by the plants.    The Site Remediation Program shall determine the parameters to be sampled, based on the results of the baseline sampling.  The Land Use Regulation Program, in conjunction with the Site Remediation Program, shall oversee the monitoring of the wetlands creation, restoration and enhancement activities in Phase I and Phase

- 4 -

DEP 246

B - 004



II for a period of at least nine years following completion of construction and planting. U.S. Wetland Services, Inc. shall submit monitoring reports to the NJDEP, Staff of the Council no later than November 30th of each monitoring year and shall submit sampling results to the Site Remediation Program and the Land Use Regulation Program no later than 90 days after each sampling event, in accordance with Department's letter of March 30, 1995. The monitoring report due on November 30th of the third year following completion of construction and planting and shall include the following information: a) documentation demonstrating that the goals of the wetland mitigation bank, as shown on the approved signed and sealed site plans, have been satisfied. Documentation will also include a field wetland delineation of the wetland mitigation bank based on techniques as specified in the Federal Manual for Identifying and Delineating Jurisdictional Wetlands (1989); b) evidence documenting 85 percent survival and 65 percent real coverage of the mitigation plantings; and c) evidence documenting that uptake and/or stabilization of contaminants has occurred.

8. Should the Site Remediation Program and the Land Use Regulation Program determine that the results of the baseline sampling and/or the results of any subsequent sampling indicate the presence of contaminants having the potential to cause chronic adverse ecological impacts on plant or animal life, U.S. Wetlands shall be so notified and shall have the right to submit additional information to the Programs on this issue. Pending receipt of any such additional information from U.S. Wetlands, and in accordance with paragraph 10 below, the Land Use Program may suspend the sale of credits upon notice to U.S. Wetlands Upon notice to U.S. Wetlands, the Site Remediation Program and/or Land Use Program may also request that the Council amend this approval on the basis of the results of the baseline or subsequent sampling. Consistent with Paragraph 16, below, suspension of credit sales initiated by the Land Use Program shall be confirmed by the Council after notice to U.S. Wetlands and after U.S Wetlands has been given an opportunity to be heard by the Council.

9. Once the required nine-year monitoring and sampling period has expired and the applicant has submitted the final sampling report, the Council will make a finding that the mitigation bank is either a success or a failure. The mitigation project will be considered successful if the applicant demonstrates that the wetlands have been created, restored and enhanced, and the 50-foot transition area has been enhanced, as shown on the approved signed and sealed plans, and that the site has an 85 percent survival and 65 percent real coverage of the mitigation plantings. In addition, in accordance with the Department's letter of March 30, 1995, the applicant must also confirm through sampling that uptake and/or stabilization of contaminants has occurred. All remaining financial surety will be released after the Council determines, upon the recommendation of the Land Use Regulation Program and the Site Remediation Program, that the mitigation bank is a success, and so notifies the applicant.

10. The use of credits as mitigation by individual permittees subject to the jurisdiction of the Department shall be subject to review and approval by the Land Use Regulation Program on a case by

- 5 -

B - 005



case basis. Use of the credits in New Jersey must be consistent with all state and federal law including, but not limited to, the Freshwater Wetlands Protection Act, N.J.S.A. 13:9B-1 et seq., the Flood Hazard Area Control Act, N.J.S.A. 58:16A-50 et seq., the Waterfront Development Law, N.J.S.A. 12:5-1 et seq., the Wetlands Act of 1970, N.J.S.A. 13:9A-1 et seq., and the Coastal Area Facility Review Act, N.J.S.A. 13:19-1 et seq. The use of credits as mitigation by individual permittees subject to the jurisdiction of the federal government and/or subject to the jurisdiction of any State besides New Jersey shall be subject to approval by the applicable governmental body. Once the out-of-State use of the bank has been approved by the appropriate agencies, U.S. Wetlands Services shall notify NJDEP Staff to the Council in writing two weeks before the withdrawal of credits. That notice shall contain copies of all of the necessary approvals from the appropriate regulating agencies authorizing the use of mitigation credits in the State of New Jersey. The credits exchanged in the bank should generally result in in-kind replacement of palustrine forested wetlands, palustrine scrub-shrub wetlands, and palustrine emergent wetlands. However, use of the bank may also be allowed for "out-of-kind" replacement on a case-by-case basis, as determined by the NJDEP Land Use Regulation Program.

11.   Subject to the terms of this conditional approval, credits shall be available for regulated activities within the lower Delaware River watershed only. Eligible activities in New Jersey must therefore fall within the Lower Delaware Drainage Basin, which starts to the north as the Assumpink Creek Watershed and ends to the south at the tip of Cape May, and is highlighted on the map entitled "Drainage Basin Map of New Jersey" attached hereto as Exhibit B.

12   U.S. Wetlands shall maintain a registry of all mitigation credits awarded and available. U.S. Wetlands Services, Inc. shall submit to staff to the Council a statement of credits sold and credits remaining; including the dates of sale, the names of the buyers/applicants, and the permit or file number from the appropriate regulatory agency. The mitigation bank statement must be submitted two weeks after every credit transfer, as well as in an annual report of all bank transactions by November 30th of each year. Failure to submit either of these records or the notice of out-of-state use of credits required in paragraph 10 may be cause for the Land Use Regulation Program to reject the use of credits from the Woodbury Creek Wetlands Mitigation Bank and for the Mitigation Council to void this approval.

13.   If as a result of the construction of Phases I and II, suitable habitat for threatened and endangered species is created, and it is confirmed by the Department that such species are in fact using the site for breeding, resting or feeding, the applicant may apply to the Council for additional credits.

14.   The bonds posted pursuant to paragraph 3 above shall only be released in accordance with the following. The performance bond for construction of the mitigation bank shall be released after construction of Phases I and II has been successfully completed in accordance with the planting and grading plans submitted, as verified

- 6 -



by the NJDEP Land Use Regulation Program, and after baseline sampling
has been opnducted as verified by the Site Remediation Program, and
after the Site Remediation Program has confirmed that no changes in the
mitigation project are warranted on the basis of the baseline sampling.
The maintenance bond shall be maintained until such time as the Land
Use Regulation Program, the Site Remediation Program and the Council
determine that the monitoring and sampling period has been successfully
completed in accordance with paragraphs 7, 8 and 9 above.

15.    By no later than successful completion  of the monitoring
and sampling period set forth in paragraphs 7 and 9 above, the
mitigation site (Phases I and II) shall be donated in fee to the public
entity or non-profit conservation organization identified by U.S.
Wetlands pursuant to paragraph 4, above.

16.    It is the intent of this Resolution that all reasonable
efforts shall be made to ensure that the provisions of this Resolution
are implemented and complied with in a cooperative manner. Reasonable
efforts shall be made to resolve at the program level issues arising
during the term and operation of this Resolution. Issues that cannot
be resolved at the program level shall be presented to the Council for
review and resolution, upon notice to U.S. Wetlands.

17.    Any revisions or modifications to the approved signed and
sealed plans for the Woodbury Creek Wetlands Mitigation Bank, Phase I
and Phase II, must be approved in writing by the Council.

18.    Nothing in this Resolution shall preclude the Department
from enforcing any of its responsibilities under federal or state law.

GO RESOLVED. as aforesaid

AYES: 4

NAYS: O

ABSTENTIONS: O

ATTEST:

Terry Caruso
Staff to Council

Blake Cook, Jr.
Acting Chairperson

7/11/95
Date

- 7 -



Exhibit A

# RETTEW
## Associates, Inc.

· E.M Penn Ann. Suit 122  Vennecksverg, At. USET · (EP) EST-2531 · EAt JT21 EST-4261

### PHASE I
#### WOODBURY CREEK WETLAND MITIGATION BANK
Being a portion of Tax Map Lot 1 and 1-C, Block 328, Plate 26
Township of West Deptford, Gloucester County, New Jersey

ALL that certain tract or parcel of land simate in the Township of West Deptford, County of Gloucester and State of New Jersey, and being more particularly bound and described as follows to wit:

BEGINNING at a point, said point being the southwest corner of land hereinafter described and also being the following two (2) courses from the ending point of Course No. 2 in a deed between Tennéco LNG Real Estate Inc. and Tenneco, Inc., recorded in Deed Book 1249, Page 819 and extending thence; (A) N 27°56'37" W a distance of 48.42 feet (being along Course No. 3 of the aforementioned deed) to a point; (B) thence extending through Lot 1-C, Block 328 S 69°43'50" W 43.88 feet to a point in the center of a sixty (60) foot wide access easement (hereinafter described), the place of beginning; thence along the center of said access easement and continuing through Lot 1-C, Block 328 the following three courses and distances:

    1.     N 41°05'45" W a distance of 288.16 feet to a point;

    2     N 28°54'34" W a distance of 308.60 feet to a point;

    3.     N 27°11'10" W a distance of 1364.29 feet to a point;

thence continuing through Lot 1-C N 85°30'42" E a distance of 32.52 feet to a point; thence extending through Lot 1 aforementioned the following nine (9) courses and distances:

    1.     N 58°59'18" E a distance of 2387.30 feet to a point;

    2.     S 27°18'23" E a distance of 381.84 feet to a point;

    3.     S 32°49'58" E a distance of 432.57 feet to a point;

    4.     S 09°19'35" E a distance of 448.20 feet to a point;

    5.     S 59°40'46" W a distance of 445.54 feet to a point;

    6.     S 28°36'37" E a distance of 491.72 feet to a point;

    7.     S 12°17'00" W a distance of 746.13 feet to a point;

Lancaster, PA · Sterling, VA

DEP 250

8.    S 75°51'19" W  a distance of 651.32 feet to a point;

9.    S 69°43'50" W  a distance of 703.00 feet to a point, the place of BEGINNING.

Said Above described tract containing within said bounds 103.448 acres.

TOGETHER with a sixty (60) foot wide easement for ingress and egress to and from Jobstown Road over the following described premises:

ALL that certain tract or parcel of land situate in the Township of West Deptford, County of Gloucester and State of New Jersey, and being more particularly bound and described as follows to wit:

BEGINNING at a point on the dividing line between Lot 1 and Lot 1-C, Block 328, said point being on the westerly line of Jobstown Road (formerly Church Street) and also being N 34°19'51" W a distance of 69.04 feet from the ending point of Course No. 1 (Deed Book 1249, Page 819); thence extending through Lot 1-C the following nine (9) courses and distances:

1.    S 11°25'50" W  a distance of 83.68 feet to a point;

2.    N 34°19'51" W  a distance of 1575.90 feet to a point;

3.    N 41°05'45" W  a distance of 350.56 feet to a point;

4.    N 28°54'34" W  a distance of 312.25 feet to a point;

5.    N 27°11'10" W  a distance of 1377.29 feet to a point;

6.    N 85°30'42" E  a distance of 65.04 feet to a point;

7.    S 27°11'10" E  a distance of 1351.30 feet to a point;

8.    S 28°54'34" E  a distance of 304.95 feet to a point;

9.    S 41°05'45" E  a distance of 347.70 feet to a point on the dividing line between Lot 1 and Lot 1-C, Block 328, said point also being the ending point of Course No. 2 (Deed Book 1249, Page 819);

thence along said dividing line and Course No. 2 S 34°19'51" E a distance of 1521.12 feet to a point, the place of BEGINNING.

G:\CAR-HWOOD\CERT.LEG

DEP 251

B - 009

# RETTEW

Associates, Inc.

1777 East Main, Suite 102, Wackamixen, PA 17038 • (717) 897-3931 • FAX (717) 897-8318

## PHASE II
## WOODBURY CREEK WETLAND MITIGATION BANK
Being a portion of Tax Map Lot 1-C, Block 328, Plate 26
Township of West Deptford, Gloucester County, New Jersey

ALL that certain tract or parcel of land situate in the Township of West Deptford, County of Gloucester and State of New Jersey, and being more particularly bound and described as follows to wit:

BEGINNING at a point, said point being the southeast corner of land hereinafter described and also being the following two (2) courses and from the ending point of Course No. 2 in a deed between Tenneco LNG Real Estate and Tenneco Inc., recorded in Deed Book 1249, Page 819 and extending thence: (A) N 27°56'37" W a distance of 48.42 feet (being along Course No. 3 of the aforementioned deed) to a point; (B) thence extending through Lot 1-C, Block 328 S 69°43'50" W 43.88 feet to a point in the center of a sixty (60) foot wide access easement (hereinafter described), the place of beginning; thence extending through Lot 1-C the following twelve (12) courses and distances:

1.  S 69°43'50" W a distance of 68.27 feet to a point;

2.  S 75°32'47" W a distance of 349.11 feet to a point;

3.  S 77°56'50" W a distance of 159.09 feet to a point;

4.  S 75°40'40" W a distance of 821.34 feet to a point;

5.  S 79°00'24" W a distance of 610.22 feet to a point;

6.  N 38°34'46" W a distance of 748.34 feet to a point;

7.  N 46°32'29" W a distance of 293.78 feet to a point;

8.  N 23°50'01" W a distance of 407.42 feet to a point;

9.  N 15°46'42" W a distance of 120.39 feet to a point;

Lancaster, PA • Sterling, VA
ENGINEERS • PLANNERS • SCIENTISTS • LANDSCAPE ARCHITECTS  SURVEYORS

DEP 252



10.    N 22°27'22" W   a distance of 375.40 feet to a point;

11.    N 34°54'46" W   a distance of 443.97 feet to a point;

12    N 85°30'42" E   a distance of 2272.32 feet to a point in the center of aforementioned sixty (60) foot wide access easement;

thence continuing through Lot 1-C and extending along the center of said access easement the following three (3) courses and distances:

1.    S 27°11'10" E   a distance of 1364.29 feet to a point;

2.    S 28°54'34" E   a distance of 308.60 feet to a point;

3.    S 41°05'45" E   a distance of 288.16 feet to a point, the place of BEGINNING.

Said above described tract containing within said bounds 99.404 acres.

TOGETHER with a sixty (60) foot wide easement for ingress and egress to and from Jobstown Road over the following described premises:

ALL that certain tract or parcel of land situate in the Township of West Deptford, County of Gloucester and State of New Jersey, and being more particularly bound and described as follows to wit:

BEGINNING at a point on the dividing line between Lot 1 and Lot 1-C, Block 328, said point being on the westerly line of Jobstown Road (formerly Church Street) and also being N 34°19'51" W a distance of 69.04 feet from the ending point of Course No. 1 (Deed Book 1249, Page 819); thence extending through Lot 1-C the following nine (9) courses and distances:

1.    S 11°28'50" W   a distance of 83.68 feet to a point;

2.    N 34°19'51" W   a distance of 1575.90 feet to a point;

3.    N 41°05'45" W   a distance of 350.56 feet to a point;

4.    N 28°54'34" W   a distance of 312.25 feet to a point;

5    N 27°11'10" W   a distance of 1377.29 feet to a point;

DBP 253

6. N 85°30'42" E a distance of 65.04 feet to a point;

7. S 27°11'10" E a distance of 1351.30 feet to a point;

8. S 28°54'34" E a distance of 304.95 feet to a point;

9. S 41°05'45" E a distance of 347.70 feet to a point on the dividing line between Lot 1 and Lot 1-C, Block 328, said point also being the ending point of Course No. 2 (Deed Book 1249, Page 819); thence along said dividing line and Course No. 2 S 34°19'51" E a distance of 1521.12 feet to a point, the place of BEGINNING.

DEP 254

B - 012

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
|  | ) Chapter 11 |
| In re | ) |
|  | ) Case No 02-10118 (MFW) |
| THE IT GROUP, INC., et al., | ) |
|  | ) Jointly Administered |
| Debtors. | ) |
|  | ) Objection deadline: November 29, 2004 at 4:00 p.m. |
|  | ) Hearing date: December 6, 2004 at 9:30 a.m. |

## NOTICE OF MOTION

TO:    The Office of the United States Trustee, the NJDEP and all parties who filed a notice of appearance pursuant to Bankruptcy Rule 2002.

The IT Litigation Trust Trustee (the "Trustee"), as trustee for the IT Litigation Trust, has filed the attached Motion of the IT Litigation Trust Trustee for an Order (I) Enforcing (A) the Bar Date Order, (B) the Administrative Bar Date Order, (C) the Confirmation Order, and (D) the Plan Injunction, (II) Directing the New Jersey Department of Environmental Protection to Dismiss Certain Administrative Actions Against the Debtors Pursuant to the Court's Order, the Plan Injunction and 11 U.S.C. §§ 105(a) and 1142(b); and Granting Related Relief (the "Motion").

Responses or objections to the Motion, if any, are to be filed on or before November 29, 2004 at 4:00 p.m.

At the same time, you must serve a copy of the objection or response on the undersigned attorneys.

If any responses are timely filed in accordance with this Notice, a hearing on the Motion will be held on December 6, 2004 at 9:30 a.m.

IF YOU FAIL TO RESPOND IN ACCORDANCE WITH THIS NOTICE, THE COURT MAY GRANT THE RELIEF DEMANDED BY THE MOTION WITHOUT FURTHER NOTICE OR HEARING.

Dated: November 16, 2004                THE BAYARD FIRM

By: _____
Jeffrey M. Schlerf (No. 3047)
Eric M. Sutty (No. 4007)
222 Delaware Avenue, Suite 900
Wilmington, Delaware 19801

5597
11/16/04

1

-and-

John K. Cunningham
Ileana Cruz
WHITE & CASE LLP
Wachovia Financial Center
200 South Biscayne Blvd. Suite 4900
Miami, Florida 33131
(305) 371-2700

CO-COUNSEL TO THE TRUSTEE

B - 014

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re | : | Chapter 11 |
|  | : |  |
| THE IT GROUP, INC., et al., | : | Case No. 02-10118 (MFW) |
|  | : |  |
|  | : | Jointly Administered |
|  | : |  |
| Debtors. | : | Response Deadline: November 29, 2004 at 4:00 p.m. |
|  | : | Hearing Date: December 6, 2004 at 9:30 a.m. |

MOTION OF THE IT LITIGATION TRUST TRUSTEE
FOR AN ORDER (I) ENFORCING (A) THE BAR DATE ORDER,
(B) THE ADMINISTRATIVE BAR DATE ORDER, (C) THE CONFIRMATION ORDER,
AND (D) THE PLAN INJUNCTION, (II) DIRECTING THE NEW JERSEY
DEPARTMENT OF ENVIRONMENTAL PROTECTION TO DISMISS CERTAIN
ADMINISTRATIVE ACTIONS AGAINST THE DEBTORS PURSUANT TO THE
COURT'S ORDERS, THE PLAN INJUNCTION AND 11 U.S.C. §§ 105(a) AND 1142(b);
AND (III) GRANTING RELATED RELIEF

The IT Litigation Trust Trustee (the "Trustee") of the IT Litigation Trust (the

"Trust"), as successor to The IT Group, Inc. and its affiliated debtors (collectively, the

"Debtors"), by and through its undersigned counsel, hereby files this Motion (the "Motion") for

an order (i) enforcing (a) the Court's order dated May 24, 2002 establishing a deadline for filing

proofs of claim (the "Initial Bar Date Order") in the Debtors' above-captioned chapter 11 cases

(collectively, the "Chapter 11 Cases"), (b) the Court's order dated November 24, 2003

establishing a deadline for filing administrative expense claims in the Chapter 11 Cases (the

"Administrative Bar Date Order" and collectively with the Initial Bar Date Order, the "Bar Date

Orders"), (c) the Court's order dated April 5, 2004 (the "Confirmation Order") confirming the

First Amended Joint Chapter 11 Plan of The IT Group, Inc. and its affiliated Debtors proposed

by the Debtors and the Official Committee of Unsecured Creditors (as amended, the "Plan"), and

(d) Section 13.19 of the Plan (the "Plan Injunction"); (ii) pursuant to the Court's orders, the Plan

Injunction and sections 105(a) and 1142(b) of Chapter 11 of title 11 of the United States Code,

11 U.S.C §§ 101. et seq.. as amended (the "Bankruptcy Code"), directing the New Jersey Department of Environmental Protection ("NJDEP") to dismiss certain pending administrative claims and proceedings against the Debtors; and (iii) granting related relief; and in support thereof respectfully represents:

## PRELIMINARY STATEMENT

1  NJDEP is continuing to assert prepetition claims (collectively, the "Claims") against one of the Debtors – Landbank, Inc. ("Landbank") – in violation of this Court's Bar Date Orders, the Confirmation Order and the Plan Injunction.  The Trust – as successor to the Debtors under the Plan – has attempted numerous times to resolve such violations in good faith with NJDEP without filing the instant Motion.  Upon information and belief, however, NJDEP is intent on prosecuting its Claims against Landbank.  By this Motion, the Trust seeks to enforce the express terms of the Court's orders and the Plan Injunction, and requests entry of an order directing NJDEP to dismiss its Claims against Landbank.

2  Simply put, the Claims asserted by NJDEP against Landbank relate to a prepetition wetland mitigation bank maintained by Landbank named the "Woodbury Creek Phase I and II Wetland Mitigation Bank" (the "Mitigation Bank") in connection with a parcel of land owned by Landbank of approximately 203 acres near Woodbury Creek, West Deptford Township, Gloucester County, New Jersey, and consisting of parts of Block 328, Lots 1 and 1C in the Township (the "Woodbury Creek Property").  Notably, the Woodbury Creek Property was not sold by the Debtors to The Shaw Group, Inc. ("Shaw") in the Chapter 11 Cases, remains valuable property of Landbank's estate, and is being sold by the Trust for the highest and best bid for the benefit of the Debtors' creditors.[3]

---

[3]  The Plan requires the Trust to liquidate property of the Debtors' estates including, without limitation, the Woodbury Creek Party.  Plan, §7 10.  The Trust is currently in the process of soliciting bids from

3640641

2

3      NJDEP's Claims were first asserted in an administrative order against Landbank filed on July 17, 2002 (the "NJ Administrative Order"), pursuant to which NJDEP alleged Landbank failed to properly maintain the Mitigation Bank. The NJ Administrative Order is currently the subject of an administrative proceeding against Landbank in New Jersey, pending in the Office of Administrative Law of the State of New Jersey (OAL Dkt. No. ESA 06949-2002, Agency Ref. No. 0820-94-0013) (the "NJ Administrative Proceeding").

4      As set forth fully below, NJDEP was given actual notice of the Court's Bar Date Orders, the Confirmation Order, and the Plan Injunction. NJDEP has never filed a proof of claim with respect to its Claims in these Chapter 11 Cases. Pursuant to the Bar Date Orders, the Confirmation Order and the Plan Injunction, NJDEP is barred from pursuing its Claims against the Debtors. By this Motion, the Trust seeks entry of an order to compel NJDEP's compliance with the Court's orders and the Plan Injunction.

## BACKGROUND

### The Chapter 11 Cases

5      On January 16, 2002 (the "Petition Date"), each of the Debtors filed voluntary petitions for relief under the Bankruptcy Code with the United States Bankruptcy Court for the District of Delaware (the "Court"), thereby commencing their respective Chapter 11 Cases which are being jointly administered.

6      By order dated April 25, 2002, the Court approved the sale (the "Sale") of substantially all of the Debtors' assets to, and assumption of certain liabilities by, an affiliate of The Shaw Group, Inc. ("Shaw") pursuant to that certain Asset Purchase Agreement By and Among The IT Group, Inc., Certain Subsidiaries of The IT Group, Inc., and The Shaw Group,

---

prospective purchasers for the sale of the Woodbury Creek Property. The net proceeds from any such sale will be distributed to the Debtors' creditors in accordance with the Plan.

B - 017

Inc. dated as of January 23, 2002. The Sale closed on May 3, 2002 (the "Closing Date")  As stated above, the Woodbury Creek Property was not included in the Sale to Shaw.

7       Immediately following the Sale, the Debtors began the process of shutting down their business operations in their effort to wind down the affairs of the Debtors' estates.

8.      On May 24, 2003, the Court issued the Initial Bar Date Order establishing July 15, 2002 (the "Initial Bar Date") as the last date to file proofs of claim against the Debtors in the Chapter 11 Cases  A copy of the Initial Bar Date Order is attached hereto as Exhibit A. Specifically, the Court's Initial Bar Date Order decreed, in pertinent part:

> [A]ny holder of a Claim[2] that fails to file a proof of its Claim by the [Initial] Bar Date is forever barred and estopped from asserting its Claim against the Debtors, their estates or the property of any of them.

Initial Bar Date Order, ¶ 5

9       As set forth in the Affidavit of Mailing Bar Date Notice dated June 26, 2002 (the "Bar Date Affidavit"), the Debtors served NJDEP by first class mail notice of the Initial Bar Date in accordance with the Initial Bar Date Order  A copy of the relevant portions of the Bar Date Affidavit are attached hereto as Exhibit B.  NJDEP did not file any proof of claim in the Chapter 11 Cases as required by the Initial Bar Date Order.

10.     On November 24, 2003, the Court issued the Administrative Bar Date Order establishing January 15, 2004 (the "Administrative Bar Date") as the last date for the filing of claims for costs or expenses of administration in the Chapter 11 Cases entitled to priority under sections 503(b) and 507(a)(1) of the Bankruptcy Code (each, an "Administrative Claim") arising, accruing or otherwise becoming due and payable on and between the Petition Date and

---

[2]    "Claim" is defined in the Bar Date Order as that set forth in section 101(5) of the Bankruptcy Code.

November 15, 2003  A copy of the Administrative Bar Date Order is attached hereto as Exhibit

C.

11       Specifically, the Administrative Bar Date Order provides that the holder of an

Administrative Claim who fails to file such claim in accordance with the procedures set forth

therein, is "forever barred, estopped, restrained and enjoined from asserting any such

administrative expense claim against the Debtors or the Debtors' properties." Administrative

Bar Date Order, ¶ 3

12.      As set forth in the Affidavit of Service dated December 2, 2003 (the

"Administrative Bar Date Affidavit"), the Committee served NJDEP by first class mail notice of

the Administrative Bar Date in accordance with the Administrative Bar Date Order. A copy of

the relevant portions of the Administrative Bar Date Affidavit are attached hereto as Exhibit D.

NJDEP did not file any proof of Administrative Claim in the Chapter 11 Cases as required by the

Administrative Bar Date Order.

13       The Court entered the Confirmation Order confirming the Plan on or about April

5, 2004  The effective date of the Plan occurred on April 30, 2004 (the "Effective Date")

14       As of the Effective Date, the Debtors' business operations had ceased and their

workforce had been reduced to a single employee.

15       In accordance with the terms of the Plan and the Confirmation Order, the Trust

was established on the Effective Date and the Debtors' remaining assets vested therein.  Plan,

§7 10; Confirmation Order ¶ 9.

16.      Section 13 19 of the Plan, as amended by paragraph (R) of section II of the

Confirmation Order, provides for the permanent injunction against the assertion of Claims

5

B - 019

against the Debtors and the Trust after the Effective Date  Specifically. the Plan Injunction

provides:

> Except as otherwise expressly provided in the Plan, all Persons or entities who
> have held, hold, or may hold Claims or Equity Interests are permanently enjoined,
> from and after the Effective Date, from (a) commencing or continuing in any
> manner any action or other proceeding of any kind on any such Claim or Equity
> Interest against any of the Debtors, their Estates, Reorganized IT Group, the IT
> Environmental Liquidating Trust, the IT Environmental Liquidating Trustee, the
> Litigation Trust, the Litigation Trust Trustee, or the Assets, or against the
> property or interests in property of any of the Debtors, their Estates, Reorganized
> IT Group, the IT Environmental Liquidating Trust or the Litigation Trust, (b) the
> enforcement, attachment, collection or recovery by any manner or means of any
> Claims and/or Equity Interests, or any judgment, award, decree or order with
> respect to any Claims and/or Equity Interests, against any of the Debtors, their
> Estates, Reorganized IT Group, the IT Environmental Liquidating Trust, the IT
> Environmental Liquidating Trustee, the Litigation Trust, the Litigation Trust
> Trustee, or the Assets, , or against the property or interests in property of any of
> the Debtors, their Estates, Reorganized IT Group, the IT Environmental
> Liquidating Trust or the Litigation Trust, (c) creating, perfecting, or enforcing any
> encumbrance of any kind against any of the Debtors, their Estates, Reorganized
> IT Group, the IT Environmental Liquidating Trust, the IT Environmental
> Liquidating Trustee, the Litigation Trust, the Litigation Trust Trustee, or the
> Assets, or against the property or interests in property of any of the Debtors, their
> Estates, Reorganized IT Group, the IT Environmental Liquidating Trust or the
> Litigation Trust and (d) asserting any right of set off or subrogation of any kind
> against any obligation due from any Debtor or against the property or interests in
> property of any Debtor  with respect to any such Claims or Equity Interests;
> provided however, that the foregoing shall not affect the rights of a party that
> were obtained pursuant to a Final Order of the Bankruptcy Court granting limited
> relief from the automatic stay under section 362(d) of the Bankruptcy Code.
> Nothing in this Section 13.19 shall enjoin the exercise of any police or regulatory
> power by a United States environmental governmental unit, a California state
> environmental governmental unit or a New Jersey state environmental
> governmental unit with respect to any environmental Claim that arises after the
> Effective Date.

Plan. § 13 19; Confirmation Order. ¶ H(R) (emphasis added).

17    Notably. NJDEP filed an objection to Confirmation of the Plan (the "NJDEP

Objection"). A copy of the NJDEP Objection is attached hereto as Exhibit E. Pursuant to the

Court's Confirmation Order. the Court overruled the NJDEP Objection. Confirmation Order,

¶35.

B - 020

## The Woodbury Creek Mitigation Bank

18    Prior to the Petition Date, LandBank, created the Mitigation Bank in connection with the Woodbury Creek Property  Notably, LandBank formed a subsidiary, U.S Wetland Services ("U.S. Wetland Services")[3], to manage the Mitigation Bank which was created pursuant to that certain Resolution of the New Jersey Freshwater Wetlands Mitigation Council on July 11. 1995 (the "NJ Wetlands Resolution"): A copy of the NJ Wetlands Resolution is attached hereto as Exhibit F

19.    The Wetlands Resolution approved the proposal of U.S Wetland Services to create approximately 38 acres of wetlands. to restore and enhance approximately 128 acres of wetlands, and to enhance approximately 18 acres of uplands on the Woodbury Creek Property in exchange for "99,64 mitigation credits" that, in turn, could be sold to individuals or entities seeking to develop properties on existing wetlands elsewhere in New Jersey  Stated differently. the Environmental Protection Agency's website on wetlands mitigation banking[4] describes the process as follows:

> A wetlands mitigation bank is a wetland area that has been restored, created,
> enhanced, or (in exceptional circumstances) preserved, which is then set aside to
> compensate for future conversions of wetlands for development activities. A
> wetland bank may be created when a government agency, a corporation, or a
> nonprofit organization undertakes such activities under a formal agreement with a
> regulatory agency. The value of a bank is determined by quantifying the wetland
> values restored or created in terms of "credits."

## NJDEP Administrative Proceeding

20.    On or about July 17. 2002. the NJDEP issued the NJ Administrative Order. known as Administrative Order and Notice of Civil Administrative Penalty. that accuses the

---

[3]    Woodbury Creek, Inc., a wholly-owned subsidiary of U.S. Wetland Services, currently owns the Woodbury Creek Wetlands Mitigation Bank property.  LandBank, an affiliate of the IT Group, took over the ownership of U.S. Wetland Services and, consequently, Woodbury Creek, Inc. in 2000.

[4]    http://www.epa.gov/owow/wetlands/facts/fact16.html

7

Debtors of failing to maintain the financial assurance necessary to run the Mitigation Bank, and failing to continue to monitor the project as required by the NJ Wetlands Resolution. A copy of the NJ Administrative Order is attached hereto as Exhibit G.

21    The NJ Administrative Order seeks to impose a $9,000 penalty against Landbank for alleged prepetition activities conducted on the Mitigation Bank site which allegedly resulted in the drainage of wetlands that were previously identified on the site. Significantly, the NJ Administrative Order also seeks to impose an alleged affirmative injunction that would require the Trust to create approximately 57 acres of new wetlands, which is estimated to cost millions of dollars. Specifically, the NJ Administrative Order requires that a mitigation proposal be prepared for the off-site mitigation of the 18.924 acres of drained wetlands at a ratio of 3 acres created for each disturbed, or, otherwise stated, 56.772 acres of new wetlands.

22    As noted, the NJ Administrative Order is currently the subject of the NJ Administrative Proceeding, before the Office of Administrative Law of the State of New Jersey (Miller, Administrative Law Judge).

23    As set forth above, the Trust has attempted to resolve the NJ Administrative Order and the NJ Administrative Proceeding in good faith discussions with NJDEP, without having to file the instant Motion. Upon information and belief, however, NJDEP is intent on prosecuting the NJ Administrative Order in the NJ Administrative Proceeding in violation of this Court's orders and the Plan Injunction. Accordingly, the Trust was left with no choice but to seek relief from this Court to enforce the Court's orders and the Plan Injunction.

### JURISDICTION

24    The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding

se-and

8

pursuant to 28 U.S.C. § 157(b)(2). Pursuant to Article XII of the Plan, the Court retained jurisdiction to enforce the Plan and to issue such orders in aid of execution of the Plan.

## RELIEF REQUESTED

25    As set forth above, the Court's Bar Date Orders, the Confirmation Order and the Plan Injunction expressly prohibit the commencement or continuation of any claims against the Debtors which arose on or before the Effective Date. NJDEP's Claims against the Debtors arose prior to the Effective Date and are expressly barred pursuant to the Court's orders and the Plan Injunction. As stated above, there is no question NJDEP was given actual notice by mail of the Bar Date Orders, the Confirmation Order and the Plan Injunction. NJDEP, however, failed to file any claim whatsoever in these Chapter 11 Cases. Accordingly, NJDEP is bound by the Court's Bar Date Orders, the Confirmation Order and the Plan Injunction and is prohibited from prosecuting the NJ Administrative Order and the NJ Administrative Proceeding against the Debtors.

26    As this Court previously held: "It is axiomatic that a court possesses the inherent authority to enforce its own orders." In re Continental Airlines, Inc., 236 B.R. 318, 326 (Bankr D. Del. 1999) (citing Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 379-80, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994) and Chambers v. NASCO, Inc., 501 U S 32, 43, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991)). Indeed, this Court further held in Continental:

> In the bankruptcy context, courts have specifically, and consistently, held that the bankruptcy court retains jurisdiction, inter alia, to enforce its confirmation order. Furthermore, Rule 3020(d) of the Federal Rules of bankruptcy Procedure states 'Notwithstanding the entry of the order of confirmation, the court may issue any other order necessary to administer the estate.'

236 B.R. at 326 (citations omitted).

344649

9

B - 023

27    As set forth fully above, the Court's Bar Date Orders, the Confirmation Order and the Plan Injunction are clear and unambiguous -- holders of claims against the Debtors who fail to file such claims within the deadlines set by this Court are forever barred from asserting such claims against the Debtors and their estates.

28    Section 101(5) of the Bankruptcy Code broadly defines "claim" to include virtually every "right to payment" which may be asserted by a creditor against the Debtors. 11 U.S.C. § 101(5). Notably, section 101(5)(B) even includes a right to an equitable remedy for breach of performance if such breach gives rise to a right to payment. 11 U.S.C. § 101(5)(B). As set forth in the legislative history of section 101(5):

> By this broadest possible definition, and by the use of the term throughout the title 11, . . . the bill contemplates that all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy case. It permits the broadest possible relief in the bankruptcy court.

H.R. No. 95-595, 95th Cong., 1st Sess. 309 (1977); S Rep. No. 95-989, 95th Cong., 2d Sess. 21 (1978) (emphasis added)

29    In the instant case, the Debtors' legal obligations to maintain and operate the Mitigation Bank in connection with the Woodbury Creek Property arose under the Wetlands Resolution -- passed almost 10 years ago and well-prior to the Petition Date. The NJ Administrative Order is nothing more than an assertion by NJDEP of a "right to payment" against the Debtors for damages allegedly caused by the failure of the Debtors to administer the Mitigation Bank. As a result, NJDEP holds "claims" which are now barred pursuant to the Court's orders and the Plan Injunction.

30.    The relief requested by this Motion is permitted pursuant to the Court's equitable powers under section 105(a) of the Bankruptcy Code. Section 105(a) provides, in pertinent part, that the "court may issue any order, process, or judgment that is necessary or appropriate to carry

10

out the provisions of this title." See 11 U.S.C. § 105(a)  One leading commentator on

bankruptcy law characterizes section 105 as:

> an omnibus provision phrased in such general terms as to be the
> basis for a broad exercise of power in the administration of a
> bankruptcy case.  The basic purpose of § 105 is to assure the
> bankruptcy courts power to take whatever action is appropriate or
> necessary in aid of the exercise of their jurisdiction . . .

2 COLLIER ON BANKRUPTCY ¶ 105.01, at 105-5 (L. King, 15th rev ed. 2002)

31    Moreover, the Court may direct the debtor and any other necessary party to

perform any act that is necessary for the consummation of the Plan. 11 U.S.C. § 1142(b).

Section 1142(b) of the Bankruptcy Code provides, in pertinent part:

> The court may direct the debtor and any other necessary party to
> execute or deliver or to join in the execution or delivery of any
> instrument required to effect a transfer of property dealt with by a
> confirmed plan, and to perform any other act . .  that is necessary
> for the consummation of the plan.

11 U.S.C. § 1142(b).

32    Therefore, in addition to the Court's inherent powers to enforce and interpret its

own orders, sections 105(a) and 1142(b) empower the Court to issue orders necessary or

appropriate to administer the Debtors' estates pursuant to the confirmed Plan.

**The NJ Administrative Order**
**Seeks To Enforce A Monetary Claim**

33    By the NJ Administrative Order and NJ Administrative Proceeding NJDEP seeks

entry of a final order in the form of an injunction requiring, inter. alia, the Trust to create 57 acres

of new wetlands on property outside of the Woodbury Creek Property  For the reasons set forth

herein, this relief clearly constitutes a "claim" under the Bankruptcy Code, the assertion of which

is now barred by the Court's Bar Date Orders, the Confirmation Order and the Plan Injunction.

11

## The Alleged Injunctive Relief Seeks a Right to Payment

34.    The NJ Administrative Order's affirmative injunction against the Debtors to create wetlands constitutes a "claim" under the Bankruptcy Code because the Trust can perform the obligation only by payment of money. As set forth above, section 101(5) of the Bankruptcy Code provides that a "claim" is a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, or a "right to an equitable remedy for breach of performance if such breach gives rise to a right to payment." 11 U.S.C. § 101(5); Ohio v. Kovacs, 469 U.S. 274 (1985) (obligation to comply with state court injunction requiring it to clean up hazardous waste was a "claim" under the Bankruptcy Code).

35.    In Kovacs, the state of Ohio obtained an injunction against Kovacs requiring him, inter alia, to clean up hazardous wastes on his property. After Kovacs filed for bankruptcy, the state sought to obtain some of the debtor's post-petition income to pay for unfinished clean up costs, arguing that the obligation to clean up the property under the state's environmental laws was not a "claim" under the Bankruptcy Code and therefore, not dischargeable. Id. at 281

36.    The United States Supreme Court disagreed with the state of Ohio, finding instead, that the state of Ohio had a right to payment from the debtor to fund cleanup costs, and therefore, possessed a "claim" under the Bankruptcy Code. Id. at 283 In arriving at its decision, the Court considered that the state never suggested that the debtor could "render performance under the affirmative obligation other than by payment of money" Id. at 281. Instead, the Court noted, that the state sought satisfaction by an alternative right to payment since the debtor was not in a position to perform the affirmative obligation himself. Id. Because the debtor could not perform the function himself, other than by payment of money, the Court held that the injunction

B - 026

to clean up the property was, in essence, nothing more than a right to payment which constitutes a "claim" under the Bankruptcy Code. Id. at 283

37.    Similar to the facts in Kovacs, the Trust here cannot render performance under the NJ Administrative Order other than by payment of money. The NJ Administrative Order requires that the Debtors "commence the implementation of the final approved mitigation plan in accordance with approved schedule and . . complete the project by the established date." NJ Administrative Order, ¶ 13. As noted above, however, the Debtors ceased operations over two years ago. Their business affairs have been wound down. Indeed, on the Effective Date, the remaining assets of all Debtor entities were vested in the Trust. The Debtors, therefore, no longer exist. All that remains is the Trust, which was established by the Plan for the very limited purpose of liquidating and distributing the Debtors' remaining assets to holders of allowed claims. The Trust itself, therefore, is wholly incapable of creating the new wetlands demanded in the NJ Administrative Order other than by payment of money. Accordingly, under the reasoning of the Supreme Court's Kovacs decision, it is clear NJDEP is merely attempting to exercise a right to payment which constitutes a "claim" under the Bankruptcy Code ~ which is now barred.

The Alleged Injunction Does Not Stop Or Ameliorate Ongoing Pollution

38.    In In re Torwico Electronics, Inc., 8 F.3d 146, 150 (3d Cir. 1993), the Third Circuit held that where an order requires the debtor to stop or ameliorate current, continuing pollution, such an order is not a "claim" because a governmental agency could not accept payment in exchange for allowing a polluter to continue polluting. Id. at 150 (citing In re Chateaugay Corp., 944 F.2d 997, 1008 (2d Cir. 1991) (citations omitted)). By contrast, "where an order imposes obligations distinct from any obligation to stop or ameliorate ongoing pollution, the order presents a claim if the government could have done the work itself and then

sought reimbursement; under such circumstances there is a breach of an obligation that gives rise to a right of payment." _Id._ Without this distinction, the governmental agency would be allowed to "repackage" any claim it had for money damages as an injunctive order in an effort to avoid characterization as a "claim" under the Bankruptcy Code. _Id._ at 150-151

39.     Here, the NJ Administrative Order at issue does _not_ involve a requirement to cleanup hazardous waste or otherwise "stop or ameliorate ongoing pollution." Instead, the order seeks "off-site mitigation" in the form of the creation of wetlands _at another location_ and makes monetary claims in the form of a demand for a penalty and the requirement to post financial assurances by the Debtors. The loss of approximately 19 acres of wetlands at the Mitigation Bank occurred prepetition, and the NJDEP has not alleged that any additional harm will occur at that site in the future if the actions demanded by the NJ Administrative Order are not implemented. Indeed, the NJ Administrative Order imposes no obligation to take any action whatsoever at the site of the failed Mitigation Bank itself. Moreover, NJDEF has the authority by statute and under its regulations to perform the work required by the NJ Administrative Order and seek reimbursement. _See_ N.J.S.A. 13:9B-21; _see also_ N.J. Admin. Code 7:7A-16.4

40.     Applying the Third Circuit's _Torwico_ framework, therefore, NJDEP is clearly attempting to impermissibly "repackage" its claims for money damages in connection with the failed prepetition Mitigation Bank as an alleged injunctive remedy to comply with state environmental regulations. Accordingly, NJDEP has nothing more than unsecured "claims" against the Debtors - which it knowingly failed to preserve in accordance with the Court's orders and the Plan. _See_ NJDEF Plan Objection, ¶ 3 ("The NJDEP is not a claimant in this proceeding.").

14

The NJDEP's Claim is barred by the Bar Date Order,
the Administrative Bar Date Order, the Plan Injunction and the Confirmation Order

41      Having established that the NJ Administrative Order seeks to assert "claims" against the Debtors. the NJDEP is now barred from asserting them. As noted above. NJDEP failed to file a proof of claim in accordance with the Bar Date Orders  Accordingly. NJDEP is forever barred by this Court's Bar Date Orders from asserting any such claims that arose in connection with the failed Mitigation Bank and the NJ Administrative Order

42.      In addition, the NJDEP's Administrative Proceeding is similarly barred by the Plan Injunction. Prior to the Effective Date. NJDEP never obtained relief from the automatic stay pursuant to section 362 of the Bankruptcy Code to commence the NJ Administrative Proceeding. Without having obtained such relief, the Plan Injunction effectively continues operation of the automatic stay to permanently bar assertion of NJDEP's Claims against the Debtors, the Trust or Trust assets.

43      In short. because the NJ Administrative Order and NJ Administrative Proceeding seek to enforce "claims" that are barred by this Court's Bar Date Orders. the Confirmation Order and the Plan Injunction  the Trust respectfully requests the Court direct NJDEP to dismiss its Claims and the NJ Administrative Proceeding against the Debtors.

## NOTICE

44      This Motion will be served on (i) the NJDEP; (ii) the office of the United States Trustee; and (iii) each person or entity required to be served pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure. The Trustee submits that notice of the Motion is sufficient under the circumstances and that no further notice is necessary

15

B - 029

## NO PREVIOUS REQUEST

45      No previous request for the relief sought herein has been made to this Court or any other court.

WHEREFORE, the Trustee respectfully requests that the Bankruptcy Court enter an order (i) enforcing (a) the Court's Bar Date Order, (b) the Court's Administrative Bar Date Order, (c) the Court's Confirmation Order and (d) the Plan Injunction; (ii) directing NJDEP to immediately dismiss the NJ Administrative Order and the NJ Administrative Proceeding in accordance with the Court's orders, the Plan Injunction, and sections 105(a) and 1142(b) of the Bankruptcy Code, and (iii) granting such other and further relief as is just and proper.

Dated: November 16, 2004
       Wilmington, Delaware

THE BAYARD FIRM

By: _____
Jeffrey M. Schlerf (No. 3047)
Eric M. Sutty (No. 4007)
222 Delaware Avenue, Suite 900
Wilmington, Delaware 19801

-and-

John K. Cunningham
Ileana A. Cruz
WHITE & CASE LLP
Wachovia Financial Center
200 South Biscayne Blvd., Suite 4900
Miami, Florida 33131
Tel. (305) 371-2700
Fax. (305) 358-5744

COUNSEL TO THE TRUSTEE

16

EXHIBIT A

B - 031

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

- - - - - - - - - - - - - x
                                  :
In re:                            : Chapter 11
                                  :
THE IT GROUP, INC.,               : Case No  02-10118 [MFW]
    et al.,                       :
                                  : Jointly Administered
            Debtors               :
                                  : Related to Docket No  1411
- - - - - - - - - - - - - x

ORDER ESTABLISHING BAR DATE FOR FILING PROOFS OF CLAIM
AND APPROVING FORM AND MANNER OF NOTICE THEREOF

Upon the motion, dated May 3, 2002 [the
"Motion"],[1] of the above-captioned debtors and debtors-
in-possession [the "Debtors"] for an order establishing a
bar date for certain claims and approving form and manner
of notice thereof; and this Court having determined that
granting the relief requested in the Motion is in the
best interests of the Debtors, their estates and
creditors; and it appearing that proper and adequate
notice has been given and that no other or further notice
is necessary; and upon the record herein; and after due
deliberation thereon; and good and sufficient cause
appearing therefor, it is hereby

_____

[1] Except as otherwise defined herein, all capitalized
terms used herein shall have the meaning ascribed to
them in the Motion.

ORDERED, ADJUDGED AND DECREED THAT:

1. The Motion is GRANTED.

2. The form of the Bar Date Notice substantially in the form attached hereto as Exhibit A and the manner of providing notice of the Bar Date proposed in the Motion are approved.

3. Except as otherwise specifically provided in the Bar Date Notice, all persons or entities holding a Claim against the Debtors are required to file a proof of claim asserting a Claim no later than the Bar Date, July 15, 2002.

4. Notwithstanding the preceding decretal paragraph, creditors holding or wishing to assert the following types of claims against the Debtors need not file a proof of claim:

        (i)    claims with respect to which the holders do not dispute the claim's amount or characterization as listed on the Schedules, and that are not listed in the Schedules as "contingent," "unliquidated" or "disputed";

        (ii)   claims with respect to ownership or holdings of any of the Debtors' stock or other equity securities for which the proof of claim or proof of interest is filed solely to record such ownership interest or possession of such equity securities; provided, however, that proofs of claim must be filed if the claimant wishes to assert a Claim against the Debtors arising from the

2

ownership of a security of any of the
Debtors, including but not limited to a
Claim against the Debtors arising from
the purchase or sale of a security of
any of the Debtors;

(iii)   certain Claims arising from the Debtors'
rejection of executory contracts or
unexpired leases that have not, as of
the date of the Bar Date Notice, been
rejected pursuant to an order of the
Court ("Rejection Damages Claims").
Rejection Damages Claims shall be filed
by the later of (a) thirty days after
the date of the Court order authorizing
the rejection of such contract or lease
or (b) the Bar Date.

5   For any Proof of Claim to be timely and
properly filed, a signed original of the completed Proof
of Claim, together with any and all accompanying
documentation, must be filed with Logan so that such
Proof of Claim is delivered to and received by Logan no
later than 4.00 p m. Eastern Time on the Bar Date

6   Except as otherwise specifically provided
in the Bar Date Notice, any holder of a Claim that fails
to file proof of its Claim by the Bar Date is forever
barred and estopped from asserting its Claim against the
Debtors, their estates or the property of any of them.

7   Proofs of Claim may be submitted in person
or by courier service, hand delivery or mail   Proofs of
Claim shall be deemed filed when actually delivered to
and received by Logan.

3

5   The Notice Package shall be mailed by first class U.S. mail, postage prepaid to all known or reasonably ascertainable holders of a Claim as soon as practicable after the entry of the Bar Date Order, but in no event later than June 15, 2002   The Debtors are permitted, but not required. to publish notice of the Bar Date.

Dated:      Wilmington, Delaware
            May 2ᵗʰ, 2002


                         _____
                         The Honorable Mary F. Walrath
                         United States Bankruptcy Judge

911461.0₁wilmington 9U\                     4

# Exhibit A

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

- - - - - - - - - - - - - - x
                           :
In re:                     :   Chapter 11
                           :
THE IT GROUP. INC..        :   Case No. 02-10118 (MFW)
at al.,                    :
                           :   Jointly Administered
          Debtors.         :
- - - - - - - - - - - - - - x

NOTICE OF BAR DATE FOR
FILING PROOFS OF CLAIM

ALL POTENTIAL HOLDERS OF CLAIMS PLEASE TAKE NOTICE OF THE
FOLLOWING:

On May __, 2002, the United States Bankruptcy Court for
the District of Delaware (the "Court") approved an order (the
"Bar Date Order") in the above-captioned chapter 11 cases
establishing July 15, 2002 as the deadline (the "Bar Date") for
holders of Claims (as defined below) in the chapter 11 cases of
the above-captioned debtors and debtors-in-possession (the
"Debtors") to file proofs of claim. The Bar Date Order requires
all persons or entities holding a Claim to file a proof of such
Claim, substantially in the form of Official Form No. 10 (the
"Proof of Claim Form") no later than the Bar Date. For your
convenience, a Proof of Claim Form is enclosed with this Notice.

PERSONS OR ENTITIES WHO MUST FILE A PROOF OF CLAIM

Bankruptcy Rule 3003(c)(3) requires all persons and
entities, including, without limitation, individuals,
partnerships, corporations, estates, trusts, indenture trustees,
unions and governmental units that assert a Claim (as defined in
section 101(5) of the Bankruptcy Code) arising before January 16,
2002 against any of the Debtors listed on Exhibit 1 attached
hereto, to file a Proof of Claim. Any person or entity holding a
Claim must file a Proof of Claim on or before the Bar Date.
Section 101(5) of the Bankruptcy Code defines "Claim" to mean:

    (A)  right to payment, whether or not such right is
         reduced to judgment, liquidated, unliquidated,
         fixed, contingent, matured, unmatured, disputed,
         undisputed, legal, equitable, secured, or
         unsecured; or

1

(b)  right to an equitable remedy for breach of
performance if such breach gives rise to a right
to payment, whether or not such right to an
equitable remedy is reduced to judgment, fixed,
contingent, matured, unmatured, disputed,
undisputed, secured or unsecured[.]

11 U.S.C. § 101(5)

### CONSEQUENCES OF FAILURE TO FILE PROOF OF CLAIM

ANY PERSON OR ENTITY HOLDING A CLAIM THAT FAILS TO FILE
PROOF OF ITS CLAIM ON OR BEFORE THE BAR DATE SHALL BE FOREVER
BARRED AND ESTOPPED FROM ASSERTING A CLAIM AGAINST THE DEBTORS,
THEIR ESTATES, OR THE PROPERTY OF ANY OF THEM.

### TIME AND PLACE FOR FILING PROOFS OF CLAIM

For any Proof of Claim to be timely and properly filed,
a person or entity holding such Claim must submit a signed original
Proof of Claim asserting such Claim, together with accompanying
documentation, to Logan & Company, Inc. ("Logan"), 546 Valley
Road, Upper Montclair, New Jersey, 07043, so as to be delivered
to and received by Logan no later than 4:00 p.m., Eastern Time on
the Bar Date. Any Proof of Claim may be submitted in person or
by courier service, hand delivery or mail addressed to Logan at
the foregoing address. Any Proof of Claim submitted by facsimile
will not be accepted and will not be deemed filed until such
Proof of Claim is submitted by one of the methods described in
the foregoing sentence. Any Proof of Claim will be deemed filed
only when actually received by Logan. If you wish to receive
acknowledgment of Logan's receipt of your Proof of Claim, you
must also submit a copy of your original Proof of Claim and a
self-addressed, stamped envelope. If you wish to assert Claims
against more than one Debtor, you must file a separate Proof of
Claim in the case of each Debtor against which you believe you
hold a claim. You may download additional claim forms from the
Bankruptcy Court's website at http.deb.uscourts.gov/h19-offi.pdf

### PERSONS OR ENTITIES WHO NEED NOT FILE A PROOF OF CLAIM

A person or entity need not file a proof of claim if:

1.  You do not have a claim against any of the Debtors
under section 101(5) of the Bankruptcy Code. That you received
this Notice does not mean that you have such a claim.

2.  You do not dispute the amount or characterization
of your claim as listed on the Debtors' schedules of liabilities

2

(the 'Schedules') and the Schedules do not list your claim as contingent, unliquidated or disputed. If your claim is listed on the Schedules, the upper right-hand corner of the attached proof of claim form shows how the Schedules list your claim.

3.   You own or hold any of the Debtors' stock or other equity securities and are filing a proof of claim form or proof of interest solely to record your ownership interest or possession of such equity securities; provided, however, that you must file a proof of claim if you wish to assert a Claim against the Debtors arising from the ownership of a security of any of the Debtors, including but not limited to a Claim arising from the purchase or sale of a security of any of the Debtors.

4.   You are a party to an executory contract or unexpired lease that has not, as of the date of this notice, been rejected pursuant to an order of the Court and wish to submit a rejection damages claim arising from the Debtors' rejection of such executory contract or unexpired lease during these chapter 11 cases. Such a proof of claim must be filed by the later of (a) thirty days after the date of the Court order authorizing the rejection of such contract or lease or (b) the Bar Date.

## ADDITIONAL INFORMATION

If you require additional information regarding the filing of a Proof of Claim, you may contact Logan by telephone at (973) 509-3190 between 10:00 a.m. and 4:00 p.m., Eastern Time, or by writing to Logan at 546 Valley Road, Upper Montclair, New Jersey, 07043. The claim register for the Debtors will be available in Logan's office and at the United States Bankruptcy Court for the District of Delaware.

By order of the Court. dated _____ 2002.

Honorable Mary F. Walrath
United States Bankruptcy Court Judge

## EXHIBIT 1

| DEBTORS<br>(Other names, if any, by the Debtors in the last 6 years appear in the brackets) | CASE NO. | EIN |
|---|---|---|
| The IT Group, Inc.<br><br>IT Environmental Services, Inc.<br>IT Corporation of Delaware<br>IT Corporation of California<br>IT Environment Corporation<br>IT Environmental Corporation<br>International Technology Corporation | 02-10118 | 23-0001312 |
| 37-02 College Point Boulevard, LLC | 02-10119 | 84-1479216 |
| Advanced Analytical Solutions, Inc. | 02-10120 | 82-1461794 |
| E-Core Solutions, Inc. | 02-10121 | 96-3292325 |
| Empire State I, LLC | 02-10122 | 84-1479218 |
| Empire State II, LLC | 02-10123 | 84-1479217 |
| HVAF Technologies, LLC | 02-10124 | 25-1876826 |
| Evergreen Acquisition Sub I, Inc. | 02-10125 | 23-3090041 |
| Groundwater Technology, Inc. | 02-10126 | 03-0324047 |
| IT Administrative Services, LLC | 02-10127 | 25-1857819 |
| IT C&V Operations, Inc. | 02-10128 | 23-2946347 |
| IT B&C Operations, Inc. | 02-10129 | 23-2946006 |
| IT Environmental and Facilities, Inc. | 02-10130 | 25-1833796 |
| IT International Holdings, Inc. | 02-10131 | 51-0316873 |
| IT International Investments, Inc. | 02-10132 | 04-0344746 |
| IT International Operations, Inc. | 02-10133 | 93-1016025 |
| IT Investment Holdings, Inc. | 02-10134 | 33-0721650 |
| IT Iron Mountain Operations, LLC | 02-10135 | 25-1857919 |
| Jones Mill Road, LLC | 02-10136 | 25-1845957 |
| KIP I, LLC | 02-10137 | 25-1845491 |
| LandBank Acquisition I, LLC | 02-10138 | 91-1979357 |
| LandBank Acquisition II, LLC | 02-10139 | 91-1979352 |

1

| DEBTORS (Other names, if any, by the Debtors in the last 6 years appear in the brackets) | CASE NO. | TID # |
|---|---|---|
| LandBank Acquisition II, LLC | 02-10140 | 91-1973354 |
| LandBank Environmental Properties, LLC | 02-10141 | 16-2417693 |
| LandBank Remediation Corp. | 02-10142 | 94-3223144 |
| LandBank, Inc. | 02-10143 | 77-0191334 |
| LandBank Wetlands, LLC | 02-10144 | 84-1584577 |
| Marconi Warberg, LLC | 02-10145 | 22-3658731 |
| McIntosh River Wetland Services, Inc. | 02-10146 | 32-1987945 |
| Northeast Restoration Company, LLC | 02-10147 | 84-1479222 |
| Organic Waste Technologies, Inc. | 02-10148 | 51-0321674 |
| Otay Mesa Ventures, LLC | 02-10149 | 25-1849748 |
| PBR Environmental Consultants, Inc. | 02-10150 | 33-0754921 |
| Raritan Venture I, LLC | 02-10151 | 25-1862273 |
| The Dorchester Group, LLC | 02-10152 | 84-1479214 |
| U.S. Wetlands Services, LLC | 02-10153 | 13-3763223 |
| Whippany Ventures I, LLC | 02-10154 | 84-1501746 |
| Wyckoff's Mills, LLC | 02-10155 | 52-1935945 |
| American Landfill Supply Co., Inc. | 02-10156 | 42-1341713 |
| Benecia North Gateway LLC | 02-10157 | |
| IMCON | 02-10158 | 94-1733764 |
| IMCON Industrial Services, Inc. | 02-10159 | 36-0242318 |
| Enterprise, Environmental & Earthworks, Inc. | 02-10160 | 36-4043553 |
| Fluor Daniel Environmental Services, Inc. (FDESI) | 02-10161 | 33-0437335 |
| Gradient Corporation | 02-10162 | 04-2857447 |
| IT Alaska, Inc. | 02-10163 | 92-0121526 |
| IT Baker, LLC | 02-10164 | |
| IT Corporation | 02-10165 | 94-1258033 |
| IT Corporation of California IT Environmento Corporation | | |

2

| DEBTORS (Other names, if any, by the Debtors in the last 6 years appear in the brackets) | CASE NO. | EIN |
|---|---|---|
| IT Corporation of North Carolina, Inc. | 03-10166 | 56-1231208 |
| IT Lake Herman Road LLC | 03-10167 | |
| IT Vine Hill, LLC | 03-10168 | |
| IT-Tulsa Holdings, Inc. | 03-10169 | 73-1004178 |
| ITOtsrA | 03-10170 | 95-4430474 |
| JLO Technologies, Inc. | | |
| Jellinek, Schwartz & Connolly, Inc. | 03-10171 | 52-1139905 |
| JSC International Inc. | 03-10172 | 56-1662083 |
| Kato Road, LLC | 03-10173 | 84-1417366 |
| Keystone Recovery, Inc. | 03-10174 | 34-1746531 |
| LFD Specialties, Inc. | 03-10175 | 21-1618564 |
| Monterey Landfill Gas Company | 03-10176 | 36-3467676 |
| National Earth Products, Inc. | 03-10177 | 23-2715576 |
| Northern California Developers Limited | 03-10178 | |
| OHM Corporation | 03-10179 | 34-1503050 |
| OHM Remediation Services Corp. | 03-10180 | 34-1375647 |
| Pacific Environmental Group, Inc. | 03-10181 | 04-3527373 |
| Quikon, Inc. | 03-10182 | 76-0143090 |
| Submerged Lands, LLC | 03-10183 | 84-1454271 |
| W & H Pacific Inc. | 03-10184 | 91-3437195 |
| Wahran Engineering PC | 03-10185 | 34-1555796 |
| Wehran New York, Inc. | 03-10186 | 05-1221500 |
| Woodbury Creek, Inc. | 03-10187 | 52-1915703 |

DE:01. 33-41260qt01.53a                    3

# EXHIBIT B

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

IN RE: )
                                          )   Chapter 11
THE IT GROUP, INC., et al.                )
                                          )   Case No. 02-10118 (MFW)
                                          )
              Debtors.                    )   Jointly Administered
                                          )

### AFFIDAVIT OF SERVICE

I, Kathleen M. Logan certify under penalty that:

1.  I am of legal age and I am not a party to this action.

2.  I am President of Logan & Company, Inc. located at 546 Valley Road, Upper Montclair, New Jersey, Noticing and Claims Agent for the above captioned Debtors.

3.  On or about June 14, 2002 I caused copies of:

*   the PROOF OF CLAIM FORM

*   the NOTICE OF BAR DATE FOR FILING PROOFS OF CLAIM

*   the ORDER ESTABLISHING BAR DATE FOR FILING PROOFS OF CLAIM AND APPROVING FORM AND MANNER OF NOTICES THEREOF

to be inserted in first class, postage pre-paid and pre-addressed envelopes and delivered to the U.S. Postal Service for delivery to those persons on Service List attached hereto as Exhibit A  Copies of the served documents listed above are attached hereto as Exhibit B.

Dated: June 26, 2002

_____
Kathleen M. Logan

SERVICE LIST
Notice Of Bar Date For Filing Proofs Of Claim

Page 303 of 4570

DEBTOR: IT GROUP    CASE:

CREDITOR ID: 123124-04
NEW HORIZONS
4040 S.W. MELROSE AVE
BEAVERTON OR 97005-8404

CREDITOR ID: 123456-04
NEW HORIZONS COMPUTER LEARNING
FIVE PARKWAY CENTER
SUITE 100
PITTSBURGH PA 15220

CREDITOR ID: 134536-04
NEW HORIZONS COMPUTER LEARNING E
6960 BEACH BLVD
304-251-3035
JACKSONVILLE FL 32216

CREDITOR ID: 237086-04
NEW HORIZONS COMPUTER LEARNING TTE
5113 CROSS PARK DRIVE C100
KNOXVILLE TN 37923

CREDITOR ID: 237086-04
NEW HORIZONS TELECOM INC
PO BOX 3488
PALMER AK 99645

CREDITOR ID: 434544
PO BOX 436
WASCO CA 93280

CREDITOR ID: 33177-07
NEW JERSEY
SALES AND USE TAX DIVISION
CN 846
TRENTON NJ 08646-0845

CREDITOR ID: 12440-04
NEW JERSEY BELL
THE PARK AVENUE
E ORANGE, NJ 07019
ATTN J ILI METCHAND
E ORANGE NJ 08646

CREDITOR ID: 478541-04
NEW JERSEY DEP
DIVISION PARKS & FORESTRY
CN 404
TRENTON NJ 08625

CREDITOR ID: 34204-04
NEW JERSEY DEP
THE OF ENV QUALITY
CN 402
401 EAST STATE STREET
TRENTON NJ 08625

CREDITOR ID: 7853-01
NEW JERSEY DEP
401 EAST STATE STREET
CLINICAL BUILDING 3NO F/I
CN 402
TRENTON NJ 08625

CREDITOR ID: 448-04
NEW JERSEY DEP
BUREAU/CED CONTROL
CN ROUTE 105
TRENTON NJ 08625

CREDITOR ID: 87141-04
NEW JERSEY DEPARTMENT
OF CORRECTIONS
CN 855
TRENTON NJ 08625

CREDITOR ID: 341576-04
NEW JERSEY DEPARTMENT OF
ENVIRONMENTAL PROTECTION
401 EAST STATE STREET
TRENTON NJ 08625

CREDITOR ID: 333344-04
NEW JERSEY DEPT OF INSURANCE
SURPLUS LINES EXAMINING OFFICE
CN 325
TRENTON NJ 07625-0325

CREDITOR ID: 33161-41
NEW JERSEY DIV OF TAXATION, REVENUE PROCESSING CEN
P.O. BOX 888
TRENTON NJ 08646-0888

CREDITOR ID: 33166-39
NEW JERSEY DIV OF TAXATION, REVENUE PROCESSING CEN
P.O. BOX 888
TRENTON NJ 08646-0888

CREDITOR ID: 33169-53
NEW JERSEY DIV OF TAXATION, REVENUE PROCESSING DIV
P.O. BOX 888
TRENTON NJ 08646-0888

CREDITOR ID: 33189-36
NEW JERSEY DIV OF TAXATION, REVENUE PROCESSING CEN
P.O. BOX 888
TRENTON NJ 07646-0888

CREDITOR ID: 33187-43
NEW JERSEY DIV OF TAXATION, REVENUE PROCESSING CEN
P.O. BOX 888
TRENTON NJ 08646-0888

CREDITOR ID: 33196-46
NEW JERSEY DIV OF TAXATION, REVENUE PROCESSING CEN
P.O. BOX 888
TRENTON NJ 08646-0888

CREDITOR ID: 33176-42
NEW JERSEY DIV OF TAXATION, REVENUE PROCESSING CEN
P.O. BOX 888
TRENTON NJ 08646-0888

CREDITOR ID: 33174-40
NEW JERSEY DIV OF TAXATION, REVENUE PROCESSING CEN
P.O. BOX 888
TRENTON NJ 08646-0888

CREDITOR ID: 33190-40
NEW JERSEY DIV OF TAXATION, REVENUE PROCESSING CEN
P.O. BOX 888
TRENTON NJ 08646-0888

CREDITOR ID: 33186-38
NEW JERSEY DIV OF TAXATION, REVENUE PROCESSING CEN
P.O. BOX 888
TRENTON NJ 08646-0888

CREDITOR ID: 33191-35
NEW JERSEY DIV OF TAXATION, REVENUE PROCESSING CEN
P.O. BOX 888
TRENTON NJ 08646-0888

CREDITOR ID: 33199-37
NEW JERSEY DIV OF TAXATION, REVENUE PROCESSING CEN
P.O. BOX 888
TRENTON NJ 08646-0888

CREDITOR ID: 33265-32
NEW JERSEY DIVISION OF TAXATION
PO BOX 257
TRENTON NJ 08646-0257

CREDITOR ID: 33186-43
NEW JERSEY DIVISION OF TAXATION
PO BOX 257
TRENTON NJ 08646-0257

CREDITOR ID: 33186-45
NEW JERSEY DIVISION OF TAXATION, REVENUE PROCESSING
P.O. BOX 888
TRENTON NJ 07646-0888

CREDITOR ID: 33461-34
NEW JERSEY FOREST FIRE SERVICE
149 VETERANS HIGHWAY
JACKSON NJ 08527

SERVICE LIST
Notice Of Bar Date For Filing Proofs Of Claim

Page 3035 N 4370

DEBTOR: IT GROUP                                    CASE:

EXHIBIT C

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------x
                                 :   Chapter 11
In re                            :
                                 :   Case No. 02-10118 (MFW)
THE IT GROUP, INC. et al.,       :
                                 :   (Jointly Administered)
          Debtors.               :
                                 :   Re: Docket No. 3159
---------------------------------x

### ORDER (I) FIXING A DEADLINE FOR THE
### FILING OF ADMINISTRATIVE EXPENSE
### CLAIMS THAT AROSE, ACCRUED, OR
### OTHERWISE BECAME DUE AND PAYABLE ON AND
### BETWEEN JANUARY 16, 2002 AND NOVEMBER 15, 2003
### AND (II) APPROVING THE FORM AND MANNER
### OF NOTICE IN CONNECTION THEREWITH

Upon the motion (the "Motion") of the official committee of unsecured creditors
(the "Committee") appointed in the above-captioned chapter 11 cases of The IT Group, Inc. and
its affiliated debtors (the "Debtors"), seeking the (i) fixing of a deadline for the filing of claims
for administrative costs and expenses (the "Administrative Expense Claims") that arose, accrued,
or otherwise became due and payable on January 16, 2002 through November 15, 2003 (the
"Administrative Expense Period"), and (ii) approval of the form and manner of notice in
connection therewith; and it appearing that the relief requested in the Motion is reasonable and
necessary and in the best interests of the Debtors' estates and its creditors; and after due
deliberation, and sufficient cause appearing therefor; it is hereby

ORDERED that, except as otherwise provided herein or in a prior order of this
Court, all persons and entities, including without limitation, individuals, partnerships,
corporations, estates, trusts, and governmental units, who hold or assert any Administrative

Expense Claims against the Debtors shall file with respect to such Administrative Expense Claims, a request for allowance of such claim no later than 4:00 p.m. (Prevailing Eastern Time) on January 15, 2004 (the "Administrative Bar Date"), and all Administrative Expense Claims shall be deemed filed only when actually received by the Clerk of the Bankruptcy Court for the District of Delaware, Marine Midland Plaza, 824 Market Street, 6th Floor, Wilmington, DE 19801, and AlixPartners LLC, 2100 McKinney Avenue, Suite 800, Dallas, TX 75204 by 4:00 p.m. (Prevailing Eastern Time) on January 15, 2004 at the locations set forth above; provided, however, that pending further order of the Court, the holders of Administrative Expense Claims of the following type or nature need not file such Administrative Expense Claim on or prior to the Administrative Bar Date:

1.  Any person or entity that holds an Administrative Expense Claim that has been allowed by an order of the Bankruptcy Court entered on or before the Administrative Bar Date;

2.  Any Administrative Expense Claim which arose, accrued, and otherwise becomes due and payable subsequent to the Administrative Bar Date;

3.  Any holder of an Administrative Expense Claim who prior to the Administrative Bar Date filed a proof of Administrative Expense Claim with the Clerk of the Bankruptcy Court;

4.  Any Administrative Expense Claim held by the Office of the United States Trustee under section 1930(a)(6) of title 28, United States Code; and

5.  Any professionals retained by the Debtors or the Committee under Court order pursuant to sections 327, 328 or 1103 of the Bankruptcy Code.

and it is further

ORDERED that each and every holder of an Administrative Expense Claim against the Debtors who, by this Order is required to file an Administrative Expense Claim as set forth herein, but who fails to do so on or before the Administrative Bar Date, shall not be treated as the holder of such Administrative Expense Claim(s) in the Administrative Expense

-2-

Period against the Debtors for the purpose of receiving any distribution under any plan of reorganization or liquidation that may be proposed and confirmed herein, and shall be forever barred, estopped, restrained and enjoined from asserting any such Administrative Expense Claim(s) against the Debtors and the Debtors' properties for the Administrative Expense Period; and it is further

ORDERED that the Committee's proposed notice of the Administrative Bar Date, substantially in the form of the notice annexed hereto as Exhibit "A" (the "Notice"), be served by mail on or before December 1 2000, upon (i) the Office of the United States Trustee, (ii) all parties listed in the Rule 2002 service list, (iii) all parties who have filed an administrative proof of claim in these Cases, (iv) all parties who have filed a proof of claim relating to surety bonds in these Cases, (v) the District Director of the Internal Revenue Service for the District of Delaware, (vi) all taxing authorities listed in the matrix or who have filed proofs of claim in these Cases, (vii) environmental protection agencies listed in the matrix and all parties who have filed proofs of claim in these Cases relating to environmental liabilities, (viii) the United States Attorney for the District of Delaware, (ix) the Pension Benefit Guaranty Corporation, and (x) all other persons or entities whom the Committee believes may hold Administrative Expense Claims; and it is further

-3-

ORDERED that the Committee shall publish the Notice in the *Wall Street Journal*

at least 20 days prior to the Administrative Bar Date, which publication is hereby approved and

which shall be deemed good, adequate and sufficient publication notice.

Dated: Wilmington, Delaware
       _____, 2003

                           _____
                           UNITED STATES BANKRUPTCY JUDGE

-4-

# EXHIBIT D

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

IN RE:                                    )    Chapter 11
                                          )
THE IT GROUP, INC., et al.                )    Case No. 02-10118 (MFW)
                                          )
               Debtors                    )    (Jointly Administered)
                                          )

AFFIDAVIT OF SERVICE

I, Kathleen M. Logan certify under penalty that:

1.   I am of legal age and I am not a party to this action.

2.   I am President of Logan & Company, Inc. located at 546 Valley Road, Upper
     Montclair, New Jersey, Noticing and Claims Agent for the above captioned
     Debtors.

3.   On or about November 26, 2003 I mailed copies of:

     the NOTICE OF DEADLINE FOR FILING OF ADMINISTRATIVE EXPENSE
     CLAIMS THAT AROSE, ACCRUED, OR OTHERWISE BECAME DUE AND
     PAYABLE ON AND BETWEEN JANUARY 16, 2002 AND NOVEMBER 15,
     2003

     to be inserted in first class, postage pre-paid and pre-addressed envelopes and
     delivered to the U.S. Postal Service for delivery to those persons on Service List
     attached hereto as Exhibit A. Copy of the served Notice listed above is attached
     hereto as Exhibit B.

Dated: December 2, 2003                    _____
                                           Kathleen M. Logan

B - 053

EXHIBIT A SERVICE LIST
Notice Of Deadline For Filing Of Administrative Expense
Claims That Arose, Accrued, Or Otherwise Became Due
And Payable On And Between January 16, 2002 And
November 13, 2002

CASE: 03-10115

EXHIBIT E

PETER C. HARVEY
Attorney General of New Jersey
R.J. Hughes Justice Complex
P.O. Box 093
Trenton, NJ 08625
Attorney for New Jersey
    Department of Environmental Protection

By:   KATHRINE MOTLEY HUNT
      Deputy Attorney General
      (609) 984-7147

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

|  | | |
|---|---|---|
| In re: | : | Chapter 11<br>Case No. 02-10118(MFW)<br>Jointly Administered |
| THE IT GROUP. INC., et al., | : | |
| Debtors. | : | OBJECTION TO FIRST<br>AMENDED JOINT CHAPTER 11 PLAN |
| | : | |
| | : | Hearing: March 29, 2004<br>Objections Due: March 22, 2004<br>Time: 2:00 p.m.<br>Judge: Hon. Mary F Walrath |
| | : | |
| | : | |

PLEASE TAKE NOTICE that the undersigned, attorney for the State of New Jersey. Department of Environmental Protection ("NJDEP"). hereby objects to the First Amended Joint Chapter 11 Plan for the IT Group. Inc. and its Affiliated Debtors ("Plan") dated February 9, 2004, on the following grounds:

B - 057

1.  The NJDEP objects to the approval of the Plan because
it does not address the obligations of the Debtor Landbank, Inc.
concerning the failure of the Woodbury Creek Wetland Mitigation Bank.
on property owned by debtor Woodbury Creek. Inc. in West Deptford
Township. Gloucester County, New Jersey.   Debtors obligation is
disclosed in Section IV G (7)(b). page 41. of the first Amended
Disclosure Statement, dated February 9. 2004.

2.  Pursuant to the Administrative Order issued on July 7,
2002, the NJDEP ordered Landbank, Inc. to conduct off-site mitigation
of 18.94 acres of freshwater wetlands that were drained on the
mitigation bank site. in violation of the Freshwater Wetlands
Protection Act. N.J.S.A. 13:9B-1 to -30. and its implementing
regulations N.J.A.C. 7:7A-1 to -17.9. The mitigation must be done at
a ratio of 3 acres of wetlands created for each acre disturbed.  In
addition. the NJDEP ordered Landbank. Inc to restore the required
financial assurance for the maintenance and monitoring of the
Woodbury Creek Wetland Mitigation Bank that was required as a
condition of the Freshwater Wetlands Individual Permit that was
issued for the project   The parties attempts to resolve this matter
through settlement have not been successful

3.  The NJDEP is not a claimant in this proceeding.
Rather. the NJDEP seeks performance of the debtor's obligation to
comply with the environmental laws of the State of New Jersey  See
In re Torvico Electronics. Inc. v. New Jersey Department of

2

Environmental Protection and Energy, 8 F. 3d 146 (3d Cir. 1993), cert. denied 511 U.S. 1046(1994).

4. If the Plan is approved and it does not address the debtor's obligation to comply with the New Jersey's environmental laws, the State's ability to ensure the restoration of the resources that were destroyed will be seriously compromised, and the debtor will be in violation of the law.

For these reasons, the NJDEP respectfully objects to the confirmation of the Plan in its present form.

PETER C. HARVEY
ATTORNEY GENERAL OF NEW JERSEY

By: _____
KATHRINE MOTLEY HUNT
Deputy Attorney General

Dated: March 18, 2004

3

## CERTIFICATION

I hereby certify that on March *16*, 2004, the attached copy of the NJDEP's Objection to First Amended Joint Chapter 11 Plan was sent by UPS Courier to the following addresses:

David D. Bird
Clerk of Court
U.S. Bankruptcy Court
024 Market St.
Wilmington. DE 19801

Thomas E. Lauria, Esq
White & Case, LLP
Wachovia Financial Center.
Suite 4900
200 South Biscayne Blvd.
Miami, FL 33131

Jeffrey H. Schlerf. Esq
The Bayard Firm
222 Delaware Ave, Suite 900
Wilmington. DE 19801

Marion Quirk. Esq.
Skadden Arps, Slate. Meagher & Flom
One Rodney Square
PO Box 636
Wilmington, DE 19801

Kenneth Berlin, Esq.
Skadden Arps, Slate. Meagher & Flom
1440 New York Ave., NW
Washington. D.C. 20005-2111

Stephen Karotkin, Esq.
Weil Gotshall & Manges
767 Fifth Ave.
New York, NY 10153

Mark S. Kenney, Esq.
Office of the United States Trustee
J. Caleb Boggs Federal Bldg.
844 King Street, Suite 2313
Lock Box 35
Wilmington, DE 19801

4

All other parties listed on
The IT Group
Case No. 02-10118(MFW)
2002 Service List

By: _Geraldine Brogly_
Geraldine Brogley

Dated: 3/18/04

5

UNITED STATES BANKRUPTCY COURT
District of New Jersey

| | | |
|---|---|---|
| In re: | : | Case no.: 02-10118(RFM) |
| The IT Group, Inc. | : | Chapter: 11 |
| | : | Judge: Mary E. Walrath |
| Debtor(s) | : | |

Caption of Pleading being filed: Objection to First Amended Joint Chapter 11 Plan

### CERTIFICATION OF NON COMPLIANCE
### REGARDING CASE MANAGEMENT/ELECTRONIC CASE FILING ("CM/ECF")

I, ( Kathrine H. Hunt ), HEREBY CERTIFY that with respect to the transition in procedure effective October 1, 2003 which requires mandatory electronic filing for attorneys who regularly practice before this Court, and which requires attorneys to become trained and certified "Participants" of CM/ECF, if (the attorney files ten (10) or more pleadings in a 12 month period, inclusive of the 2003 calendar year prior to October 1", the following conditions apply (please check applicable provision):

____ X (a) I am not currently certified as a CM/ECF Participant. During the twelve (12) month period preceding and including this filing, I have not exceeded the ten (10) document limit; or

____ (b) I am not currently certified as a CM/ECF Participant. The captioned pleading constitutes my tenth or successive document filed within the preceding twelve (12) month period, and I have contacted the Court to schedule training within thirty (30) days of this filing. My scheduled training date is _____ ; or

____ (c) I have been trained but not yet certified as a CM/ECF Participant; or

____ (d) I am a certified "Participant" of CM/ECF, but have encountered the following extenuating circumstances which have prevented me from complying with the mandatory filing requirement with respect to the captioned pleading: (briefly describe)

_____

_____

_____ ; and

____ X (e) Pursuant to the Court's Notice to the Bar dated June 17, 2003, and posted to this Court's Web site www.njb.uscourts.gov, I have placed the document being filed on a CD ROM in PDF format.

3/18/2004
Date

Kathrine Hunt
Signature of Attorney

# EXHIBIT F



RESOLUTION OF THE NEW JERSEY FRESHWATER WETLANDS MITIGATION COUNCIL
CONDITIONALLY APPROVING PHASES I AND II OF WOODBURY CREEK
WETLANDS MITIGATION BANK

WHEREAS, the applicant, U.S. Wetland Services, Inc., has applied for approval of a freshwater wetlands mitigation bank designated as the Woodbury Creek Mitigation Bank, to be located on a parcel of land of approximately 201 acres near Woodbury Creek, West Deptford Township, Gloucester County, New Jersey, and consisting of parts of Block 328, Lots 1 and 1C in the Township, which property is more particularly described in the out-bound survey conducted by RITTEN Associates, Inc. for Phase I and Phase II of the Woodbury Creek Wetlands Mitigation Bank, attached hereto as Exhibit A, and is also depicted on the site plan entitled "Survey of Phase I and Phase II, Woodbury Creek Wetland Mitigation Bank, Township of West Deptford, County of Gloucester, State of New Jersey," sheet 1 of 1, dated August 1, 1994, unrevised and prepared by RITTEN Associates, Inc. of Mechanicsburg. P.A.; and

WHEREAS the property in question currently contains 128.73 acres of degraded freshwater wetlands of intermediate resource value and 71.43 acres of uplands, including 16.59 acres of uplands within the 50-foot freshwater wetlands transition area; and

WHEREAS the location of the proposed bank is adjacent to the Woodbury Creek and the Mud Ditch, which drain into the Delaware River, is currently farmed in part, and was previously used as a dredged material site by the United States Army Corps of Engineers; and

WHEREAS the applicant was previously advised by the Council to obtain a letter of "no further action" from the Bureau of Field Operations of the Site Remediation Program, Department of Environmental Protection, in order to address the Council's concerns regarding potential hazardous waste at the site and regarding the and use of the site, following the completion of any mitigation efforts; and

WHEREAS, in order to secure a no further action letter, the applicant submitted the results of sampling done at the subject site to the Bureau of Field Operations, Site Remediation Program, within the Department of Environmental Protection; and

WHEREAS the Site Remediation Program, Department of Environmental Protection determined, based on this sampling, that a Declaration of Environmental Restrictions must be provided, and an evaluation of the ecological impacts of the intended mitigation project be completed before a no further action letter may be issued; and

WHEREAS the applicant proposes to create approximately 38 acres of wetlands, to restore and enhance approximately 128 acres of wetlands, and to enhance approximately 18 acres of uplands within the 50-foot wetlands transition area as Phases I and II of its mitigation bank; and

DEP 243



WHEREAS the applicant has completed a final water budget, dated October 10, 1994, and the Council finds on the basis of that budget, written comments dated November 4, 1994 from the United States Department of Agriculture, Soil Conservation Service and comments from Dr. Russ Lea, wetlands consultant for U.S. Wetlands Services, Inc., during the November 15, 1994 Council meeting, that there will be adequate hydrology on site to support the proposed creation, and the proposed restoration and enhancement of freshwater wetlands within Phases I and II; and

WHEREAS the applicant has submitted a planting schedule shown on the plans entitled "Planting plan for proposed Woodbury Creek Wetland Mitigation Bank (Phase I & II), Township of West Deptford, County of Gloucester, State of New Jersey," sheet 1 of 1, dated November 14, 1994, unrevised and prepared by Edward W. Wartel, L.S. of RETTEW Associates, Inc., Mechanicsburg, P.A., and the Council finds on the basis of the plan that suitable species will be used by the applicant to create, enhance and restore wetlands and to enhance uplands within the 50-foot transition area as Phases I and II; and

WHEREAS the applicant has submitted a grading plan shown on the plans entitled "Grading plan for proposed Woodbury Creek Wetland Mitigation Bank (Phase I, & II), Township of West Deptford, County of Gloucester, State of New Jersey," sheet 1 of 1, dated November 14, 1994, unrevised and prepared by Edward W. Wartel, L.S. of RETTEW Associates, Inc., Mechanicsburg, B.A., and the Council finds on the basis of that plan that the proposed grading will be suitable to create, restore and enhance wetlands and to enhance upland areas within the 50-foot transition area, as proposed for Phases I and II; and

WHEREAS the Council has considered NJDEP staff comments dated October 18, 1994 and November 15, 1994 which were based on information submitted by U.S. Wetlands Services, and on field site inspections, conducted by the Land Use Regulation Program staff on April 13, 1994, June 16, 1994, August 17, 1994 and November 7, 1994; and

WHEREAS on November 15, 1994, the applicant received a Letter of Interpretation from the Department of Environmental Protection (file no. 0820-94-0013.1-LI) confirming the applicant's delineation of freshwater wetlands on Phase I and Phase II of the proposed Woodbury Creek Mitigation Bank and concluding that the on-site wetlands are of intermediate resource value; and

WHEREAS on January 26, 1995, the applicant submitted an Ecological Risk Assessment of Potentially Toxic Trace Elements and PCBs Present in Soil at the proposed Woodbury Bank. In response to the concerns of the Site Remediation Program; and

WHEREAS based on its review of that Risk Assessment and on discussions with the United States Army Corps of Engineers, on March 30, 1995, the Site Remediation Program, Department of Environmental Protection issued a letter to U.S. Wetlands stating that the Department intends to issue a "no further action approval" after a Declaration of Environmental Restrictions is in place which establishes the creation

- 2 -



of a wetlands in perpetuity and records the presence of environmental contaminants at this site; and

WHEREAS the Department's letter of March 30, 1995 further states that baseline sampling should be conducted at a minimum of five locations representative of the site after site grading has occurred, and that after planting of the site as part of the intended mitigation project, sampling should be conducted every three years at those five sampling locations to confirm a decreasing trend in the availability of contaminants; and

WHEREAS the Council finds that Phases I and II of the proposed mitigation bank have the potential to provide an important freshwater wetlands ecosystem following the completion of proposed mitigation activities in accordance with the plans submitted, provided that all conditions of this conditional approval are met;

NOW THEREFORE BE IT RESOLVED that, pursuant to the authority of N.J.S.A. 13:9B-13 and 13:9B-15, Phases I and II of the Woodbury Creek Mitigation Bank are approved, subject to the following terms and conditions:

1.  U.S. Wetland Services, Inc. shall record a Declaration of Environmental and Conservation Restrictions acceptable to the Department of Environmental Protection and the Council and shall receive a "no further action" approval from the Department.

2.  U.S. Wetland Services, Inc. shall receive all federal, state and local permits needed to begin all proposed creation, enhancement and restoration activities for Phases I and II.

3.  U.S. Wetland Services Inc. shall post bonds in accordance with N.J.A.C. 7:7A-14.1(c) covering the costs of construction of the Woodbury Creek Mitigation Bank, Phases I and II, and the costs of maintenance of the Bank, Phases I and II. The bonds shall be issued by a company authorized under the laws of this state to carry on the business specified at N.J.S.A. 17:17-1(g) and qualified under N.J.S.A. 17:31-3 and shall be made payable to the Wetlands Mitigation Fund. The construction costs covered by the bonds shall include, but not be limited to, the costs of baseline sampling for contaminants recommended by the Department in its letter of March 30, 1995. The maintenance costs shall include, but not be limited to, the costs of the three subsequent sampling rounds referenced in the Department's letter of March 30, 1995.

4.  U.S. Wetlands shall secure an agreement with an appropriate public entity or non-profit conservation organization that the entity will accept the property comprising Phase I and Phase II upon completion of the maintenance and monitoring requirements set forth in paragraphs 7 and 9 herein and shall document that the designated donee has been fully appraised of the presence and levels of environmental contaminants on the property.

- 3 -

DEP 245



5.    Provided that all of the conditions of paragraphs 1 through
4 above have been met, and subject to the schedule contained in
paragraph 6 below, acreage credits for activities requiring mitigation
shall be available in accordance with the following ratios:

1:1 for enhancement of uplands within the 50-foot transition area
1:1 for creation of freshwater wetlands
3:1 for restoration/enhancement of freshwater wetlands

Based on the signed and sealed plan entitled, "Proposed
Planting Plan," the Woodbury Creek Bank, Phase I and Phase II, will
contain a total of 99.64 mitigation credits which have been based on
the following:

        18.59 credits for 50 foot buffer area around bank
        42.91 credits for the enhancement/restoration area
        38.14 credits for the creation area
        99.64 total credits

The breakdown of the 99.64 credits based on habitat type
include the following:

        70.83 credits of forested wetlands
        8.26 credits of scrub/shrub wetlands
        2.26 credits of emergent wetlands
        18.59 credits of upland buffers
        99.64 total credits

6. No credits shall be available for sale unless and until all
conditions in paragraphs 1 through 4 are met and then only in
accordance with the following schedule:

1/3 of all credits shall be available after such time as all
conditions in paragraphs 1 through 4 are met.

Subject to the provisions of paragraph 8, below, the remaining
credits shall be available after construction of Phases I and II has
been successfully completed in accordance with the planting and grading
plans submitted, and after baseline sampling for the target compound
list plus 30 has been completed following site grading, as required by
the Department, as verified by the NJDEP Land Use Regulation Program
and the Site Remediation Program.

7. DIG. Wetland Services, Inc. shall conduct sampling every three
years following completion of construction and planting, in accordance
with the Department's letter of March 30, 1995, using a New Jersey
certified laboratory. This sampling shall occur at the five locations
sampled in the baseline analysis and shall include soil, root mass,
leaf and fruit structures sampling to confirm uptake and stabilization
by the plants.   The Site Remediation Program shall determine the
parameters to be sampled, based on the results of the baseline
sampling.   The Land Use Regulation Program, in conjunction with the
Site Remediation Program, shall oversee the monitoring of the wetlands
creation, restoration and enhancement activities in Phase I and Phase

- 4 -



II for a period of at least nine years following completion of construction and planting. U.S. Wetland Services, Inc. shall submit monitoring reports to the NJDEP, Staff of the Council no later than November 30th of each monitoring year and shall submit sampling results to the Site Remediation Program and the Land Use Regulation Program no later than 90 days after each sampling event, in accordance with Department's letter of March 30, 1995. The monitoring report due on November 30th of the third year following completion of construction and planting and shall include the following information: a) documentation demonstrating that the goals of the wetland mitigation bank, as shown on the approved signed and sealed site plans, have been satisfied. Documentation will also include a field wetland delineation of the wetland mitigation bank based on techniques as specified in the Federal Manual for Identifying and Delineating Jurisdictional Wetlands (1989); b) evidence documenting 85 percent survival and 85 percent real coverage of the mitigation plantings; and c) evidence documenting that uptake and/or stabilization of contaminants has occurred.

8. Should the Site Remediation Program and the Land Use Regulation Program determine that the results of the baseline sampling and/or the results of any subsequent sampling indicate the presence of contaminants having the potential to cause chronic adverse ecological impacts on plant or animal life, U.S. Wetlands shall be so notified and shall have the right to submit additional information to the Programs on this issue. Pending receipt of any such additional information from U.S. Wetlands, and in accordance with paragraph 10 below, the Land Use Program may suspend the sale of credits upon notice to U.S. Wetlands. Upon notice to U.S. Wetlands, the Site Remediation Program and/or Land Use Program may also request that the Council amend this approval on the basis of the results of the baseline or subsequent sampling. Consistent with Paragraph 16, below, suspension of credit sales initiated by the Land Use Program shall be confirmed by the Council after notice to U.S. Wetlands and after U.S. Wetlands has been given an opportunity to be heard by the Council.

9. Once the required nine-year monitoring and sampling period has expired and the applicant has submitted the final sampling report, the Council will make a finding that the mitigation bank is either a success or a failure. The mitigation project will be considered successful if the applicant demonstrates that the wetlands have been created, restored and enhanced, and the 50-foot transition area has been enhanced, as shown on the approved signed and sealed site plans, and that the site has an 85 percent survival and 85 percent real coverage of the mitigation plantings. In addition, in accordance with the Department's letter of March 30, 1995, the applicant must also confirm through sampling that uptake and/or stabilization of contaminants has occurred. All remaining financial surety will be released after the Council determines, upon the recommendation of the Land Use Regulation Program and the Site Remediation Program, that the mitigation bank is a success, and so notifies the applicant.

10. The use of credits as mitigation by individual permittees subject to the jurisdiction of the Department shall be subject to review and approval by the Land Use Regulation Program on a case by

- 5 -



case basis. Use of the credits in New Jersey must be consistent with all state and federal law including, but not limited to, the Freshwater Wetlands Protection Act, N.J.S.A. 13:9B-1 et seq., the Flood Hazard Area Control Act, N.J.S.A. 58:16A-50 et seq., the Waterfront Development Law, N.J.S.A. 12:5-1 et seq., the Wetlands Act of 1970, N.J.S.A. 13:9A-1 et seq., and the Coastal Area Facility Review Act, N.J.S.A. 13:19-1 et seq. The use of credits as mitigation by individual permittees subject to the jurisdiction of the federal government and/or subject to the jurisdiction of any State besides New Jersey shall be subject to approval by the applicable governmental body. Once the out-of-State use of the bank has been approved by the appropriate agencies, U.S. Wetlands Services shall notify NJDEP Staff to the Council in writing two weeks before the withdrawal of credits. That notice shall contain copies of all of the necessary approvals from the appropriate regulating agencies authorizing the use of mitigation credits in the State of New Jersey. The credits exchanged in the bank should generally result in in-kind replacement of palustrine forested wetlands, palustrine scrub-shrub wetlands, and palustrine emergent wetlands. However, use of the bank may also be allowed for "out-of-kind" replacement on a case-by-case basis, as determined by the NJDEP Land Use Regulation Program.

11. Subject to the terms of this conditional approval, credits shall be available for regulated activities within the lower Delaware River watershed only. Eligible activities in New Jersey must therefore fall within the Lower Delaware Drainage Basin, which starts to the north as the Assunpink Creek Watershed and ends to the south at the tip of Cape May, and is highlighted on the map entitled "Drainage Basin Map of New Jersey" attached hereto as Exhibit D.

12. U.S. Wetlands shall maintain a registry of all mitigation credits awarded and available. U.S. Wetlands Services, Inc. shall submit to staff to the Council a statement of credits sold and credits remaining, including the dates of sale, the names of the buyers/applicants, and the permit or file number from the appropriate regulatory agency. The mitigation bank statement must be submitted two weeks after every credit transfer, as well as in an annual report of all bank transactions by November 30th of each year. Failure to submit either of these records or the notice of out-of-state use of credits required in paragraph 10 may be cause for the Land Use Regulation Program to reject the use of credits from the Woodbury Creek Wetlands Mitigation Bank and for the Mitigation Council to void this approval.

13. If as a result of the construction of Phases I and II, suitable habitat for threatened and endangered species is created, and it is confirmed by the Department that such species are in fact using the site for breeding, resting or feeding, the applicant may apply to the Council for additional credits.

14. The bonds posted pursuant to paragraph 3 above shall only be released in accordance with the following: The performance bond for construction of the mitigation bank shall be released after construction of Phases I and II has been successfully completed in accordance with the planting and grading plans submitted, as verified

- 6 -



by the NJDEP Land Use Regulation Program, and after baseline sampling
has been conducted as verified by the Site Remediation Program, and
after the Site Remediation Program has confirmed that no changes in the
mitigation project are warranted on the basis of the baseline sampling.
The maintenance bond shall be maintained until such time as the Land
Use Regulation Program, the Site Remediation Program and the Council
determine that the monitoring and sampling period has been successfully
completed in accordance with paragraphs 7, 8 and 9 above.

15. By no later than successful completion of the monitoring
and sampling period set forth in paragraphs 7 and 9 above, the
mitigation site (Phases I and II) shall be donated in fee to the public
entity or non-profit conservation organization identified by U.S.
Wetlands pursuant to paragraph 4, above.

16. It is the intent of this Resolution that all reasonable
efforts shall be made to ensure that the provisions of this Resolution
are implemented and complied with in a cooperative manner. Reasonable
efforts shall be made to resolve at the program level issues arising
during the term and operation of this Resolution. Issues that cannot
be resolved at the program level shall be presented to the Council for
review and resolution, upon notice to U.S. Wetlands.

17. Any revisions or modifications to the approved signed and
sealed plans for the Woodbury Creek Wetlands Mitigation Bank, Phase I
and Phase II, must be approved in writing by the Council.

18. Nothing in this Resolution shall preclude the Department
from enforcing any of its responsibilities under federal or state law.


SO RESOLVED, as aforesaid

AYES: 4

NAYS: O

ABSTENTIONS: O

ATTEST:

_Terry Caruso_
Terry Caruso
Staff to Council

_Blas Raiki_                    7/6/95
Blas Raiki                      Date
Acting Chairperson

- 7 -

DHP 249



Exhibit A

# RETTEW
## Associates, Inc.

1110 Kun Sun, Sn b C2 Ventmes, PA 0101 • JE1/83/201 • FAX JO187/83

### PHASE I
#### WOODBURY CREEK WETLAND MITIGATION BANK
Being a portion of Tax Map Lot 1 and 1-C, Block 328, Plate 16
Township of West Deptford, Gloucester County, New Jersey

ALL that certain tract or parcel of land situate in the Township of West Deptford, County of Gloucester and State of New Jersey, and being more particularly bound and described as follows to wit:

BEGINNING at a point, said point being the southwest corner of land hereinafter described and also being the following two (2) courses from the ending point of Course No. 2 in a deed between Tenneco LNG Real Estate Inc. and Tenneco, Inc., recorded in Deed Book 1249, Page 819 and extending thence; (A) N-27°56'37" W a distance of 48.42 feet (being along Course No. 3 of the aforementioned deed) to a point; (B) thence extending through Lot 1-C, Block 328 S 69°43'50" W 43.88 feet to a point in the center of a sixty (60) foot wide access easement (hereinafter described), the place of beginning; thence along the center of said access easement and continuing through Lot 1-C, Block 328 the following three courses and distances:

1.   N 41°05'45" W  a distance of 288.16 feet to a point;

2.   N 28°54'34" W  a distance of 308.60 feet to a point;

3.   N 27°11'10" W  a distance of 1364.29 feet to a point;

thence continuing through Lot 1-C N 85°30'42" E  a distance of 32.52 feet to a point; thence extending through Lot 1 aforementioned the following nine (9) courses and distances:

1.   N 58°59'18" E  a distance of 2387.30 feet to a point;

2.   S 27°18'23" E  a distance of 381.84 feet to a point;

3.   S 32°49'58" E  a distance of 432.57 feet to a point;

4.   S 09°19'35" E  a distance of 448.20 feet to a point;

5.   S 59°40'46" W  a distance of 445.54 feet to a point;

6.   S 28°36'37" E  a distance of 491.72 feet to a point;

7.   S 12°17'00" W  a distance of 746.13 feet to a point;

Lancaster, PA • Storing, VA

DEP 250

B - 071



8.   S 75°51'19" W   a distance of 651.32 feet to a point;

9.   S 69°43'50" W   a distance of 703.00 feet to a point, the place of BEGINNING.

Said Above described tract containing within said bounds 103,448 acres.

TOGETHER with a sixty (60) foot wide easement for ingress and egress to and from Jobstown Road over the following described premises;

ALL that certain tract or parcel of land situate in the Township of West Deptford, County of Gloucester and State of New Jersey, and being more particularly bound and described as follows to wit:

BEGINNING at a point on the dividing line between Lot 1 and Lot 1-C, Block 328, said point being on the westerly line of Jobstown Road (formerly Church Street) and also being N 34°19'51" W a distance of 69.04 feet from the ending point of Course No. 1 (Deed Book 1249, Page 819); thence extending through Lot 1-C the following nine (9) courses and distances:

1.   S 11°28'50" W   a distance of 63.68 feet to a point;

2.   N 34°19'51" W   a distance of 1575.90 feet to a point;

3.   N 41°05'45" W   a distance of 350.56 feet to a point;

4.   N 28°54'34" W   a distance of 312.25 feet to a point;

5.   N 27°11'10" W   a distance of 1377.29 feet to a point;

6.   N 85°30'42" E   a distance of 65.04 feet to a point;

7.   S 27°11'10" E   a distance of 1351.30 feet to a point;

8.   S 28°54'34" E   a distance of 304.95 feet to a point;

9.   S 41°05'45" E   a distance of 347.70 feet to a point on the dividing line between Lot 1 and Lot 1-C, Block 328, said point also being the ending point of Course No. 2 (Deed Book 1249, Page 819);

thence along said dividing line and Course No. 2 S 34°19'51" E a distance of 1521.12 feet to a point, the place of BEGINNING.



Exhibit A

# RETTEW
Associates, Inc.

5-7 Kam Nest, Ent. 101, Lancaster, PA 17355 • 759 897-1231 • Fax 717 597-1233

### PHASE II
## WOODBURY CREEK WETLAND MITIGATION BANK
Being a portion of Tax Map Lot 1-C, Block 328, Plate 26
Township of West Deptford, Gloucester County, New Jersey

ALL that certain tract or parcel of land situate in the Township of West Deptford, County of Gloucester and State of New Jersey, and being more particularly bound and described as follows to wit:

BEGINNING at a point, said point being the southeast corner of land hereinafter described and also being the following two (2) courses and from the ending point of Course No. 2 in a deed between Tenneco LNG Real Estate and Tenneco Inc., recorded in Deed Book 1249, Page 819 and extending thence: (A) N 27°56′37″ W a distance of 48.42 feet (being along Course No. 3 of the aforementioned deed) to a point; (B) thence extending through Lot 1-C, Block 328 S 69°43′50″ W 43.28 feet to a point in the center of a sixty (60) foot wide access easement (hereinafter described), the place of beginning; thence extending through Lot 1-C the following twelve (12) courses and distances:

1.   S 69°43′50″ W a distance of 68.27 feet to a point;

2.   S 75°32′47″ W a distance of 349.11 feet to a point;

3.   S 77°56′50″ W a distance of 159.09 feet to a point;

4.   S 75°40′40″ W a distance of 821.34 feet to a point;

5.   S 79°00′24″ W a distance of 610.22 feet to a point;

6.   N 38°34′46″ W a distance of 748.34 feet to a point;

7.   N 46°32′29″ W a distance of 293.78 feet to a point;

8.   N 23°50′01″ W a distance of 407.42 feet to a point;

9.   N 15°46′42″ W a distance of 120.39 feet to a point;

Lancaster, PA • Sterling, VA
ENGINEERS • PLANNERS • SCIENTISTS  LANDSCAPE ARCHITECTS  SURVEYORS

DHP 252



10.   N 22°27'22" W  a distance of 375 40 feet to a point;

11    N 34°54'46" W  a distance of 443 97 feet to a point;

12    N 85°30'42' E   a distance of 2272.32 feet to a point in the center of
      aforementioned sixty (60) foot wide access easement;

thence continuing through Lot 1-C and extending along the center of said access easement
the following three (3) courses and distances:

1.    S 27°11'10" E   a distance of 1364 29 feet to a point;

2.    S 28°54'34" E   a distance of 308.60 feet to a point;

3.    S 41°05'45" E   a distance of 288.16 feet to a point. the place of
      BEGINNING.

Said above described tract containing within said bounds 99.404 acres.

TOGETHER with a sixty (60) foot wide easement for ingress and egress to and from
Jobstown Road over the following described premises:

ALL that certain tract or parcel of land situate in the Township of West Deptford,
County of Gloucester and State of New Jersey, and being more particularly bound and
described as follows to wit:

BEGINNING at a point on the dividing line between Lot 1 and Lot 1-C, Block 328,
said point being on the westerly line of Jobstown Road (formerly Church Street) and also
being N 34°19'51" W a distance of 69.04 feet from the ending point of Course No. 1 (Deed
Book 1249, Page 819); thence extending through Lot 1-C the following nine (9) courses and
distances:

1.    S 11°25'50" W  a distance of 83.68 feet to a point;

2     N 34°19'51" W  a distance of 1575 90 feet to a point;

3.    N 41°05'45" W  a distance of 350.56 feet to a point;

4.    N 28°54'34" W  a distance of 312.25 feet to a point;

5     N 27°11'10" W  a distance of 1377 29 feet to a point;

DEP 253

B - 074

6. N 85°30'42" E a distance of 65.04 feet to a point;

7. S 27°11'10" E a distance of 1351.30 feet to a point;

8. S 28°54'34" E a distance of 304.95 feet to a point;

9. S 41°05'45" E a distance of 347.70 feet to a point on the dividing line between Lot 1 and Lot 1-C, Block 328, said point also being the ending point of Course No. 2 (Deed Book 1249, Page 819); thence along said dividing line and Course No. 2 S 34°19'51" E a distance of 1521.12 feet to a point, the place of BEGINNING.

DEP 254



Figure II-1

DRAINAGE BAS'
OF
NEW J

LEGEND
——— BASIN BOUNDARIES
- - - - WATERSHED BOUNDARIES

NEW JERSEY S.
INVENTORY    DEP 255

# EXHIBIT G

08/22/2002 THU 10:14   FAX 612002003  DEAN K & J LEGAL, FCM                    ☑003/020

IN THE MATTER OF:              ADMINISTRATIVE ORDER
LandBank                             AND
                          NOTICE OF CIVIL ADMINISTRATIVE
                             PENALTY ASSESSMENT

This Administrative Order and Notice of Civil Administrative Penalty Assessment is issued
pursuant to the authority vested in the Commissioner of the New Jersey Department of
Environmental Protection (hereinafter "NJDEP" or "the Department") by N.J.S.A. 13:1D-1 et
seq., the Freshwater Wetlands Protection Act (hereinafter "the Act"), N.J.S.A. 13:9B-1 et seq.,
and the Waterfront Development Act, N.J.S.A. 12:5-3 et seq, and duly delegated to the Assistant
Commissioner of Compliance and Enforcement or their assignee pursuant to N.J.S.A. 13:1D-4.

## FINDINGS

1.      By Resolution, on July 11, 1995, the Freshwater Wetlands Mitigation Council (Council)
conditionally approved a proposal by US Wetland Services to construct a wetland mitigation
bank on a 200 acre tract known as Block 528, Lots 1 and 1C in West Deptford Township,
Gloucester County (the site). It was a condition of that Resolution that the mitigation
banker[]provide financial assurance in accordance with the Freshwater Wetlands Protection Act
Rules (N.J.A.C. 7:7A-15) covering the cost of construction of the bank, known as the Woodbury
Creek Wetland Mitigation Bank, and the cost of maintenance of the Bank. It was also a condition
of the Resolution that the mitigation banker monitor the wetland mitigation project for a nine-
year period. US Wetland Services subsequently became manager of the mitigation bank on
behalf of LandBank. LandBank has failed to maintain their financial assurance and has failed to
continue to monitor the project.

2.      Letter of Interpretation (LOI) #0820-94-0013.1 issued by the Department on November
15, 1994, determined that the site contained 128.73 acres of degraded wetlands and 71.43
acres of uplands. At that time, the US Wetland Services proposal was to enhance 128.73 acres of
degraded wetlands, create 38.14 acres of freshwater wetlands and establish 16.59 acres of upland
buffers. Based upon the proposed work on the bank site, the Council determined in 1995 that
99.64 mitigation credits could potentially be sold by LandBank provided all specified conditions
were met.

3.      On May 8, 1996 the Department issued a Freshwater Wetlands Individual Permit,
Waterfront Development Permit and Water Quality Certificate (permit #0820-94-0012.4 and 5)
to construct the wetland mitigation project on the site. It was a condition of these permits that
the permittee shall comply with all terms and conditions as stipulated in the Resolution of the
New Jersey Freshwater Wetlands Mitigation Council dated July 11, 1995. LandBank failed to

08/21/2002 WED 15:18   FAX 4128513997 SHAW D & I LEGAL PGN                    @004/010

adhere to the conditions of that Resolution by failing to maintain the financial assurance, draining existing wetlands and failing to continue to monitor the site.

4.      The Department's Land Use Regulation Program, with the mitigation banker's consultant, performed a detailed field review of the site and the LOI was re-issued with revisions on September 4, 1998. This LOI documented the existence of 54.917 acres of wetlands on the bank site, not 128.73 acres as the original LOI indicated. LandBank applied to the Council to amend the approving Resolution of July 11, 1995 to reduce the wetland enhancement area and increase the wetland creation area. By Resolution of November 12, 1998, the Council conditionally approved proposed amendments to its approval of July 11, 1995, which provided that the banker could proceed with a revised grading plan at its own risk. The grading of the site was completed by the fall of 2000.

5.      On October 19, 2000 the Department sent a letter to US Wetland Services, manager of the Woodbury Creek Wetland Mitigation Bank, stating that the Banker's own consultant, the Louis Berger Group, submitted a report indicating that a portion of the 54.917 acres of existing wetlands on the site no longer appear to exhibit wetland hydrology. The Department further stated that the lost wetland acreage must either be restored or created in another location. The Department concluded the letter with a recommendation that the Banker perform a detailed wetland delineation of the site using the *1989 Federal Manual for Identifying and Delineating Jurisdictional Wetlands*.

6.      In response to the Department's October 19, 2000 letter the Banker did have their consultant perform a detailed wetland delineation in the Spring of 2001. The Department participated in the wetland delineation and confirmed the consultant's field findings. On July 12, 2001 the Louis Berger Group submitted the results of the detailed wetland delineation report which indicated that the construction activities resulted in the creation of some wetlands on the site, but also indicated that 18.924 acres of existing wetlands, verified by the September 4, 1998 LOI, had been drained and no longer met the definition of a wetland. The report indicated that LandBank had created 12.71 acres of wetlands, established 18.59 acres of upland buffers and enhanced 15.99 acres of wetlands. Based on the credit ratio approved by the Council, this completed work would be equivalent to 36.64 mitigation credits. The banker sold a total of 32.75 mitigation credits from the bank. If the mitigation monitoring is successfully completed, the amount of credits sold can be offset by the 36.64 mitigation credits established on the site however in an effort to build wetlands on the site, LandBank drained 18.924 acres of existing wetlands which is in violation of the Freshwater Wetlands Protection Act, N.J.S.A. 13:9B-1 et seq.

7.      On October 9, 2001 the Department met with representatives from LandBank and the Louis Berger Group to discuss the findings of the July 12, 2001 report. It was concluded that the Banker needed to provide a remedy for the loss of 18.924 acres of wetland on the site and that the remaining areas of the bank needed additional follow-up monitoring and maintenance.

8.      On November 30, 2001, US Wetland Services, on behalf of LandBank, submitted a supplemental monitoring report of the Woodbury Creek Wetland Mitigation Bank which

08/11/2003 WED 16:16  FAX 4123683997 SHAW E & I LEGAL PCB                   @003/019

discussed the status of the bank activities. It was stated in that supplemental report that the banker continues to investigate the overall issues associated with this bank as expressed at the October meeting and will be providing additional information in the near future.

9.      On February 25, 2002 the Department sent a letter to LandBank requesting that they submit within forty-five (45) days a remedy for the loss of 11.924 acres of wetlands on the bank site as discussed at the October 9, 2001 meeting and noted in their November 30, 2001 letter LandBank has failed to provide a remedy.

10.     Based on the facts set forth in these FINDINGS, the Department has determined that LandBank, has violated the Freshwater Wetlands Protection Act, N.J.S.A. 13:9B-1 et seq., and the regulations promulgated pursuant thereto, N.J.A.C. 7:7A-1 et seq. specifically N.J.A.C. 7:7A-2.1 and the Waterfront Development Law, N.J.S.A. 12:5-3 et seq.

## ORDER

### NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

11. .   LandBank shall submit to this office, within 30 calendar days of receipt of this Administrative Order and Notice of Civil Administrative Penalty Assessment, a mitigation proposal prepared in accordance with N.J.A.C. 7:7A-15.1 et seq. for the off-site mitigation of the 11.924 acres of drained wetlands on the site. The mitigation shall be at a ratio of 3 acres created for each acre disturbed. The proposal shall include a stabilization narrative for the disturbed area in accordance with procedures outlined in "Standards for Soil Erosion and Sediment Control in New Jersey". In addition, the proposal shall include a time schedule for the implementation and completion of the above and a guarantee of 85 percent areal coverage of vegetation over a three year growing period. This action will require prior approval from this office.

12.     Should the Department determine that any part of the restoration proposal to be submitted by LandBank is inadequate or incomplete, then the Department shall provide the submitter with written comments on the proposal. Within 30 calendar days of the Department's comments on the proposal, LandBank shall conform the proposal with the Department's comments and submit the modified plan to the Department. The determination of whether or not the modified proposal, as resubmitted, conforms to the Department's comments shall be made solely by the Department.

13.     Within 30 calendar days after receipt of the Department's final approval of the mitigation proposal, LandBank shall commence the implementation of the final approved mitigation plan in accordance with the approved schedule and must complete the project by the established date.

14.     Within 30 calendar days of receipt of this Administrative Order and Notice of Civil Administrative Penalty Assessment, LandBank shall submit to this office, proof that the required financial assurance for the maintenance and monitoring of the Woodbury Creek Mitigation Bank is in place.

08/21/2042 FRI 16:18  FAX 4128589987  SHAW E & I LEGAL POS                    Ⓩ004/010

## NOTICE OF CIVIL ADMINISTRATIVE PENALTY ASSESSMENT

15   Pursuant to N.J.S.A. 13:9B-21a-m and N.J.A.C. 7:7A-16.8 and based upon the above
FINDINGS, NJDEP has determined that a civil administrative penalty should be
assessed against LandBank in the amount of $ 9000.

16.   Payment of the penalty is due when a final order is issued by the Commissioner
subsequent to a hearing, if any, or when this Administrative Order and Notice of Civil
Administrative Penalty Assessment becomes a final order (see following paragraph). Payment
shall be made by check payable to "Treasurer, State of New Jersey", along with the white copy
of the enclosed Enforcement Invoice Form (DEP-062A), to the following address:

Department of Treasury
Division of Revenue
P.O. Box 417
Trenton, NJ 08625-0417

17.   If no request for a hearing is received within 20 calendar days from receipt of this Notice
of Civil Administrative Penalty Assessment, it shall become a final order upon the twenty-first
calendar day following its receipt and the penalty shall be due and payable.

## NOTICE OF RIGHT TO A HEARING

18.   Pursuant to N.J.S.A. 52:14B-1 et. seq. and N.J.R.A. 13:9B-21d LandBank is entitled to an
administrative hearing. Any hearing request shall be delivered to the addresses referenced in the
attached form within twenty (20) calendar days from receipt of this Administrative Order and
Notice of Civil Administrative Penalty Assessment. The information required in the attached
form must accompany any hearing request made to the Department.

## GENERAL PROVISIONS

19.   This Administrative Order and Notice of Civil Administrative Penalty Assessment is
binding on LandBank, its principals, directors, officers, agents, successors, assigns, any trustee in
bankruptcy or other trustee, and any receiver appointed pursuant to a proceeding in law or
equity.

20.   LandBank shall submit all documents required by this Administrative Order and Notice
of Civil Administrative Penalty Assessment by certified mail, return receipt requested, or by
hand delivery to the Bureau of Coastal and Land Use Compliance and Enforcement at 1510
Hooper Avenue, Toms River, New Jersey 08753

21.   Notice is given that violations of any statutes, rules or permits other than those herein
cited, may be cause for additional enforcement actions, either administrative or judicial, being
instituted without further notice. By issuing this Administrative Order and Notice of Civil

Administrative Penalty Assessment, the Department does not waive its rights to initiate additional enforcement actions.

22.   No obligations imposed by this Administrative Order and Notice of Civil Administrative Penalty Assessment are intended to constitute a debt, damage claim, penalty or other civil action which should be limited or discharged in a bankruptcy proceeding. All obligations imposed by this Administrative Order and Notice of Civil Administrative Penalty Assessment shall constitute continuing regulatory obligations imposed pursuant to the police powers of the State of New Jersey, intended to protect the public health, safety, welfare and environment

23.   Notice is given that pursuant to N.J.S.A. 13:9D-21d, NJDEP is authorized to assess a civil administrative penalty of not more than $10,000 for each violation and each day during which each violation continues, shall constitute an additional, separate and distinct offense.

24.   Notice is further given that pursuant to N.J.S.A. 13:9B-21e, any person who violates N.J.S.A. 13:9B-1 et seq., or an administrative order issued pursuant to N.J.S.A. 13:9D-21b, or fails to pay a civil administrative assessment in full pursuant to N.J.S.A. 13:9B-21d, shall be subject to a civil penalty not to exceed $10,000 per day of such violation, and each day's continuance of the violation shall constitute an additional, separate and distinct violation.

25.   Notice is further given that pursuant to N.J.S.A. 13:9B-21f, any person who willfully or negligently violates N.J.S.A. 13:9B-1 et seq. shall, upon conviction, be guilty of a crime in the fourth degree and shall be punished by a fine of not less than $2,500 nor more than $25,000 per day of violation. Punishment for a second offense under this subsection shall be a fine of not less than $5,600 nor more than $50,000 per day of violation. Any person who knowingly makes a false statement, representation, or certification in any application, record, or other document filed or required to be maintained under this Act, or who falsifies, tampers with or knowingly renders inaccurate, any monitoring device or method required to be maintained pursuant to this Act shall, upon conviction, be subject to a fine of not more than $10,000.

26.   Except as provided above in the Notice of a Right to a Hearing section, this Administrative Order and Notice of Civil Administrative Penalty Assessment shall be effective upon receipt. The Department shall have the right to amend this Administrative Order and Notice of Civil Administrative Penalty Assessment at any time prior to hearing in this matter.

Date: 7/17/02

BY THE AUTHORITY OF
PETER T. LYNCH, CHIEF,
BUREAU OF COASTAL AND LAND USE
COMPLIANCE AND ENFORCEMENT

,08/21/2005 WED 10:18  FAX 4123045027 SEAN U & 1 LEGAL FCM          @001/018

## ADMINISTRATIVE HEARING REQUEST CHECKLIST
## AND TRACKING FORM FOR ENFORCEMENT DOCUMENTS

I.  Enforcement Document Appealed:

_____          _____
Issuance Date of Enforcement Document    Document/File Name

II.  Person Requesting Hearing:

_____          _____
Name/Company                          Name of Attorney if Applicable

_____          _____
Address                               Address of Attorney

III.  Please include the following information as part of the request:

A.  The date the alleged violator received the enforcement document being contested;
B.  A copy of the Enforcement Document and a list of all issues being appealed;
C.  An admission or denial of each of the findings of fact, or a statement of insufficient knowledge;
D.  The defense to each of the findings of fact in the enforcement document;
E.  Information supporting the request;
F.  An estimate of the time required for the hearing;
G.  A request, if necessary, for a barrier-free hearing location of physically disabled persons;
H.  A clear indication of any willingness to negotiate a settlement with the Department prior to the Department's processing of your hearing request to the Office of Administrative Law; and
I.  Submit this form, completed, signed and dated, with all of the information listed above, with attachments, to:

1   Department of Environmental Protection
    Office of Legal Affairs
    401 East State Street, P. O. Box 402
    Trenton, NJ 08625-0402
    ATTENTION: Adjudicatory Hearing Requests

2   Peter Lynch, Acting Administrator, Coastal and Land Use
    Compliance and Enforcement
    401 East State Street, P. O. Box 422
    Trenton, NJ 08625-0422

IV.  _____          _____
     SIGNATURE                             DATE

08/11/2002 WED 16:18  FAX 4123445557  BEAN & H ATER TERRITORIES TLY  WITH  CMR FUD/CA

| DESCRIPTION 241 ☐ Check Here if Revised Billing Coastal & Land Use Compliance & DIVISION Enforcement PROGRAM | New Jersey Dept. of Environmental Protection **ENFORCEMENT INVOICE** | 0820-94-0013 Document # ___ Date Rec'd ___ Amt. ___ |
|---|---|---|
| | | FACILITY ID NO. |
| | TYPE: ☒ First Penalty  ☐ Cost Recovery | PROGRAM ID NO. 0820-94-0013 |
| Cent/Company Name: c/o Frank Rice Landlord Address: 2150 Hillside Rd. incorporated Monroeville, Pa. 15146-2792 | | Please identify appropriate category: ☐ County  Authority:  ☐ Industrial ☐ Local  ☐ Regional  ☒ Commercial ☐ Private  ☐ Local  ☐ Other _____ Specify |

| 7/17/02 | Administrative Order & Notice of Civil Administrative Penalty Assessment Freshwater Wetlands Protection Act N.J.S.A. 13:9B-21 | $9,000 |
|---|---|---|

| DATE DUE: 8/19/02 | | AMOUNT DUE: $9,000 |
|---|---|---|

Make check payable to: Treasurer, State of New Jersey

Mail to: NJDEP, Bureau of Revenue CN 417, Trenton, N.J. 08635-0417

COPY DISTRIBUTION:   White - Recipient Copy   Yellow - Company   Pink - Bureau of Revenue   Goldenrod - Division

08/21/2002 WED 18:17  FAX 4128283007 SHAW B & I LEGAL FCX                    ⊠018/019

**New Jersey Dept. of Environmental Protection**

DEP-OCIA
7/84
☐ Check here if Revised Billing
Coastal & Land Use Compliance &
DIVISION  Enforcement
PROGRAM

**ENFORCEMENT INVOICE**

0B20-94-0013
Document # ___
Date Rec'd ___
Amt. ___

TYPE: ☑ Fine/Penalty  ☐ Cost Recovery   FACILITY ID NO.
PROGRAM ID NO. 0B20-94-0013

Case/Company Name   670 Frank Rice
Address   2787 Brodhead Road
           Monroeville, Pa. 15146-2792

Please identify appropriate category:
☐ County  Authority:
☐ Local   ☐ Regional
☐ Private ☐ Local
☐ Industrial
☑ Commercial
☐ Other-

| | | |
|---|---|---|
| 7/17/02 | Administrative Order & Notice of Civil Administrative Penalty Assessment Freshwater Wetlands Protection Act N.J.S.A. 13:9B-21 | $9,000 |
| DATE DUE: 8/19/02 | | AMOUNT DUE: $9,000 |

Make check payable to: Treasurer, State of New Jersey    Mail to: NJDEP, Bureau of Revenue
CN 417, Trenton, N.J. 08625-0417

COPY DISTRIBUTION:  Blue - Remittance Copy  Yellow - Company  Pink - Bureau of Revenue  Goldenrod - Division

B - 085

# PROPOSED ORDER

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| THE IT GROUP, INC., et al., | Case No. 02-10118 (MFW) |
| Debtors. | Jointly Administered |

ORDER GRANTING MOTION OF THE IT LITIGATION TRUST TRUSTEE
FOR AN ORDER (I) ENFORCING (A) THE BAR DATE ORDER, (B) THE
ADMINISTRATIVE BAR DATE ORDER, (C) THE CONFIRMATION ORDER, AND
(D) THE PLAN INJUNCTION; AND (II) DIRECTING THE NEW JERSEY
DEPARTMENT OF ENVIRONMENTAL PROTECTION TO DISMISS CERTAIN
ADMINISTRATIVE ACTIONS AGAINST THE DEBTORS PURSUANT TO THE
COURT'S ORDERS, THE PLAN INJUNCTION AND 11 U.S.C. §§ 105(a) AND 1142(b);
AND (III) GRANTING RELATED RELIEF [Re: Docket No.    ]

Upon the Motion (the "Motion")[1] of The IT Litigation Trust Trustee (the "Trustee") of

the IT Litigation Trust, as successor to The IT Group, Inc. and its affiliated debtors (collectively,

the "Debtors"). for an order (i) enforcing (a) the Bar Date Order, (b) the Administrative Bar Date

Order, (c) Confirmation Order and (d) the Plan Injunction; (ii) directing NJDEP to dismiss that

certain NJ Administrative Order and NJ Administrative Proceeding against the Debtors pursuant

the Court's orders, the Plan Injunction and sections 105(a) and 1142(b) of the Bankruptcy Code;

and (iii) granting related relief; and it being found that this Court has jurisdiction; and it

appearing that good and sufficient notice of the Motion having been given and no further notice

of the Motion or of the entry of this Order need be provided; and upon the entire record herein;

and the Court having considered the Motion; and after due deliberation thereon; and good and

sufficient cause appearing therefor, it is hereby:

FOUND THAT

---

[1]     Capitalized terms not otherwise defined herein shall have the meanings assigned to such terms in the
Motion.

MIAMI EVE1 030

A       By the NJ Administrative Order and NJ Administrative Proceeding, NJDEP is asserting Claims (as defined in the Plan) against the Debtors;

B.      The prosecution of the NJ Administrative Order and the NJ Administrative Proceeding against the Debtors constitutes violations of the Court's Bar Date Orders, the Confirmation Orders and the Plan Injunction;

C.      The Claims asserted against the Debtors by the NJDEP in the NJ Administrative Proceeding arose prior to the Effective Date and are barred by the Plan Injunction;

IT IS THEREBY:

1.      ORDERED, that the Motion be, and it hereby is, GRANTED;

2.      ORDERED, that NJDEP is hereby directed to immediately dismiss the NJ Administrative Order and the NJ Administrative Proceeding; and it is further

4       ORDERED, that this Court shall retain jurisdiction with respect to any matters related to or arising from the implementation of this Order

Dated: Wilmington, Delaware

_____, 2004


                                    _____
                                    Honorable Mary F. Walrath
                                    Chief United States Bankruptcy Judge

2