1.

PETER C. HARVEY
Attorney General of New Jersey
R. J. Hughes Justice Complex
P.O. Box 093
Trenton, NJ  08625
Attorney for New Jersey
     Department of Environmental Protection

By:  KATHRINE MOTLEY HUNT
     Deputy Attorney General
     (609) 984-7147

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11<br>Case No. 02-10118(MFW)<br>Jointly Administered |
| THE IT GROUP, INC., et al., | : | |
| Debtors. | : | |
| | : | Hearing: December 6, 2004<br>Time: 9:30 a.m.<br>Objection Deadline: Dec. 1, 2004<br>Judge: Hon. Mary F. Walrath |
| | : | |

OPPOSITION OF THE NEW JERSEY DEPARTMENT OF ENVIRONMENTAL
PROTECTION TO THE MOTION OF IT LITIGATION TRUST TRUSTEE FOR
AN ORDER DIRECTING THE NEW JERSEY DEPARTMENT OF
ENVIRONMENTAL PROTECTION TO DISMISS CERTAIN ADMINISTRATIVE
ACTIONS AGAINST THE DEBTORS PURSUANT TO THE COURT'S ORDERS

PLEASE TAKE NOTICE that the undersigned attorney for the

State of New Jersey, Department of Environmental Protection

("NJDEP"), hereby opposes the motion of the IT Litigation Trust

Trustee ("Trustee") for an Order directing the NJDEP to dismiss its

administrative action against the debtors pursuant to the Court's orders. the plan injunction. and 11 U.S.C. § § 105(a) and 1142(b)

On July 7. 2002. the NJDEP issued an Administrative Order to Landbank. Inc., a debtor in the pending bankruptcy proceedings. directing Landbank to conduct off-site mitigation for 18.94 acres of freshwater wetlands that were drained on a mitigation bank site, in violation of the Freshwater Wetlands Protection Act. N.J.S.A. 13:9B-1 to -30. and its implementing regulations N.J.A.C. 7:7A-1 to -17.9. In addition. the NJDEP ordered landbank to restore the required financial assurances for the maintenance and monitoring of the Woodbury Creek Wetland Mitigation Bank    Landbank requested a hearing to challenge the Administrative Order and the matter is pending in the State of New Jersey. Office of Administrative Law. The NJDEP filed a Motion for Summary Decision in the administrative matter on November 18. 2004    The motion is scheduled for oral argument in January 2005.

In its motion papers, the Trustee argues that NJDEP is asserting a claim against the IT litigation Trust which is barred because NJDEP did not file a proof of claim against the debtor    The NJDEP. however. is not a claimant in the pending bankruptcy proceeding    Rather. in its administrative action. the NJDEP seeks performance of the debtor's obligation to comply with the environmental laws of the State of New Jersey. In In re Torxico Electronics. Inc. v. New Jersey Department of Environmental

2

Protection and Energy, 8 F 3d 146 (3d Cir. 1993). cert denied 511 U.S. 1046(1994). the Third Circuit held that a state "can exercise its regulatory powers and force compliance with its laws. even if the debtor must expend money to comply." Id at 150

In its case against the debtor, the NJDEP does not assert a right to payment. Rather. the State has asserted its right to force the debtor to mitigate for the on-going loss of important natural resources. In enacting the Freshwater Wetlands Protection Act, the Legislature declared that

> freshwater wetlands protect and preserve drinking water supplies by serving to purify surface water and groundwater resources; that freshwater wetlands provide the natural means for flood and storm damage protection, and thereby prevent the loss of life and property through the absorption and storage of water during high runoff periods and the reduction of flood crests; that freshwater wetlands serve as a transition zone between dry land and water courses, thereby retarding soil erosion; that freshwater wetlands provide essential breeding, spawning, nesting and wintering habitats for a major portion of the State's fish and wildlife. including migrating birds, endangered species, and commercially and recreationally important wildlife; and that freshwater wetlands maintain a critical baseflow to surface waters through the gradual release of stored flood waters and groundwater. particularly during drought periods [N.J.S.A 13:9B-2]

In the administrative action. the NJDEP alleges that Landbank's actions resulted in the loss of the functions and values of approximately 19 acres of freshwater wetlands in the State of New Jersey The NJDEP has the right to demand that Landbank provide a

3

remedy for this on-going loss by creating wetlands elsewhere in the State    See N.J.S.A. 13:9B-21 and N.J.A.C. 7:7A-15.1.

The Trustee relies on Ohio v. Kovacs. 469 U.S. 274 (1985). to support its argument that in seeking to compel Landbank to meet its statutory obligations. NJDEP is exercising a right to payment. In Kovacs. however, the State of Ohio sought only the payment of money from the debtor. not the actual cleanup of property    Id. at 283.  The Supreme Court concluded that the debtor's duty to cleanup property had been converted into an obligation to pay money, an obligation that is dischargeable in bankruptcy    Ibid.  In its decision, the Supreme Court took pains to make clear that it was not establishing a broad exception to otherwise valid and enforceable environmental laws.  Id. at 284-285.  In its administrative action against the debtor. however. the State of New Jersey is not seeking the payment of money but is seeking to enforce the affirmative obligation of the debtor to fully mitigate for the loss of ecological values caused by the draining of 19 acres of wetlands    Thus, it is not asserting a claim against the debtor

Moreover. under the Bankruptcy Code. the automatic stay provision does not operate to stay "the commencement or continuation of an action or proceeding by a governmental unit . to enforce such governmental unit's or organization's police or regulatory power. including the enforcement of a judgment other than a money judgment. obtained in an action or proceeding by the governmental unit. . " 11

4

U.S.C. § 362(b)(4).    See United States v. Nicolet, Inc., 857 F 2d 202 (3d Cir. 1988)(action by government to recover cleanup costs fell within the automatic stay exception); In the Matter of Garay, M.D., 89 N.J. 104 (1982)(action by State to fix damages for violation of medicaid statutes was not automatically stayed by physician's bankruptcy filing)   The regulatory exemption in ¶ 364(b)(4) applies not only to the NJDEP's demand for mitigation but also to its demand for reinstatement of financial assurances.  In Safety Kleen, Inc. v. Wyche, 274 F.3d 846, 866 (4th Cir. 2001), the Court held that the State of South Carolina's efforts to enforce the financial assurance regulations pursuant to its hazardous waste facility regulations was an exercise of its regulatory powers, and, therefore, it was not stayed by the bankruptcy proceedings.    Likewise, the Department is exercising its regulatory powers pursuant to the Freshwater Wetlands Protection Act, N.J.S.A 13:9B-1 to -30, to ensure that the mitigation bank that the debtor operated in New Jersey is properly constructed and maintained   Accordingly, the NJDEP is not barred by the pending bankruptcy proceeding from continuing its administrative action against landbank to secure a final order

Finally, the Trustee argues that it is entitled to an injunction, pursuant to section 105(a) of the Bankruptcy Code, directing the NJDEP to dismiss its administrative action against the debtor   Injunctions of state regulatory actions, however, "are a rare remedy, appropriate only in exigent circumstances where the

5

:

state regulatory action seriously threatens the bankruptcy process "
Brennan v. Poritz. 198 B.R. 445 (D N.J. 1996). In Brennan, the
district court found that a debtor's need for a breathing spell to
effectuate orderly reorganization was not sufficient reason for
bankruptcy court to invoke its general equitable powers to enjoin a
state regulatory proceeding which would otherwise be excepted from
the automatic stay pursuant to 11 U.S.C § 362(b)(4)    Id. at 451-
452.    The Court noted that the debtor's need for breathing space
"cannot outweigh the police powers exception: 'These provisions (11
U.S.C. § 362(b)) embody Congress' recognition that enforcement of the
environmental protection laws merits a higher priority than the
debtor's rights to a 'cease fire' or the creditors' rights to an
orderly administration of the estate '" Id. at 452. citing U.S. v.
Nicolet, 857 F.2d 202. 207(3d Cir. 1988)

        In its motion papers. the Trustee does not argue that the
NJDEP's administrative action seriously conflicts with fundamental
bankruptcy polices. Moreover, the Trustee makes no effort to address
the traditional four-pronged standard for granting injunctive relief
Indeed, the NJDEP's administrative action to secure a final order
against the debtor poses no conflict with bankruptcy policies and
should be permitted to proceed as a continuation of an action by a
governmental unit to enforce its police and regulatory powers

6

For these reasons, the NJDEP respectfully opposes the entry of an injunction directing it to dismiss its administrative action against the debtor, landbank.

PETER C. HARVEY
ATTORNEY GENERAL OF NEW JERSEY

By: _____
KATHRINE MOTLEY HUNT
Deputy Attorney General

Dated: November 29, 2004

7

B - 095

## CERTIFICATION

I hereby certify that on November 30, 2004, I caused a true and correct copy of the foregoing Opposition of New Jersey Department of Environmental Protection to be served upon the Bankruptcy Court and the parties listed below by overnight mail and upon the parties listed on the 2002 service list by first class mail.

Via UPS Overnight Courier

David D. Bird
Clerk of Court
U.S. Bankruptcy Court
824 Market St.
Wilmington, DE 19801

John K Cunningham, Esq
Ileana Cruz, Esq.
White & Case, LLP
Wachovia Financial Center.
Suite 4900
200 South Biscayne Blvd
Miami, FI. 33131

Jeffrey M. Schlerf. Esq
Eric Sutty. Esq.
The Bayard Firm
222 Delaware Ave, Suite 900
Wilmington. DE 19801

Via First Class Mail:

All other parties listed on
The IT Group
Case No. 02-10118(MFW)
2002 Service List

By: Geraldine Brogley
    Geraldine Brogley

Dated: November 30, 2004

8

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

```
------------------------------- X
In re:                          :    Chapter 11
                                :
THE IT GROUP, INC., et al.,     :    Case No. 02-10118 (MFW)
                                :
        Debtors.                :    Jointly Administered
                                :
                                :    Related to Docket No. 4812
------------------------------- X
```

## ORDER CONFIRMING THE FIRST AMENDED JOINT CHAPTER 11 PLAN FOR THE IT GROUP, INC. AND ITS AFFILIATED DEBTORS PROPOSED BY THE DEBTORS AND OFFICIAL COMMITTEE OF UNSECURED CREDITORS

The IT Group, Inc. ("IT Group"), as debtors and debtors in possession (collectively, with IT Group, the "Debtors") and the Official Committee of Unsecured Creditors (the "Committee," and together with the Debtors, the "Plan Proponents") appointed in the Debtors' above-captioned chapter 11 cases (collectively, the "Chapter 11 Cases") having proposed and filed their First Amended Joint Chapter 11 Plan for The IT Group, Inc. and its Affiliated Debtors Proposed By the Debtors and the Official Committee of Unsecured Creditors dated February 9, 2004 (as modified to the extent set forth herein, the "Plan");[1] and the United States Bankruptcy Court for the District of Delaware (the "Court") having conducted a hearing to consider confirmation of the Plan on March 29, 2004 (the "Hearing"); and the Court having considered the testimony at the Hearing of Harry J. Soose, Jr., the Debtors' Chief Operating Officer (the "Soose Testimony"), and Meade A. Monger (the "Monger Testimony") of AlixPartners LLC, the Committee's bankruptcy claims specialists and advisors ("AlixPartners"); and the Court having considered the Revised Affidavit of Kathleen M. Logan Certifying Voting

[1]    All capitalized terms not otherwise defined herein shall have the respective meanings ascribed to such terms in the Plan.

B - 097

and Tabulation of Ballots Accepting and Rejecting the First Amended Disclosure Statement Pursuant to Section 1125 of the Bankruptcy Code with respect to the First Amended Joint Chapter 11 Plan for The IT Group, Inc. and its Affiliated Debtors Proposed by the Debtors and the Official Committee of Unsecured Creditors dated March 29, 2004 (Docket No. 4886) (the "Logan Affidavit") by Logan & Company, Inc., the Debtors' solicitation and tabulation agent (the "Tabulation Agent"); and the Court being familiar with the Plan and other relevant factors affecting these jointly administered Chapter 11 Cases pending under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"); and the Court having taken judicial notice of the record of these Chapter 11 Cases with respect to confirmation of the Plan, including, without limitation, the Plan, the First Amended Disclosure Statement Pursuant to Section 1125 of the Bankruptcy Code With Respect to the Plan dated February 9, 2004 (the "Disclosure Statement"), the exhibits to the Plan and the Disclosure Statement  the Plan Documents filed with the Court  and the order of the Court dated February 11, 2004 (the "Approval Order") approving the Disclosure Statement, scheduling a hearing to consider confirmation of the Plan, setting the voting deadline with respect to the Plan, setting the last day for filing objections to the Plan, prescribing the form and manner of notice thereof, and approving the form of Ballots and proposed solicitation and tabulation procedures;  and the Court having found that due and proper notice has been given with respect to the Hearing and the deadlines and procedures set forth in the Approval Order; and after consideration of the various objections to the Plan (the "Objections") filed by certain of the Debtors' creditors and other parties in interest (collectively, the "Objecting Parties"); and the appearances of the Objecting Parties at the Hearing having been duly noted on the record of the Hearing; and based upon the entire record of the Hearing  the evidence presented by the Plan Proponents in support of

2

confirmation of the Plan, and the statements and arguments of counsel made at the Hearing; and

after due deliberation and sufficient cause appearing therefor;

IT IS HEREBY FOUND, CONCLUDED, ORDERED, ADJUDGED, AND

DECREED, AS FOLLOWS:[2]

## FINDINGS OF FACT:

### I.    JURISDICTION

A.    The Court has jurisdiction to conduct the Hearing and to confirm the Plan

pursuant to 28 U.S.C. § 1334. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408

and 1409.

B    Confirmation of the Plan is a core proceeding pursuant to 28 U.S.C. § 157(b), and

this Court has jurisdiction to enter a final order with respect thereto.

C    The Debtors are proper debtors under section 109 of the Bankruptcy Code.

D.    The Debtors and the Committee are proper proponents of the Plan under section

1121 of the Bankruptcy Code.

### II.    MODIFICATIONS TO THE PLAN

E.    At or before the Hearing, the Plan Proponents received written Objections to

confirmation of the Plan by the following Objecting Parties: (i) Accardi Plaintiffs and Rochelle

Bookspan, (ii) AMTRAK Corporation, (iii) Arctic Slope, Inc., (iv) ATOFINA Petrochemicals,

Inc., (v) Guillermo Barrientos, Joyce Barrientos and Christina Alfaro, (vi) California Department

of Toxic Substance Control, the Central Valley Regional Water Quality Control Board, the

---

[2]    The Findings of Fact and Conclusions of Law contained herein constitute the findings of
fact and conclusions of law required to be entered by this Court pursuant to Rule 52 of the
Federal Rules of Civil Procedure, as made applicable herein by Rules 7052 and 9014 of the
Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

B - 099

Central Coast Regional Water Quality Board and the San Francisco Regional Water Quality Control Board, (vii) Consolidated City of Indianapolis, (viii) Conestoga-Rovers & Associates. Inc. ("Conestoga-Rovers"), (ix) Crompton Corporation, (x) Roger L. Halley, Co-Trustee, Judith A. Halley Trust No. 1 usd 7/11/96, (xi) Lockheed Martin Corporation. (xii) State of New Jersey. Department of Environmental Protection, (xiii) Occidental Chemical Corporation, (xiv) Potter Anderson & Corroon LLP. (xv) PPG Industries. Inc. ("PPG"), (xvi) Southeastern Pennsylvania Transportation Authority. (xvii) Southwestern Bell Telephone Company. L.P.. (xviii) Staro Asset Management LLC. (xix) The Comptroller of Public Accounts of the State of Texas ("Texas Comptroller"). (xx) The Shaw Group, Inc. ("Shaw"), (xxi) US Bancorp Equipment Finance. Inc.. (xxii) The United States of America, on behalf of the United States Environmental Protection Agency, (xxiii) Roberta A. DeAngelis, Acting United States Trustee for Region 3. and (xxiv) Weston Solutions. Inc.. f/k/a Roy F. Weston. Inc. In addition, the Plan Proponents advised the Court at the Hearing that they had received an informal Objection to confirmation of the Plan by the United States Securities and Exchange Commission (the "SEC")

    F       At the Hearing, the Plan Proponents proposed certain technical modifications to the Plan (the "Modifications") as set forth below:

    G.      Insert a new paragraph after Section 1.1(d) as follows:

        (d)(i)   "ADR Administrator" means the Litigation Trust Trustee.

    H       The definition of "Available Proceeds" in Section 1.1(i) of the Plan is modified by including at the end of such definition the following additional language: "at any time Allowed in accordance with the Plan."

    I.      The following definitions in Section 1.1 of the Plan are modified and replaced in their entirety with the following:

(x)     "Committee Designee" means Murray H. Hutchison or such other Person selected by the Committee (or, as otherwise set forth in the Plan or the by-laws adopted by the Oversight Committee) to serve as a member of the Oversight Committee from and after the Effective Date.

(sss)     "Lender Designee" means Cargill Financial Services Corp. and Citadel Investment Group L.L.C., or such other Persons selected by the Agent (on behalf of the Prepetition Lenders) to serve as members of the Oversight Committee from and after the Effective Date.

(kkkk)     "Oversight Committee" means the committee comprised of three members (which number may not be increased), consisting of the Committee Designee and the Lender Designees, which shall oversee the administration and implementation of the Plan and the liquidation of the Debtors' Assets in accordance with the Plan.

J       The definition of "Non-Lender Secured Claim" in Section 1.1(eeee)(ii) of the Plan is hereby modified by deleting the words "recoupment or "

K       Section 4.1(b)(iv) of the Plan is modified and replaced in its entirety with the following: "If such Allowed Non-Lender Secured Claim is secured by a valid right of setoff, such Claim shall be setoff to the extent of the amount subject to such setoff in accordance with sections 506(a) and 553 of the Bankruptcy Code."

L       Section 5.1(c) of the Plan is hereby modified by deleting "without notice or a hearing" at the end of the first sentence of such section.

M       Section 7.7 of the Plan is modified by (a) replacing the first sentence of Section 7.7 in its entirety with the following: "On the Effective Date, the Oversight Committee shall be formed, which Committee shall be comprised of three (3) members (which number may not be increased), consisting of the Committee Designee and the Lender Designees; provided, however, that the Lender Designees, collectively, shall be treated as one member of the Oversight Committee for all purposes under the Plan (including, but not limited to, with respect to voting

and the Oversight Committee Compensation)"; and (b) replacing the third sentence in Section 7.7 in its entirety with the following: "Oversight Committee decisions shall be made with the approval of the Committee Designee and the Lender Designee."

N.    Section 7.10(II) of the Plan is modified by (a) removing "with the DTSC" from the first sentence and (b) including at the end of such section the following additional language: "Notwithstanding any provision of this Plan, the United States retains all of its access authorities and rights, including enforcement rights related thereto, with respect to the Landfills. Nothing in this Section 7.10(II) is intended to be nor shall it be construed as a deprivation or waiver by the United States Environmental Protection Agency of any rights or duties as a regulator under the laws of the United States with respect to the Landfills."

O.    Article XII of the Plan is modified by deleting the word "exclusive" in the first paragraph and by including at the end of such article the following additional language: "Nothing in this Article shall preclude any other tribunal with jurisdiction from exercising its jurisdiction in any action brought by a United States environmental governmental unit, a California state environmental governmental unit, and/or a New Jersey state environmental governmental unit. Notwithstanding the Bankruptcy Court's retention of jurisdiction as set forth in this Article, the IT Environmental Liquidating Trust also shall be subject to the jurisdiction of the Northern District of California."

P.    Section 13.2, entitled "Discharge of the Debtors," is deleted in its entirety.

Q.    Section 13.17 of the Plan is modified by deleting the following language: "(and any payments or other Distributions to be made in respect of such Claim hereunder)."

R.    Section 13.19 is modified in its entirety and replaced with the following:

Except as otherwise expressly provided in the Plan, all Persons or

6

entities who have held, hold, or may hold Claims or Equity Interests are permanently enjoined, from and after the Effective Date, from (a) commencing or continuing in any manner any action or other proceeding of any kind on any such Claim or Equity Interest against any of the Debtors, their Estates, Reorganized IT Group, the IT Environmental Liquidating Trust, the IT Environmental Liquidating Trustee, the Litigation Trust, the Litigation Trust Trustee, or the Assets, or against the property or interests in property of any of the Debtors, their Estates, Reorganized IT Group, the IT Environmental Liquidating Trust or the Litigation Trust, (b) the enforcement, attachment, collection or recovery by any manner or means of any Claims and/or Equity Interests, or any Judgment, award, decree or order with respect to any Claims and/or Equity Interests, against any of the Debtors. their Estates, Reorganized IT Group, the IT Environmental Liquidating Trust, the IT Environmental Liquidating Trustee, the Litigation Trust, the Litigation Trust Trustee, or the Assets, , or against the property or interests in property of any of the Debtors, their Estates, Reorganized IT Group, the IT Environmental Liquidating Trust or the Litigation Trust, (c) creating, perfecting, or enforcing any encumbrance of any kind against any of the Debtors, their Estates, Reorganized IT Group, the IT Environmental Liquidating Trust, the IT Environmental Liquidating Trustee, the Litigation Trust, the Litigation Trust Trustee, or the Assets, or against the property or interests in property of any of the Debtors, their Estates, Reorganized IT Group, the IT Environmental Liquidating Trust or the Litigation Trust, and (d) asserting any right of set-off or subrogation of any kind against any obligation due from any Debtor or against the property or interests in property of any Debtor, with respect to any such Claims or Equity Interests; provided however, that the foregoing shall not affect the rights of a party that were obtained pursuant to a Final Order of the Bankruptcy Court granting limited relief from the automatic stay under section 362(d) of the Bankruptcy Code. Nothing in this Section 13.19 shall enjoin the exercise of any police or regulatory power by a United States environmental governmental unit, a California state environmental governmental unit or a New Jersey state environmental governmental unit with respect to any environmental Claim that arises after the Effective Date.

S    Section 13.22 of the Plan is modified by deleting the last parenthetical at the end

of the first sentence and replacing it with the following: "(other than Causes of Action of the

Debtors against Harry J. Soose, Jr., except to the extent of available director and officer

B - 103

insurance coverage; in any action brought by, or on behalf of, the Debtors, the Committee and/or the Litigation Trust)."

    T    Notice of the Modifications was due and proper under the circumstances.

    U.    The Modifications do not materially or adversely change the treatment of the holder of any Claim or Equity Interest and comply with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019.

    V    The Plan, as modified by the Modifications, is properly before the Court and all votes cast with respect to the Plan shall be binding and shall be deemed to be cast with respect to the Plan, as modified by the Modifications

    W    As set forth on the record of the Hearing, each of the Objections has been either (a) withdrawn at or before the Hearing, (b) resolved by the terms of this Order, or (c) otherwise overruled by the Court

### III.    SOLICITATION AND VOTING

    X.    Pursuant to the Approval Order (i) March 22, 2004, at 4:00 p.m. (Prevailing Eastern Time) was the deadline by which all Ballots for Classes 2, 3, 4A and 4B under the Plan (the "Ballots") were required to be completed, executed, marked, and received by the Tabulation Agent in order to be counted as timely votes on the Plan (the "Voting Deadline"); (ii) March 22 2004 at 4:00 p.m. (Prevailing Eastern Time) was the deadline for filing objections to confirmation of the Plan (the "Objection Deadline"); and (iii) the record date for determining creditors entitled to vote on the Plan was January 14, 2004 (the "Voting Record Date").

    Y.    The Plan Proponents complied with the Approval Order by causing to be transmitted by first class United States mail, postage prepaid, on or before February 17, 2004 (the "Solicitation Deadline"), a Solicitation Package consisting of (i) the Voting Procedures; (ii) the

8

Disclosure Statement (with the Plan attached as an exhibit); (iii) the Confirmation Hearing Notice; and (iv) the approved form of Ballot with voting instructions and pre-addressed postage-paid envelopes to (a) the Office of the United States Trustee; (b) each holder of a Claim in each of Class 2 (Non-Lender Secured Claims), Class 3 (Lender Claims), Class 4A (General Unsecured Claims) and Class 4(B) (Litigation Unsecured Claims) of the Plan that was (y) listed in the Schedules as of the Voting Record Date or (z) represented by a timely filed proof of claim against any of the Debtors that was not the subject of an objection filed and served by the Solicitation Deadline; and (c) each of the other parties on the 2002 Service List.

Z.    As set forth in the Logan Affidavit, the Tabulation Agent has made a final determination of the validity of, and prepared a tabulation respecting, all acceptances and rejections of the Plan by the impaired Classes of Claims entitled to vote on the Plan, including the amount and number of Claims in each of Classes 2, 3, 4A and 4B voting to accept or reject the Plan. Each of Classes 2 (Non-Lender Secured Claims),[1] 3 (Lender Claims), 4A (General Unsecured Claims) and 4B (Litigation Unsecured Claims) has accepted the Plan by at least two-thirds in amount and a majority in number of the Claims in each such Class actually voting as set forth in the Logan Affidavit. Class 1 (Priority Claims) is unimpaired under the Plan and is deemed to have accepted the Plan in accordance section 1126(f) of the Bankruptcy Code. Classes 4C (Securities Litigation Claims), 4D (Subordinated Claims) and 5 (Equity Interests) will not receive or retain any property under the Plan on account of such Claims or Equity Interests

---

[1] Section 2.5 of the Plan provides that each Non-Lender Secured Claim shall be treated as a separate class for voting and distribution purposes under the Plan. As set forth on the record of the Hearing, Conestoga-Rovers in Class 2C and Richard Myszka in Class 2L rejected the Plan.

and are deemed to have rejected the Plan in accordance with section 1126(g) of the Bankruptcy Code.

AA.    The determination of the Tabulation Agent with respect to the voting on the Plan validly and correctly sets forth the tabulation of votes, as required by the Bankruptcy Code, the Bankruptcy Rules and the Approval Order.

BB.    All persons required to receive notice of the Disclosure Statement, the Plan and the Hearing have received proper, timely and adequate notice in accordance with the Approval Order and have had an opportunity to appear and be heard with respect thereto.  Such notice is due and proper notice under the Bankruptcy Code and the Bankruptcy Rules.

CC.    The Plan Proponents have solicited and tabulated votes with respect to the Plan in good faith and in a manner consistent with the Bankruptcy Code, the Bankruptcy Rules and the Approval Order.

DD.    The Plan was voted on by all Classes of Impaired Claims that were entitled to vote pursuant to the Bankruptcy Code, the Bankruptcy Rules and the Approval Order.

IV    THE PLAN SATISFIES SECTION 1129(a)(1) OF THE BANKRUPTCY CODE

EE.    The Plan satisfies all the applicable provisions of the Bankruptcy Code, and, as required by Bankruptcy Rule 3016(a), the Plan is dated and properly identifies the Debtors and the Committee as the Plan Proponents.

1    The Plan Satisfies the Requirements
of Section 1122 of the Bankruptcy Code

FF.    In accordance with section 1122(a) of the Bankruptcy Code, Article II of the Plan classifies and places in a Class each Claim against and Equity Interest in the Debtors together with other Claims against or Equity Interests in the Debtors, as applicable, that are substantially

10

similar to such Claims or Equity Interests  The Plan, therefore, satisfies section 1122(a) of the Bankruptcy Code.

### 2. The Plan Satisfies the Requirements of Section 1123(a)(1) of the Bankruptcy Code

GG    The Plan adequately and properly classifies all Claims and Equity Interests required to be classified and, accordingly, satisfies section 1123(a)(1) of the Bankruptcy Code.

### 3 The Plan Satisfies the Requirements of Section 1123(a)(2) of the Bankruptcy Code

HH.    Pursuant to Section 3 1 of the Plan, Class 1 is identified as unimpaired. Accordingly, the Plan satisfies section 1123(a)(2) of the Bankruptcy Code.

### 4 The Plan Satisfies the Requirements of Section 1123(a)(3) of the Bankruptcy Code

II.    Pursuant to Section 3.2 of the Plan, each of Classes 2, 3, 4A, 4B, 4C, 4D and 5 are identified as impaired. Section 4.1 of the Plan specifies the treatment of each impaired class of Claims and Equity Interests. Accordingly, the Plan satisfies section 1123(a)(3) of the Bankruptcy Code.

### 5. The Plan Satisfies the Requirements of Section 1123(a)(4) of the Bankruptcy Code

JJ    The Plan provides the same treatment for each Claim or Equity Interest in each class unless the holder of such a Claim or Equity Interest agrees to less favorable treatment. Accordingly, the Plan satisfies section 1123(a)(4) of the Bankruptcy Code.

### 6. The Plan Satisfies the Requirements of Section 1123(a)(5) of the Bankruptcy Code

KK.    Article VII of the Plan sets forth the means by which the Plan will be implemented, including, without limitation, (i) Section 7 1 of the Plan provides for the substantive consolidation for voting and Distribution purposes under the Plan of the Assets of

11

B - 107

and Claims against the Debtors; (ii) Section 7.2 provides for the approval of the release of claims against or guaranteed by non-Debtor Subsidiaries; (iii) Section 7.3 provides for the approval of the merger and dissolution of the IT Group corporate entities upon the transfer of the Debtors' Assets to the Litigation Trust, all as described in such section; (iv) Sections 7.4 and 7.17 provide for the approval of the settlement and compromise of all Causes of Action as of the Effective Date by and between the Agent and the Prepetition Lenders, on the one hand, and the Debtors, non-Debtor Subsidiaries and the Committee (and all of its members), on the other hand, pursuant to the Plan Settlement; (v) Section 7.5 provides for approval of the vesting of title in and distribution of the Shaw Stock upon the occurrence of the Effective Date; (vi) Sections 7.6, 7.7, 7.8, 7.9, 7.10, 7.11, 7.12 and 7.13, provide for the management of the Litigation Trust, the vesting of the Debtors' Assets in the Litigation Trust, the rights and duties of the Oversight Committee including, but not limited to, oversight of administration and implementation of the Plan and the liquidation and distribution of the Debtors' Assets in accordance with the Plan, and the pursuit of the Avoidance Actions and the Estate Causes of Action; (vii) Section 7.10 provides for the implementation of the Litigation Trust in accordance with the Plan and the Litigation Trust Agreement; (viii) Sections 7.20 through 7.30 provide the making of Distributions under the Plan; (ix) Section 7.14 provides for the cancellation of certain instruments and agreements as of the Effective Date; (x) Section 7.31 provides that any matter under the Plan which requires corporate action or involves the corporate structure of the Debtors will have been deemed to have occurred; and (xi) Section 7.32 provides that each of the officers of the Debtors and/or the Litigation Trust Trustee are authorized to take any actions as are necessary and appropriate to effectuate the Plan. Accordingly, the Plan makes adequate means for its implementation and satisfies section 1123(a)(5) of the Bankruptcy Code.

12

7. **The Plan Satisfies the Requirements of Section 1123(a)(7) of the Bankruptcy Code**

LL. The Plan Proponents disclosed at the Hearing that the Committee and the Agent have elected the Litigation Trust Alternative in accordance with Section 4.2 of the Plan. The Plan Proponents also disclosed at the Hearing that AlixPartners shall serve as the Litigation Trust Trustee, and the manner set forth in the Plan for the selection of the Litigation Trust Trustee is consistent with the interests of the Debtors' creditors and with public policy. The Litigation Trust Trustee shall serve as the Disbursing Agent under the Plan

MM. An oversight committee of three members (the "Oversight Committee"), consisting of Murray H. Hutchison, as the Committee Designee, and Cargill Financial Services Corp. and Citadel Investment Group I, L.C., as the Lender Designees, shall be appointed as of the Effective Date. The Oversight Committee shall oversee the administration and implementation of the Plan, the liquidation and distribution of the Debtors' Assets in accordance with the Plan, the performance of the Plan Administrator and the pursuit and resolution of the Avoidance Actions and Estate Causes of Action. The Litigation Trust Trustee shall pay the Committee Designee, on the one hand, and the Lender Designees, collectively, on the other hand, the Oversight Committee Compensation in the amount of $5,000 per calendar quarter commencing from and after the Effective Date, plus reimbursement of reasonable expenses. The annual compensation of the IT Environmental Liquidating Trustee, Brian Fournier, is $120,000, subject to a maximum 3.5% increase annually, plus reimbursement of reasonable expenses, which compensation and reimbursement shall be paid from the assets of the IT Environmental Liquidating Trust. Accordingly, the Plan satisfies section 1123(a)(7) of the Bankruptcy Code.

13

8.    **Pursuant to Section 1123(b)(2)
of the Bankruptcy Code,
The Rejections and Assumptions of
Executory Contracts and Unexpired Leases,
as Set Forth in the Plan, are in the
Best Interests of the Debtors' Estate**

NN.    Article XI of the Plan provides that Exhibit 2 to the Plan sets forth a list of

executory contracts and unexpired leases, together with the amount, if any, required to cure any

defaults, to be assumed under the Plan by the Debtors. Any executory contracts or unexpired

leases listed on Exhibit 2 to the Plan shall be deemed to have been assumed by the Debtors on,

and subject to the occurrence of, the Effective Date. The Plan further provides that the entry of

this Order shall constitute approval of such assumptions (subject to the occurrence of the

Effective Date) pursuant to section 365 of the Bankruptcy Code and findings by the Bankruptcy

Court that the amounts listed on Exhibit 2 are sufficient to cure any defaults that may exist, that

each assumption is in the best interest of the Debtors and their estates and that the requirements

for assumption of such executory contracts or unexpired leases under section 365 of the

Bankruptcy Code have been satisfied. Exhibit 3 to the Plan sets forth a list of executory

contracts and unexpired leases  together with the amount  if any, required to cure any defaults  to

be assumed under the Plan by the Debtors and assigned to the IT Environmental Liquidating

Trust. Any executory contracts or unexpired leases listed on Exhibit 3 to the Plan, as such may

have been amended prior to the Confirmation Hearing, shall be deemed to have been assumed by

the Debtors and assigned to the IT Environmental Liquidating Trust on and subject to the

occurrence of the Effective Date. The IT Environmental Liquidating Trust shall satisfy all of the

Debtors' obligations to cure defaults and compensate for damages with respect to the executory

contracts and unexpired leases listed on Exhibit 3 to the Plan pursuant to section 365(b) of the

14

B - 110

Bankruptcy Code, and the Debtors shall be relieved of any liability from and after the Effective Date with respect to such executory contracts and unexpired leases in accordance with section 365(k) of the Bankruptcy Code.

OO.    Any executory contracts or unexpired leases of any of the Debtors that (a) are not listed on Exhibits 2 or 3 to the Plan; (b) have not been approved by Final Order of the Bankruptcy Court prior to the Confirmation Date for assumption and assignment by any of the Debtors or rejection by any of the Debtors; and (c) are not the subject of pending motions to assume on the Confirmation Date shall be deemed to have been rejected by the Debtors as of the Effective Date.

PP.    The Plan shall constitute a motion to reject all such executory contracts and unexpired leases, and the Debtors shall have no liability thereunder except as is specifically provided in the Plan. The entry of this Order shall constitute approval of such rejections pursuant to section 365(a) of the Bankruptcy Code and a finding by the Bankruptcy Court that each such rejected executory contract or unexpired lease is burdensome and that the rejection thereof is in the best interest of the Debtors, their estates, and all parties in interest in the Chapter 11 Cases.

### 9. The Plan Satisfies Section 1123(b)(3) of the Bankruptcy Code

QQ.    Section 1123(b)(3) of the Bankruptcy Code requires that settlements accomplished under a chapter 11 plan be fair and reasonable. In this case, the Plan provides for a compromise and settlement of certain Causes of Action, including as set forth in the Plan Settlement in Section 7.4 of the Plan. The Court finds that the compromises and settlements provided in the Plan are fair and reasonable and in the best interests of the Debtors, their Estates and creditors. Accordingly, section 1123(b) of the Bankruptcy Code is satisfied.

B - 111

10.    The Transfers of Properties Under the Plan
        Are Governed by the Exemptions Provided
        in Section 1146(c) of the Bankruptcy Code

RR    Pursuant to Section 7 16 of the Plan, all Causes of Action assertable by any of the

Debtors or their Estates shall be retained by, and vested in the Litigation Trust upon the

occurrence of the Effective Date. Further, pursuant to Sections 7 10(I), 7 11 and 13.6 of the Plan.

title to all of the Assets (other than the IT Environmental Liquidating Trust Assets) shall vest in

the Litigation Trust. Pursuant to Section 7.10(II) of the Plan, title to all of the IT Environmental

Liquidating Trust Assets shall vest in the IT Environmental Liquidating Trust. Such transfers are

expressly contemplated by, and in furtherance of, the Plan

SS    In accordance with section 1146(c) of the Bankruptcy Code, the transfer or vesting

of any personal or real (tangible or intangible) property of the Debtors in accordance with the

Plan and this Order (including, without limitation, the transfer of the Causes of Action and

Assets to the Litigation Trust and any other transfers or vesting of assets described in (or

contemplated by) the Plan and/or this Order) is not subject to taxation under any state or local

law imposing a stamp, transfer or similar tax.

V    THE PLAN PROPONENTS HAVE SATISFIED SECTION 1129(a)(2) OF THE
     BANKRUPTCY CODE

TT    The Plan Proponents have complied with all of the provisions of the Bankruptcy

Code and the Bankruptcy Rules governing notice disclosure and solicitation in connection with

the Plan the Disclosure Statement. and the exhibits thereto and all other matters considered by

this Court in connection with these Chapter 11 Cases. The Debtors have timely filed with the

Clerk of the Court their Schedules Good, sufficient and timely notice of the Hearing and all

other hearings in these Chapter 11 Cases have been given to all holders of Claims and Equity

Interests and all other parties in interest to whom notice was required to have been given.

UU.    The Plan Proponents have properly solicited votes with respect to the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code and the Bankruptcy Rules as well as the Approval Order. All of the Ballots were properly solicited and tabulated in accordance with the Approval Order. Accordingly, the Plan Proponents have satisfied section 1129(a)(7) of the Bankruptcy Code.

## VI.    THE PLAN SATISFIES THE REQUIREMENTS OF SECTION 1129(a)(3) OF THE BANKRUPTCY CODE

VV.    This Court has examined the totality of the circumstances surrounding the formulation of the Plan and the Plan Settlement. The Plan and the Plan Settlement are based on extensive arms' length negotiations between and among the Debtors, the Committee, the Agent (on behalf of the Prepetition Lenders) and certain other parties in interest. The Plan and the Disclosure Statement reflect the culmination of such efforts and the substantial input of each representative group. Additionally, as evidenced by the overwhelming acceptance of the Plan by the holders of Non-Lender Secured Claims in Class 2, Lender Claims in Class 3, and the Debtors' unsecured creditors in Classes 4A and 4B of the Plan as reflected in the Logan Affidavit the Plan achieves the goals embodied in the Bankruptcy Code. Further the exculpations and injunctions provided in the Plan, have been negotiated and agreed to by the Debtors the Committee and the Agent (on behalf of the Prepetition Lenders) in good faith and are consistent with sections 105, 1129 and 1142 of the Bankruptcy Code. Thus, the Plan has been proposed in "good faith and not by any means forbidden by law" as required by section 1129(a)(3) of the Bankruptcy Code.

B - 113

VII.    **THE PLAN SATISFIES THE REQUIREMENTS OF SECTION 1129(a)(4) OF THE BANKRUPTCY CODE**

WW    All payments to be made to professional persons retained by the Plan Proponents pursuant to an order of the Court will be, as set forth in Sections 5.1(b) of the Plan, subject to review and approval by this Court upon final application under sections 330, 331 or 503(b) of the Bankruptcy Code. Accordingly, the Plan satisfies section 1129(a)(4) of the Bankruptcy Code.

VIII.   **THE PLAN SATISFIES THE REQUIREMENTS OF SECTION 1129(a)(5) OF THE BANKRUPTCY CODE**

XX.    The Plan Proponents have disclosed that AlixPartners will serve on the Effective Date of the Plan, as Litigation Trust Trustee and carry out the respective duties and obligations of the Plan Administrator and Chief Litigation Officer under the Plan. In accordance with the Plan, the Litigation Trust Trustee shall act as the Disbursing Agent with respect to Distributions under the Plan. Accordingly, the Plan satisfies section 1129(a)(5) of the Bankruptcy Code.

IX.    **SECTION 1129(a)(6) OF THE BANKRUPTCY CODE IS NOT APPLICABLE TO THE PLAN**

YY.    The Plan does not provide for any changes in rates that require regulatory approval of any governmental agency. Section 1129(a)(6) of the Bankruptcy Code is accordingly not applicable.

X.    **THE PLAN SATISFIES THE REQUIREMENTS OF SECTION 1129(a)(7) OF THE BANKRUPTCY CODE**

ZZ.    Based on the Liquidation Analysis prepared by AlixPartners, the Soote Testimony and the Monger Testimony at the Hearing, each holder of an impaired Claim in Classes 2, 3, 4A and 4B of the Plan that has not accepted the Plan will receive or retain under the Plan on account of such Claim property of a value, as of the Effective Date, that is not less than the amount that such holder would receive or retain if the Debtors were liquidated under chapter 7 of the

18

Bankruptcy Code. The holders of claims in Classes 4C (Securities Litigation Claims), 4D (Subordinated Claims), and 5 (Equity Interests), who shall not receive or retain any property under the Plan, and are therefore deemed to have rejected the Plan, would receive no distribution if the Debtors were liquidated under chapter 7 of the Bankruptcy Code. Thus, the Plan satisfies the "best interest" test under section 1129(a)(7) of the Bankruptcy Code.

XI.    SECTION 1129(a)(8) OF THE BANKRUPTCY CODE

AAA.    Although the Plan does not comply with section 1129(a)(8) of the Bankruptcy Code because Classes 4C, 4D and 5 are deemed to have rejected the Plan, the Plan can be confirmed pursuant to the "cramdown" provisions of section 1129(b) of the Bankruptcy Code.

XII.    THE PLAN SATISFIES THE REQUIREMENTS OF SECTION 1129(a)(9) OF THE BANKRUPTCY CODE

BBB    Section 5 1(d) of the Plan provides that, on the applicable Distribution Date, each holder of an Allowed Administrative Claim shall receive (i) the amount of such holder's Allowed Claim in one Cash payment, or (ii) such other treatment as may be agreed upon in writing by the Litigation Trust Trustee and such holder; provided, that an Administrative Claim representing a liability incurred in the ordinary course of business of the Debtors may be paid at the Litigation Trust Trustee's election in the ordinary course of business. Section 4 1(a) of the Plan provides that each holder of an Allowed Priority Claim shall either be paid in full in Cash on the Effective Date or all of the legal, equitable and contractual rights of such holder in respect of such Allowed Priority Claim shall be fully reinstated and retained and the holder of such Allowed Priority Claim shall be paid in full in accordance with such reinstated rights. Section 5.2 of the Plan provides for the payment in full of all Allowed Tax Claims as required by section 1129(a)(9)(C) of the Bankruptcy Code.

19

CCC.  Accordingly, the Plan satisfies the requirements of section 1129(a)(9) of the Bankruptcy Code.

## XIII.  THE PLAN SATISFIES THE REQUIREMENTS OF SECTION 1129(a)(10) OF THE BANKRUPTCY CODE

DDD.  The Plan satisfies section 1129(a)(10) of the Bankruptcy Code because each of Classes 3, 4A and 4B which are Impaired classes, have voted to accept the Plan by the requisite majority, determined without including any acceptance of the Plan by insiders.

## XIV  THE PLAN SATISFIES THE REQUIREMENTS OF SECTION 1129(a)(11) OF THE BANKRUPTCY CODE

EEE.  The Plan Proponents and their respective professional persons have analyzed the ability of the Debtors to meet their obligations under the Plan  Based on the Liquidation Analysis prepared by AlixPartners  the Soose Testimony and the Monger Testimony at the Hearing, there is a reasonable likelihood that the Debtors will be able to make all payments required pursuant to the Plan  Therefore, the Plan satisfies the feasibility requirement of section 1129(a)(11) of the Bankruptcy Code.

## XV  THE PLAN SATISFIES THE REQUIREMENTS OF SECTION 1129(a)(12) OF THE BANKRUPTCY CODE

FFF  Section 13 1 of the Plan provides that the Debtors shall pay on the Effective Date (or as soon as practicable thereafter) all Statutory Fees accrued through and including the Effective Date, and all such Statutory Fees accrued after the Effective Date shall be paid by the Litigation Trust in the ordinary course of business.  Accordingly, the Plan satisfies section 1129(a)(12) of the Bankruptcy Code.

B - 116

XVI.   **THE PLAN SATISFIES THE REQUIREMENTS OF SECTION 1129(a)(13) OF THE BANKRUPTCY CODE**

GGG.   The Debtors do not provide any "retiree benefits." Accordingly, the Plan satisfies section 1129(a)(13) of the Bankruptcy Code.

XVII.   **SECTION 1129(b) OF THE BANKRUPTCY CODE IS SATISFIED**

HHH   Class 2C (Conestoga-Rovers) and Class 2L (Richard Myszka) rejected the Plan, and Classes 4C (Securities Litigation Claims), 4D (Subordinated Claims) and 5 (Equity Interests) are deemed to have rejected the Plan. The Court finds that the Plan does not "discriminate unfairly" and that the treatment accorded such Claims under the Plan is "fair and equitable" as to each impaired Class that did not accept the Plan. The Equity Interests in Class 5 comprise all Equity Interests in IT Group. There are no classes of similarly situated Equity Interests that are receiving a Distribution under the Plan. No class of Claims is receiving more than 100% of the Allowed amount of their Claims. Moreover, because no class junior to Class 5 exists, no holder of a Claim or Equity Interest that is junior to such non-accepting class will receive or retain any property under the Plan. Therefore, the Plan satisfies the "absolute priority rule" of section 1129(b) of the Bankruptcy Code.

III.   Based on the foregoing, the Plan satisfies the "cram down" requirements of section 1129(b) of the Bankruptcy Code as to Classes 2C, 2L, 4C, 4D and 5

II.   **CONCLUSIONS OF LAW:**

1   The Plan is hereby confirmed.

2.   The record of the Hearing is hereby closed

3.   The Effective Date of the Plan shall occur on the date selected by the Plan Proponents (with the consent of the Agent) which is no later than thirty (30) days after all of the

21

conditions set forth in Section 9.2 of the Plan shall have been satisfied or, if applicable, shall have been waived in accordance with Article IX of the Plan.

4.    The Confirmation Date shall be the record date for purposes of determining the holders of Allowed Claims that are entitled to Distributions that are required to be made under the Plan.

5    Upon the occurrence of the Effective Date, the Plan shall be binding upon and inure to the benefit of the Debtors and their respective successors and assigns, the holders of Claims and Equity Interests and their respective successors and assigns (whether or not they voted to accept the Plan, whether or not they are impaired under the Plan, and whether or not any such holder has filed  or is deemed to have filed a proof of Claim or proof of Equity Interest), and any other Person giving, acquiring, or receiving property under the Plan.  The rights afforded in the Plan and the treatment of all Claims and Equity Interests therein shall be in exchange for and in complete satisfaction of all Claims and Equity Interests of any nature whatsoever, known or unknown, including any interest accrued on or expenses incurred in connection with such Claims from and after the Petition Date, against the Debtors, their Affiliates or their respective estates, Assets, properties or interests in property.  Except as otherwise provided in the Plan, (i) on the Effective Date all such Claims against, and Equity Interests in, the Debtors shall be deemed satisfied in full, by the consideration, if any, provided for in the Plan, and (ii) all Persons and entities shall be precluded from asserting against the Debtors, the Litigation Trust, the Litigation Trust Trustee, the IT Environmental Liquidating Trust, the IT Environmental Liquidating Trustee, or their respective successors, assets or properties any such Claims or Equity Interests or any other or further Claims or Equity Interests arising on or before the Effective Date.

22

6.    The Litigation Trust shall not be responsible for any obligations of the Debtors except those obligations expressly set forth in the Plan, the Plan Documents or this Order. Except as otherwise expressly provided in the Plan, all Persons or entities who have held, hold, or may hold Claims or Equity Interests shall be precluded and forever barred from asserting against the Debtors, the Litigation Trust, the Litigation Trust Trustee, the IT Environmental Liquidating Trust, the IT Environmental Liquidating Trustee or their respective successors or assigns, or their assets, properties, or interests in property any such Claims or Equity Interests or any other or further Claims or Equity Interests arising on or before the Effective Date.

7.    This Order shall be binding upon and govern the acts of all Persons and entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Assets.

8.    All liens, Claims, interests and encumbrances of record shall, upon the Effective Date, be removed and stricken as against the Assets, and all the entities described in the immediately preceding paragraph of this Order are authorized and specifically directed to (a) strike all recorded liens, Claims, interests or encumbrances against the Assets from their records, official and otherwise, and (b) in accordance with section 1146(c) of the Bankruptcy Code, accept for filing or recording all instruments made or delivered and all deeds or other documents relating to the conveyance of any of the Assets without the payment of any recording tax, stamp tax, transfer tax, or any similar tax (other than income taxes) or any transfer or

recording fee or similar costs incurred or assessed by any federal, state. local, or foreign taxing authority (including interest and penalties  if any) and without the presentation of any affidavits, instruments, or returns otherwise required for recording, other than this Order. and the Court retains jurisdiction to enforce the foregoing direction, by contempt or otherwise.

9.    In accordance with section 1141(b) of the Bankruptcy Code and Sections 7.10. 7.11 and 13.6 of the Plan, the Assets (other than the IT Environmental Liquidating Trust Assets) shall vest in the Litigation Trust on the Effective Date free and clear of all Claims. Equity Interests. liens, security interests. encumbrances and other interests.

10.    In accordance with section 1142 of the Bankruptcy Code. upon entry of this Order (and subject to the occurrence of the Effective Date). the Debtors  acting by and through their officers, employees and agents. shall be authorized. without any requirement of further action by the stockholders or directors of the Debtors, to take any and all actions necessary or appropriate to implement the Plan.

11.    The provisions in Section 7.20 through 7.32 and Article VIII of the Plan governing Distributions, reserves, and the procedures for resolving and treating Contested Claims under the Plan are hereby approved and found to be fair and reasonable.

12.    Except as otherwise expressly provided in the Plan. all Causes of Action assertable by any of the Debtors or their Estates, successors or assigns, including but not limited to (i) the Causes of Action listed on Exhibit 1 to the Plan, (ii) Avoidance Actions and Estate Causes of Action and (iii) those Causes of Action hereinafter arising or discovered, regardless of when the facts giving rise to such Causes of Action arose or existed, shall be retained by. and vested in the Litigation Trust. As of the Effective Date  the Litigation Trust Trustee in his capacity as Chief Litigation Officer and the Plan Administrator  respectively. shall be appointed

24

to prosecute the Avoidance Actions and the Estate Causes of Action, all as contemplated by the Plan.

13.    Effective as of and subject to the occurrence of the Effective Date, pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code, entry of this Order shall constitute approval of the assumption or rejection, as provided in Article XI of the Plan and as set forth in Paragraphs NN OO and PP hereof, of all executory contracts and unexpired leases of the Debtors not previously assumed or rejected, except for executory contracts and unexpired leases that are the subject of a motion to reject, assume or assign pending before the Court on the Confirmation Date.

14    Claims created by the rejection of executory contracts or unexpired leases or the expiration or termination of any executory contract or unexpired lease prior to the Confirmation Date must be filed with this Court and served on the Debtors and the Litigation Trust Trustee, (a) in the case of an executory contract or unexpired lease rejected by the Debtors prior to the Confirmation Date, in accordance with the later of the Bar Date Order or thirty (30) days after the date of the order of the Bankruptcy Court authorizing and approving such rejection, or (b) in the case of an executory contract or unexpired lease that (i) was terminated or expired by its terms prior to the Confirmation Date, or (ii) is deemed rejected pursuant to Section 11.2 of the Plan, no later than thirty (30) days after the Confirmation Date, or (c) in the case of an executory contract or unexpired lease that is rejected by the Debtors after the Confirmation Date, within thirty (30) days after the date of the order of the Bankruptcy Court authorizing and approving such rejection. Any Claims for which a proof of claim is not filed and served within such time will be forever barred from assertion and shall not be enforceable against the Debtors, Reorganized IT Group, the Litigation Trust, or their respective estates, assets, properties, or interests in property. Unless

25

otherwise ordered by this Court, all such Claims that are timely filed as provided herein shall be treated as General Unsecured Claims under the Plan subject to objection as provided in the Plan.

15.     In accordance with section 105 of the Bankruptcy Code, the provisions of the Plan governing release, injunction, exculpation and indemnification obligations are hereby approved in all respects.

16.     None of the Plan Proponents, the Agent, the Prepetition Lenders, the Disbursing Agent or any of their respective members, officers, directors, employees, attorneys, advisors, professionals, consultants or agents shall have or incur any liability to any Person for any act or omission in connection with, related to, or arising out of, the Chapter 11 Cases, including, without limitation, the commencement of the Chapter 11 Cases, the negotiation of the Plan, the pursuit of confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for willful misconduct or gross negligence as determined by Final Order of the Bankruptcy Court, and in all respects shall be entitled to rely upon the advice of counsel and all information provided by other exculpated persons herein without any duty to investigate the veracity or accuracy of such information with respect to their duties and responsibilities under, or in connection with, the Plan. Notwithstanding the foregoing and Section 13.5 of the Plan, such exculpation provisions shall not apply to any action before the Bankruptcy Court by Shaw against Committee counsel pursuant to Bankruptcy Rule 9011.

17      Except as otherwise expressly provided in the Plan, all Persons or entities who have held, hold, or may hold Claims or Equity Interests are permanently enjoined, from and after the Effective Date, from (u) commencing or continuing in any manner any action or other proceeding of any kind on any such Claim or Equity Interest against any of the Debtors, their

26

Estates. Reorganized IT Group, the IT Environmental Liquidating Trust the IT Environmental Liquidating Trustee. the Litigation Trust the Litigation Trust Trustee, or the Assets, or against the property or interests in property of any of the Debtors. their Estates, Reorganized IT Group, the IT Environmental Liquidating Trust or the Litigation Trust, (b) the enforcement, attachment. collection or recovery by any manner or means of any Claims and/or Equity Interests, or any judgment award, decree or order with respect to any Claims and/or Equity Interests, against any of the Debtors, their Estates. Reorganized IT Group, the IT Environmental Liquidating Trust, the IT Environmental Liquidating Trustee, the Litigation Trust the Litigation Trust Trustee. or the Assets, or against the property or interests in property of any of the Debtors. their Estates. Reorganized IT Group, the IT Environmental Liquidating Trust or the Litigation Trust, (c) creating, perfecting or enforcing any encumbrance of any kind against any of the Debtors, their Estates, Reorganized IT Group, the IT Environmental Liquidating Trust the IT Environmental Liquidating Trustee. the Litigation Trust, the Litigation Trust Trustee, or the Assets, or against the property or interests in property of any of the Debtors, their Estates, Reorganized IT Group, the IT Environmental Liquidating Trust or the Litigation Trust, and (d) asserting any right of set-off, or subrogation of any kind against any obligation due from any Debtor or against the property or interests in property of any Debtor with respect to any such Claims or Equity Interests; provided however, that the foregoing shall not affect the rights of a party that were obtained pursuant to a Final Order of the Bankruptcy Court granting limited relief from the automatic stay under section 362(d) of the Bankruptcy Code. Nothing in the preceding sentence or Section 13.19 of the Plan shall enjoin the exercise of any police or regulatory power by a United States environmental governmental unit. a California state environmental governmental unit or a New

27

Jersey state environmental governmental unit with respect to any environmental Claim that arises after the Effective Date.

18.    Nothing in the Plan or Confirmation Order shall impair the valid setoff rights, if any, of a holder of an Allowed Non-Lender Secured Claim. Nothing in the Plan or the Confirmation Order shall extinguish or enjoin any valid rights of setoff, and the rights of the Debtors and parties asserting setoff rights are preserved.

19.    Notwithstanding any language to the contrary contained in the Disclosure Statement, Plan and/or this Order, no provision thereof shall release any non-debtor, including any current or former officer and/or director of the Debtors, from any liability to the SEC in connection with any civil action brought by such governmental unit against such Person(s).

20.    Notwithstanding paragraph 17 of this Order and Section 13.19 of the Plan, the Claims of PPG shall be determined in the action styled Envirocraft Corporation v. PPG Industries, Inc. et al., Case No. 03-CV-455-JJF, pending before the United States District Court for the District of Delaware in accordance with the Court's prior order in these Chapter 11 Cases lifting the automatic stay of section 362 of the Bankruptcy Code with respect to such Claims. When such Claims are finally liquidated, they shall be treated under the Plan.

21.    The Debtors shall either (a) have paid, prior to the Confirmation Date, (b) pay on the Effective Date, or (c) segregate a sufficient amount upon entry of this Order to pay when determined and due, all 2002 federal income taxes, if any, as shown on IT Group's consolidated 2002 federal income tax returns.

22.    Allowed Tax Claims, if any, of the Texas Comptroller shall be paid upon the later of the first Distribution Date or entry of an order of the Bankruptcy Court allowing such Tax Claims.

28

23.    Notwithstanding anything to the contrary contained herein or in the Plan, the Debtors' claims against Conestoga-Rovers shall not be sold or otherwise transferred free and clear of Conestoga-Rover's Claims against the Debtors.

24    Notwithstanding anything to the contrary contained in the Plan and in accordance with section 510(b) of the Bankruptcy Code, holders of Allowed Securities Litigation Claims in respect of Equity Interests shall neither receive nor retain any property under the Plan on account of such Claims unless all other Allowed Claims (including Allowed Securities Litigation Claims in respect of debt securities of the Debtors) have been paid in full

25.    The Litigation Trust Trustee shall treat the Contested Unsecured Claims Reserve and not the holder of a Unsecured Litigation Claim as a grantor or beneficiary of the Litigation Trust until such date as such holder's Litigation Unsecured Claim becomes an Allowed Claim.

26    Pursuant to section 1146(c) of the Bankruptcy Code and the Plan, the issuance, transfer, or exchange of notes or equity securities under the Plan, the creation of any mortgage, deed of trust, or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, including, without express or implied limitation, asset sales that have occurred during these Chapter 11 Cases, shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax. All filing and recording officers are hereby directed to accept for filing or recording all instruments of transfer to be filed and/or recorded, without the payment of any such taxes.

27    All entities holding Claims against or Equity Interests in the Debtors that are treated under the Plan are hereby directed to execute, deliver, file or record any document, and to take any action necessary to implement, consummate and otherwise effect the Plan in accordance

29

with its terms, and all such entities shall be bound by the terms and provisions of all documents, including without limitation the Plan Documents, executed and delivered by them in connection with the Plan.

28.    In accordance with section 1142 of the Bankruptcy Code, the Litigation Trust Trustee, the Disbursing Agent and any other entity designated pursuant to the Plan are hereby authorized and empowered to issue, execute, deliver, file and record any document, and to take any other action necessary or appropriate to implement, consummate and otherwise effectuate the Plan in accordance with its terms, and all such entities shall be bound by the terms and provisions of all documents, including without limitation, the Plan Documents issued, executed and delivered by them as necessary or appropriate to implement or effectuate the Plan.

29.    The Plan Proponents (with the consent of the Agent) are hereby authorized to amend or modify the Plan in accordance with section 1127 of the Bankruptcy Code and Section 13.15 of the Plan.

30.    Any person or entity seeking an allowance of final compensation or reimbursement of expenses for professional services rendered to the Debtors or the Committee or in relation to these Chapter 11 Cases pursuant to sections 327, 328, 330, 331, 503(b) and 1103 of the Bankruptcy Code shall file and serve an application for allowance of final compensation for services rendered and reimbursement of related expenses incurred (each, an "Application") not later than sixty (60) days after the Effective Date (or such later date, if any, as may be established by further order of the Court). All Applications shall cover all services rendered through the Effective Date.

31.    Each Application shall comply with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules and the Local Bankruptcy Rules, and shall set forth, among other

things in reasonable detail: (i) the name and address of the applicant; (ii) the nature of the professional or other services rendered and related expenses for which allowance is requested; (iii) the amount of compensation and reimbursement of expenses requested; (iv) whether any payments have been received on account and, if so, the amount or amounts thereof; (v) the amount of any success fee or premium requested and the basis therefor; and (vi) the amounts of compensation and reimbursement of expenses previously allowed by the Court, if any.

32.     From and after the Effective Date, the Litigation Trust and the Disbursing Agent may retain and pay professionals in the ordinary course of business without the need for filing retention applications and fee applications. The Court retains jurisdiction to adjudicate any dispute concerning the payment of any such fees or expenses.

33.     All professional fees and expenses incurred by the Litigation Trust and the Disbursing Agent from and after the Effective Date in connection with the consummation and implementation of the Plan shall be paid by the Litigation Trust and Disbursing Agent in the ordinary course of business without further order of the Bankruptcy Court. The Court shall retain jurisdiction over all such parties in the event of any dispute over the amount of any such fees and expenses.

34.     All fees payable pursuant to section 1930 of title 28, United States Code, as determined by the Court, shall be paid on the Effective Date or as soon as practicable thereafter. After the Effective Date and until these Chapter 11 Cases are closed, the Disbursing Agent shall (i) submit to the Office of the United States Trustee quarterly reports as may be required, including with respect to fees payable pursuant to section 1930 of title 28, United States Code, and (ii) pay any and all such fees as they become due.

31

35.    All Objections to confirmation of the Plan either have been withdrawn prior to the entry of this Order, have been adequately addressed by the provisions hereof or have been overruled. All withdrawn objections are hereby deemed withdrawn with prejudice.

36.    Within fifteen (15) days after the entry date of this Order, or within such further time as this Court may allow, the Plan Proponents are hereby directed to mail to all known holders of Claims and Equity Interests, other parties who have requested notice in these cases and all professionals retained pursuant to an order of this Court, a notice of the entry of this Order, which notice shall set forth any deadlines established by this Order or the Plan.

37.    Based upon the record of the Hearing, substantive consolidation of the Debtors to the extent provided in Section 7.1 of the Plan is hereby approved.

38.    The Plan Settlement is hereby approved and the parties are authorized to take all actions that are necessary or appropriate to implement and give effect to the Plan Settlement, subject to the occurrence of the Effective Date.

39.    In the event of any inconsistency between the Plan, or any agreement, instrument or document implementing the Plan, and this Order, the provisions of this Order shall govern.

40.    The provisions of this Order are integrated with each other and are non-severable and mutually dependent.

41.    The failure to specifically include any particular provision of the Plan in this Order shall not in any way diminish or impair the efficacy or enforceability of such provision, it being understood that it is the intent of this Court that the Plan be confirmed and approved in its entirety.

42.    Each finding of fact set forth herein, to the extent it is or may be deemed to be a conclusion of law, shall also constitute a conclusion of law. Each conclusion of law set forth

32

herein, to the extent it is or may be deemed to be a finding of fact, shall also constitute a finding

of fact.

Dated: April ___5___, 2004
       Wilmington, Delaware


Honorable Mary F. Walrath
Chief United States Bankruptcy Judge

33

L 1987, c. 156

REMARKS OF GOVERNOR THOMAS H. KEAN
PUBLIC BILL SIGNING: WETLANDS BILL SIGNING
TRENTON, NEW JERSEY
WEDNESDAY, JULY 1, 1987
Assembly Bills 2392/2490

I AM EXTREMELY HAPPY TO BE HERE TODAY.   ON MONDAY THE ASSEMBLY AND THE SENATE. IN THE WORDS OF TWO FAMOUS AMERICAN ACTORS. "MADE MY DAY." HECK. THEY MADE MY ENTIRE SUMMER.

THIS IS ONE OF THOSE SPECIAL OCCASIONS WHEN WE CAN ACTUALLY REACH OUT AND TOUCH THE FUTURE.   BY SIGNING THIS LEGISLATION WE ARE NOT ONLY PROTECTING OUR FISH, FOWL, SWAMPS AND WOODLANDS TODAY.   WE ARE MAKING LIFE A LITTLE BETTER FOR THE UNBORN GENERATIONS WHO WILL CALL NEW JERSEY HOME TOMORROW

THAT IS WHY THIS BILL IS ONE OF THE MOST IMPORTANT PIECES OF ENVIRONMENTAL LEGISLATION EVER ENACTED IN THIS STATE.

THIS LEGISLATION WILL PROTECT FROM HAPHAZARD DEVELOPMENT 300,000 ACRES OF FRESHWATER WETLANDS, WHICH COVER ABOUT SIX PERCENT OF THE STATE'S LAND MASS.   IT WILL HELP KEEP OUR WATER CLEAN, PROTECT AGAINST FLOODING. PRESERVE THE HABITAT FOR ENDANGERED SPECIES AND PROVIDE A SAFE HOME FOR MANY FISH AND BIRDS.

THIS IS A RESPONSIBLE BILL, ONE THAT ACHIEVES THE DELICATE BALANCE BETWEEN ECONOMIC GROWTH AND ENVIRONMENTAL PROTECTION. I HAVE ALWAYS BELIEVED THERE SHOULD BE ROOM IN THIS STATE FOR BOTH THE BULLDOZER AND THE BLUE HERON.

LET ME BRIEFLY MENTION THREE HIGHLIGHTS

UNDER THE CURRENT 404 PROGRAM, THE ARMY CORPS OF ENGINEERS REGULATES ONLY FILLING IN FRESHWATER WETLANDS.   THE NEW PROGRAM, WHICH WILL BE ADMINISTERED BY THE STATE DEPARTMENT OF ENVIRONMENTAL PROTECTION, WILL COVER EVERY ACTIVITY IN THE WETLANDS. FROM MOVING SAND TO DREDGING SOIL.

THE NEW LAW ESTABLISHES THREE CATEGORIES OF WETLANDS: THOSE OF EXCEPTIONAL RESOURCE VALUE, INTERMEDIATE RESOURCE VALUE, AND ORDINARY RESOURCE VALUE.   IT PROTECTS THE IMPORTANT BUFFER ZONES SURROUNDING EACH CATEGORY OF WETLANDS ACCORDING TO THEIR DEGREE OF ENVIRONMENTAL SENSITIVITY.

FINALLY, THIS BILL RETAINS LOCAL CONTROL OVER THE WETLANDS UNTIL THE EFFECTIVE DATE OF THE BILL A YEAR FROM NOW

AS YOU KNOW, THIS BILL WAS THE RESULT OF ARDUOUS NEGOTIATION AND COMPROMISE.   IT TOOK ALMOST FOUR YEARS TO WIND ITS WAY THROUGH THE LABYRINTH OF THE LEGISLATIVE PROCESS.   I WANT TO THANK A FEW OF THE LEGISLATORS WHOSE WORK MADE IT POSSIBLE.

-2-

THERE IS NO MORE LOYAL FRIEND OF THE ENVIRONMENT IN NEW JERSEY THAN MAUREEN OGDEN. SHE WAS THE LONE VOICE FOR WETLANDS PROTECTION BACK WHEN A GREAT NUMBER OF PEOPLE THOUGHT THAT SWAMPS WERE USELESS MUCK BETTER PAVED THAN PROTECTED. THIS LAW WILL, I BELIEVE, BE HER MOST ENDURING LEGACY TO THE PEOPLE OF NEW JERSEY.

I WANT TO THANK SENATOR DAN DALTON. OVER THE PAST FEW WEEKS, DAN HAS DONE AS MUCH AS ANY LEGISLATOR TO SIT DOWN WITH DEVELOPERS AND ENVIRONMENTALISTS AND FORGE A RESPONSIBLE BILL. HE WORKED QUICKLY AND HE WORKED RESPONSIBLY. QUITE SIMPLY, THIS BILL WOULD NOT HAVE REACHED MY DESK WITHOUT HIS ASSISTANCE.

I ALSO WANT TO NOTE THE CONTRIBUTION OF SENATOR JOHN LYNCH AND ASSEMBLYMAN JACK PENN. THEY KEPT THE WETLANDS ISSUE AT THE TOP OF THEIR LEGISLATIVE AGENDA THROUGH SOME VERY TRYING CIRCUMSTANCES.

AND I WOULD BE REMISS TO NOT APPLAUD THE HARD WORK OF MY ASSISTANT COUNSEL, JANE KELLY. THE LEGAL ISSUES SURROUNDING WETLANDS PROTECTION CAN BE AS MURKY AS THE SWAMPS AND BOGS THEMSELVES. JANE HAS BEEN ABLE TO INTERPRET THESE ISSUES. HER COUNSEL HAS BEEN INVALUABLE. JUST AS IT WAS ON OUR LANDMARK RECYCLING LEGISLATION.

AFTER I PUT MY PEN TO THIS LEGISLATION, I WILL ALSO SIGN AN EXECUTIVE ORDER RESCINDING MY EXECUTIVE ORDER OF JUNE 8, WHICH FROZE ALL DEVELOPMENT IN THE WETLANDS. THAT ORDER LASTED ABOUT AS LONG AS THE SPINKS-COONEY FIGHT. I AM VERY HAPPY ABOUT ITS BRIEF DURATION. I WANT TO PUBLICLY THANK SENATE PRESIDENT JOHN RUSSO AND SPEAKER CHUCK HARDWICK FOR GIVING THIS IMPORTANT LEGISLATION THE SPEEDY APPROVAL IT DESERVED. SO THAT THE MORATORIUM CAN NOW BE LIFTED.

WORKING HERE IN TRENTON, IT IS SOMETIMES EASY TO LOSE SIGHT OF THE PURPOSE OF THIS GREAT ENTERPRISE OF GOVERNMENT.

BOGGED DOWN IN HORSE TRADING OR THE COMPLEX MINUTIA OF LEGISLATION, WE MAY LOSE SIGHT OF THE FACT THAT THE ACTIONS WE TAKE TODAY WILL HAVE IMPORT FOR OUR CHILDREN AND OUR CHILDREN'S CHILDREN.

THIS LEGISLATION WILL HELP ENSURE THAT FUTURE GENERATIONS CAN ENJOY THE SAME CLEAN WATER, THE SAME NATURAL BEAUTY THAT WAS PASSED ON TO US BY OUR PARENTS.

SOLOMON SAID IT BEST IN ECCLESIASTES WHEN HE WROTE, "ONE GENERATION PASSETH AWAY AND ANOTHER GENERATION COMETH: BUT THE EARTH ABIDETH FOREVER."

OUR GENERATION WILL PASS FROM THIS EARTH. BUT BY SIGNING THIS LEGISLATION TODAY, WE ARE MAKING SURE THAT THE PRECIOUS WETLANDS WILL ABIDETH FOREVER.

THAT IS AN AWESOME GIFT TO GIVE

I WILL NOW SIGN THE BILL.

IN THE MATTER OF:          ADMINISTRATIVE ORDER
LandBank                       AND
                           NOTICE OF CIVIL ADMINISTRATIVE
                           PENALTY ASSESSMENT

This Administrative Order and Notice of Civil Administrative Penalty Assessment is issued pursuant to the authority vested in the Commissioner of the New Jersey Department of Environmental Protection (hereinafter "NJDEP" or "the Department") by N.J.S.A. 13:1D-1 et seq., the Freshwater Wetlands Protection Act (hereinafter "the Act"), N.J.S.A. 13:9B-1 et seq. and the Waterfront Development Act, N.J.S.A. 12:5-3 et seq. and duly delegated to the Assistant Commissioner of Compliance and Enforcement or their assignee pursuant to N.J.S.A. 13:1B-4

### FINDINGS

1.     By Resolution, on July 11, 1995, the Freshwater Wetlands Mitigation Council (Council) conditionally approved a proposal by US Wetland Services to construct a wetland mitigation bank on a 200 acre tract known as Block 328, Lots 1 and 1C in West Deptford Township, Gloucester County (the site). It was a condition of that Resolution that the mitigation banker()provide financial assurance in accordance with the Freshwater Wetlands Protection Act Rules (N.J.A.C. 7:7A-15) covering the cost of construction of the bank, known as the Woodbury Creek Wetland Mitigation Bank, and the cost of maintenance of the Bank. It was also a condition of the Resolution that the mitigation banker monitor the wetland mitigation project for a nine-year period. US Wetland Services subsequently became manager of the mitigation bank on behalf of LandBank. LandBank has failed to maintain their financial assurance and has failed to continue to monitor the project.

2.     Letter of Interpretation (LOI) #0820-94-0013.1 issued by the Department on November 15, 1994, determined that the site contained 128.73 acres of degraded wetlands and 71.43 acres of uplands. At that time, the US Wetland Services proposal was to enhance 128.73 acres of degraded wetlands, create 38.14 acres of freshwater wetlands and establish 18.59 acres of upland buffers. Based upon the proposed work on the bank site, the Council determined in 1995 that 99.64 mitigation credits could potentially be sold by LandBank provided all specified conditions were met.

3.     On May 8, 1996 the Department issued a Freshwater Wetlands Individual Permit, Waterfront Development Permit and Water Quality Certificate (permit #0820-94-0012.4 and .5) to construct the wetland mitigation project on the site. It was a condition of these permits that the permittee shall comply with all terms and conditions as stipulated in the Resolution of the New Jersey Freshwater Wetlands Mitigation Council dated July 11, 1995. LandBank failed to

adhere to the conditions of that Resolution by failing to maintain the financial assurance, draining existing wetlands and failing to continue to monitor the site.

4.    The Department's Land Use Regulation Program, with the mitigation banker's consultant, performed a detailed field review of the site and the LOI was re-issued with revisions on September 4, 1998. This LOI documented the existence of 34.917 acres of wetlands on the bank site, not 128.73 acres as the original LOI indicated. LandBank applied to the Council to amend the approving Resolution of July 11, 1995 to reduce the wetland enhancement area and increase the wetland creation area. By Resolution of November 12, 1998, the Council conditionally approved proposed amendments to its approval of July 11, 1995, which provided that the banker could proceed with a revised grading plan at its own risk. The grading of the site was completed by the fall of 2000.

5.    On October 19, 2000 the Department sent a letter to US Wetland Services, manager of the Woodbury Creek Wetland Mitigation Bank, stating that the Banker's own consultant, the Louis Berger Group, submitted a report indicating that a portion of the 34.917 acres of existing wetlands on the site no longer appear to exhibit wetland hydrology. The Department further stated that the lost wetland acreage must either be restored or created in another location. The Department concluded the letter with a recommendation that the Banker perform a detailed wetland delineation of the site using the 1989 Federal Manual for Identifying and Delineating Jurisdictional Wetlands.

6.    In response to the Department's October 19, 2000 letter the Banker did have their consultant perform a detailed wetland delineation in the Spring of 2001. The Department participated in the wetland delineation and confirmed the consultant's field findings. On July 12, 2001 the Louis Berger Group submitted the results of the detailed wetland delineation report which indicated that the construction activities resulted in the creation of some wetlands on the site, but also indicated that 18.924 acres of existing wetlands, verified by the September 4, 1998 LOI, had been drained and no longer met the definition of a wetland. The report indicated that LandBank had created 12.71 acres of wetlands, established 18.59 acres of upland buffers and enhanced 15.99 acres of wetlands. Based on the credit ratio approved by the Council, this completed work would be equivalent to 36.64 mitigation credits. The banker sold a total of 32.75 mitigation credits from the bank. If the mitigation monitoring is successfully completed, the amount of credits sold can be offset by the 36.64 mitigation credits established on the site, however in an effort to build wetlands on the site, LandBank drained 18.924 acres of existing wetlands which is in violation of the Freshwater Wetlands Protection Act, N.J.S.A. 13:9B-1 et seq.

7.    On October 9, 2001 the Department met with representatives from LandBank and the Louis Berger Group to discuss the findings of the July 12, 2001 report. It was concluded that the Banker needed to provide a remedy for the loss of 18.924 acres of wetland on the site and that the remaining areas of the bank needed additional follow-up monitoring and maintenance.

8.    On November 30, 2001, US Wetland Services, on behalf of LandBank, submitted a supplemental monitoring report of the Woodbury Creek Wetland Mitigation Bank which

discussed the status of the bank activities. It was stated in that supplemental report that the banker continues to investigate the overall issues associated with this bank as expressed at the October meeting and will be providing additional information in the near future.

9.  On February 25, 2002 the Department sent a letter to LandBank requesting that they submit within forty-five (45) days a remedy for the loss of 18.924 acres of wetlands on the bank site as discussed at the October 9, 2001 meeting and noted in their November 30, 2001 letter. LandBank has failed to provide a remedy.

10.  Based on the facts set forth in these FINDINGS, the Department has determined that LandBank, has violated the Freshwater Wetlands Protection Act, N.J.S.A. 13:9B-4 et seq., and the regulations promulgated pursuant thereto, N.J.A.C. 7:7A-1 et seq., specifically N.J.A.C. 7:7A-2.1 and the Waterfront Development Law, N.J.S.A. 12:5-3 et seq..

### ORDER

### NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

11.   LandBank shall submit to this office, within 30 calendar days of receipt of this Administrative Order and Notice of Civil Administrative Penalty Assessment, a mitigation proposal prepared in accordance with N.J.A.C. 7:7A-15.1 et seq. for the off-site mitigation of the 18.924 acres of drained wetlands on the site. The mitigation shall be at a ratio of 3 acres created for each acre disturbed. The proposal shall include a stabilization narrative for the disturbed area in accordance with procedures outlined in "Standards for Soil Erosion and Sediment Control in New Jersey". In addition, the proposal shall include a time schedule for the implementation and completion of the above and a guarantee of 85 percent areal coverage of vegetation over a three year growing period. This action will require prior approval from this office.

12.  Should the Department determine that any part of the restoration proposal to be submitted by LandBank is inadequate or incomplete, then the Department shall provide the submitter with written comments on the proposal. Within 30 calendar days of the Department's comments on the proposal, LandBank shall conform the proposal with the Department's comments and submit the modified plan to the Department. The determination of whether or not the modified proposal, as resubmitted, conforms to the Department's comments shall be made solely by the Department.

13.   Within 30 calendar days after receipt of the Department's final approval of the mitigation proposal, LandBank shall commence the implementation of the final approved mitigation plan in accordance with the approved schedule and must complete the project by the established date.

14.   Within 30 calendar days of receipt of the Administrative Order and Notice of Civil Administrative Penalty Assessment, LandBank shall submit to this office, proof that the required financial assurance for the maintenance and monitoring of the Woodbury Creek Mitigation Bank is in place.

09/21/2002 WED 15:19  FAX 4128583857 EPAW.H & J LEGAL FCH                                    @006/010

## NOTICE OF CIVIL ADMINISTRATIVE PENALTY ASSESSMENT

15   Pursuant to N.J.S.A. 13:9B-21a-m and N.J.A.C. 7:7A-16.8 and based upon the above FINDINGS, NJDEP has determined that a civil administrative penalty should be assessed against LandBank in the amount of $ 9000.

16.   Payment of the penalty is due when a final order is issued by the Commissioner subsequent to a hearing, if any, or when this Administrative Order and Notice of Civil Administrative Penalty Assessment becomes a final order (see following paragraph). Payment shall be made by check payable to "Treasurer, State of New Jersey", along with the white copy of the enclosed Enforcement Invoice Form (DEP-062A), to the following address:

Department of Treasury
Division of Revenue
P.O. Box 417
Trenton, NJ 08625-0417

17.   If no request for a hearing is received within 20 calendar days from receipt of this Notice of Civil Administrative Penalty Assessment, it shall become a final order upon the twenty-first calendar day following its receipt  and the penalty shall be due and payable.

## NOTICE OF RIGHT TO A HEARING

18.   Pursuant to N.J.S.A. 52:14D-1 et. seq. and N.J.S.A. 13:9B-21d LandBank is entitled to an administrative hearing.  Any hearing request shall be delivered to the addresses referenced in the attached form within twenty (20) calendar days from receipt of this Administrative Order and Notice of Civil Administrative Penalty Assessment. The information required in the attached form must accompany any hearing request made to the Department.

## GENERAL PROVISIONS

19.   This Administrative Order and Notice of Civil Administrative Penalty Assessment is binding on LandBank, its principals, directors, officers, agents, successors, assigns, any trustee in bankruptcy or other trustee, and any receiver appointed pursuant to a proceeding in law or equity.

20.   LandBank shall submit all documents required by this Administrative Order and Notice of Civil Administrative Penalty Assessment by certified mail, return receipt requested, or by land delivery to the Bureau of Coastal and Land Use Compliance and Enforcement at 1510 Hooper Avenue. Toms River, New Jersey 08753.

21.   Notice is given that violations of any statutes, rules or permits other than those herein cited, may be cause for additional enforcement actions, either administrative or judicial, being instituted without further notice.  By issuing this Administrative Order and Notice of Civil

08/21/2002 WED 26:30  FAX 4123333987 SHAW D & 1 LEGAL FOU                                                       Ø007/010

Administrative Penalty Assessment. the Department does not waive its rights to initiate additional enforcement actions.

22.    No obligations imposed by this Administrative Order and Notice of Civil Administrative Penalty Assessment are intended to constitute a debt, damage claim, penalty or other civil action which should be limited or discharged in a bankruptcy proceeding. All obligations imposed by this Administrative Order and Notice of Civil Administrative Penalty Assessment shall constitute continuing regulatory obligations imposed pursuant to the police powers of the State of New Jersey, intended to protect the public health, safety, welfare and environment.

23.    Notice is given that pursuant to N.J.S.A. 13:9B-21d, NJDEP is authorized to assess a civil administrative penalty of not more than $10,000 for each violation and each day during which each violation continues, shall constitute an additional, separate and distinct offense.

24.    Notice is further given that pursuant to N.J.S.A. 13:9B-21c, any person who violates N.J.S.A. 13:9B-1 et seq., or an administrative order issued pursuant to N.J.S.A. 13:9B-21h, or fails to pay a civil administrative assessment in full pursuant to N.J.S.A. 13:9B-21d, shall be subject to a civil penalty not to exceed $10,000 per day of such violation, and each day's continuance of the violation shall constitute an additional, separate and distinct violation.

25.    Notice is further given that pursuant to N.J.S.A. 13:9B-21f, any person who willfully or negligently violates N.J.S.A. 13:9B-1 et seq. shall, upon conviction, be guilty of a crime in the fourth degree and shall be punished by a fine of not less than $2,500 nor more than $25,000 per day of violation. Punishment for a second offense under this subsection shall be a fine of not less than $5,000 nor more than $50,000 per day of violation. Any person who knowingly makes a false statement, representation, or certification in any application, record, or other document filed or required to be maintained under this Act, or who falsifies, tampers with or knowingly renders inaccurate, any monitoring device or method required to be maintained pursuant to this Act shall, upon conviction, be subject to a fine of not more than $10,000.

26.    Except as provided above in the Notice of a Right to a Hearing section, this Administrative Order and Notice of Civil Administrative Penalty Assessment shall be effective upon receipt. The Department shall have the right to amend this Administrative Order and Notice of Civil Administrative Penalty Assessment at any time prior to hearing in this matter.

Date: 7|17|02

BY THE AUTHORITY OF
PETER T. LYNCH, CHIEF,
BUREAU OF COASTAL AND LAND USE
COMPLIANCE AND ENFORCEMENT

# ORIGINAL

## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| THE IT GROUP, INC., et al., | Case No. 02-10118 (MFW) |
| Debtors. | Jointly Administered |

ORDER GRANTING MOTION OF THE IT LITIGATION TRUST TRUSTEE
FOR AN ORDER (I) ENFORCING (A) THE BAR DATE ORDER, (B) THE
ADMINISTRATIVE BAR DATE ORDER, (C) THE CONFIRMATION ORDER, AND
(D) THE PLAN INJUNCTION; AND (II) DIRECTING THE NEW JERSEY
DEPARTMENT OF ENVIRONMENTAL PROTECTION TO DISMISS CERTAIN
ADMINISTRATIVE ACTIONS AGAINST THE DEBTORS PURSUANT TO THE
COURT'S ORDERS, THE PLAN INJUNCTION AND 11 U.S.C. §§ 105(a) AND 1142(b);
AND (III) GRANTING RELATED RELIEF [Re: Docket No. 5597]

Upon the Motion (the "Motion")[1] of The IT Litigation Trust Trustee (the "Trustee") of

the IT Litigation Trust, as successor to The IT Group, Inc. and its affiliated debtors (collectively,

the "Debtors"), for an order (i) enforcing (a) the Bar Date Order, (b) the Administrative Bar Date

Order, (c) Confirmation Order and (d) the Plan Injunction; (ii) directing NJDEP to dismiss that

certain NJ Administrative Order and NJ Administrative Proceeding against the Debtors pursuant

the Court's orders, the Plan Injunction and sections 105(a) and 1142(b) of the Bankruptcy Code;

and (iii) granting related relief; and it being found that this Court has jurisdiction; and it

appearing that good and sufficient notice of the Motion having been given and no further notice

of the Motion or of the entry of this Order need be provided; and upon the entire record herein;

and the Court having considered the Motion; and after due deliberation thereon; and good and

sufficient cause appearing therefor, it is hereby:

FOUND THAT

---

[1]    Capitalized terms not otherwise defined herein shall have the meanings assigned to such terms in the
Motion.

A.    By the NJ Administrative Order and NJ Administrative Proceeding, NJDEP is asserting Claims (as defined in the Plan) against the Debtors;

B.    The prosecution of the NJ Administrative Order and the NJ Administrative Proceeding against the Debtors constitutes violations of the Court's Bar Date Orders, the Confirmation Orders and the Plan Injunction;

C    The Claims asserted against the Debtors by the NJDEP in the NJ Administrative Proceeding arose prior to the Effective Date and are barred by the Plan Injunction;

IT IS THEREBY:

1    ORDERED, that the Motion be, and it hereby is, GRANTED;

2.    ORDERED, that NJDEP is hereby directed to immediately dismiss the NJ Administrative Order and the NJ Administrative Proceeding; and it is further

4..    ORDERED, that this Court shall retain jurisdiction with respect to any matters related to or arising from the implementation of this Order..

Dated: Wilmington, Delaware

December 16, 2004

_____

Honorable Mary F. Walrath
Chief United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

In re:                          }
                                }       Case No. 02-10118 (MFW)
    The IT Group. Inc. . }       Chapter 11
    et al.                      }

### NOTICE OF APPEAL

The State of New Jersey, Department of Environmental Protection. appeals under 28 U.S.C. § 158(a) from the Order of the bankruptcy judge directing the New Jersey Department of Environmental Protection to dismiss an administrative proceeding against Landbank. Inc., a debtor in this matter. which was entered on the docket in the above-captioned bankruptcy case on the 8th day of December 2004.

The names of all parties to the order appealed from and the names, address and telephone numbers of their respective attorneys are as follows:

Counsel for Debtors

Jeffrey Schlerf
Eric Sutty
The Bayard Firm
222 Delaware Avenue, Suite 900
Wilmington, DE 19801
(302) 655-5000

John Cunningham
Ileana Cruz
White & Case, LLP
Wachovia Financial Center
200 South Biscayne Blvd.. Suite 4900
Miami. FL 33131
(305) 371-2700

Counsel for New Jersey Department of Environmental Protection

Kathrine Motley Hunt
Deputy Attorney General
R.J. Hughes Justice Complex
25 Market Street
PO Box 093
Trenton, NJ 08625


Dated: December 16, 2004

                         Peter C. Harvey
                         Attorney General of New Jersey
                         Attorney for Appellant


          Signed:
          Attorney Name:    Kathrine Motley Hunt
                            Deputy Attorney General
                            R.J. Hughes Justice Complex
                            25 Market Street, P.O. Box 093
                            Trenton, NJ 08625
          Telephone No.:    (609) 984-7147

UNITED STATES BANKRUPTCY COURT
District of New Jersey

In re:                                          Case no :    02-10118-MFW

IT GROUP, INC                                   Chapter:          11

                                                Judge:      Mary F. Walrath
                        Debtor(s)

Caption of Pleading being filed:      Notice of Appeal

## CERTIFICATION OF NON COMPLIANCE
## REGARDING CASE MANAGEMENT/ELECTRONIC CASE FILING ("CM/ECF")

I, ( Katherine M. Hint      ), HEREBY CERTIFY that with respect to the transition in procedure effective October 1, 2003 which requires mandatory electronic filing for attorneys who regularly practice before this Court, and which requires attorneys to become trained and certified "Participants" of CM/ECF, if the attorney files ten (10) or more pleadings in a 12 month period, inclusive of the 2003 calendar year prior to October 1", the following conditions apply (please check applicable provisions):

__x__ (a) I am not currently certified as a CM/ECF Participant.  During the twelve (12) month period preceding and including this filing. I have not exceeded the ten (10) document limit; or

_____ (b) I am not currently certified as a CM/ECF Participant.  The captioned pleading constitutes my tenth or successive document filed within the preceding twelve (12) month period, and I have contacted the Court to schedule training within thirty (30) days of this filing.  My scheduled training date is _____ ; or

_____ ( c) I have been trained but not yet certified as a CM/ECF Participant; or

_____ (d) I am a certified "Participant" of CM/ECF, but have encountered the following extenuating circumstances which have prevented me from complying with the mandatory filing requirement with respect to the captioned pleading: (briefly describe)

_____

_____

_____ ; and

__x__ (e) Pursuant to the Court's Notice to the Bar dated June 17, 2003, and posted to the Court's Web site www.njb.uscourts.gov, I have placed the document being filed on a CD ROM in PDF format.

___12/10/04___                          _____
      Date                              Signature of Attorney

B - 141

FILED

2005 JAN -5  AM 9: 05

US BANKRUPTCY COURT
DISTRICT OF DELAWARE

```
 1
 2                    UNITED STATES BANKRUPTCY COURT
                           DISTRICT OF DELAWARE
 3
 4     IN RE:                         .      Chapter  11
                                      .
 5     IT Group. Inc. et al .         .
                                      .
 6          Debtor(s)                 .      Bankruptcy #02-10118 (MFW)
 7
                              Wilmington. DE
 8                           December 6, 2004
                               9:35 a.m.
 9
                         TRANSCRIPT OF OMNIBUS HEARING
10                  BEFORE THE HONORABLE MARY F. WALRATH
                       UNITED STATES BANKRUPTCY JUDGE
11
12     APPEARANCES:
13     For the IT Litigation:        Eric Sutty, Esq.
       Trust                         The Bayard Firm
14                                   222 Delaware Avenue
                                     P.O. Box 25130
15                                   Wilmington. DE 19899
16                                   John Cunningham, Esq
                                     White & Case, LLP
17                                   Wachovia Financial Center
                                     Suite 4900
18                                   200 South Biscayne Blvd
                                     Miami FL 33131
19
                                     Ileana Cruz
20                                   White & Case, LLP
                                     Wachovia Financial Center
21                                   Suite 4900
                                     200 South Biscayne Blvd.
22                                   Miami. FL 33131
23
24
25
```

Walter's Cramp, Inc.
Certified Court Transcribers
732-329-0191



2

| | | |
|---|---|---|
| 1 | For the Trustee of the IT | Michael Busenkell, Esq |
| 2 | Environmental Liquidating Trust | Morris, Nichols, Arsht & Tunnell, LLP |
| 3 | | 1201 North Market Street P.O. Box 1347 |
| 4 | | Wilmington, DE 19899 |
| 5 | For Bechtel Jacobs Company IRP, LLC. | Martin Bunin, Esq. Thelen, Reid & Priest, LLP |
| 6 | | 875 Third Avenue New York, NY 10022 |
| 7 | For The Shaw Group | Joe Handlin, Esq Ashby & Geddes |
| 8 | | 222 Delaware Ave P.O. Box 1150 |
| 9 | | Wilmington, DE 19899 |
| 10 | (via telephone) | Jeremy Coffey, Esq. Gibson, Dunn & Crutcher, LLP |
| 11 | | 333 South Grand Ave, Los Angeles, CA 90071 |
| 12 | | |
| 13 | For The Bank Group | Richard Cobb, Esq. Landis Rath & Cobb, LLP |
| 14 | | 919 Market Street-Ste. 600 Wilmington, DE 19801 |
| 15 | For The California Board of Equalization | Mark Silverschotz, Esq. |
| 16 | | Anderson, Kill & Olick, P.C 1251 Avenue of the Americas |
| 17 | | New York, NY 10020 |
| 18 | | Francis A. Monaco, Esq. Monzack and Monaco, P.A. |
| 19 | | 1201 No. Orange Street-Ste   400 Wilmington, DE 19899 |
| 20 | For U.S. Department of Justice | Bradley O'Brien, Esq. Department of Justice |
| 21 | (via telephone) | 844 King Street-Ste. 2313 |
| 22 | | Lock Box 35 Wilmington, DE 19801 |
| 23 | | |
| 24 | | |
| 25 | | |

Wilter's Cramp, Inc.
Certified Court Transcribers
731-929-0191

B - 143



3

1  For the NJDEP:                    Katherine Hunt, Esq.
2                                    Division of Law, State of NJ
                                     Department of Environmental
3                                    Protection
                                     401 East State Street
4                                    Trenton, NJ 08625

   Audio Operator:                   Judy Pinher
5
   Transcribing Firm:                Writer's Cramp, Inc.
6                                    6 Norton Rd,
                                     Monmouth Jct , NJ 08852
7                                    732-329-0191

8  Proceedings recorded by electronic sound recording, transcript
   produced by transcription service.
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Writer's Cramp, Inc.
Certified Court Transcribers
732-329-0191

4

1                           Index

2                   Direct Cross Redirect Recross Further
                                                  Redirect

3   Witnesses For The
    Litigation Trust:

4

5   Mr. Soose
    (by Mr. Cunningham)     20           31
6   (by Ms. Hunt)                30

7   (Recalled)
    Mr. Soose
    (by Mr. Cunningham)     64
8

9

    EXHIBITS:                              Marked  Received
10

11  As to the Litigation Trust's Motion
    for an Order Enforcing Administrative
12  Bar Date:

13  T-1    U.S Wetland/DEP Agreement        21
    T-2    Map of Wetland Bank              22
    T-3    Wetland Delineation Report       23
14  T-4    Administrative Order             26

15  As to the California State Board of
    Equalization's Motion for Relief from
16  Final Judgment:

17  C-1    Draft Order                      54
    C-2    Order Approving Sale             54
18
    T-1    Affidavit of Service            64
19  T-2    Declaration of Service          65

20

21  SUMMATION BY:

22

23

24  THE COURT: Finding

25

Witter's Cramp, Inc.
Certified Court Transcriber
751-529-0191

B - 145

5

```
 1         THE CLERK:  All rise   You may be seated
 2         THE COURT:  Good morning
 3         MR. SUTTY:  Good morning. Your Honor   Eric Sutty of
 4    the Bayard Firm on behalf of the IT Litigation Trust   He
 5    submitted an agenda last Thursday morning
 6         THE COURT:  I have it
 7         MR  SUTTY:  It has not been amended   Items #1 through
 8    18 are continued to the January hearing   Number 19 is an
 9    uncontested matter with a Certification of No Objection   It is
10    a Motion for Order Approving Amendment to the IT Environmental
11    Liquidating Trust and authorizing withdrawal of Trustee and
12    appointment of succeeding Trustee
13         THE COURT:  I did have a question about that.  What
14    does the Plan provide regarding who selects the successor
15    Trustee in these circumstances?
16         MR. SUTTY:  I believe counsel for the Movant is here
17         MR  BUSENKELL:  Good morning. Your Honor   Michael
18    Busenkell from Morris. Nichols. Arsht & Tunnell here on behalf
19    of the IT Environmental Trust   I didn't hear Your Honor's
20    question.
21         THE COURT:  Who appoints the successor Trustee under
22    the terms of the Plan?
23         MR. BUSENKELL:  As I read the Trust Agreement. Your
24    Honor. it's done with the consent of the California Department
25    of Toxic Substances.  They've consented to the successor
```

*Writer's Cramp, Inc.*
*Certified Court Transcribers*
*732-329-7191*

6

1  Trustee, whose information and resume is attached; Mr. Neil
2  Carloni I believe is how you pronounce the name
3        THE COURT:  I understand that, but I mean, does
4  anybody else have any input?
5        MR. BUSENKELL:  I don't believe so, Your Honor.
6        THE COURT:  All right
7        MR. BUSENKELL:  Not as I read the agreement
8        THE COURT:  Okay
9        MR. BUSENKELL:  But they've consented to the successor
10 Trustee.  As we set forth in our papers, the current Trustee
11 has family medical problems --
12        THE COURT:  Yes.
13        MR. BUSENKELL:  -- and can't effectively serve.  And
14 the California Department of Toxic Substances wanted a
15 Bankruptcy Court order, so that's why we're before Your Honor
16        THE COURT:  All right, well, I will grant it.
17        MR. BUSENKELL:  Thank you, Your Honor.
18        THE COURT:  Thank you
19        MR. SUTTY:  Item #20 is the Trustee's Motion to
20 Further Extend Time to object to administrative claims.  A
21 Certification of No Objection has been filed as to this motion
22 also.
23        THE COURT:  How long is this going to take?
24        MR. SUTTY:  I believe it extends it through February
25        THE COURT:  And you'll be done then?

*Writer's Cramp, Inc.*
Certified Court Transcribers
732-329-0191

B - 147

7

```
 1        MR  SUTTY:  We are very optimistic to be done with the
 2   admin claims by then
 3        THE COURT:  All right.  I hope so.  I will grant the
 4   request then
 5        MR  SUTTY:  Thank you.  Items 21 and 22 relate to the
 6   claims of United Rentals.  Pursuant to Your Honor's ruling on
 7   Friday. they are continued to the January 26th hearing
 8        THE COURT:  On a must-be-tried basis
 9        MR  SUTTY:  Correct   Item #23 is the Sixth Omnibus
10   Objection.  We had one claim scheduled to go forward today.
11   that of Peter Court Center.  The parties are involved in
12   settlement negotiations and have agreed to continue that claim
13   to the January 26th hearing also
14        THE COURT:  All right
15        MR  SUTTY:  That takes us to agenda item #24. the
16   Eighth Omnibus Objection   I'll turn the podium over to Ileana
17   Cruz of White & Case
18        THE COURT:  All right. thank you
19        MS  CRUZ:  Good morning Your Honor   Ileana Cruz.
20   White & Case. for the IT Litigation Trust.  Item #24 is the
21   Eighth Omnibus Objection, which was filed back in February of
22   2004   And we had a pending objection to one of the claims.
23   which we've resolved with the objector. who is Shaw   And we've
24   agreed on the -- they basically wanted us to change some of the
25   terms of our proposed order.  And we did agree to do that, and
```

8

1  no we'd like to submit the order under Certification of Counsel

2  after the hearing today

3       THE COURT:  Well. what is it going to say. the revised

4  order?

5       MS. CRUZ:  That the Court is expunging the claim

6  because it was a liability that may have been assumed by Shaw

7  under the terms of the Asset Purchase Agreement

8       THE COURT:  Well. did I enter orders eliminating

9  claims because they were assumed by Shaw?

10      MS. CRUZ:  I don't remember  He filed -- we submitted

11 a lot of objections on that basis. and I don't remember right

12 now how many of them you did enter

13      THE COURT:  I mean. does that mean the Debtor has no

14 liability?

15      MS CRUZ:  That's correct.  Under the terms of the

16 Asset Purchase Agreement --

17      THE COURT:  Why?

18      MS CRUZ:  Because Shaw --

19      THE COURT.  Did all of the Creditors give releases to

20 the Debtor?

21      MS. CRUZ:  No. under the terms of the agreement. when

22 Shaw assumed certain contracts. they also agreed to assume all

23 liabilities --

24      THE COURT;  Are these assumed contracts or just

25 assumed liabilities?

9

1          MS. CRUZ:   Assumed liabilities.

2          THE COURT:   Did you assume and assign the contracts?

3          MS. CRUZ:   Yes.

4          THE COURT:   Well, with respect to Wells Fargo, it's

5     leased equipment?   What is it?

6          MS. CRUZ:   I believe that Wells Fargo's claim had to

7     do with leased equipment   And this -- again, we filed this

8     objection back in February of 2004 and Wells Fargo never

9     objected to it

10         THE COURT:   I don't care about that.

11         MS. CRUZ:   Okay.

12         THE COURT:   I need to know whether I have a basis

13    to --

14         MS. CRUZ:   The claim arises from a lease that --

15         THE COURT:   All right, that was assumed?

16         MS. CRUZ:   Right

17         THE COURT:   All right, assumed and assigned?   All

18    right   I'll look for the revised order.

19         MS. CRUZ:   Thank you, Your Honor   Item #25 has been

20    continued.

21         THE COURT:   Okay

22         MS. CRUZ:   Item #26, this is the 12 -- I'm sorry, the

23    Twentieth Omnibus Objection   The Commonwealth of Puerto Rico

24    responded to the Trustee's objection, basically asking for more

25    documentation on our part, which we have provided.   And so as a

B - 150

10

1  result, we'd like to submit an order today that the objection

2  has been resolved

3          THE COURT:  All right, they agreed then?  Okay

4          MS  CRUZ:  Yes.  May I approach?

5          THE COURT:  You may

6      (The Court receives document)

7          THE COURT:  Thank you.  All right, then I'll enter

8  that order by agreement

9          MS. CRUZ:  The next item on the agenda, #27, relates

10 to a pending objection that had been outstanding to the

11 Trustee's Motion to Authorize and Reduce the payable amount of

12 certain paid claims  Jamboree. LLC sought a continuance, and

13 while they were here at the hearing they said that they just

14 needed some extra time and that if they didn't file any

15 objection by November 10th, that's 'cause they did their

16 analysis and figured that there was no real objection:  And we

17 did not receive any objection from them.  So as a result, we'd

18 like to go forward and submit an order overruling their

19 objection

20         THE COURT:  All right, that's fine.

21         MS  CRUZ:  Thank you  May I approach?

22         THE COURT:  You may

23         MS. CRUZ:  Thank you

24     (The Court receives document)

25         MS. CRUZ:  And with respect to the next few items on

11

1    the agenda. Your Honor, we'd like to ask if we could switch the

2    order in which they'll be presented to you due to time

3    constraints.

4            THE COURT:  Okay

5            MS. CRUZ:  We'd like to propose that we first hear

6    item #30. which is the Motion of Shaw

7            THE COURT:  Okay

8            MS. CRUZ:  And after that we'd like to hear #32. and

9    then lastly #28 and 31

10           THE COURT:  The parties all agree to this re-ordering?

11           MR. HANDLIN:  That's fine. Your Honor

12           THE COURT:  All right

13           MS. CRUZ:  Thank you.

14           MR. HANDLIN:  Good morning. Your Honor  Joe Handlin

15    from Ashby & Geddes on behalf of the Shaw Group   Your Honor.

16    Item 30 is Shaw's Motion to Compel Enforcement of the APA and

17    Sale Order against Bechtel Jacobs   Bechtel and Shaw have

18    agreed to put before the Court today just the procedural

19    argument that Bechtel makes that Shaw improperly proceeded by

20    motion and should have filed an adversary proceeding   We don't

21    want to go months down the line and then have the case

22    dismissed at some later point after significant discovery has

23    taken place.  So we want to have this portion of Bechtel's

24    objection addressed today. and if that's okay with Your Honor.

25    we'd like to proceed on that basis.  Your Honor. in addition --

Writer's Cramp, Inc.
Certified Court Transcribers
732-329-0191

B - 152

12

1   THE COURT:  Well --

2         MR  HANDLIN:  I'm sorry. an additional reason for this

3   is Shaw has served discovery. and Bechtel has objected on the

4   basis that it's improperly a motion. it should be an adversary

5   proceeding. and is not responding to discovery until that issue

6   is decided. so that's one of the reasons   Also. Your Honor. we

7   would like to get a final hearing date from the Court either --

8   whether it's a trial or a hearing date where we'll have an

9   evidentiary hearing. although I think the only two issues in

10  the matter so far are just two legal issues.  So you may not

11  need evidence. just maybe argument

12        THE COURT:  Well. are the legal issues whether or not

13  the one contract was. in fact. encompassed by the Sale Order?

14        MR. HANDLIN:  Yes. that's one of the issues   One of

15  the issues is whether or not Shaw -- the TSCA contract was. in

16  fact. assumed and assigned to Shaw. and if it was. whether

17  Bechtel Jacobs could take -- could offset money allegedly owed

18  to it under an admittedly rejected contract against. I believe.

19  a million dollars under (indiscern ) contract that's admittedly

20  owed to Shaw.  So it's two issues   I guess part of the first

21  issue is Bechtel's argument that while they may not have

22  received notice of the assumption and assignment. and we

23  strongly have opposed or contest that issue --

24        THE COURT:  Well. all right. let me hear whether or

25  not this has to be by adversary proceeding or by motion then.

*Walter's Cramp, Inc.*
*Certified Court Transcribers*
*731-329-0191*

B - 153

13

1       MR HANDLIN: Your Honor. I think it could have been

2  filed by either method  Shaw chose to move to enforce

3  compliance with the APA and the Sale Order because Bechtel

4  Jacobs was just arguing that well, you know, at first that they

5  were entitled to use this offset right.. And we filed the

6  motion.  I think it could have been filed as an adversary

7  proceeding, but we don't see any reason why it has to filed as

8  an adversary proceeding.  Certainly Bechtel Jacobs has pointed

9  no good reason to us or prejudice to us --

10       THE COURT:  Well. what relief are you seeking?

11       MR. HANDLIN:  We would -- today we are seeking an

12  order from the Court overruling Bechtel Jacobs' objection in

13  part --

14       THE COURT:  No. what relief are you seeking in the

15  motion?

16       MR  HANDLIN:  Oh. we are seeking enforcement of the

17  APA and Sale Order to obtain a payment that I think is

18  admittedly owed to Shaw --

19       THE COURT.  Well. are you seeking a money judgment?

20       MR  HANDLIN:  We're seeking an order that would compel

21  them to comply with the terms of the Sale Order and the APA.

22  And essentially, Your Honor. it would result in a money

23  payment. but one of the cases Bechtel Jacobs relies upon. Your

24  Honor --

25       THE COURT:  Well, I'm pressing you because Rule

14

1  7001(1) says a proceeding to recover money or property.  Are

2  you seeking money?

3       MR  HANDLIN:  We are seeking money  But Your Honor.

4  if you'll recall in the case that this Court decided in In Re:

5  Rolfcorp is right on point.  In that case. an order was entered

6  approving a settlement agreement and I guess there was a

7  dispute as to what the order provided. so the Debtor filed a

8  Motion to Compel Enforcement of the order approving the

9  settlement agreement and this Court said even though it's going

10 to result in a payment of 5118,000. it could be a motion. not

11 an adversary proceeding.

12      THE COURT:  However. my Sale Order didn't specifically

13 say. "Bechtel shall pay X dollars to Shaw." does it?

14      MR  HANDLIN:  No. Your Honor. the Sale Order doesn't

15 say -- it's not that clear, but paragraph 37 of the order

16 specifically retains jurisdiction to enforce and implement

17 terms of the Sale Order.  And we did a similar motion with

18 respect to Space Gateway if Your Honor will recall

19      THE COURT:  Did they raise --

20      MR  HANDLIN:  No one raised it. Your Honor.

21      THE COURT:  -- the issue?  Then I'm not going to

22 consider it precedent.

23      MR  HANDLIN:  I'm not suggesting it's precedent. it

24 just -- I think that the fact that it wasn't raised there is

25 just an indication that this is something that was proper

15

1   here --

2       THE COURT:  I -- no. I'm not accepting it as precedent

3   that it's proper here just because you did it before and nobody

4   objected

5       MR HANDLIN:  Okay. Your Honor.  Your Honor, I

6   don't -- there's been other cases that have emphasized where

7   there's lack of prejudice, where there's no good reason to make

8   a party file an adversary proceeding, that there's really no

9   justification for requiring somebody to -- a party to file an

10   adversary proceeding as opposed to a motion  We've asked

11   Bechtel Jacobs to explain to us why you know, we have to file

12   as an adversary proceeding  I would assume that their just

13   wanting to delay the issue. Your Honor

14       THE COURT:  Well. Rule 7001 would suggest if you want

15   to recover money. it needs to be by adversary.  That's why I'm

16   curious as to exactly what your Form of Order requests

17       MR HANDLIN:  Your Honor  if you'd give me a moment. I

18   -- I don't -- we may not have submitted an order with the

19   motion  He did  The Form of Order submitted with the motion.

20   Your Honor. requests that the motion be granted. that Bechtel

21   is enjoined from asserting against Shaw or the assumed Bechtel

22   contracts any claim. encumbrance. or excluded liability

23   relating to the rejected Bechtel contract

24       THE COURT:  Well. isn't an order seeking an injunction

25   also -- excuse me. an action seeking an injunction also subject

16

1  to Rule 7001 and have to proceed by adversary?

2          MR. HANDLIN:  It is. Your Honor

3          THE COURT:  I don't know how you can get around it.

4          MR. HANDLIN:  Your Honor, I can't think of any

5  specific examples off the top of my head, but I'm sure there's

6  many instances where parties file motions where it results in a

7  payment of money   You know, Motion for Administrative Claim,

8  there's probably numerous examples where a motion results in a

9  payment of money, and I can -- if Your Honor can give me

10 minute, I can cite to some cases where they rely upon a party

11 really raising form over substance

12      In a 3rd Circuit case, Your Honor, In Re: O'Brien, the 3rd

13 Circuit rejected an argument that an action to set cure amount

14 for assumed contract must be filed as an adversary proceeding

15 And in that case, Your Honor, the 3rd Circuit emphasized that

16 the appellant failed to show why the action should be brought

17 as an adversary proceeding.  So it seemed to put some onus on

18 the party making the argument that the, you know, the motion

19 should be withdrawn and the proceeding should go forward as an

20 adversary proceeding

21      And Your Honor, in Larnout & Hauneby there was an

22 equitable subordination claim filed as an adversary proceeding

23 In that case, the Defendant moved to dismiss because Rule 7001,

24 Subsection B says only equitable insubordination claims against

25 allowed claims are adversary proceedings.  And the Court

Writer's Cramp, Inc.
Certified Court Transcribers
752-889-0191

17

1  emphasized there that the Defendant was placing form over

2  substance, that there was no prejudice, and the only real issue

3  is you look to procedural due process

4       So, Your Honor, other than that, I know Rule 7001 says on

5  its face that if you're seeking to obtain money that -- an

6  adversary proceeding is a proceeding where you're seeking to

7  obtain money, but I, again, I -- Bechtel Jacobs gave us no good

8  reason why we had to re-file this, and we would submit that

9  proceeding by motion is appropriate   Unless Your Honor has any

10 other questions, that's all I have.

11       THE COURT·  All right.

12       MR  BUNIN:  Good morning, Your Honor. Marty Bunin from

13 Thelen, Reid & Priest for Bechtel Jacobs Company   Your Honor,

14 in our view  Rule 7001 is clear.  I would point out to the

15 Court that this is an action or a motion at this point by a

16 non-Debtor against another non-Debtor

17       THE COURT:  Well, do I have jurisdiction?

18       MR  BUNIN·  Bechtel Jacobs believes the Court does

19 have jurisdiction.  It's not -- I want to make it clear. Your

20 Honor, it's not our view that the Court doesn't have

21 jurisdiction, it's not our view that the Court shouldn't decide

22 this   Our view is that the rules require Shaw Group to proceed

23 by adversary proceeding and we were -- we -- our client fully

24 intends to deal with this issue on procedural issues and on the

25 merits as an adversary proceeding, if Your Honor so requires

*Writer's Cramp, Inc.*
*Certified Court Transcribers*
*753-329-0101*

18

1   that method to be used

2        My opponent quoted from the proposed order an injunction

3   paragraph   I don't think he had an opportunity to read the

4   next paragraph which does say that Bec -- I'm quoting. "Bechtel

5   is hereby ordered to remit within 15 days after entry of this

6   order to Shaw the retainage." -- capital R -- "and any and all

7   other amounts previously withheld " That clearly seeks a money

8   judgment. There's over a million dollars at issue here.  These

9   are funds that were paid as retainage by IT --

10            THE COURT:  I don't want to get into the merits of it

11   and --

12            MR BUNIN:  And again. Your Honor. I conclude quickly,

13   there are. in our view. a lot more than two legal issues here.

14   There's a curious innovation agreement that was signed which I

15   believe Your Honor may be reviewing in some other context on

16   another matter. which raises a host of issues.  And our view is

17   to what the parties did. what the intention was  We don't

18   believe there really was innovation  Shaw has a very broad

19   view of its obligations under that agreement as regards the

20   contracts at issue between our client and Shaw and the Debtor

21      So. Your Honor. it's our view that the matter should

22   proceed as an adversary proceeding  And Bechtel Jacobs Company

23   is prepared and will deal with the issues presented in

24   pleadings before this Court if Your Honor so rules.

25            THE COURT:  All right.

19

1      MR BUNIN: Thank you

2          THE COURT: Yes I do rule that an adversary

3   proceeding is necessary  So --

4          MR HANDLIN: Okay. Your Honor. thank you  We would

5   like to request a time from the Court for trial, if that would

6   be okay with the Court  I think sometime in March or April --

7          THE COURT: Well. file the adversary. we'll have a

8   pre-trial. and I'll set the trial date at that point

9          MR HANDLIN: Okay. thank you. Your Honor  And one

10  last thing. We served discovery. written discovery, on October

11  22nd, and the Defendant filed an objection with the Court.  We

12  would submit that Bechtel Jacobs should be required to respond

13  to the discovery. I don't know if we need to re-serve it  It

14  seems kind of pointless to me

15         THE COURT: Yes. you do have to re-serve it  I'm not

16  going to order -- since I find that the motion is procedurally

17  defective. I'm not going to -- and I don't have any Motion to

18  Compel. but I wouldn't grant any Motion to Compel under

19  discovery served in connection with a motion.

20         MR HANDLIN: Okay. Your Honor. thank you.

21         MR. BUNIN: Thank you. Your Honor.

22         MS CRUZ: Your Honor. the next item that we would

23  like heard in the order we just requested is item #32

24         THE COURT: All right.

25         MS. CRUZ: It's the Motion for an Order Enforcing the

Soose - Direct                     20

1  Bar Date Order, the Administrative Bar Date Order, the
2  Confirmation Order and the Plan Injunction and directing the
3  New Jersey Department of Environmental Protection to dismiss
4  certain administrative actions against the Debtors pursuant to
5  the Court's orders, the Plan Injunction, and 11 USC Sections
6  105 and 1142(b) and granting related relief
7          THE COURT:  All right
8          MS. CRUZ:  Thank you
9          MR CUNNINGHAM:  Good morning, Your Honor. John
10 Cunningham of White & Case on behalf of the Trust.  Your Honor
11 I have a witness and some documents  If you want I can give
12 you a brief opening of what this motion is about or I can right
13 to the witness to get the facts in
14         THE COURT:  Let's go to the witness.
15         MR. CUNNINGHAM:  Yes. Your Honor.  The Trust would
16 like to call Harry Soose to the stand
17         THE COURT:  All right
18         THE CLERK:  Please state your full name and spell your
19 last name for the Court
20         MR  SOOSE:  Harry J. Soose. Junior. S-O-O-S-E
21         HARRY SOOSE, LITIGATION TRUST WITNESS, SWORN
22         THE CLERK:  Please be seated
23              DIRECT EXAMINATION
24 BY MR  CUNNINGHAM:
25 Q.  Good morning, Mr. Soose.  Can you state what your current

B - 161

1  title is?

2  A   Chief Operating Officer for the IT Litigation Trust

3  Q   And what was your position before that?

4  A   Before that I was the Chief Financial Officer of the IT

5  Group

6  Q   And how long were you Chief Financial Officer of the IT

7  Group?

8  A   Approximately 5 years

9  Q   Are you familiar with what is referred to as the Woodbury

10  Creek site?

11  A   Yes

12  Q   Can you explain to the Court what that is?

13  A   This is a large tract of real estate, it's over 200 acres.

14  that's located in New Jersey. And it's a part of a business, a

15  subsidiary of the IT Group, Land Bank, and it's subsidiary was

16  involved in -- the business is that of real estate development

17  for the purpose of producing and then selling wetland credits

18  Q   Mr  Soone. I'd like to hand up to you what I'd identify as

19  Trust Exhibit-1

20        MR  CUNNINGHAM:  May I approach. Your Honor?

21        THE COURT:  You may.

22      (Litigation Trust Exhibit-1 marked for identification)

23        THE COURT:  Is anybody here for the New Jersey

24  Department of Environmental Protection?

25        MS. HUNT:  Yes, Your Honor.

Willer's Cramp, Inc.
Certified Court Transcribers
732 329-0191

Soose - Direct                                    22

1         THE COURT:  Okay  you can -- why don't you come up to

2   counsel table then.

3   BY MR  CUNNINGHAM:

4   Q   Mr  Soose, are you familiar with Trust Exhibit-1?

5   A   Yes.

6   Q   Can you explain what that is?

7   A   In layman's terms, I would describe this as the agreement

8   between U S  Wetlands Services Inc , which was a company under

9   the -- in the umbrella of companies of the IT Group and the New

10  Jersey Department of Environmental Affairs that defines and

11  surrounds the wetland property that I just earlier described

12  Q   What is the date of this?

13  A   This document is signed July 11th, 1995.

14         MR  CUNNINGHAM:  I have here for identification

15  Exhibit # -- Trust Exhibit #2.  May I approach the Bench  Your

16  Honor?

17         THE COURT:  You may

18      (Litigation Trust's Exhibit-2 marked for identification)

19  BY MR  CUNNINGHAM:

20  Q   Mr  Soose, can you describe what the Trust Exhibit-2 is?

21  A   Yes, in simplest terms this is a map that identifies the

22  area known as Woodbury Creek Wetland Bank   Again  it's located

23  in New Jersey  near Woodbury, New Jersey

24  Q   You stated it's approximately 200 acres?

25  A   A little over 200 acres

1  Q    And it's just outside, as indicated by the map, outside the

2  city of Philadelphia?

3  A    Right.   It's east of Philadelphia.   It's actually in New

4  Jersey

5  Q.   Can you again explain what is a wetlands mitigation bank?

6  A.   The purpose of this -- or the business that IT was involved

7  in was that of constructing wetlands so that those acreage

8  could then be identified as credits, which often times

9  developers, or even the State of New Jersey's Transportation

10  Department has to destroy wetlands as a part of development

11  And to get approval to do that, they have to have a wetlands

12  substitute.   So the business here is simply to provide those

13  wetlands as an alternative to the party that needs to destroy

14  wetlands, that they can buy these what a called credits.   And

15  those credits sort of have a value in trade, and that's the

16  business that one of the IT companies was in

17  Q    Mr  Soose, I'd like to identify as Trust Exhibit-3 a

18  Woodbury Creek Wetland Mitigation Bank Wetland Delineation

19  Report

20        MR. CUNNINGHAM:   May I approach, Your Honor?

21        THE COURT:   You may

22        MR  CUNNINGHAM:   Thank you.

23     (Litigation Trust's Exhibit-3 marked for identification)

24  BY MR  CUNNINGHAM:

25  Q.   Mr. Soose, on Trust Exhibit-3, can you identify what this

1 report is?

2 A. I'll just read what the face of it is. This is the

3 Woodbury Creek Wetland Mitigation Bank Delineation Report

4 prepared by Louis Burger Group. And Louis Burger Group was

5 hired by U.S. Wetland Services, LLC, which was a lower tier

6 subsidiary of Land Bank and the IT Group

7 Q Are you familiar with this report?

8 A. Yes

9 Q. And why was this report done?

10 A Well, this report was done by -- at the request of the IT

11 Group companies because the wetland creation that was

12 constructed several years before this failed, I guess in

13 simplest terms. And so this report was undertaken to try to

14 identify why the wetland construction didn't work, in simplest

15 terms; or I should say, partially didn't work

16        MR CUNNINGHAM: I'd like to mark as Trust Exhibit-4 a

17 letter to U S Wetland Services from the New Jersey Department

18 of Environmental Protection

19        MS. HUNT: Your Honor. I'd like to object to the

20 relevance of this testimony   At this point I was not aware

21 that any testimony would be taken during this --

22        THE COURT: What is the relevance?

23        MR. CUNNINGHAM: It's laying of foundation for the New

24 Jersey's claim   This is their materials that they established

25 what their claim is --

1       THE COURT: I thought I was here on a Motion to

2 Enforce a bar date

3       MR. CUNNINGHAM: That's correct. But we need to

4 establish when the claim arose, and this is their statement of

5 what the claim is And the dates of the correspondence and the

6 like precedes the bar date -- precedes the filing of the Plan

7       MS. HUNT: I would concede, Your Honor, that the

8 problem at Woodbury Creek Mitigation Bank occurred probably

9 back in 1999 when the (indiscern.) was constructed. And I

10 would concede that we did not file a Proof of Claim in this

11 case and that we don't have a claim in this case, Your Honor.

12       THE COURT: The issue isn't --

13       MR. CUNNINGHAM: The issue in it's simplest form, Your

14 Honor, is --

15       THE COURT: Whether they're pursuing a claim or an

16 administrative action.

17       MR. CUNNINGHAM: That's correct

18       THE COURT: So --

19       MR. CUNNINGHAM: And I'm -- but to understand that,

20 Your Honor, it is to understand the nature of the claim that

21 they have asserted And the testimony will show that the claim

22 that they asserted --

23       THE COURT: Well --

24       MR. CUNNINGHAM: -- is that -- and I haven't gotten

25 there yet --

Soose - Direct                          26

1          THE COURT:  Well  let's get there quicker.

2          MR  CUNNINGHAM:  Okay. I'll get there quicker.  If you

3    want. Your Honor. I'll go to -- I'll change the Trust Exhibit-4

4    to the actual Administrative Order and Notice of Civil --

5          THE COURT:  Just --

6          MR  CUNNINGHAM:  I will.  Here --

7          THE COURT:  Go ahead

8          MR  CUNNINGHAM:  -- let me give this to the witness

9          THE COURT:  Thank you

10         (Litigation Trust's Exhibit-4 marked for identification)

11   BY MR. CUNNINGHAM:

12   Q.  Mr. Soose, are you familiar with Trust Exhibit-4?

13   A   Yes

14   Q.  And what is this?

15   A.  This is an Administrative Order that was sent to Land Bank.

16   which is, again, an IT company by the New Jersey DEP   It's

17   dated July 17th, 2002.  This assessed a penalty and a -- which

18   is on the very last page there's a -- it explains this

19   Administrative Order and Notice of Civil Penalty of $9,000

20   And I believe the right interpretation of that is $9,000 per

21   day, once you read the Administrative Order   And you can see

22   that that was mailed to the Moaside Boulevard address in

23   Honroeville, Pennsylvania  where I received it

24   Q   This was sent to the Debtors post-petition --

25   A.  Correct.

Soone - Direct                                27

1    Q    -- is that correct?  Can I ask you to look at paragraph 6
2    of this Administrative Order?
3    A    Yes.
4    Q    Can I ask that you read that for the Court, that paragraph?
5    A    "In response to the Department's October 19th, 2000 letter,
6    the banker" -- and the banker is the IT Group and it's
7    companies -- "did have their consultant perform a detailed
8    wetland delineation in the spring of 2001.  The Department
9    participated in the wetland delineation and confirmed the
10   consultant's field findings.  On July 12th, 2001, the Louis
11   Burger Group submitted the results of the detailed wetland
12   delineation report, which indicated that the construction
13   activities resulted in the creation of some wetlands on the
14   site, but also indicated that 18.924 acres of existing
15   wetlands, verified by the September 4th, 1998 LOI, had been
16   drained and no longer met the definition of a wetland.  The
17   report indicated that Land Bank had created 12.71 acres of
18   wetlands, established 18.59 acres of upland buffers, and
19   enhanced 15.99 acres of wetlands.  Based upon the credit ratio
20   approved by the Counsel, this completed work would be
21   equivalent to 36.64 mitigation credits.  The Bankers sold a
22   total of 32.75 mitigation credits from the bank.  If the
23   mitigation monitoring is successfully completed, the amounts of
24   credits sold can be offset by the 36.64 mitigation credits
25   established on the site.  However, in an effort to build

1  wetlands on the site, Land Bank drained 18 924 acres of
2  existing wetlands, which is a violation of the Freshwater
3  Wetlands Protection Act. New Jersey reference."
4  Q   The -- in the middle of that paragraph you just read. it
5  refers to 18 924 acres of existing wetlands that had been
6  drained. is that correct?
7  A   Yes.
8  Q   Is that the basis upon which the Administrative Order that
9  you just -- I guess Trust Exhibit-3 -- is that the basis -- is
10 that statement. the draining of the 18 -- approximately 18
11 acres. the basis for the Administrative Order?
12 A   It's my understanding, yes.
13 Q   And what's your understanding of that claim, the draining
14 of the wetlands. the 18 acres that's set forth in this
15 Administrative Order?
16 A   Let me ask you to repeat that.  I'm not --
17 Q   What is your understanding is the basis of the New Jersey's
18 contention that 18.924 acres of existing wetlands had been
19 drained?
20 A   Well, the penalty that's being imposed by New Jersey is
21 being imposed because this 18.94 acres of wetlands -- and
22 probably among other things -- was inadvertently drained
23 through the construction activities of the banker or Land Bank.
24 Q   And when is the State alleging that that took place?
25 A   Well, that took place during the construction activity,

Soose - Direct                    29

1  which I believe was -- well. I shouldn't speculate    It
2  certainly was pre-petition
3  Q    In fact. Mr  Soose. does it say in that paragraph that you
4  just read that the State's conclusion that 18.924 acres had
5  been drained is based on the Louis Burger Group 2001 report.
6  that is the Trust Exhibit-3?
7  A.  Correct
8          THE COURT:  Your Honor. briefly. going back to
9  counsel's comments, I do have the affidavit of service for the
10  bar date -- original bar date order. and I was just asking if
11  they are conceding that that is -- that they did receive copy
12  of the original bar date
13          MS  HUNT:  Yes. Your Honor.
14          THE COURT:  All right --
15          MR  CUNNINGHAM:  Okay. then I don't need to put that
16  into evidence
17  BY MR  CUNNINGHAM:
18  Q    Mr. Soose. are you aware if the State of New Jersey
19  objected to confirmation of the Plan?
20  A    Yes. my recollection is that the State did object
21  Q    Do you know what happened to that objection?
22  A    It was overruled. I guess is the correct legal term
23  Q.   Mr  Soose. do you know when the Plan went effective. the IT
24  Group Plan?
25  A.   Yes, the Plan went effective April 30th of 2004.

Soose - Cross                                    30

1  Q   Mr. Soose, are you aware if the Disclosure Statement in
2  connection with the Plan had a description about the Woodbury
3  Creek issues with the State of New Jersey?
4  A.  Yes, there is some language in the provision that discusses
5  this property.
6          MR  CUNNINGHAM:  Your Honor, the only thing I have
7  left are some New Jersey State statutes, which I can build into
8  argument --
9          THE COURT:  All right.
10         MR  CUNNINGHAM:  I don't believe I need to have the
11 witness go through that.
12         THE COURT:  All right, any cross of the witness?
13         MS  HUNT:  Just one question, Your Honor.
14                    CROSS EXAMINATION
15 BY MS. HUNT:
16 Q.  Mr  Soose, are you aware that Land Bank, following the
17 issuance of the Administrative Order  that Land Bank contested
18 that order and is proceeding with an administrative action in
19 the State of New Jersey?
20 A.  I'm sorry. I didn't quite hear the question.
21 Q   Are you aware --
22         THE COURT:  Please speak into the microphone.
23         MS. HUNT:  I'm sorry, Your Honor.
24 BY MS  HUNT:
25 Q.  Are you aware that Land Bank filed an administrative

Welter's Cramp, Inc.
Certified Court Transcribers
732-329-0191

1  hearing request following the issuance of the Administrative
2  Order?  Are you aware that there's currently an administrative
3  action pending in the State of New Jersey with respect to the
4  Administrative Order?
5  A.  I am aware of that, yes.
6  Q  And that Land Bank has been defending that for over 2 years
7  now?
8  A.  I under -- I don't know what you mean by defending, but I
9  know that there is an Administrative Order that has some
10 deadlines that are fast-approaching here.  In fact, this month
11 there's a deadline for an -- a hearing that I recall is
12 scheduled for January.
13 Q.  Yes, thank you.
14         THE COURT:  Excuse me, would counsel identify herself
15 for the record.
16         MR. HUNT:  I'm sorry.  Katherine Motley Hunt.
17 Katherine Motley Hunt, Deputy Attorney General for the State of
18 New Jersey, Department of Environmental Protection.
19                 REDIRECT EXAMINATION
20 BY MR. CUNNINGHAM:
21 Q  Mr. Soone -- brief follow-up.  Mr. Soone, that proceeding
22 currently that's been set is pursuant to a Motion for Summary
23 Judgment in the administrative action filed by the State of New
24 Jersey, is that correct?
25 A.  Yes, that's my understanding.

Soone - Redirect                                    32

1   Q.  And that motion was filed subsequent to the filing of the

2   Plan Trust Motion to Enforce the various orders and Plan

3   Injunction, is that correct?

4   A.  Right, meaning it was after April 30th of '04, right

5           THE COURT:  Was it after November 16th. I think was

6   the question.

7   A.  November 16th of what year?

8           THE COURT:  Of 2004.  The question was whether the --

9           MR. CUNNINGHAM:  Yes.

10          THE COURT:  -- Motion for Summary Judgment was filed

11  after your Motion to Enforce the bar date.

12          MR. CUNNINGHAM:  That's correct. Your Honor

13  A.  I'm not sure sitting here right now.  The documents would

14  show that though.

15          MR. CUNNINGHAM:  Didn't New Jersey just concede --

16          MS. HUNT:  Actually I don't have the papers --

17          MR. CUNNINGHAM:  I have it.

18      (Pause in proceedings)

19          MR. CUNNINGHAM:  Your Honor, we're searching for that

20  I can attest as counsel that that was filed subsequent to the

21  filing of our Motion to Enforce the Plan Injunction.  I know

22  that for a fact

23          THE COURT:  Okay

24          MS. HUNT:  I'm sorry, could you please repeat that?

25          MR. CUNNINGHAM:  Your Motion for Summary Judgement

33

1   that you filed with the Administrative Law Judge in the New

2   Jersey proceeding was filed after the Plan Trust had filed this

3   motion that is before the Court.

4        MS. HUNT:  No. I filed my motion and the following day

5   I received your papers.

6        MR. CUNNINGHAM:  We had filed our motion prior to you

7   filing your motion.

8        MS. HUNT:  I received it after the fact. though.

9        THE COURT:  All right.

10       MR. CUNNINGHAM:  Your Honor that's it for the Trust.

11       THE COURT:  All right. any recross?

12       MS. HUNT:  No. Your Honor.

13       THE COURT:  Thank you. you may step down.  Leave the

14   documents there.

15       (Witness steps down)

16       THE COURT:  Do you have any --

17       MS. HUNT:  Your Honor --

18       THE COURT:  -- evidence you want to present?

19       MS. HUNT:  No. I don't. Your Honor.

20       THE COURT:  All right. I'll hear argument then.

21       MS. HUNT:  Thank you.

22       MR. CUNNINGHAM:  Your Honor. the facts as the Trust

23   sees it. is as follows.  This relates to property that was

24   owned prior to the petition date.  And as referenced in the

25   testimony, this alleged drainage of the wetlands that is

B - 174

34

1    contained in this Administrative Order took place, as conceded
2    by the parties, sometime prior to 2001 because that was the
3    date of the report that New Jersey was stating the basis for
4    this.  New Jersey has conceded that they received notice of the
5    bar date.  There was a description of this issue in the Plan
6    and in the Disclosure Statement.  They objected to confirmation
7    specifically saying that they do not hold a claim in this
8    estate.  They are saying that they do not have a right to
9    payment as the Code defines claim, but instead that they have
10   an equitable remedy against the estate to perform, which is
11   referred to as offsite mitigation; to basically go out and --

12         THE COURT:  Based on the documents you presented, what
13   exactly is it that New Jersey's doing that you think is
14   violative?

15         MR. CUNNINGHAM:  I can say it exactly, Your Honor.  If
16   I go back to the statutes that I had, which I said I would
17   build into my argument.  Under the New Jersey Environmental
18   Protection statutes, the State of New Jersey, when confronted
19   with this type of a problem, has a menu of options to issue
20   these types of Administrative Orders, one of which is this
21   Wetlands Mitigation Order, which requires the owner of the
22   property to mitigate for the loss of the wetlands.  And in this
23   case, the actual Administrative Order directs the Debtors to go
24   out and buy new land and to do offsite remediation using a
25   calculation of three times the amount that had been drained,

*Welter's Cramp, Inc.*
*Certified Court Transcribers*
*732-979-0191*

B - 175

35

1 three times the 10 acres of property. That was New Jersey's
2 election, so to speak, under the New Jersey statute.

3     One of the other menu of items they could have done, Your
4 Honor, would have been to assess a financial penalty against
5 the Debtors. And specifically it states under -- it's Article
6 77(a)-15 6. mitigation for the larger disturbance. One of the
7 mitigation options is under (f) it says, "If mitigation is not
8 feasible under (c), (d) or (e) above, mitigation shall be
9 performed through a monetary contribution or if the Department
10 determines that no mitigation alternative is not practical or
11 feasible through a land donation approved from the Wetlands
12 Mitigation Counsel in accordance with New Jersey NJAC 77(a)-
13 15 22." And I have copies of the New Jersey statutes, Your
14 Honor. They could have assessed a claim in these cases.

15     They could have asserted what the damage amount is, and in
16 fact, the calculations that they have been telling us is they
17 believe it's going to cost about $7 million to do. But they
18 purposely did not file a claim in this case, notwithstanding
19 having been given notice of the bar date, getting a Plan. And
20 their argument is to now go under the 3rd Circuit's Torwico
21 decision, Your Honor.

22     And that's really what we're here for. It's basically
23 does Torwico apply or does it not apply. And under Torwico,
24 Your Honor, the 3rd Circuit described the issue about when a
25 state environmental agency in a bankruptcy case is seeking to

*Walter's Cramp, Inc.*
*Certified Court Transcribers*
*757-359-0191*

36

1  effectively ameliorate or prevent continued pollution on
2  property   There is no continued pollution on property. Your
3  Honor.   There was an alleged drainage of wetlands that took
4  place back, as I said. prior to the petition date   They are
5  claiming that they can order us to go off and buy new property
6  and create new wetlands. and in other words expend $7 million.
7  And as I just indicated. the statute provided that they could
8  have just asserted the claim for the amount --

9        THE COURT:  Okay.

10       MR. CUNNINGHAM:  -- and submitted that   They didn't
11  do that and here we are.  We've got a confirmed Plan. we've
12  gone affective on that Plan   The Plan provides for
13  distributions to Creditors in reliance on the claims that were
14  filed in the case   New Jersey purposely did not file that
15  claim specifically so that it could be here today telling Your
16  Honor that we're under Torwico and we can order the Trust to go
17  out and buy property. expend $7 million. and they don't have to
18  participate in the bankruptcy case.  And I'm saying. Your
19  Honor. that under the definition of claim. as the Bankruptcy
20  Code -- as the Congress had drafted. it was meant to provide
21  that if a state is trying to assert an equitable remedy that
22  could give rise to a right to payment.  And I think under the
23  Supreme Court's Ohio vs. Kovacs decision. if they could have
24  elected monetary damages as a remedy. then it's a claim
25  Otherwise. they can just manipulate the Bankruptcy Code and

B - 177

37

1  whether they have to file a claim in the bankruptcy case    And
2  I submit. Your Honor. that's exactly what happened here
3          THE COURT:  Okay
4          MS  HUNT:  Your Honor. in its motion. the Trustee is
5  seeking to enjoin the DEP from continuing its estate
6  administrative action against Land Bank, a Debtor in this case
7  Your Honor. as the 3rd Circuit has noted in the case of Penn
8  Terra vs. the Commonwealth of Pennsylvania. 733 F 2d 267.
9  Federal supremacy over states should be invoked only where it
10  is clear that Congress so intended    Under the Bankruptcy Code.
11  Congress clearly accepted state regulatory actions in the
12  automatic stay provisions    As the Court in Penn Terra noted.
13  the regulatory exception to the automatic stay should be
14  construed broadly to avoid preemption. Your Honor
15      At this time. the State has not received a final order and
16  the state administrative action is not seeking to enforce that
17  order against the Trust    Even if the State were seeking
18  payment of money. which it is not in that case  Your Honor. it
19  would not be precluded from continuing its state action to
20  obtain a final order or judgment
21      Moreover. Your Honor. injunctions of state regulatory
22  actions are a very rare remedy. which are only appropriate if a
23  regulatory action seriously threatens the bankruptcy process
24  Here. the Trustee does not argue that it will be irreparably
25  harmed if the State continues its action.  Indeed, the Debtor

Writer's Cramp, Inc.
Certified Court Transcribers
732-329-0191

B - 178

30

1  has been defending a State action for over 2 years, thus the
2  State should not be enjoined from continuing to exercise its
3  police and regulatory powers reserved to it by Congress and the
4  Trustee's motion should be denied

5      Essentially Your Honor. I'm arguing that it is premature
6  to decide whether or not the State has a claim  We, of course,
7  assert that we do not have a claim, we don't have a right to
8  payment, we're not seeking a judgment for a sum certain. Your
9  Honor we're seeking remediation of damage that has been done
10 to the environment by the draining of 19 acres of freshwater
11 wetlands

12     THE COURT:  Well, by seeking remediation of damage
13 done pre-petition --

14     MS. HUNT:  It's continuing damage. Your Honor.  The
15 state has lost 19 acres of freshwater wetlands.

16     THE COURT:  But there's not continuing action by the
17 post-petition Debtor or certainly by the Trust.

18     MS HUNT:  The damage was done, but it's continuing
19 damage  Your Honor, and it's not going to be rectified unless
20 it's remediated or mitigated.

21     THE COURT:  How is it continually damaged?  The damage
22 is done.

23     MS HUNT:  The state has lost 19 acres of wetlands and
24 lost the functions and values of those wetlands --

25     THE COURT:  I understand that.  Lost it pre-petition

*Writer's Cramp, Inc.*
Certified Court Transcribers
752-379-0191

B - 179