IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE: | : |
| | : Chapter 11 |
| | : |
| THE IT GROUP, INC., | : Bankruptcy Case No. 02-10118-MFW |
| CO., et al., | : |
| | : Jointly Administered |
| Debtors. | : |
| | : |
| STATE OF NEW JERSEY | : |
| DEPARTMENT OF ENVIRONMENTAL | : |
| PROTECTION, | : |
| | : |
| Appellant, | : |
| | : |
| v. | : Civil Action No. 05-005-JJF |
| | : |
| THE IT LITIGATION TRUST, | : |
| successors to the Debtors, | : |
| | : |
| Appellee. | : |

Stuart Drowos, Esquire of the DEPARTMENT OF JUSTICE OF THE STATE OF DELWARE, Wilmington, Delaware.
<u>Of Counsel</u>: Peter C. Harvey, Esquire, Attorney General of New Jersey; Katherine M. Hunt, Esquire, Deputy Attorney General on the Brief, of the NEW JERSEY DEPARTMENT OF ENVIRONMENTAL PROTECTION, Trenton, New Jersey.
Attorneys for Appellant.

Jeffrey M. Schlerf, Esquire and Eric M. Sutty, Esquire of THE BAYARD FIRM, Wilmington, Delaware.
<u>Of Counsel</u>: John K. Cunningham, Esquire and Ileana A. Cruz, Esquire of WHITE & CASE LLP, Miami, Florida.
Attorneys for Appellee.

<u>**MEMORANDUM OPINION**</u>

March 17, 2006
Wilmington, Delaware

Farnan, District Judge.

Before the Court is an appeal by the State of New Jersey Department of Environmental Protection (the "NJDEP") from the December 6, 2004 Order of the United States Bankruptcy Court (the "Bankruptcy Court") entitled "Order Granting Motion Of The IT Litigation Trust Trustee For An Order (I) Enforcing (A) The Bar Date Order, (B) The Administrative Bar Date Order, (C) The Confirmation Order, and (D) The Plan Injunction; And (II) Directing The New Jersey Department Of Environmental Protection To Dismiss Certain Administrative Actions Against The Debtors Pursuant To The Court's Orders, The Plan Injunction And 11 U.S.C. §§ 105(a) and 1142(b); And (III) Granting Related Relief" (the "Order"). For the reasons discussed, the Court will affirm the Bankruptcy Court's December 6, 2004 Order.

I.   **The Parties' Contentions**

On July 17, 2002, the NJDEP's Bureau of Coastal and Land Use Compliance and Enforcement found that Landbank, Inc.[1] ("Landbank") had drained 18.94 acres of freshwater wetlands while constructing the Woodbury Creek Wetland Mitigation Bank[2] on a 200

---

[1] Landbank is now represented by the IT Litigation Trust, as successor to the Debtors' estate.

[2] The mitigation bank benefits both the NJDEP and the party constructing it. The party constructing the mitigation bank can sell credits for cash to developers who cannot restore wetlands on their own sites. In addition, the NJDEP receives the benefit of protected wetlands and the benefit of being able to offer developers an alternative to performing their own mitigation for wetland losses.

acre site in Gloucester County, New Jersey in violation of the Freshwater Wetlands Protection Act, N.J.S.A. § 13:9B-1 to 30. As a result of this findings, the NJDEP issued an Administrative Order to Landbank which sought (1) off-site mitigation for the drained acres in the form of 57 new acres of wetlands, (2) re-establishment of financial assurances for the maintenance and monitoring of the mitigation bank and (3) payment of a $9,000 penalty. The Administrative Order also provides that:

> No obligations imposed by this [order] are intended to constitute a debt, damage, claim, penalty or other civil action which should be limited or discharged in a bankruptcy proceeding. All obligations imposed by this [order] shall constitute continuing regulatory obligations imposed by the police powers of the state of New Jersey, intended to protect the public health, safety, welfare and environment.

Through one of its subsidiary, Landbank filed a request for an administrative hearing to challenge the Administrative Order. The matter was subsequently filed as a contested case in the New Jersey Office of Administrative Law. The NJDEP then filed a motion for summary decision in the New Jersey Office of Administrative Law seeking to establish Landbank's liability for the alleged violations. In response, the IT Litigation Trust filed a motion in the Bankruptcy Court for an order directing the NJDEP to dismiss its administrative action against the Debtors.

By its appeal, the NJDEP contends that the Bankruptcy Court erred in ordering the NJDEP to dismiss its administrative action. The NJDEP contends that it had the right to proceed with this

2

regulatory action under an exemption to the automatic stay codified in 11 U.S.C. § 362(b)(4). The NJDEP also contends that the Bankruptcy Court erred in finding that Landbank's obligation to perform mitigation under the Freshwater Wetlands Protection Act was a general unsecured claim that would be subject to the Bankruptcy Court's Confirmation Order.

In response, the IT Litigation Trust (the "Trust") contends that the Bankruptcy Court correctly concluded that the NJDEP's Administrative Order was a pre-petition claim against the estate which was enjoined by the Plan Injunction and the Confirmation Order. Because the Debtors ceased operations more than two years ago, the Trust contends that the Bankruptcy Court correctly viewed the obligations under the Administrative Order as financial claims pursuant to New Jersey law, which permits the payment of financial penalties in lieu of mitigation when mitigation is not feasible. The Trust also contends that the NJDEP (1) presented no evidence to the Bankruptcy Court of post-petition or continuing damages, (2) conceded that the alleged violations occurred pre-petition, and (3) failed to file any proofs of Administrative Claims before the Bar Date set by the Bankruptcy Court. Thus, the Trust maintains that the NJDEP's Administrative Order and the related administrative proceedings were correctly construed as a claim for money damages by the NJDEP to compensate past injuries, rather than as injunctive

relief aimed at preventing future harm.

In addition, the Trust contends that the Bankruptcy Court correctly concluded that this case was governed by the Plan Injunction and the Confirmation Order, and not the provisions of the automatic stay under 11 U.S.C. § 362.[3] In applying the provisions of the Plan Injunction, the Trust further contends that the Bankruptcy Court correctly concluded that the administrative proceedings before the New Jersey Office of Administrative Law were barred by the Plan Injunction because the NJDEP failed to demonstrate a compelling state interest in protecting the health and safety of the public that outweighed the interest of the Trust in protecting the rights of the Debtors' creditors.

## II. Standard of Review

The Court has jurisdiction to hear an appeal from the Bankruptcy Court pursuant to 28 U.S.C. § 158(a). In undertaking a review of the issues on appeal, the Court applies a clearly erroneous standard to the Bankruptcy Court's findings of fact and a plenary standard to its legal conclusions. See Am. Flint Glass Workers Union v. Anchor Resolution Corp., 197 F.3d 76, 80 (3d

---

[3] The Court notes that the NJDEP objected to the Plan on the grounds that it (1) failed to address the obligations of Landbank and (2) impaired the State's ability to ensure the restoration of resources that were destroyed by Landbank. The Bankruptcy Court overruled the NJDEP's objection, and the NJDEP did not appeal the Confirmation Order.

4

Cir. 1999). With mixed questions of law and fact, the Court must accept the Bankruptcy Court's finding of "historical or narrative facts unless clearly erroneous, but exercise 'plenary review of the trial court's choice and interpretation of legal precepts and its application of those precepts to the historical facts.'" Mellon Bank, N.A. v. Metro Communications, Inc., 945 F.2d 635, 642 (3d Cir. 1991) (citing Universal Mineral, Inc. v. C.A. Hughes & Co., 669 F.2d 98, 101-02 (3d Cir. 1981)). The appellate responsibilities of the Court are further understood by the jurisdiction exercised by the Third Circuit, which focuses and reviews the Bankruptcy Court decision on a de novo basis in the first instance. In re Telegroup, 281 F.3d 133, 136 (3d Cir. 2002).

## III. DISCUSSION

The NJDEP's primary argument on appeal is that the Bankruptcy Court erred in failing to recognize that its administrative action against Landbank is exempt from the provisions of the automatic stay under 11 U.S.C. § 362(b)(4). Under Section 362(b)(4), the filing of a bankruptcy petition does not operate as a stay against "the commencement or continuation of an action or proceeding by a governmental unit . . . to enforce such governmental's unit's . . . police and regulatory power." However, as the Bankruptcy Court correctly recognized, Section 362 is not applicable in this case, because the automatic

stay terminated on the Effective Date of the Plan. Under Section 362(c)(2) of the Bankruptcy Code, the stay continues in effect until the time a discharge is granted or denied. In accordance with this provision, the Plan provides:

> Unless otherwise provided, all injunctions or stays arising under or entered during the Chapter 11 cases under sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date shall remain in full force and effect <u>until the later of the Effective Date</u> and the date indicated in the order providing for such injunction or stay.

App. B-261 (emphasis added). Because the automatic stay was terminated on the Effective Date of the Plan, the Court concludes that the Bankruptcy Court correctly analyzed the issues raised by the NJDEP under the Plan Injunction.

Having concluded that the Plan Injunction applies, the Court must next determine whether the Bankruptcy Court correctly concluded that the NJDEP's Administrative Order is a "claim" within the meaning of the Plan and the Bankruptcy Code. A claim is defined as a "right to payment, whether or not such right is reduced to judgment, liquidated, equitable, secured or unsecured" or a "right to an equitable remedy for breach of performance if such breach gives rise to a right to payment." 11 U.S.C. § 101(5); App. B-223. The NJDEP contends that the Administrative Order is an affirmative injunction against the Debtors requiring them to create 57 new acres of wetlands, and not a claim for monetary damages. The Court disagrees. The Debtors in this case

6

have ceased operations, and their remaining assets have been vested in the Trust which was established under the Plan for the limited purpose of liquidating and distributing the Debtors' remaining assets to creditors holding allowed claims. Thus, the only way for the Trust to comply with the Administrative Order is for the Trust to render the payment of money. See Ohio v. Kovacs, 469 U.S. 274, 282-283 (1985).[4]

The NJDEP relies on the Third Circuit's decision in Penn Terra Ltd. v. Dept. of Environmental Resources, 733 F.2d 267 (3d Cir. 1984) to argue that the relief it seeks is injunctive in nature. In Penn Terra, the DER sought to enforce an injunction order issued by the Commonwealth Court requiring the debtor to take certain corrective measures at a mine it operated. The Third Circuit concluded that the DER's action was not an action to enforce a money judgment, but rather an equitable action aimed at preventing future harm. In reaching this determination, the Third Circuit recognized that "an important factor in identifying

---

[4] The NJDEP argues that Kovacs is distinguishable, because the Supreme Court based its decision on the fact that the State of Ohio was seeking only the payment of money from Kovacs and not remedial relief. While it was certainly relevant to the Supreme Court that the State of Ohio was only interested in obtaining a money payment to effectuate the environmental clean-up in Kovacs, the Supreme Court also accepted what the Sixth Circuit noted -- that Kovacs himself could not perform the affirmative obligations imposed upon him by the state court order, except by the payment of money or the transfer of his financial resources. Thus, while the Court acknowledges that Kovacs is not precisely on point, the Court finds it to be instructive in this case.

a proceeding as one to enforce a money judgment is whether the remedy would compensate for past wrongful acts resulting in injuries already suffered or protect against future harm." Id. at 277.

In this case, the NJDEP conceded at the bankruptcy hearing that the Administrative Order was directed at past alleged violations of the environmental laws, and the NJDEP failed to present any evidence of continuing damage. App. B-174. As a result, the Bankruptcy Court found that the Administrative Order and the related proceedings by the NJDEP were directed at compensation for past wrongful acts. Because no contrary evidence was presented to the Bankruptcy Court on this issue, the Court cannot conclude that the Bankruptcy Court's finding of no continuing harm was clearly erroneous.

The NJDEP also relies on the Third Circuit's decision in In re Torwico Electronics, Inc., 8 F.3d 146 (3d Cir. 1993). Specifically, the NJDEP contends that it has no right to reconstruct the destroyed wetlands and seek reimbursement from an alleged violator under the section of the Freshwater Wetlands Protection Act that it invoked against Landbank, and therefore, it cannot be said to have a claim for monetary damages. In addition, the NJDEP contends that the destruction of wetlands poses a continuing hazard to the environment, and therefore, the NJDEP does not possess a claim for monetary compensation, but an

8

affirmative injunction aimed at preventing future, continued harm.

In Torwico, the Third Circuit concluded that the debtor's clean-up obligation under an administrative order issued by the NJDEP was not a claim within the meaning of the Bankruptcy Code. In so holding, the Torwico court stated that the fact that "the state may have had alternative means at its disposal to end the ongoing threat does not convert its statutory authority into a 'right of payment.'" 8 F.3d at 151, n.6. However, the Torwico decision as a whole was based on the debtor's status as a generator of hazardous waste who, under New Jersey law, had an ongoing responsibility for the waste which was posing a continuing environmental hazard. In reaching this conclusion, the Third Circuit noted that the NJDEP provided an affidavit detailing the findings of contamination at the site and the fact that the wastes were migrating into the surrounding environment. Id. at 150, n.6.

As the Court previously noted the Bankruptcy Court in this case was given no evidence of continuing environmental damages, and therefore, the Bankruptcy Court did not err in finding that the Administrative Order does not involve an obligation to stop or ameliorate an ongoing condition. Moreover, the Administrative Order provides for no obligations at the site of the destroyed wetlands. Rather, the Administrative Order requires the creation

of <u>new</u> wetlands at a <u>new</u> location at a ratio of 3 acres for every 1 acre allegedly destroyed, a monetary penalty, and the posting of financial assurances. In this regard, the Court agrees with the Bankruptcy Court that the relief sought by the NJDEP is compensatory in nature and not the type of preventive or ongoing hazardous clean-up relief that amounts to an affirmative injunction. Because the Court concludes that the Administrative Order in this case more closely resembles a claim for monetary damages intended to compensate for past alleged acts, rather than a claim for injunctive relief aimed at preventing future harm, the Court concludes that the Bankruptcy Court correctly enjoined the NJDEP from pursuing the enforcement of the Administrative Order under the Plan Injunction.

## IV. CONCLUSION

For the reasons discussed, the Court will affirm the December 6, 2004 Order of the Bankruptcy Court.

An appropriate Order will be entered.